**GIOVANNIELLO & MICHELS, LLP**
Alexander F. Giovanniello (CSB # 125562)
1470 South Valley Vista Drive, Suite 200
Diamond Bar, California 91765
Email: afg@gm-lawfirm.com

Ph: (909) 396-1964
Fax (909) 396-0885

Attorneys for DEFENDANT
THC-ORANGE COUNTY, INC. dba KINDRED HOSPITAL
SAN DIEGO

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARNOLD SCHIMSKY, as Trustee of THE ANN P. SHIMSKY TRUST and representative of ANN P. SHIMSKY, deceased<br>Plaintiffs,<br>vs.<br><br>UNITED STATES OFFICE OF PERSONNEL MANAGEMENT; THC-ORANGE COUNTY, INC., dba KINDRED HOSPITAL SAN DIEGO<br><br>Defendants. | Case No.: 07 CV2432-H(LSP)<br><br>**THC-ORANGE COUNTY, INC., dba KINDRED HOSPITAL SAN DIEGO'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT AGAINST IT PURSUANT TO RULE 12(b)(6)**<br><br>FRCP 12(b)(6)<br><br>DATE: June 16, 2008<br>TIME: 10:30 a.m.<br>COURTROOM: 13<br><br>NO ORAL ARGUMENT UNLESS REQUESTED BY COURT PER CHAMBERS |

Defendant, THC-Orange County, Inc. dba Kindred Hospital San Diego (hereinafter "Kindred Hospital"), hereby requests this Court take judicial notice of the multiple cases related to this action, including:

1. Arnold Schimsky, attorney-in-fact for Ann Shimsky vs. Kindred Hospital – San Diego, filed in Superior Court of the State of California, County of San Diego, Probate Division, on May 17, 2005 case number: P188885. Attached hereto as **Exhibit "A"** is a true and accurate copy of the complaint filed by Mr. Schimsky in Superior Court of the State of California, County of San Diego on May 17, 2005.

2. Arnold Schimsky, individually, as Trustee of the Ann P. Shimsky Trust and as representative of the Estate of Ann P. Shimsky v. John P. Garcia, filed in Superior Court for the State of California, County of San Diego on December 21, 2007 case number: 37-2007-00084434-CU-PN-CTL. Attached hereto as **Exhibit "B"** is a true and accurate copy of the complaint filed by Mr. Schimsky in Superior Court for the State of California, County of San Diego on December 21, 2007.

3. The appeal by Mr. Schimsky and his sister of the denial of their motion to vacate, currently pending before the Court of Appeal of the State of California, Fourth Appellate District, Division One, entitled THC-Orange County, Inc. Plaintiff and Respondent vs. Arnold Schimsky, Defendant and Appellant, Court of Appeal Number: D051424. Attached hereto as **Exhibit "C"** is a true and accurate copy of Appellant's brief filed by Mr. Schimsky and Judy Lopriano after November 26, 2007.

///

///

///

///

///

///

Defendant's request is made pursuant to Rule 201 of the Federal Rules of Evidence in that the filing of the multiple complaints by Mr. Schimsky based on the same set of facts and circumstances is capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.

Date: May 9, 2008

**GIOVANNIELLO & MICHELS, LLP**

By: [signature]
Alexander F. Giovanniello
Attorney for DEFENDANT,
THC ORANGE COUNTY, INC. dba KINDRED HOSPITAL – SAN DIEGO

# Exhibit A

Kenneth N. Hamilton, SBN 222586
4670 Nebo Drive, Suite 101
La Mesa, California 91941-5230
Telephone: (619) 337-8491
Facsimile: (619) 337-8495

Attorney for Petitioner,
Arnold Schimsky

FILED
PROBATE DIVISION
2005 MAY 17 P 4:23
CLERK, SUPERIOR COURT
SAN DIEGO COUNTY, CA

SUPERIOR COURT OF CALIFORNIA FOR THE COUNTY OF SAN DIEGO

CENTRAL DIVISION

| | |
|---|---|
| ARNOLD D. SCHIMSKY, attorney-in-fact for Ann Shimsky,<br><br>Petitioner,<br>vs.<br><br>KINDRED HOSPITAL – SAN DIEGO,<br><br>Respondent.<br><br>ANN P. SHIMSKY, Patient. | Case No. P 188885<br><br>**VERIFIED PETITION TO COMPEL KINDRED HOSPITAL – SAN DIEGO TO HONOR AUTHORITY UNDER POWER OF ATTORNEY FOR HEALTH CARE AND FOR DAMAGES**<br><br>[Prob. Code, §§ 4750; 4742]<br>SET FOR HEARING<br>JUN 28 2005<br>10:00 A.M. F10<br>1409 FOURTH AVE. |

Petitioner, ARNOLD D. SCHIMSKY, alleges:

1. Petitioner is the attorney-in-fact of Ann P. Shimsky under a Power of Attorney for Health Care executed on August 10, 2000 pursuant to section 4670, et. seq. (formerly section 4711) of the Probate Code, a copy of which is attached as Exhibit 1 and incorporated herein by reference, and has standing to bring this petition under Probate Code section 4765. Petitioner is also Ms. Shimsky's son.

2. Venue is proper per section 4763 of the Probate Code in that the patient and the surrogate reside in the County of San Diego and within the Central Division of the San Diego County Superior Court.

3. Kindred Hospital – San Diego is an unknown business entity with a principal place of

business in the State of California, County of San Diego. The Hospital is a Health Care Institution per section 4619 of the Probate Code. Ms. Shimsky is a patient at the Hospital.

4. The Hospital employs and contracts health care providers who act at the Hosptial's direction and control. At all times relevant to this petition, such health care providers were acting in the course and scope of their duties assigned by the Hospital.

5. A physician has determined that Ms. Shimsky is unable to make her own health care decisions.

6. A proceeding under this petition is reasonably necessary for the protection and the interests of the patient.

7. Ms. Shimsky has been a patient at the Hospital since July 2002. Throughout this time, Petitioner has been her agent under a Power of Attorney for Health Care ("POAHC.")

8. Pursuant to his authority granted under the POAHC, while Ms. Shimsky was a patient at the Hospital, Mr. Schimsky has consistently and regularly made health care decisions for Ms. Shimsky.

9. Pursuant to his authority granted under the POAHC, while Ms. Shimsky was a patient at the Hospital, Mr. Schimsky has consistently and regularly requested, reviewed and obtained information regarding Ms. Shimsky's health in order to give his fully informed consent to health care and to exercise his right to refuse any proposed treatment of Ms. Shimsky.

10. Specifically, since Ms. Shimsky was admitted to the Hospital as a patient, Mr. Schimsky has requested and obtained information regarding the patient's health, including daily reports pertaining to her condition and activities. Mr. Schimsky has also visited Ms. Shimsky daily for several hours on average to provide her with comfort and attention, to obtain her medical information, and to review the health care she is receiving.

11. While acting as Ms. Shimsky's agent, on multiple occasions, Mr. Schimsky has assisted her treating medical professionals in identifying unhealthful medical conditions of Ms. Shimsky and their origin.

12. At least as far back as March 2005 and still continuing as of the filing of this petition,

the Hospital has refused to honor Mr. Schimsky's authority as attorney-in-fact for Ms. Shimsky pursuant to her POAHC. Specifically, the Hospital has prevented Mr. Schimsky from obtaining the patient's medical information by imposing conditions and limitations that make the task of obtaining the patient's medical information all but impossible, and when medical information is obtained, it is stale. Additionally, for no good cause the Hospital has limited visitation between Mr. Schimsky and Ms. Shimsky to one-half hour per day from the usual visitation hours of 9:00 a.m. to 10:00 p.m. Finally, Mr. Schimsky has expressly ordered the Hospital to refrain from directing a particular Health Care Provider to provide health care to Ms. Shimsky due to the fact that the particular person provided abusive care to Ms. Shimsky and poses a substantial risk of harm towards her, but the Hospital has disregarded Mr. Schimsky's order notwithstanding the fact that it is the custom and practice of the Hospital to have at least two respiratory therapists on site at all times.

13. Mr. Schimsky is informed and believes that the Hospital's actions against Mr. Schimsky and Ms. Shimsky is done to retaliate against Mr. Schimsky for demanding that Ms. Shimsky receive a portable ventilator that has been refused by the Hospital despite the fact that it would be covered by the patient's insurance and it was prescribed by a treating physician, for contacting Hospital quality management and public authorities to file complaints against the Hospital, for recording health care related information and hospital staff activities in a personal notebook, and for talking to other visitors of the Hospital. Additionally, Mr. Schimsky is informed and believes that the Hospital is short-staffed, and this fact is demonstrated to Mr. Schimsky while he is at the Hospital for every visit with Ms. Shimsky.

14. Such conduct by the Hosptial constitutes intentional violations of its duties towards Ms. Shimsky as a Health Care Institution thereby subjecting the Hospital to liability under section 4742 of the Probate Code for the greater of actual damages resulting from the violations or $2,500.00 per violation.

15. As a direct and proximate result of the Hospital's failure to honor Mr. Schimsky's authority pursuant to Ms. Shimsky's POWHC and intentionally interfering with Mr. Schimsky's

ability to discharge his duties under the POWHC, Ms. Shimsky is at risk of suffering serious physical harm, and has suffered severe emotional distress.

16. An order from the Court compelling Respondent to honor Petitioner's authority is in the public interest, Petitioner has no adequate remedy at law, and a balancing of the respective equities and hardships of Petitioner and Respondent favors granting the equitable relief sought in the petition.

17. Petitioner has made a good faith effort to settle his dispute with Respondent out of court, but Respondent has failed to adequately reciprocate.

WHEREFORE, Petitioner prays for the following:

1. An order enjoining Kindred Hospital – San Diego from delaying and withholding information regarding Ms. Shimsky's health from Mr. Schimsky;

2. An order enjoining Kindred Hospital – San Diego from limiting Mr. Schimsky's visitation to any less than the regular visitation hours of 9:00 a.m. to 10:00 p.m.;

3. An order enjoining Kindred Hospital – San Diego from disregarding orders from Mr. Schimsky that the Hospital refrain from directing a particular Health Care Provider to provide health care to Ms. Shimsky;

4. An award of the greater of statutory damages of $2,500.00 per willful violation of section 4730, et seq. of the Probate Code or actual damages.

5. An award of reasonable attorneys fees per section 4742 of the Probate Code;

6. An award of costs, and any additional relief the court may grant in the interest of justice.

Respectfully submitted,

Dated: May 17, 2005

Kenneth N. Hamilton,
Attorney for Arnold Schimsky

EXHIBIT 1

STATUTORY FORM
DURABLE POWER OF ATTORNEY FOR HEALTH CARE
(California Probate Code Section 4771)

WARNING TO PERSON EXECUTING THIS DOCUMENT

THIS IS AN IMPORTANT LEGAL DOCUMENT WHICH IS AUTHORIZED BY THE KEENE HEALTH CARE AGENT ACT. BEFORE EXECUTING THIS DOCUMENT, YOU SHOULD KNOW THESE IMPORTANT FACTS:

THIS DOCUMENT GIVES THE PERSON YOU DESIGNATE AS YOUR ATTORNEY-IN-FACT THE POWER TO MAKE HEALTH CARE DECISIONS FOR YOU. YOUR ATTORNEY-IN-FACT MUST ACT CONSISTENTLY WITH YOUR DESIRES AS STATED IN THIS DOCUMENT OR OTHERWISE MADE KNOWN.

EXCEPT AS YOU OTHERWISE SPECIFY IN THIS DOCUMENT, THIS DOCUMENT GIVES YOUR ATTORNEY IN FACT THE POWER TO CONSENT TO YOUR DOCTOR NOT GIVING TREATMENT OR STOPPING TREATMENT NECESSARY TO KEEP YOU ALIVE.

NOTWITHSTANDING THIS DOCUMENT, YOU HAVE THE RIGHT TO MAKE MEDICAL AND OTHER HEALTH CARE DECISIONS FOR YOURSELF SO LONG AS YOU CAN GIVE INFORMED CONSENT WITH RESPECT TO THE PARTICULAR DECISION. IN ADDITION, NO TREATMENT MAY BE GIVEN TO YOU OVER YOUR OBJECTION AT THE TIME, AND HEALTH CARE NECESSARY TO KEEP YOU ALIVE MAY NOT BE STOPPED OR WITHHELD IF YOU OBJECT AT THE TIME.

THIS DOCUMENT GIVES YOUR AGENT AUTHORITY TO CONSENT, TO REFUSE TO CONSENT, OR TO WITHDRAW CONSENT TO ANY CARE, TREATMENT, SERVICE, OR PROCEDURE TO MAINTAIN, DIAGNOSE, OR TREAT A PHYSICAL OR MENTAL CONDITION. THIS POWER IS SUBJECT TO ANY STATEMENT OF YOUR DESIRES AND ANY LIMITATIONS THAT YOU INCLUDE IN THIS DOCUMENT. YOU MAY STATE IN THIS DOCUMENT ANY TYPES OF TREATMENT THAT YOU DO NOT DESIRE. IN ADDITION, A COURT CAN TAKE AWAY THE POWER OF YOUR ATTORNEY-IN-FACT TO MAKE HEALTH CARE DECISIONS FOR YOU IF YOUR ATTORNEY-IN-FACT (1) AUTHORIZES ANYTHING THAT IS ILLEGAL, (2) ACTS CONTRARY TO YOUR KNOWN DESIRES, OR (3) WHERE YOUR DESIRES ARE NOT KNOWN, DOES ANYTHING THAT IS CLEARLY CONTRARY TO YOUR BEST INTERESTS.

THE POWERS GIVEN BY THIS DOCUMENT WILL EXIST FOR AN INDEFINITE PERIOD OF TIME UNLESS YOU LIMIT THEIR DURATION IN THIS DOCUMENT.

YOU HAVE THE RIGHT TO REVOKE THE AUTHORITY OF YOUR AGENT BY NOTIFYING YOUR AGENT OR YOUR TREATING DOCTOR, HOSPITAL, OR OTHER HEALTH CARE PROVIDER ORALLY OR IN WRITING OF THE REVOCATION.

YOUR AGENT HAS THE RIGHT TO EXAMINE YOUR MEDICAL RECORDS AND TO CONSENT TO THEIR DISCLOSURE UNLESS YOU LIMIT THIS RIGHT IN THIS DOCUMENT.

UNLESS YOU OTHERWISE SPECIFY IN THIS DOCUMENT, THIS DOCUMENT GIVES YOUR ATTORNEY-IN-FACT THE POWER AFTER YOU DIE TO (1) AUTHORIZE AN AUTOPSY, (2) DONATE YOUR BODY OR PARTS THEREOF FOR TRANSPLANT OR THERAPEUTIC OR EDUCATIONAL OR SCIENTIFIC PURPOSES, AND (3) DIRECT THE DISPOSITION OF YOUR REMAINS.

THIS DOCUMENT REVOKES ANY PRIOR DURABLE POWER OF ATTORNEY FOR HEALTH CARE.

YOU SHOULD CAREFULLY READ AND FOLLOW THE WITNESSING PROCEDURE DESCRIBED AT THE END OF THIS FORM. THIS DOCUMENT WILL NOT BE VALID UNLESS YOU COMPLY WITH THE WITNESSING PROCEDURES.

IF THERE IS ANYTHING IN THIS DOCUMENT THAT YOU DO NOT UNDERSTAND, YOU SHOULD ASK A LAWYER TO EXPLAIN IT TO YOU.

YOUR AGENT MAY NEED THIS DOCUMENT IMMEDIATELY IN CASE OF AN EMERGENCY THAT REQUIRES A DECISION REGARDING YOUR HEALTH CARE. EITHER KEEP THIS DOCUMENT WHERE IT IS IMMEDIATELY AVAILABLE TO YOUR AGENT AND ALTERNATE AGENTS OR GIVE EACH OF THEM AN EXECUTED COPY OF THIS DOCUMENT. YOU MAY ALSO WANT TO GIVE YOUR DOCTOR AN EXECUTED COPY OF THIS DOCUMENT.

DO NOT USE THIS FORM IF YOU ARE A CONSERVATEE UNDER THE LANTERMAN-PETRIS SHORT ACT AND YOU WANT TO APPOINT YOUR CONSERVATOR AS YOUR AGENT. YOU CAN DO THAT ONLY IF THE APPOINTMENT DOCUMENT INCLUDES A CERTIFICATE OF YOUR ATTORNEY.

## 1. DESIGNATION OF HEALTH CARE AGENT

1. I, Ann P. Shimsky, residing at 1255 Essex Street, Imperial Beach, California 91932, do hereby designate and appoint Arnold D. Schimsky, 1255 Essex Street, Imperial Beach, California 91932; Tel: (619) 575-2662 (Insert name, address, and telephone number of one individual only as your agent to make health care decisions for you. None of the following may be designated as your agent: (1) your treating health care provider, (2) nonrelative employee of your treating health care provider, (3) an operator of a community care facility, (4) a nonrelative employee of an operator of a community care facility, (5) an operator of a residential care facility for the elderly, or (6) a nonrelative employee of an operator of a residential care facility for the elderly.) as my agent to make health care decisions for me as authorized in this document. For the purposes of this document, "health care decision" means consent, refusal of consent, or withdrawal of consent to any care, treatment, service, or procedure to maintain, diagnose, or treat an individual's physical or mental condition.

///

///

///

///

2. CREATION OF DURABLE POWER OF ATTORNEY FOR HEALTH CARE

By this document I intend to create a durable power of attorney for health care under Sections 4600 to 4752, inclusive, of the California Probate Code. This power of attorney is authorized by the Keene Health Care Agent Act and shall be construed in accordance with the provisions of Sections 4770 to 4779, inclusive, of the Probate Code. This power of attorney shall not be affected by my subsequent incapacity.

3. GENERAL STATEMENT OF AUTHORITY GRANTED

Subject to any limitations in this document, I hereby grant to my agent full power and authority to make health care decisions for me to the same extent that I could make those decisions for myself if I had the capacity to do so. In exercising this authority, my agent shall make health care decisions that are consistent with my desires as stated in this document or otherwise made known to my agent, including, but not limited to, my desires concerning obtaining or refusing or withdrawing life-prolonging care, treatment, services and procedures. (If you want to limit the authority of your agent to make health care decisions for you, you can state the limitations in paragraph 4 ("Statement of Desires, Special Provisions, and Limitations") below. You can indicate your desires by including a statement of your desires in the same paragraph.)

4. STATEMENT OF DESIRES, SPECIAL PROVISIONS, AND LIMITATIONS

(Your agent must make health care decisions that are consistent with your known desires. You can, but are not required to, state your desires in the space provided below. You should consider whether you want to include a statement of your desires concerning life-prolonging care, treatment, services, and procedures. You can also include a statement of your desires concerning other matters related to your health care. You can also make your desires known to your agent by discussing your desires with your agent or by some other means. If there are any types of treatment that you do not want to be used, you should state them in the space below. If you want to limit any other way the authority given your agent by this document, you should state the limits in the spaces below. If you do not state any limits, your agent will have broad powers to make health care decisions for you, except to the extent that there are limits provided by law.)

In exercising the authority under this durable power of attorney for health care, my agent shall act consistently with my desires as stated below and is subject to the special provisions and limitations stated below:

(a) Statement of desires concerning life-prolonging care, treatment, services and procedures:

(b) Additional statement of desires, special provisions, and limitations:

I do not authorize you to make any organ donations or anatomical gifts.

(You may attach additional pages if you need more space to complete your statement. If you attach additional pages, you must date and sign EACH of the additional pages at the same time you date and sign this document.)

5. INSPECTION AND DISCLOSURE OF INFORMATION RELATING TO MY PHYSICAL OR MENTAL HEALTH

Subject to any limitations in this document, my agent has the power and authority to do all the following:

(a) Request, review, and receive any information, verbal or written, regarding my physical or mental health, including, but not limited to, medical and hospital records.

(b) Execute on my behalf any releases or other documents that may be required in order to obtain this information.

(c) Consent to the disclosure of this information.

(If you want to limit the authority of your agent to receive and disclose information relating to your health, you must state the limitations in paragraph 4 ("Statement of Desires, Special Provisions, and Limitations") above.)

6. SIGNING DOCUMENTS, WAIVERS, AND RELEASES

Where necessary to implement the health care decisions that my agent is authorized by this document to make, my agent has the power and authority to execute on my behalf all of the following:

(a) Documents titled or purporting to be a "Refusal to Permit Treatment" and "Leaving Hospital Against Medical Advice."

(b) Any necessary waiver or release from liability required by a hospital or physician.

7. AUTOPSY, ANATOMICAL GIFTS; DISPOSITION OF REMAINS

Subject to any limitations in this document, my agent has the power and authority to do all of the following:

(a) Authorize an autopsy under Section 7113 of the Health and Safety Code.

(b) Make a disposition of a part or parts of my body under the Uniform Anatomical Gift Act, Chapter 3.5 (commencing with Section 7150) of Part 1 of Division 7 of the Health and Safety Code.)

(c) Direct the disposition of my remains under Section 7100 of the Health and Safety Code. (If you want to limit the authority of your agent to consent to an autopsy, make an anatomical gift, or direct the disposition of your remains, you must state the limitations in paragraph 4 ("Statement of Desires, Special Provisions, and Limitations") above.)

8. DURATION

(Unless you specify otherwise in the space below, this power of attorney will exist for an indefinite period of time.)

This durable power of attorney for health care expires on ________________. (Fill in this space ONLY if you want to limit the duration of this power of attorney.)

9. DESIGNATION OF ALTERNATE AGENTS

(You are not required to designate any alternate agents but you may do so. Any alternate agent you designate will be able to make the same health care decisions as the agent you designated in paragraph 1, above, in the event that agent is unable or ineligible to act as your agent. If the agent you designated is your spouse, he or she becomes ineligible to act as your agent if your marriage is dissolved.)

If the person designated as my agent in paragraph 1 is not available or becomes ineligible to act as my agent to make a health care decision for me or loses the mental capacity to make health care decisions for me, or if I revoke that person's appointment or authority to act as my agent to make health care decisions for me, then I designate and appoint the following persons to serve as my agent to make health care decisions for me as authorized in this document, these persons to serve in the order listed below:

A. First Alternate Agent: Barry A. Schimsky, 744 W. Moyer St., Ridgecrest, California 93555; Tel: (760) 446-3714.

B. Second Alternate Agent: Judy Schimsky Lopriena, 7509 Flower Meadow Drive, San Diego, California 92126; Tel: (858) 578-3165.

///
///

## 10. NOMINATION OF CONSERVATOR OF PERSON

(A conservator of the person may be appointed for you if a court decides that one should be appointed. The conservator is responsible for your physical care, which under some circumstances includes making health care decisions for you. You are not required to nominate a conservator but you may do so. The court will appoint the person you nominate unless that would be contrary to your best interests. You may, but are not required to, nominate as your conservator the same person you named in paragraph 1 as your health care agent. You can nominate an individual as your conservator by completing the space below.)

If a conservator of the person is to be appointed for me, I nominate the following individual to serve as conservator of the person: (same designations and order of priority as my agents for health care decisions)

## 11. PRIOR DESIGNATIONS REVOKED

I revoke any prior durable power of attorney for health care.

## DATE AND SIGNATURE OF PRINCIPAL
## (YOU MUST DATE AND SIGN THIS POWER OF ATTORNEY)

I sign my name to this Statutory Form Durable Power of Attorney for Health Care on 8/10, 2000 at La Mesa, California.

Signature: Ann P. Shimsky
Ann P. Shimsky

THIS POWER OF ATTORNEY WILL NOT BE VALID UNLESS IT IS SIGNED BY TWO QUALIFIED WITNESSES WHO ARE PRESENT WHEN YOU SIGN OR ACKNOWLEDGE YOUR SIGNATURE. IF YOU HAVE ATTACHED ANY ADDITIONAL PAGES TO THIS FORM, YOU MUST DATE AND SIGN EACH OF THE ADDITIONAL PAGES AT THE SAME TIME YOU DATE AND SIGN THIS POWER OF ATTORNEY.

STATE OF CALIFORNIA)
) ss.
COUNTY OF SAN DIEGO)

On 8/10, 2000, before me, Christopher J Zucconi, a Notary Public in and for said County and State, personally appeared Ann P. Shimsky, proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument, and acknowledged to me that she executed the same in her authorized capacity and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Christopher J. Zucconi
COMM. # 1177399
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
COMM. EXP. JAN. 25, 2002

[signature]
Notary Public in and for said County and State

STATEMENT OF WITNESSES

(This document must be witnessed by two qualified adult witnesses. None of the following may be used as a witness: (1) a person you designate as your agent or alternate agent, (2) a health care provider, (3) an employee of a health care provider, (4) the operator of a community care facility, (5) an employee of an operator of a community care facility, (6) the operator of a residential care facility for the elderly, or (7) an employee of an operator of a residential care facility for the elderly. At least one of the witnesses shall make the additional declaration set out following the place where the witnesses sign.)

(READ CAREFULLY BEFORE SIGNING. You can sign as a witness only if you personally know the principal or the identity of the principal is proved to you by convincing evidence.)

(To have convincing evidence of the identity of the principal, you must be presented with and reasonably rely on any one or more of the following:

(1) An identification card or driver's license issued by the California Department of Motor Vehicles that is current or has been issued within five years.

(2) A passport issued by the Department of State of the United States that is current or has been issued within five years.

(3) Any of the following documents if the document is current or has been issued within five years and contains a photograph and description of the person named on it, is signed by the person, and bears a serial or other identifying number:

(a) A passport issued by a foreign government that has been stamped by the United States Immigration and Naturalization Service.

(b) A driver's license issued by a state other than California or by a Canadian or Mexican public agency authorized to issue driver's licenses.

(c) An identification card issued by a state other than California.

(d) An identification card issued by any branch of the armed forces of the United States.

(4) If the principal is a patient in a skilled nursing facility, a witness who is a patient advocate or ombudsman may rely upon the representations of the administrator or staff of the skilled nursing facility, or of family members, as convincing

evidence of the identity of the principal if the patient advocate or ombudsman believes that the representations provide a reasonable basis for determining the identity of the principal.)

(Other kinds of proof of identity are not allowed.)

I declare under penalty of perjury under the laws of the State of California that the person who signed or acknowledged this document is personally known to me (or proved to me on the basis of satisfactory evidence) to be the Principal, that the Principal signed or acknowledged this Durable Power of Attorney for Health Care in our presence, that the Principal appears to be of sound mind and under no duress, fraud, or undue influence, that we are not the persons appointed as Attorneys-In-Fact by this document and that we are not a health care provider, and employee of a health care provider, the operator of a residential care facility for the elderly, nor an employee of an operator of a residential care facility for the elderly.

Witness Name: Christopher J. Zucconi

Signature: [signature]

Address: 7777 Alvarado Rd. #413
La Mesa, CA 91941

Witness Name: Miranda C. Franks

Signature: [signature]

Address: 7777 Alvarado #601
La Mesa, CA 91941

AT LEAST ONE OF THE ABOVE WITNESSES MUST ALSO SIGN THE FOLLOWING DECLARATION:

I further declare under penalty of perjury under the laws of California that I am not related to the principal by blood, marriage, or adoption, and, to the best of my knowledge, I am not entitled to any part of the principal's estate upon the principal's death under a Will now existing or by operation of law.

[signature]

Christopher J. Zucconi

DE-120

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address): Kenneth N. Hamilton, SBN 222586, 4670 Nebo Drive, Suite 101, La Mesa, California 91941

TELEPHONE AND FAX NOS.: 619-337-8491, 619-337-8495

FOR COURT USE ONLY

ATTORNEY FOR (name): Arnold D. Schimsky

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 1409 Fourth Ave.
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego, California 92101
BRANCH NAME: Central Division

ESTATE OF (Name): ANN P. SHIMSKY, Patient

DECEDENT

# NOTICE OF HEARING (Probate)

CASE NUMBER: P 188885

**This notice is required by law. This notice does not require you to appear in court, but you may attend the hearing if you wish.**

1. NOTICE is given that (name): Arnold D. Schimsky
(representative capacity, if any): Agent under Power of Attorney for Health Care
has filed (specify):*
VERIFIED PETITION TO COMPEL KINDRED HOSPITAL – SAN DIEGO TO HONOR AUTHORITY UNDER POWER OF ATTORNEY FOR HEALTH CARE AND FOR DAMAGES

2. You may refer to the filed documents for further particulars. *(All of the case documents filed with the court are available for examination in the case file kept by the court clerk.)*

3. A HEARING on the matter will be held as follows:

| | | | |
|---|---|---|---|
| a. Date: JUN 2 8 2005 | Time: 10:00 A.M. | Dept.: F10 | Room: |

b. Address of court ☑ shown above ☐ is:

* Do not use this form to give notice of hearing of the petition for administration (see Probate Code, § 8100).

(Continued on reverse)

| ESTATE OF (Name): ANN P. SHIMSKY, Patient DECEDENT | CASE NUMBER: |
|---|---|

## CLERK'S CERTIFICATE OF POSTING

1. I certify that I am not a party to this cause.
2. A copy of the foregoing *Notice of Hearing (Probate)*
   a. was posted at *(address)*:
   b. was posted on *(date)*:

Date: Clerk, by ______________________, Deputy

## PROOF OF SERVICE BY MAIL

1. I am over the age of 18 and not a party to this cause. I am a resident of or employed in the county where the mailing occurred.
2. My residence or business address is *(specify)*:

3. I served the foregoing *Notice of Hearing (Probate)* on each person named below by enclosing a copy in an envelope addressed as shown below AND
   a. ☐ depositing the sealed envelope with the United States Postal Service with the postage fully prepaid.
   b. ☐ placing the envelope for collection and mailing on the date and at the place shown in item 4 following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

4. a. Date mailed: b. Place mailed *(city, state)*:

5. ☐ I served with the *Notice of Hearing (Probate)* a copy of the petition or other document referred to in the notice.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

............................................ ▶ ______________________
(TYPE OR PRINT NAME) (SIGNATURE OF DECLARANT)

## NAME AND ADDRESS OF EACH PERSON TO WHOM NOTICE WAS MAILED

☐ List of names and addresses continued in attachment.

DE-122

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address): | TELEPHONE AND FAX NOS.: | FOR COURT USE ONLY |
|---|---|---|
| Kenneth N. Hamilton, SBN 222586<br>4670 Nebo Drive, Suite 101<br>La Mesa, California 91941 | 619-337-8491<br>619-337-8495 | |
| ATTORNEY FOR (Name): Arnold Schimsky | | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO<br>STREET ADDRESS: 1409 Fourth Ave.<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: San Diego, California 92101<br>BRANCH NAME: Central Division | | |
| ESTATE OF (Name):<br>ANN P. SHIMSKY, Patient<br>DECEDENT | | |
| CITATION (PROBATE) * AND PROOF OF SERVICE | | CASE NUMBER: |

1. TO (name): KINDRED HOSPITAL -- SAN DIEGO
2. You are hereby cited and required to appear at a hearing in this court on
   a. Date: JUN 2 8 2005 Time: 10:00 A.M. Dept.: F16 Room:
   b. Address of court: ☑ same as noted above ☐ other (specify):
3. At this hearing you are required to give any legal reason why, according to the verified petition attached to this citation and filed with this court (specify):
   you (1) failed to honor Arnold Schimsky's authority under a power of attorney for health care, and (2) intentionally violated your duties towards Ann Shimsky.

Date: MAY 1 7 2005 Clerk, by JACQUELINE O ELLIS, Deputy

| (SEAL) | NOTICE TO THE PERSON SERVED: You are served |
|---|---|
| | a. ☐ as an individual.<br>b. ☐ as the person cited under the fictitious name of (specify):<br>c. ☐ On behalf of (specify):<br>under ☐ Code Civ. Proc., § 416.10 (corporation) ☐ Code Civ. Proc., § 416.20 (defunct corporation) ☐ Code Civ. Proc., § 416.40 (association or partnership) ☐ Code Civ. Proc., § 416.60 (minor) ☐ Code Civ. Proc., § 416.90 (individual) ☐ other (specify):<br>d. by personal delivery on (date):<br>(Proof of Service on Reverse) |

* Do NOT use for guardianships or conservatorships.

Form Approved by the Judicial Council of California DE-122 [Rev. January 1, 1998]

CITATION (PROBATE) AND PROOF OF SERVICE

Probate Code, §§ 1240, 1241, 1242

American LegalNet, Inc. www.USCourtForms.com

| ESTATE OF *(Name)*: ANN P. SHIMSKY, Patient DECEDENT | CASE NUMBER: |
|---|---|

## PROOF OF SERVICE

1. At the time of service I was at least 18 years of age and not a party to this action, and I served copies of the *(specify documents)*:

2. a. Party served *(specify name of party as shown on the documents served)*:

   b. Person served: ☐ party in item 2a ☐ other *(specify name and title or relationship to the party named in item 2a)*:

   c. Address *(specify)*:

3. I served the party named in item 2
   a. ☐ **by personally delivering the copies** (1) on *(date)*: (2) at *(time)*:
   b. ☐ by leaving the copies with or in the presence of *(name and title or relationship to person indicated in item 2b)*:
      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person served. I informed him or her of the general nature of the papers.
      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the person served. I informed him or her of the general nature of the papers.
      (3) on *(date)*: (4) at *(time)*:
      (5) ☐ **A declaration of diligence** is attached. *(Substituted service on natural person, minor, conservatee, or candidate.)*
   c. ☐ **by mailing** the copies to the person served, addressed as shown in item 2c, by first-class mail, postage prepaid,
      (1) on *(date)*: (2) from *(city)*:
      (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed form.)*
      (4) ☐ to an address outside California with return receipt requested. *(Attach completed form.)*
   d. ☐ **by causing copies to be mailed. A declaration of mailing is attached.**
   e. ☐ **other** *(specify other manner of service and authorizing code section)*:

4. The "Notice to the Person Served" (on the Citation) was completed as follows:
   a. ☐ as an individual defendant.
   b. ☐ as the person sued under the fictitious name of *(specify)*:
   c. ☐ on behalf of *(specify)*:
   under ☐ Code Civ. Proc., § 416.10 (corporation) ☐ Code Civ. Proc., § 416.60 (minor)
   ☐ Code Civ. Proc., § 416.20 (defunct corporation) ☐ Code Civ. Proc., § 416.90 (individual)
   ☐ Code Civ. Proc., § 416.40 (association or partnership) ☐ other *(specify)*:

5. a. **Person serving** *(name, address, and telephone number)*:
   b. Fee for service: $
   c. ☐ **Not a registered California process server.**
   d. ☐ Exempt from registration under Business & Professions Code, § 22350(b).
   e. ☐ **Registered California process server.**
      (1) ☐ Employee or independent contractor
      (2) Registration No. *(specify)*:
      (3) County *(specify)*:
      (4) Expiration *(date)*:

6. ☐ **I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.**
7. ☐ **I am a California sheriff or marshal and I certify that the foregoing is true and correct.**

Date:

(SIGNATURE)

# Exhibit B

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO** | |
| STREET ADDRESS: | 330 West Broadway |
| MAILING ADDRESS: | 330 West Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101 |
| BRANCH NAME: | Central |
| TELEPHONE NUMBER: | (619) 685-6149 |
| PLAINTIFF(S) / PETITIONER(S): | Arnold Schimsky et.al. |
| DEFENDANT(S) / RESPONDENT(S): | John P Garcia |
| SCHIMSKY VS. GARCIA | |
| **NOTICE OF CASE ASSIGNMENT** | CASE NUMBER: 37-2007-00084434-CU-PN-CTL |

Judge: Linda B. Quinn

Department: C-74

**COMPLAINT/PETITION FILED:** 12/21/2007

**CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW**

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

**TIME STANDARDS:** The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

**COMPLAINTS:** Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document.

**DEFENDANT'S APPEARANCE:** Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.)

**DEFAULT:** If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141.10 AT THE CASE MANAGEMENT CONFERENCE. THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO ARBITRATION PURSUANT TO CCP 1141.10. THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

07 DEC 21 [illegible]

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
JOHN P. GARCIA an individual; and DOES 1-25

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
ARNOLD SCHIMSKY, individually, as Trustee of THE ANN P. SHIMSKY TRUST, and as representative of the ESTATE OF ANN P. SHIMSKY

**You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.**

**There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.**

***Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.***

***Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.***

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Diego Superior Court
330 West Broadway
San Diego, CA 92101

CASE NUMBER: *(Número del Caso):* 37-2007-00084434-CU-PN-CTL

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Eugene P. Yale 83048 / David W. Baumgarten 179574 T: 619-220-8790 F: 619-220-0369
Yale & Baumgarten, LLP 5030 Camino de la Siesta, Suite 308 San Diego, CA 92108

DATE: *(Fecha)* DEC 2 1 2007 Clerk, by *(Secretario)* R. Vela, Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

SUPERIOR COURT * SAN DIEGO COUNTY, CA *

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☐ on behalf of *(specify)*:

under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*:

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Eugene P. Yale 83048 / David W. Baumgarten 179574
Yale & Baumgarten, LLP
5030 Camino de la Siesta, Suite 308
San Diego, CA 92108
TELEPHONE NO.: 619-220-8790 FAX NO.: 619-220-0369
ATTORNEY FOR (Name): Plaintiff

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Central / Downtown

CASE NAME:
Arnold Schimsky v. John P. Garcia

## CIVIL CASE COVER SHEET

[✓] Unlimited (Amount demanded exceeds $25,000)
[ ] Limited (Amount demanded is $25,000 or less)

**Complex Case Designation**
[ ] Counter [ ] Joinder
Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: 37-2007-00084434-CU-PN-CTL
JUDGE:
DEPT.

*Items 1–5 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[✓] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Type of remedies sought *(check all that apply)*:
   a. [✓] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [✓] punitive
4. Number of causes of action *(specify)*: 2
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 21, 2007
David W. Baumgarten
(TYPE OR PRINT NAME)

(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.



Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2007]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 3.220, 3.400–3.403; Standards of Judicial Administration, § 19
www.JuriSearch.com

Eugene P. Yale, Esq. SBN 83048
David W. Baumgarten, Esq. SBN 179574
YALE & BAUMGARTEN LLP
5030 Camino de la Siesta, Suite 308
San Diego, California 92108
(619) 220-8790
(619) 220-0369 Fax

Attorneys for Plaintiff

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SAN DIEGO**

| | |
|---|---|
| ARNOLD SCHIMSKY, individually, as Trustee of THE ANN P. SHIMSKY TRUST, and as representative of the ESTATE OF ANN P. SHIMSKY,<br><br>Plaintiffs,<br><br>vs.<br><br>JOHN P. GARCIA an individual; and DOES 1-25.<br><br>Defendants. | CASE NO. 37-2007-00084434-CU-PN-CTL<br><br>**COMPLAINT FOR LEGAL MALPRACTICE AND BREACH OF FIDUCIARY DUTY**<br><br>[JURY TRIAL DEMANDED] |

COMES NOW, the plaintiffs, ARNOLD SCHIMSKY, individually, as Trustee of THE ANN P. SHIMSKY TRUST, and as representative of the ESTATE OF ANN P. SHIMSKY, as and for causes of action against the defendants, and each of them, allege:

1. The plaintiffs are informed and believe, and thereon allege that the defendant, John P. Garcia, is, and at all times mentioned herein was an individual licensed to practice law and practicing law in the County of San Diego, State of California.

2. The plaintiffs are informed and believe and thereon allege that the defendants, Does 1 through 25, inclusive, whether individual, corporate, associate, or otherwise, are fictitious names of the defendants whose true names and capacities are unknown to the plaintiffs at this time. The plaintiffs are informed and believe and thereon allege that at all times mentioned each of the defendants sued

herein as a Doe was the agent, servant, and employee of his or her co-defendant, and in doing the things alleged was acting in the scope of his or her authority as such agent, servant, and employee, and with the permission and consent of his or her co-defendants, whether an agent, corporation, association, or otherwise, is in someway liable or responsible to the plaintiffs on the facts alleged herein, and proximately caused injuries and damages thereby. At such time as the defendants' true names and identities become known to the plaintiffs, the plaintiffs will ask leave of the court to amend the complaint to add said true names and capacities.

3. The plaintiffs are informed and believe and thereon allege that at all times mentioned herein, the defendants, including Does, and each of them, were acting as agents, servants, and employees of each other, and were acting within the scope of their employment, with the full knowledge and consent, either express or implied of each of the other named defendants.

4. On or about September 29, 2006, the plaintiffs retained the defendant to represent them in a San Diego County Superior Court action styled, THC-Orange County, Inc., dba Kindred Hospital-San Diego v. The Ann P. Shimsky Trust, et al., case no. GIC871356, ("the Kindred lawsuit").[1] The defendant continuously represented the plaintiffs in the Kindred lawsuit, and provided them with legal advice in connection therewith, through at least February 13, 2007, when he substituted out as attorney of record.

## FIRST CAUSE OF ACTION

**(For Legal Malpractice)**

5. The plaintiff realleges and incorporates by reference paragraphs 1 through 4 of the complaint as though fully set forth herein.

6. By reason of the attorney-client relationship alleged hereinabove, the defendant owed the plaintiffs a duty of reasonable care, skill, and diligence in providing legal advice and services relative to the Kindred lawsuit and matters related thereto.

///

---

[1] Prior to his retention in the Kindred lawsuit, the defendant provided legal services to, and represented the plaintiffs in connection with, a variety of matters concerning the affairs of Ann Shimsky, now deceased, The Ann P. Shimsky Trust, and Arnold Schimsky.

7. The defendant breached the duty of care owing the plaintiffs relative to the Kindred lawsuit and matters related thereto in that he failed to provide reasonable and adequate legal advice and services.

8. As a direct and proximate result of the defendant's negligence, the plaintiffs have suffered and will continue to suffer damages, in an amount presently unknown, but, in any event, in excess of the jurisdiction of this court, the precise amount of which will be proven at the time of trial.

**SECOND CAUSE OF ACTION**

**(For Breach Of Fiduciary Duty)**

9. The plaintiffs reallege and incorporate by reference paragraphs 1 through 7 of the complaint as though fully set forth herein.

10. By reason of the attorney-client relationship alleged hereinabove, the defendant owed the plaintiffs a fiduciary duty of the utmost honesty, loyalty, and good faith.

11. The defendant breached the fiduciary duties owing the plaintiffs and violated the relationship of trust and confidence for the reasons alleged hereinabove, and did so for his own pecuniary gain to the disadvantage and detriment of the plaintiff.

12. As a direct and proximate result of the defendant's negligence, the plaintiffs have suffered and will continue to suffer damages, in an amount presently unknown, but, in any event, in excess of the jurisdiction of this court, the precise amount of which will be proven at the time of trial.

13. The defendant's conduct as alleged herein, was intentional, despicable, malicious, and oppressive, and in conscious disregard of the plaintiffs' rights, justifying an award of exemplary and punitive damages in an amount sufficient to punish and make an example of the defendant

WHEREFORE, the plaintiffs pray for judgment against the defendants, and each of them, as follows:

1. For damages according to proof;
2. For prejudgment interest according to proof;
3. For punitive damages (on the second cause of action only)

///

///

# Exhibit C

4. For costs of suit incurred herein; and

5. For such other and further relief as this court may deem just and proper.

DATED: December 19, 2007

YALE & BAUMGARTEN, LLP

Eugene P. Yale, Attorney for Plaintiffs

D051424

**COURT OF APPEAL, STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT, DIVISION ONE**

| | |
|---|---|
| THC-ORANGE COUNTY, INC., dba KINDRED HOSPITAL SAN DIEGO, | ) 4th Civil No. D051424 |
| | ) SDCSC No. GIC871356 |
| Respondent, | ) |
| v. | ) |
| THE ANN P. SHIMSKY TRUST; ARNOLD SCHIMSKY, as Trustee of the Ann P. Shimsky Trust, ARNOLD SCHIMSKY, an individual, and Ann P. Shimsky (deceased). | ) |
| Appellants. | ) |

Appeal from Judgment and Post-Judgment Order of the
Superior Court of California for San Diego County
Honorable Steven Denton, Judge Presiding

---

**APPELLANTS' OPENING BRIEF**

---

David A. Niddrie, SBN 89990
NIDDRIE, FISH & BUCHANAN, LLP
750 B Street, Suite 2640
San Diego, California 92101

Attorneys for Appellants
ARNOLD SCHIMSKY, Trustee of the
Ann P. Shimsky Trust, ARNOLD SHIMSKY,
individually, and JUDY LOPRIENO (Intervenor below)

Court of Appeal Fourth District
FILED
AUG 27 2007
Stephen M. Kelly, Clerk
DEPUTY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
FOURTH APPELLATE DISTRICT, DIVISION ONE

Case Name: SCHIMSKY v. THC-ORANGE Court of Appeal No: D051424

CERTIFICATE OF INTERESTED ENTITIES OR PERSONS
(Cal. Rules of Court, rules 8.208, 8.490(i), 8.494(c), 8.496(c), 8.498(d))

Use this form for the initial certificate when you file your first document in the Court of Appeal in civil appeals and writs, and for supplemental certificates when you learn of changed or additional information that must be disclosed. Also include a copy of the certificate in your principal brief after the cover and before the tables. If no entity or person is known that must be listed under rule 8.208(d), write "NONE".

(Check One) INITIAL CERTIFICATE SUPPLEMENTAL CERTIFICATE

| Full Name of Interested Person / Entity | Party (Check One) | Non-Party | Nature of Interest (Explain) |
|---|---|---|---|
| NONE | [ ] | [ ] | |
| | [ ] | [ ] | |
| | [ ] | [ ] | |
| | [ ] | [ ] | |
| | [ ] | [ ] | |
| | [ ] | [ ] | |
| | [ ] | [ ] | |

The undersigned certifies that the above listed persons or entities (corporations, partnerships, firms or any other association, but not including government entities or their agencies), have either (i) an ownership interest of 10 percent or more in the party if an entity; or (ii) a financial or other interest in the outcome of the proceeding that the justices should consider in determining whether to disqualify themselves, as defined in rule 8.208(d)(2).

Attorney Submitting Form

DAVID W. BAUMGARTEN
(Name)
5030 CAMINO DE LA SIESTA
(Address)
SUITE 308 SD, CA 92108
(City/State/Zip)
(619) 220-8790 baum@yblaw.com
(Telephone Number / E-mail address)
[signature]
(Signature of Attorney Submitting Form)

Party Represented

APPELLANTS ARNOLD SCHIMSKY
ANN P. SCHIMSKY TRUST
JUDY LOPRIENO
(Name)

8/23/07
(Date)

## TABLE OF CONTENTS

Page No.

INTRODUCTION ..... 1

FACTUAL STATEMENT ..... 3

A. The Shimsky family ..... 3

B. Ann's hospitalization ..... 4

C. The previous lawsuits filed by Kindred against Arnold ..... 5

D. Kindred's mishandling of Ann's insurance coverage ..... 6

PROCEDURAL HISTORY ..... 8

A. The underlying action. ..... 8

B. The "settlement." ..... 10

C. Kindred's motion to enforce the "settlement." ..... 15

D. Judy and Arnold move to set aside the trial court's order enforcing the settlement ..... 16

APPEALABILITY ..... 18

A. The Appeal Was Timely Filed ..... 18

B. The Denial of Appellants' Motion To Vacate Is An Appealable Order ..... 18

C. Judy Has Standing to Appeal ..... 20

LEGAL DISCUSSION ..... 21

I. THE TRIAL COURT'S DENIAL OF APPELLANTS' MOTION TO SET ASIDE THE JUDGMENT MUST BE *VERY CAREFULLY* REVIEWED FOR ABUSE OF DISCRETION BASED ON THE NEW FACTS REVEALED IN APPELLANTS' MOTION PAPERS ..... 21

A. The Court Has Both Statutory and Common Law Authority to Set Aside a Stipulation of Settlement "Where Special Circumstances Exist Rendering it Unjust to Enforce the Stipulation." ..... 21

B. Since the Law Strongly Favors Trial and Disposition on the Merits, Any Doubts in Granting Relief From the Stipulation of Settlement Must Be Resolved in Favor of the Party Seeking Relief. ....................22

C. In This Appeal From The Order Denying Relief Under Section 473, Trial Court's Decision Is Reviewed Based on the Newly-Revealed Facts, or a Previously Unrevealed Impact of Known Facts, Not Before the Court at the Original Hearing. ....................23

D. Where (As Here) the Challenged Ruling Is Made on the Basis of a Record Consisting of Affidavits, Memoranda of Points and Authorities and the Pleadings, a Trial Court Is in No Better Position than an Appellate Court to Evaluate Credibility and Resolve Conflicts. ....................24

II. SINCE THE SETTLEMENT OF A LAWSUIT WAS A DECISION TO END THE LITIGATION, THE TRIAL COURT SHOULD HAVE INSURED THAT THE SETTLEMENT WAS EXECUTED WITH THE KNOWLEDGE AND EXPRESS CONSENT OF ALL PARTIES ....................27

A. Unauthorized Settlements And/or Stipulations Made By Counsel Are *Not Binding* Upon the Client. ....................27

B. Under Section 664.6, The Trial Court and Counsel for Both Parties Must Insure That Any "Settlement Is the Result of [Both Parties'] Mature Reflection and Deliberate Assent." ....................29

C. At the Very Least, Relief From A Stipulated Judgment Should Be Granted Where It Appears That One Party's Assent to the Stipulation Was Unwittingly Given. ....................31

IV. RELIEF FROM THE STIPULATED JUDGMENT IS APPROPRIATE BECAUSE APPELLANTS WERE, IN EFFECT, "ABANDONED" BY THEIR ATTORNEY ....................36

A. Relief From an Attorney's Unauthorized Stipulation Is Appropriate Where (As Here) the Attorney's Actions Amount to "Positive Misconduct." ....................36

B. By His "Positive Misconduct" In This Case, Garcia Effectively *Abandoned* Appellants. ....................36

C. Legal Malpractice is an Insufficient Remedy in Cases Involving an Attorney's Intentional Misconduct ....................41

IV. THE RELEVANT EQUITABLE FACTORS COMPEL RELIEF FROM THE UNJUST JUDGMENT IN THIS CASE .......................44

A. Appellant Was Diligent in Pursuing Relief From the Judgment .......................44

B. The Only True Prejudice to Kindred Is That It "Will Now Have to Go Back and Try the Case on the Merits." .......................46

C. Under the Circumstances of this Case, the Public Policy Favoring Trials on the Merits Takes Precedence Over the Policy In Favor of Settlements. .......................49

V. A SETTLEMENT AGREEMENT CANNOT BE ENFORCED AGAINST A NON-PARTY USING CODE OF CIVIL PROCEDURE § 644.6. .......................52

CONCLUSION .......................56

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Brucar v. Rubin* (7th Cir. 1980) 638 F.2d 987 .......... 41

*Community Dental Services v. Tani* (9th Cir. 2002) 282 F.3d 1164 .......... 44

*Trulis v. Barton* (9th Cir. 1995) 107 F.3d 685 .......... 41

*U.S. v. McConney* (9th Cir. 1984) 728 F.2d 1195 .......... 51

## CALIFORNIA CASES

*Aldrich v. San Fernando Valley Lumber Co.* (1985) 170 Cal.App.3d 725 .......... 46

*Am-Cal Inv. Co. v. Sharlyn Estates, Inc.* (1967) 255 Cal.App.2d 526 .......... 29

*Armstrong v. Armstrong* (1947) 81 Cal.App.2d 322 .......... 34

*Arnke v. Lazzari Fuel Co.* (1962) 202 Cal.App.2d 278 .......... 48

*Bare v. Parker* (1921) 51 Cal.App.106 .......... 33, 34

*Beeman v. Burling* (1990) 216 Cal.App.3d 1586 .......... 26

*Bice v. Stevens* (1958) 160 Cal.App.2d 222 .......... 29, 32, 35, 51, 53

*Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396 .......... 30, 33

*Bowden v. Green* (1982) 128 Cal.App.3d 65 .......... 42

*Buckert v. Briggs* (1971) 15 Cal.App.3d 296 .......... 43

*Burbank v. Continental Life Ins. Co.* (1932) 2 Cal.App.2d 664 .......... 24

*Burnete v. La Casa Dana Apartments* (2007) 148 Cal.App.4th 1262 .......... 21

*California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1990) 50 Cal.3d 658 .......... 31, 32, 35, 52

*Carroll v. Abbott Laboratories* (1982) 32 Cal.3d 892 .......... 38, 43

*Cheleden v. State Bar* (1942) 20 Cal.2d 133 .......... 41

*City of Los Angeles v. Harper* (1935 ) 8 Cal.App.2d 552 .......... 32

*Clark v. First Union Securities, Inc.* (2007) 153 Cal.App.4th 1595 .......... 24

*Consumer Advocacy Group, Inc. v. Kintetsu Enterprises of America* (2006) 141 Cal.App.4th 46 .......... 53

*Daley v. County of Butte* (1964) 227 Cal.App.2d 380 .......... 21, 22, 25, 26, 31, 40, 47, 48, 54

*Diesel Electric Sales & Service, Inc. v. Marco Marine San Diego, Inc.* (1993) 16 Cal.App.4th 202 ........ 55

*Elston v. City of Turlock* (1985) 38 Cal.3d 227, 233 ........ 24, 52, 53, 54

*Fleming v. Gallegos* (1994) 23 Cal.App.4th 68, 75 ........ 44, 45, 46

*Garza v. Delano Union Elementary School Dist.* (1980) 110 Cal.App.3d 303 ........ 27

*Gilberd v. AC Transit* (1995) 32 Cal.App.4th 1494 ........ 26

*In re Marriage of Economou* (1990) 224 Cal.App.3d 1466 ........ 23, 32

*In re Marriage of Kerry* (1984) 158 Cal.App.3d 456 ........ 34, 37

*In re Yoder* (1926) 199 Cal. 699 ........ 21

*Jacklich v. Baer* (1943) 57 Cal.App.2d 684 ........ 51

*Jade K. v. Viguri* (1989) 210 Cal.App.3d 1459 ........ 21

*Jepsen v. Sherry* (1950) 99 Cal.App.2d 119 ........ 27

*Joseph v. Drew* (1951) 36 Cal.2d 575 ........ 28

*Karlein v. Karlein* (1951) 103 Cal.App.2d 496 ........ 25

*Kelsey Co. v. Spears* (1918) 37 Cal.App. 27 ........ 53

*Kirby v. Southern California Edison Co.* (2000) 78 Cal.App.4th 840 ........ 57

*Knowlton v. Mackenzie* (1895) 110 Cal. 183 ........ 32, 33, 41

*Lample v. McDougall* (1930) 103 Cal.App. 779 ........ 37

*Lawson v. Lowengart* (1967) 251 Cal.App.2d 98 ........ 36, 37

*Levy v. Superior Court* (1995) 10 Cal.4th 578 ........ 29, 30, 31, 33

*Linsk v. Linsk* (1969) 70 Cal.2d 272 ........ 32, 33, 41

*Luckenbach v. Laer* (1923) 190 Cal. 395 ........ 22

*Marriage of Helsel* (1988) 198 Cal.App.3d 332 ........ 30, 33

*Martin v. Cook* (1977) 68 Cal.App.3d 799 ........ 44

*Martin v. Johnson* (1979) 88 Cal.App.3d 595 ........ 21

*Mary R. v. B. & R. Corp.* (1983) 149 Cal.App.3d 308 ........ 46, 51

*McGuinness v. Superior Court* (1925) 196 Cal. 222 ........ 24

*McKelley v. Turner* (1929) 96 Cal.App. 292 ........................................ 37

*Miller v. Republic Grocery, Inc.* (1952) 110 Cal.App.2d 187 ........................................ 31

*Morite of California v. Superior Court* (1993) 19 Cal.App.4th 485 ........................................ 55

*Nicholson v. Barab* (1991) 233 Cal.App.3d 1671 ........................................ 52

*Orange Empire Nat. Bank v. Kirk* (1968) 259 Cal.App.2d 347 ........................................ 24, 39, 44, 46, 48

*Ordway v. Arata* (1957) 150 Cal.App.2d 71 ........................................ 27

*Palmer v. Moore* (1968) 266 Cal.App.2d 134 ........................................ 48

*Parker v. Dingman* (1975) 48 Cal.App.3d 1011 ........................................ 34

*Parnell v. Adventist Health System/West* (2005) 35 Cal.4th 595 ........................................ 50

*Pazderka v. Caballeros Dimas Alang, Inc.* (1998) 62 Cal.App.4th 658 ........................................ 25, 26

*Plaza Hollister Ltd. Partnership v. County of San Benito* (1999)
72 Cal.App.4th 1 ........................................ 22, 52, 53

*Rappleyea v. Campbell* (1994) 8 Cal.4th 975 ........................................ 25, 52

*Rogalski v. Nabers Cadillac* (1992) 11 Cal.App.4th 816 ........................................ 49

*Romadka v. Hoge* (1991) 232 Cal.App.3d 1231 ........................................ 30

*Rooney v. Vermont Investment Corp.* (1973) 10 Cal.3d 351 ........................................ 21

*Roth v. Morton's Chefs Services, Inc.* (1985) 173 Cal.App.3d 380 ........................................ 52

*Seacall Development, Ltd. v. Santa Monica Rent Control Bd.* (1999)
73 Cal.App.4th 201 ........................................ 38

*Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336 ........................................ 22

*Shelly v. Hansen* (1969) 244 Cal.App.2d 210 ........................................ 41

*Simons v. Steverson* (2001) 88 Cal.App.4th 693 ........................................ 55

*SJP Ltd. Partnership v. City of Los Angeles* (2006)
136 Cal.App.4th 511 ........................................ 24

*Slusher v. Durrer* (1977) 69 Cal.App.3d 747 ........................................ 48

*Snelson v. Ondulando Highlands Corp.* (1970) 5 Cal.App.3d 243 ........................................ 23

*Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294 ........................................ 20

*Stub v. Harrison* (1939) 35 Cal.App.2d 685 ........................................ 35

*Thompson Pacific Const., Inc. v. City of Sunnyvale* (2007)
155 Cal.App.4th 525 .......... 23

*Timney v. Lin* (2003) 106 Cal.App.4th 1121 .......... 52, 53

*Tokio Marine & Fire Ins. Corp. v. Western Pacific Roofing Corp.* (1999)
75 Cal.App.4th 110 .......... 55, 56

*United Farm Workers National Union v. International Brotherhood of United Farm Workers National Union v. International Brotherhood of Teamsters* (1978)
87 Cal.App.3d 225 .......... 27

*Wackeen v. Malis* (2002) 97 Cal.App.4th 429 .......... 54

*Waite v. Southern Pac. Co.* (1923) 192 Cal. 467 .......... 24

*Waybright v. Anderson* (1927) 200 Cal. 374 .......... 25

*Whittier Union High Sch. Dist. v. Superior Court* (1977) 66 Cal.App.3d 504 .......... 41

*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249 .......... 24, 53

**CASES FROM OTHER JURISDICTIONS**

*Attorney Grievance Com'n of Maryland v. Reinhardt* (Md. 2006)
892 A.2d 533 .......... 39

*Barras v. Benoit* (La. 1987) 509 So.2d 668 .......... 27

*Cultum v. Heritage House Realtors, Inc.* (Wash. 1985) 694 P.2d 630 .......... 40

*In re Dombrowski* (Ill. 1978) 376 N.E.2d 1007 .......... 40

*Iowa Supreme Court Attorney Disciplinary Bd. v. Sotak* (Iowa 2005)
706 N.W.2d 385 .......... 39

*Lords v. Newman* (Mont. 1984) 688 P.2d 290, 293 .......... 25, 45

*Matter of Grabler* (N.J. 1989) 552 A.2d 596, 600 .......... 39

*Matter of Templin* (N.J. 1985) 502 A.2d 1, 2-3 .......... 39

*Oklahoma Bar Assn. v. Bolusky* (Okla.2001) 23 P.3d 268 .......... 39

*Olfe v. Gordon* (Wis. 1980) 286 N.W.2d 573 .......... 40

**FEDERAL STATUTES**

42 U.S.C. §402 .......... 36, 50

**STATE STATUTES**

Civil Code §1542.8 .......... 51

Code of Civil Procedure
§ 644.6.1 .......... 4
§ 664.6 .......... 17, 18, 19, 20, 54
§ 704.080 .......... 36, 50
§ 704.720 .......... 36
§ 704.730 .......... 50
§904.1(b) .......... 20, 21
§ 473 .......... 4, 21, 23

## INTRODUCTION

Kindred Hospital provided Ann P. Shimsky (deceased) with acute inpatient care from July 2002 until her death in October 2006. Ann was *fully* covered for inpatient care under her husband's Blue Cross/Blue Shield Service Federal Employee Benefit Plan.

In 2003, Kindred transferred management of the hospital to a new company, Respondent THC-ORANGE COUNTY, INC. (THC), which failed to provide Blue Cross with the information the insurer needed to process payment of Ann's medical bills. As a result, Blue Cross stopped paying Ann's bills.

In July 2006, shortly before Ann's death, THC presented her son, Respondent Arnold Schimsky, with a bill for Ann's care totaling over $2 million. Arnold tried to explain to THC Blue Cross had stopped paying Hospital's bills because it was not receiving the information it needed from THC's business office, but THC would not listen. Instead, Kindred sued Ann, Arnold and the Ann P. Shimsky Trust to recover the cost of its services to Ann (including some bills which had actually already been paid by Blue Cross and/or Medi-Cal).

Arnold hired a lawyer (John Garcia) to answer Kindred's lawsuit and file a cross-complaint against Hospital for (among other things) mishandling Ann's insurance claims and negligence/malpractice in connection with the medical care provided to Ann. Unbeknownst to Arnold, Garcia did not prepare an answer/cross-

complaint. He, instead, entered into unauthorized negotiations with Hospital to settle the matter.

Shortly before the answer/cross-complaint were due, Ann suffered a heart attack. As Ann lay dying in the hospital, Arnold was presented, for the first time, with unauthorized settlement documents which provided for the transfer of the Shimsky family home and other consideration to Hospital in lieu of payment. Arnold rejected the settlement, but Garcia (in direct contradiction of his client's instructions) sent a signed copy of the settlement agreement to Kindred's counsel, who then used the copy to secure a judgment against Arnold under Code of Civil Procedure §644.6.[1]

Upon learning of Garcia's deception, Arnold hired new counsel to have the judgment set aside under Code of Civil Procedure section 473 and the court's inherent equitable authority on the grounds (1) the unauthorized settlement was void, (2) Garcia had, by his conduct, effectively abandoned Arnold's interests, (3) Section 644.6 could not, under any circumstances, be used to dispose of the interest of Appellant/ Intervenor Judy Loprieno (Arnold's sister who was never named as a defendant) in the

---

[1] Section 644.6 provides:

> If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement.

family home; and (4) the circumstances and terms of the alleged "settlement" were so unjust as to require the judgment be set aside.

The trial court denied relief, and this appeal ensued.

## FACTUAL STATEMENT

### A. The Shimsky family.

Harold Shimsky worked most of his life for the federal government.[2] One of the benefits of his federal employment was *extraordinary* medical insurance for himself and his wife, Respondent ANN SHIMSKY (deceased). (AA288-312) Under Harold's plan, he and Ann were entitled to *unlimited* inpatient care *for life*. (Id.) This benefit, in place at the time of Ann's death, was irrevocable. It could not be altered or changed during the lifetime of the beneficiaries. (Id.)

In 1953, Harold and Ann purchased a house at 1255 Essex Avenue in Imperial Beach.(AA254) Together, they had two children, Arnold and Judy. The Essex property was the Shimsky's family home for over fifty years. (Id.)

Judy Loprieno (nee Shimsky) grew up, got married, and has two school-aged children (one with special needs). (AA446-447) She has been declared permanently disabled. (Id.) Judy and her husband, who has been diagnosed with cancer, are making ends meet and providing for their children. (Id.)

---

[2] Harold came to the United States as "Harold Schimsky." He simplified and changed the spelling of the family name when he entered the country. Later, Appellant Arnold Schimsky, Harold's son, modified his last name (out of respect for his father's family) to comport with the original spelling.

Arnold never married. He is a mathematics instructor at the University of San Diego. Arnold owns citrus groves in Spring Valley. For most of his adult life, Arnold lived in a house on the Spring Valley property and managed the groves.

In the early 1990s, Harold died. When Ann fell ill in 1998, Arnold and Judy agreed Arnold was in the best position to render assistance. Arnold moved from Spring Valley into the family house and began providing 24-hour care to Ann. At the same time, Ann placed all of her assets into a family trust for the benefit of Arnold and Judy. (AA183,575) Arnold was named the trustee of the family trust. (Id.) In 2000, he was given a durable power of attorney to provide for his mother's care. (AA249)

**B. Ann's hospitalization.**

In May 2002, Ann was hospitalized with pneumonia. (AA250) In July 2002, Ann was transferred to Kindred Hospital in El Cajon for acute inpatient care. (Id.) Through Harold's long-time employment by the federal government, Ann was fully covered by the Federal Employee Program's Blue Cross/Blue Shield Service Benefit Plan.(AA238-312) Her covered care included the long-term acute care required by her illness.(AA250)

Arnold viewed it as part of his responsibility to carefully review and supervise the care provided by Kindred Hospital to his mother. Working around his teaching schedule, Arnold visited his mother daily, for hours and hours at a time. (AA252) He monitored and chronicled the health care provider's *every* move. (AA168) As a result of his penchant for numbers and attention to detail, Arnold discovered several errors in

the dosages of medication being administered to his mother, inaccuracies on her charts and noncompliance with state-mandated acute care timetables. (AA515) To protect his mother, Arnold became an outspoken critic of several physicians and members of the hospital's medical staff. (AA168) Hospital was not happy.

In May 2003, Ann's physician at Kindred Hospital informed Blue Cross Ann no longer needed acute inpatient care and should be moved to another facility. (AA250) Blue Cross notified Arnold Ann would have to be moved to a facility with "a lower level of care." (AA251) In response, Arnold checked with other health care providers in the area. (AA250) Those providers and the social worker assigned to Ann's case disagreed with Kindred Hospital's assessment of Ann's condition.(AA119,251) When Arnold passed this information along to Blue Shield, the demand for Ann's transfer was dropped. (AA251)

C. **The previous lawsuits filed by Kindred against Arnold.**

When Arnold discovered the source of Blue Cross's "confusion" over Ann's condition was her physician at Kindred, Arnold requested the physician be removed from Ann's case. (AA515) Hospital's reaction was unpleasant.

First, a probate proceeding was initiated in which Arnold's durable power of attorney was challenged. (AA445) Arnold asked the court to compel Hospital to honor his demands with regard to his mother's care. (Id.) The probate matter was eventually settled with Arnold retaining his durable power of attorney over Ann's estate and relinquishing control over his mother's care to Public Guardian. (AA449)

Kindred Hospital then filed a follow-up action in which it sought a restraining order against Arnold. (AA450) In support of its request, Kindred Hospital alleged Arnold's constant monitoring of the medical staff's activities was interfering with its ability to provide care to Ann. (AA153-171) In addition, Hospital made outrageous allegations about Arnold's care for his mother.(Id.) By misconstruing Arnold's attempts to insure his mother's personal hygiene and comfort while bedridden, Hospital's complaint made Arnold out to be a debased miscreant. (Id.)

Arnold was appalled by Hospital's accusations and took Hospital's complaint to his probate lawyer, who, in turn, referred Arnold to John Garcia to handle the lawsuit. (AA254) However, Arnold had neither the money nor the stomach to fight against Hospital's all-out effort to have him banded from hospital premises. To avoid having to move his critically-ill mother to another facility, Arnold (after consulting with Garcia) did not oppose Hospital's request. (Id.) The court thereafter placed restrictions on Arnold's trips to the hospital (i.e., he was permitted attorney-supervised visits with his mother). (Id.)

**D. <u>Kindred's mishandling of Ann's insurance coverage.</u>**

In September 2003, Kindred Hospital changed management. (AA252) The new management company, Respondent THC-ORANGE COUNTY, INC., stopped providing Blue Cross with the information the insurer needed to process payment of Ann's medical bills. (AA253) Blue Cross requested the information several times, but

received no response from Kindred Hospital. (Id.) As a result, Blue Cross stopped paying the bills.

Rather than complying with Blue Cross's requests for information, Kindred Hospital turned to Ann and Arnold for payment. (AA253) In August 2004, Hospital's business office began leaving messages for Arnold stating Blue Cross had denied coverage for his mother's continued care and demanding he remit the accrued sum of $212,823.46 for health care services provided, but not covered by her insurance. (AA252)

In response, Arnold called Blue Cross to confirm his mother was enrolled and eligible for health care coverage.(AA251) Thereafter, he informed Kindred Hospital that his mother was indeed covered by Blue Cross for *all* medical and health care services rendered.(AA252-253) To help clear things up, Arnold asked Hospital's business office to forward copies of any correspondence from Blue Cross suggesting otherwise. (Id.)

At first, Hospital ignored Arnold's request. When he heard nothing from Kindred, Arnold assumed the matter had been cleared up. However, in December 2004, Hospital began to press Arnold for payment. (AA253) Arnold responded by again informing Hospital that his mother was fully covered by Blue Cross and requesting proof of Blue Cross' denial of coverage. (Id.)

Hospital then sent Arnold a copy of Blue Cross's "denial" – which, in reality, was simply correspondence from Blue Cross to Kindred asking for the hospital's

"help" in processing payment by providing the proper documentation for the medical services rendered. (AA253) Arnold sent a letter to Kindred pointing out Blue Cross appeared to be requesting information from Hospital staff in order to process payment; he asked Hospital to provide Blue Cross with the required documentation and sort out the payment issue with Ann's insurance company.(Id.)

When Arnold received several "Explanations of Benefits" from Blue Cross indicating the insurer had paid Kindred's bills (including a bill for the first part of October 2004 totaling nearly $50,000), he assumed the matter had been cleared up. (AA252-253)

In late 2005, Kindred asked Arnold to apply on his mother's behalf for Medi-Cal benefits. (AA253) The application was approved and the benefits were made retroactive to October 2005. (Id.)

## PROCEDURAL HISTORY

### A. The underlying action.

In August 2006, Kindred filed the underlying action against Ann Shimsky, the Ann P. Shimsky Trust, and Arnold Schimsky, as Trustee. (AA0001) Although he was not personally liable for the debt, Kindred also named Arnold, individually, in the complaint. (Id.) Ann's daughter, Judy Loprieno, was not named as a defendant. (Id.) The complaint alleged Ann, the Trust and Arnold were jointly and severally liable for Ann's medical bills which (according to Hospital) now totaled over $2.38 million. (AA0005)

On September 20, 2006, the summons and complaint were served on Arnold, who immediately contacted John Garcia. (AA253) According to Arnold's records, Blue Cross and/or Medi-Cal had paid many (if not all) of the medical bills giving rise to Hospital's lawsuit. (AA253-254) In any event, Ann was fully covered by Blue Cross and/or Medi-Cal for all of the services rendered by Kindred. (AA250) To the extent any bills had not been paid, it was because of Kindred's neglect in failing to timely respond to the insurers' requests for information. (AA2520253) Finally, Arnold had long believed Hospital's care for his mother was below the standard of care.

Given these facts, Arnold never contemplated and/or discussed with Garcia the possibility of settling Hospital's collection action and/or paying Kindred any money. (AA254) To the contrary, Arnold instructed Garcia to vigorously defend Kindred's lawsuit and "counter-sue" Hospital and Blue Cross for their misconduct vis-á-vis Ann's medical care and/or insurance coverage. (Id.)

As of September 21, 2006, Arnold understood Garcia to be working on an Answer and Cross-Complaint in response to Hospital's complaint. (AA254) In fact, on October 1, 2006, Arnold sent Garcia a $5,000 check to cover his fees in undertaking these tasks. (Id.) The "memo" section of the check specifically indicates the payment was for fees incurred in "the insurance matter, countersuit." (Id.) Garcia cashed the check a few days later. (Id.)

**B. The "settlement."**

On October 5, 2006 (Thursday), Ann suffered a heart attack. (AA254) Pursuant to the procedures established by the restraining order, Hospital informed Garcia of the precarious change in Ann's condition. (Ann was not expected to last through the weekend.) (Id.) Garcia called Arnold with the unhappy news. (Id.) Arnold asked Garcia to accompany him to Hospital (as required by the restraining order) to see his mother immediately, but Garcia could not take Arnold until the following afternoon. (Id.) Garcia told Arnold to come to a San Diego "office" at 3:00 p.m.[3] (Id.)

Arnold's concern over his mother's health was overwhelming. (AA255) Nevertheless, Arnold waited anxiously for the time to come when Garcia could accompany him to Hospital. (AA254-255) However, when he arrived at Garcia's office on Friday afternoon, Arnold was not immediately escorted (as promised) to see his mother. (Id.) Instead, Arnold was met in the open patio space of the building by Garcia and Kindred's attorney. (Id.) Arnold was taken into a corner of the patio by Garcia and told that a settlement agreement had been prepared by Hospital's attorney for his signature. (Id.)

Hospital's proposed settlement involved the transfer of the Shimsky family home and other assets to Hospital in lieu of the sums allegedly owed for Ann's care. (AA254-255) When Arnold protested, he was told his consent to the settlement was

---

[3] Garcia's office is in Los Angeles. However, he rents space and a drop box from a court-reporting service located at 555 West Beech Street in San Diego. (AA 254)

the *only* way to avoid personal liability for the debt, and if he did not agree right there and then to settle the case, he would lose in court and suffer financial ruin. (Id.)

Arnold was surprised and confused. (AA254) He had paid Garcia $5,000 to file an Answer and Cross-Complaint in Hospital's collection action. Suddenly, Arnold was being pressured to accept a settlement at a time when his only focus was to see his ailing mother – possibly for the last time. (AA254-255) Arnold asked if they could discuss the issue another time, but was told Hospital would take everything he owned if he did not sign the settlement agreement. (Id.) According to the lawyers, he had "to settle this case, and [he had] to settle it now." (Id.) Garcia promised to take Arnold to see his mother *after* the settlement agreement was signed. (Id.)

Arnold, dazed by Garcia's statements, was ushered into a conference room in the court reporting service offices along with Hospital's lawyer, Karen Bocker. Arnold was not given an opportunity to read, or even review, the 23-page document. (Id.) According to the attorneys, there would be time for that later. (Id.) Arnold was simply directed to sign "here, here and here." (Id.) Arnold signed the document to appease the lawyers; he did not want to wait any longer to see his mother. (Id.)

Only after Arnold signed the agreement as he had been directed by Garcia was Arnold allowed to go to the hospital. (Id.) With his attorney present, Arnold sat by his dying mother's side crying through most of the evening. (Id.) When visiting hours ended, Garcia handed the signed agreement to Arnold so he could take it to his sister, Judy Lopricno. (Id.) Garcia told Arnold to get Judy's signature immediately and return

the documents to the lawyer's Los Angeles office via over-night mail. (Id.) Garcia did not speak – or even try to speak – directly with Judy. (AA258) He did not offer to explain the agreement to her; nor did he (through Arnold) warn Judy of the consequences signing the document and/or suggest she seek out an attorney to apprise her of her legal rights. (Id.)

Arnold drove directly to Judy's house. (AA255) When he arrived, Arnold was distraught. In addition to being upset about Ann's deteriorating condition, Arnold was disturbed by his meeting with Garcia and Bocker. (Id.) More specifically, he was scared. According to the attorneys, the only way for him to avoid "financial ruin" was to immediately sign over the family house. (Id.)

To set her brother at ease, Judy told Arnold she would do whatever was necessary to protect him and signed the agreement straightaway. (AA255,258) They then sat down to read and discuss the document, as well as make plans for dealing with the crisis of their mother's imminent death. (Id.)

However, after reviewing Hospital's proposed agreement and their mother's health insurance situation, Judy and Arnold realized the settlement drafted by Hospital was Draconian, unconscionable and wholly unnecessary since Ann's medical expenses were fully covered. (Id.) In any event, Judy and Arnold believed that, as Ann's children, they should not, and could not, be held personally liable for her alleged debt to Hospital. (Id.) They therefore decided to reject Kindred's proposed settlement. (Id.)

As a result, Arnold did not send the signed settlement agreement to Garcia by overnight mail, as promised. (Id.)

On Sunday morning, Arnold awoke to the news Ann had passed away. On Monday, he and Judy (still grieving) went to the undertaker to make funeral arrangements for their mother. (AA255)

Understandably, Arnold did not immediately call Garcia about the proposed settlement. However, on Tuesday, October 10, 2006, Arnold called Garcia to let him know that after discussing the matter with Judy, Arnold was still not interested in settling with Hospital. (AA255) Arnold instructed Garcia to prepare an answer to Kindred's collection action and a cross-complaint against Hospital and Blue Cross. (Id.)

Garcia was livid. He spent a considerable amount of time and effort trying to dissuade Arnold from suing Hospital and convince him to agree to the proposed settlement. (AA256) Despite Garcia's intimidating tirade, Arnold was steadfast in his position. (Id.) He felt Hospital was in the wrong and should be held accountable. (Id.) Eventually, Garcia relented, but asked Arnold to send the settlement agreement to the office. (Id.) Garcia explained he had not had time to make a copy of Hospital's proposal before their meeting, and he needed a copy for his files. (Id.) Arnold faxed a copy of the settlement agreement to Garcia's office on Wednesday evening, but kept the original. (Id.)

For the next week or so, Arnold grieved over the loss of his mother, focused on the needs of his family, and made preparations for Ann's funeral. He assumed Garcia was working on the response to Hospital's lawsuit, in accordance with his retention and Arnold's specific directions. (Id.) Garcia was not. Apparently, Garcia – without the knowledge and consent of either Arnold or Judy – had instead forwarded a copy of the proposed settlement agreement (including the recanted signatures) to Kindred's counsel. (Id.)

Thereafter, Kindred began demanding performance under the terms of its proposed settlement agreement. (Id.) Arnold declined to perform and when informed of Garcia's deception, instructed Garcia to clear up the confusion. (Id.) Garcia did not clear things up. In fact, he made matters worse. Hospital's proposed settlement agreement called for the prompt inspection and appraisal of the Essex property. (Id.) The appraisal was to be conducted by an appraiser *selected by Arnold*, but *paid for by Kindred*. Garcia told Arnold to go ahead and have the appraisal/inspection performed because it had to be done anyway for purposes of establishing the tax basis of the property. (Id.)

Arnold did, in fact, arrange for the appraisal/inspection of the property. However, to avoid any confusion and because it was for the purpose of establishing the tax basis of the property, Arnold paid the fees associated with the appraisal/inspection himself. (Id.) He did not ask Kindred to pay for the inspection as provided by Hospital's proposed settlement agreement. (Id.) Arnold also specifically noted on his

checks that the appraisal/inspection should **not** be construed as "approval to the transfer of this property or agreement to any stipulation and settlement agreement." (Id.)

C. <u>**Kindred's motion to enforce the "settlement."**</u>

In November 2006, Kindred filed a motion under Code of Civil Procedure §664.6 to enforce its proposed settlement agreement against Arnold, Judy and the Trust. (AA0015) In support of the motion, Hospital alleged Arnold and Judy had "freely signed" the proposed settlement agreement after "discussing" the document with "their" attorney, John Garcia. (AA023,793)

When Arnold learned of Kindred's motion, he demanded Garcia oppose the request; Arnold reminded Garcia neither Arnold nor Judy had authorized Garcia to proceed with the settlement. (AA256) In his opposition papers, which were filed late, Garcia failed to even mention he did not have authority from Arnold or Judy to proceed with settlement. (AA065,190) Instead, he argued Kindred had violated the terms of the settlement by failing to cooperate in Garcia's efforts to (1) obtain Ann's medical records, and (2) negotiate a settlement with Blue Cross. Garcia also complained Kindred had failed to reveal payments on Ann's behalf from Medical of over $528,000 in the last six months. (AA192-193)

In fact, Garcia's opposition papers were so half-hearted and poorly drafted as to prompt the comment from Kindred's counsel that in effect, "Defendants have *not opposed* Plaintiff's instant motion." (AA075) According to Kindred, "Defendant's

opposition does not address the issue before this court, thereby leaving plaintiff's motion unopposed." (AA074)

Given Garcia's failure to present the circumstances surrounding Arnold's and Judy's alleged "approval" of the agreement, it is not surprising the trial court granted Kindred's motion to enforce the terms of the parties' "stipulation and settlement agreement." (AA206) A Judgment to Enforce Terms of the Stipulation and Settlement Agreement Pursuant to C.C.P. §664.6" was entered by the trial court on December 18, 2006. (AA207)

**D. Judy and Arnold move to set aside the trial court's order enforcing the settlement.**

Thereafter, Arnold and Judy sought the assistance of new counsel, who filed (1) a motion on behalf of Judy to intervene in the underlying action; and (2) a motion on behalf of all of the alleged judgment debtors to set aside the trial court's order enforcing the "settlement" agreement and resulting judgment. (AA236)

In support of the motion to set aside the trial court's order enforcing the "settlement" agreement and judgment, Arnold and Judy submitted declarations recounting the circumstances surrounding the purported "settlement" and transfer of interest in the Essex Street property. (AA249-259) In their motion papers, Arnold and Judy argued (1) the unauthorized settlement was void, (2) Garcia had, by his conduct, effectively abandoned Arnold's interests, (3) Section 644.6 could not, under any circumstances, be used to dispose of the interest of Judy (who was never named as a

defendant) in the family home; and (4) the circumstances and terms of the alleged "settlement" were so unjust as to require the judgment be set aside. (AA242-247)

In its order denying the motion, the trial court rejected Appellants' suggestion the underlying settlement was void. (AA793) According to the trial court, it could only find the stipulated judgment was void under certain enumerated circumstances (such as lack of subject matter or personal jurisdiction, improper service, defect in the judgment, etc.) – none of which were applicable to this case. (AA793)

As to Appellant's equitable claims, the trial court determined it "had the authority to issue an order (and subsequent judgment) enforcing the settlement as against Arnold Schimsky and the trust because the evidence demonstrates the settlement was freely executed by them." (AA793) Essentially, the trial court concluded the declarations of the parties presented "sufficient evidence that Arnold Schimsky was involved in the abundant negotiations that resulted in the settlement agreement...." (AA794)

As to Appellants' argument the trial court found the terms of the settlement agreement were unfair or unjust, the trial court either disagreed or concluded the improper terms could be easily severed from the remaining terms of the agreement. (Id.)

Finally, as to Judy, the trial court dismissed Appellant's concerns about the judgment's effect on her property rights because Loprieno is not a party to the settlement agreement," and "it expressly only applies to the parties to this action." (Id.)

The court then found, "As the judgment is final and this action is concluded, Judy Loprieno's attempt to intervene is DENIED as moot." (AA793)

## APPEALABILITY

### A. The Appeal Was Timely Filed.

On June 1, 2007, the trial court denied Appellants' motion to set aside the stipulated judgment. (AA793) Notice of the trial court's ruling was served on June 11, 2007. (AA796)

On July 30, 2007, Arnold, individually and as Trustee of the Ann P. Shimsky Trust, and Judy Loprieno, as an intervenor below, filed a timely Notice of Appeal from the trial court's denial of their motion to set aside the judgment pursuant to Code of Civil Procedure §904.1(b) and California Rules of Court, rule 8.104(a)(2). (AA803)

### B. The Denial of Appellants' Motion To Vacate Is An Appealable Order.

"[T]his is not an appeal from the judgment; it is an appeal from a post-judgment order. The time for such an appeal does not start running until the order is made." *Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294, 1299. The appeal was filed within 60 days of the order denying the motion to set aside the judgment and was therefore timely. *Jade K. v. Viguri* (1989) 210 Cal.App.3d 1459, 1469.

Plaintiffs could have filed a timely notice of appeal from the order of dismissal as well as the order refusing to vacate. *Daley v. County of Butte* (1964) 227 Cal.App.2d

380, 389. However, a direct appeal from the judgment would have been "relatively ineffectual" because a motion for relief from the judgment injects new evidence into the case. *Id.*; *In re Yoder* (1926) 199 Cal. 699, 702-703

In such cases, the appellant "may choose not to appeal but to attack the judgment in the trial court by moving to vacate it under Code of Civil Procedure section 473." *Daley v. County of Butte*, supra, 227 Cal.App.2d at 389. If the lower court denies appellant's motion based on the new facts, appellant then has an appeal from the trial court's order which is an order entered after an appealable judgment. Code of Civil Procedure §904.1(b); *Burnete v. La Casa Dana Apartments* (2007) 148 Cal.App.4th 1262, 1265-1266; *Martin v. Johnson* (1979) 88 Cal.App.3d 595, 602; *Daley v. County of Butte*, supra, 227 Cal.App.2d at 389.

In this way, the record available to the appellate court on the appeal from the motion to vacate raises the issues which would not be disclosed, or could not be disposed of, in an appeal from the judgment itself. *Rooney v. Vermont Investment Corp.* (1973) 10 Cal.3d 351, 359; *Daley v. County of Butte*, supra, 227 Cal.App.2d at 389.

Note, however, the merits of the judgment are "inevitably involved" in a review of the section 473 order. *Daley v. County of Butte*, supra, 227 Cal.App.2d at 390. The underlying facts are the same; the motion to vacate is merely an extension of the story. *Id.* Thus, it is hardly possible to review the order denying relief without reviewing the propriety of the underlying judgment. *Id.* Under these circumstances, the court should

proceed by determining whether the enlarged facts revealed by the section 473 motion require reversal of the judgment. *Id.*

C. **Judy Has Standing to Appeal.**

Non-parties have standing to move to vacate a judgment if they are "aggrieved" by the judgment. *County of Alameda v. Carleson*, supra, 5 Cal.3d at 736-737 [nonparty welfare recipients were "aggrieved" by judgment that affected their right to receive welfare benefits].

A nonparty who has *assumed* the obligation to pay a judgment is "aggrieved" thereby and has standing to move to vacate it. *Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336, 1342.

"[O]ne whose rights or interests are injuriously affected by any appealable order made in an action to which he is not a party, [may] through the process of making themselves parties moving to set those orders aside. [Citation.] Their motions being denied, they may, on this appeal, have the proceedings of which they complain reviewed. [Citations.]" *Luckenbach v. Laer* (1923) 190 Cal. 395, 398; *Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 15.

# LEGAL DISCUSSION

## I.

## THE TRIAL COURT'S DENIAL OF APPELLANTS' MOTION TO SET ASIDE THE JUDGMENT MUST BE *VERY CAREFULLY* REVIEWED FOR ABUSE OF DISCRETION BASED ON THE NEW FACTS REVEALED IN APPELLANTS' MOTION PAPERS.

### A. The Court Has Both Statutory and Common Law Authority to Set Aside a Stipulation of Settlement "Where Special Circumstances Exist Rendering it Unjust to Enforce the Stipulation."

A stipulation of settlement may be set aside "where special circumstances exist rendering it unjust to enforce the stipulation." *In re Marriage of Economou* (1990) 224 Cal.App.3d 1466, 1477; *Roth v. Morton's Chefs Services, Inc.*, supra, 173 Cal.App.3d at 386. The source of a court's authority to set aside an unjust judgment is two-fold:

First, Code of Civil Procedure section 473(c) states: The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect.

Second, "the trial court has a range of inherent powers that it may exercise in order to accomplish complete justice between parties." *Thompson Pacific Const., Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 539. "Exercising its equitable powers, the court can adjust the equities of the parties and grant such relief as will achieve substantial justice under the circumstances of the case presented to it." *Snelson v. Ondulando Highlands Corp.* (1970) 5 Cal.App.3d 243, 258.

The court's inherent power includes the authority to vacate a judgment based on mistake of a party. *McGuinness v. Superior Court* (1925) 196 Cal. 222, 230-232; *SJP Ltd. Partnership v. City of Los Angeles* (2006) 136 Cal.App.4th 511, 515-516; *Orange Empire Nat. Bank v. Kirk*, supra, 259 Cal.App.2d 347, 353. "The inherent powers of courts are derived from California Constitution, article VI, section 1, and are not dependent on statute." *Clark v. First Union Securities, Inc.* (2007) 153 Cal.App.4th 1595, 1608. "Indeed, the remedy afforded under section 473 'is merely concurrent with the remedy afforded by equity under proper circumstances.'" *Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 260.

**B. Since the Law Strongly Favors Trial and Disposition on the Merits, Any Doubts in Granting Relief From the Stipulation of Settlement Must Be Resolved in Favor of the Party Seeking Relief.**

A motion seeking relief from an unjust judgment lies within the sound discretion of the trial court. *Elston v. City of Turlock* (1985) 38 Cal.3d 227, 233 [citations omitted]. However, the trial court's discretion is not unlimited and must be "'exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.'" *Ibid.* Any doubts as to the propriety of the relief should be resolved in favor of the application, to the end of securing a trial upon the merits. *Elston v. City of Turlock*, supra, 38 Cal.3d at 233; *Waite v. Southern Pac. Co.* (1923) 192 Cal. 467, 470-471.

The same rule applies on appeal. *Burbank v. Continental Life Ins. Co.* (1932) 2 Cal.App.2d 664, 667. Where a trial court has considered but denied a motion to set

aside the judgment, the reviewing court weighs the conflicting concerns of respecting the trial court's sound discretion while recognizing the policy favoring trial on the merits. See *Lords v. Newman* (Mont. 1984) 688 P.2d 290, 293.

Generally, "a trial court order denying relief [from the judgment] is scrutinized **more carefully** than an order permitting trial on the merits." *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 980 (emphasis added); *Karlein v. Karlein* (1951) 103 Cal.App.2d 496, 498 ["An appellate court listens more readily to an appeal from an order denying relief under section 473"]. This is especially true where (as here) "it appears that a substantial defense could be made." *Waybright v. Anderson* (1927) 200 Cal. 374, 377.

**C. <u>In This Appeal From The Order Denying Relief Under Section 473, Trial Court's Decision Is Reviewed Based on the Newly-Revealed Facts, or a Previously Unrevealed Impact of Known Facts, Not Before the Court at the Original Hearing.</u>**

As noted above, a motion for relief under section 473 injects new evidence into the case. *Daley v. County of Butte*, supra, 227 Cal.App.2d at 388-389. The motion to vacate therefore provides the court with its first opportunity to consider such evidence and the legal arguments supporting relief. *Pazderka v. Caballeros Dimas Alang, Inc.* (1998) 62 Cal.App.4th 658, 668.

The trial court's order denying a motion to set aside a judgment based on newly-revealed facts, or a previously unrevealed impact of known facts, which demonstrate the moving party was effectually deprived of a meaningful opportunity to defend against the original motion to enforce settlement **is reviewed under the abuse of**

**discretion standard.** *Pazderka v. Caballeros Dimas Alang, Inc.* (1998) 62 Cal.App.4th 658, 669; see *Beeman v. Burling* (1990) 216 Cal.App.3d 1586, 1602; *Gilberd v. AC Transit* (1995) 32 Cal.App.4th 1494, 1500, fn. 2.

"Thus, the discretion of the trial court in disposing of the motion to vacate will be affected or controlled by facts **not** before it on the original hearing...." *Daley v. County of Butte*, supra, 227 Cal.App.2d at 389. Where (as here) these new facts demonstrate the moving party was effectually deprived of a meaningful opportunity to defend against the original motion, relief should be granted. *Id.*

**D. <u>Where (As Here) the Challenged Ruling Is Made on the Basis of a Record Consisting of Affidavits, Memoranda of Points and Authorities and the Pleadings, a Trial Court Is in No Better Position than an Appellate Court to Evaluate Credibility and Resolve Conflicts.</u>**

As noted above, the trial court determined based on the parties' papers that the evidence presented by Kindred "demonstrates the settlement was freely executed by them." (AA793) Essentially, the trial court concluded the declarations of the parties presented "sufficient evidence that Arnold Schimsky was involved in the abundant negotiations that resulted in the settlement agreement...." (AA794) The trial court's findings are not binding on this Court.

First, several courts have recognized "[w]here (as here) the decision is made on the basis of a record consisting of affidavits, memoranda of points and authorities and the court's file so that the credibility of witnesses is not involved, 'a trial judge is in no better position than an appellate court in determining whether substantial justice has

been done.'" *Garza v. Delano Union Elementary School Dist.* (1980) 110 Cal.App.3d 303, 312; *United Farm Workers National Union v. International Brotherhood of United Farm Workers National Union v. International Brotherhood of Teamsters* (1978) 87 Cal.App.3d 225, 233; *Ordway v. Arata* (1957) 150 Cal.App.2d 71, 75-79; *Jepsen v. Sherry* (1950) 99 Cal.App.2d 119, 121.[4]

Second, contrary to the trial court's order, Kindred did not present any evidence "the settlement was freely executed by [Appellants]." (AA793) Nor did Hospital's declarations demonstrate "that Arnold Schimsky was involved in the abundant negotiations that resulted in the settlement agreement...." (AA794)

Concerning Arnold's involvement in the "abundant negotiations that resulted in the settlement agreement," the declaration filed by Kindred's counsel stated only:

- "[I]n August 2006, *Garcia* indicated that his clients wanted to settle the matter.... Both Plaintiff and Defense *counsel* proceeded to draft a document acceptable to both sides." (AA450)

- Before Mrs. Shimsky became critically ill, after numerous conversations between *counsel for the parties* to discuss the details of a settlement, and after exchange of draft revisions of the settlement agreement and a meeting of *counsel* on September 15, 2006 to further go over the terms of the settlement, the parties agreed to voluntarily meet to execute the settlement agreement. (AA450-451)

- Although an offer was made to continue the settlement meeting to another day considering the circumstances [i.e., Ann's heart attack], Ms. Bocker was advised by *Defense counsel* that the settlement meeting

---

4 *Barras v. Benoit* (La. 1987) 509 So.2d 668, 669 ["Absent testimony in open court, a trial court is in no better position than an appellate court to evaluate credibility and resolve conflicts in testimony"].

> would proceed as scheduled. With *Defense counsel* confirming the meeting was to continue, arrangements were made ... to allow the supervised visit after the settlement meeting. (AA451)

As to whether the agreement was "freely executed" by Appellants, Kindred's counsel said the meeting lasted one hour – the first 15 minutes of which she left "to get some refreshment" and another part of which she was "asked to excuse herself for confidential attorney-client conversation." (AA451-452)

Counsel suggests the agreement was "freely executed" because (1) "Schimsky never expressed opposition to the settlement of the matter" in her presence; (2) Arnold signed the agreement; (3) Judy "admit[ted] signing the papers presented to her by her brother"; and (5) although she has no personal knowledge of the circumstances, Arnold "later transmitted the fully executed documents to his counsel...." (AA452)

Based on these facts, Kindred's counsel assumed Arnold and Judy *must have* agreed to the settlement and then "changed their minds." However, Hospital presented **no** evidence to support its assumption, leaving the declarations of Arnold and Judy uncontradicted with regard to their exclusion from the settlement process and unqualified rejection of Hospital's proposal.

"It is the general rule that 'the uncontradicted testimony of a witness to a particular fact may not be disregarded, but should be accepted as proof of the fact.'" *Joseph v. Drew* (1951) 36 Cal.2d 575, 579. The reason is simple: If contrary evidence on the subject was available through the other witnesses, it would have been presented. *Id.*

In *Am-Cal Inv. Co. v. Sharlyn Estates, Inc.* (1967) 255 Cal.App.2d 526, for example, the Court of Appeal, after independently reviewing the record, concluded respondent's evidence had left appellant's evidence "practically uncontradicted." *Id.* at 543. "Where testimony is uncontradicted and unimpeached, it may not be arbitrarily disregarded, but should be regarded as proof of the fact testified to, especially where contrary evidence, if it existed, would be readily available but was not offered." *Id.* Under the circumstances, the trial court's findings could not be sustained and the judgment was reversed. *Id.* at 543-544.

## II.

## SINCE THE SETTLEMENT OF A LAWSUIT WAS A DECISION TO END THE LITIGATION, THE TRIAL COURT SHOULD HAVE INSURED THAT THE SETTLEMENT WAS EXECUTED WITH THE KNOWLEDGE AND EXPRESS CONSENT OF ALL PARTIES.

### A. Unauthorized Settlements And/or Stipulations Made By Counsel Are *Not Binding* Upon the Client.

In California, settlement is considered such a serious step that it requires the client's knowledge and express consent. *Levy v. Superior Court* (1995) 10 Cal.4th 578, 583. Without his client's free and intelligent consent, after full knowledge of all the facts and circumstances, an attorney may not surrender any substantial right of his client; nor may he impair, compromise, or destroy his client's cause of action. *Bice v. Stevens* (1958) 160 Cal.App.2d 222, 231. As the California Supreme Court explained:



C
61

> The litigants' direct participation tends to ensure that the settlement is the result of their mature reflection and deliberate assent. This protects the parties against hasty and improvident settlement agreements by impressing upon them the seriousness and finality of the decision to settle, and minimizes the possibility of conflicting interpretations of the settlement. [Citations.] [Fn. omitted.] It also protects parties from impairment of their substantial rights without their knowledge and consent. *Levy v. Superior Court*, supra, 10 Cal.4th at 583.

The client can (and should) seek his/her attorney's advice; but the decision to settle ultimately must be made by the client. *Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 404-405; *Levy v. Superior Court*, supra, 10 Cal.4th at 584. The client has the absolute right to reject or approve a settlement; his/her lawyer has no *implied* authority under the law to settle and compromise a claim. *Blanton v. Womancare, Inc.*, supra, 38 Cal.3d at 404; *Levy v. Superior Court*, supra, 10 Cal.4th at 583.

Unauthorized settlements and/or stipulations made by counsel are ***not binding*** upon the client and may be repudiated (set aside) by the client at any time. *Blanton v. Womancare, Inc.*, supra, 38 Cal.3d at 405-408; see *Marriage of Helsel* (1988) 198 Cal.App.3d 332, 338; *Romadka v. Hoge* (1991) 232 Cal.App.3d 1231, 1236.

B. **<u>Under Section 664.6, The Trial Court and Counsel for Both Parties Must Insure That Any "Settlement Is the Result of [Both Parties'] Mature Reflection and Deliberate Assent."</u>**

The seriousness of the settlement process also impacts the relationships between the parties and the court. To some extent, the normal rules applicable to our adversarial system of justice are suspended during the formalization of a settlement.

- First, in this situation, a trial judge is "more than an umpire"; "it is not only within his province, but is his duty, to see that as nearly as possible the issues shall be disposed of on their merits." *Miller v. Republic Grocery, Inc.* (1952) 110 Cal.App.2d 187, 193; *Daley v. County of Butte*, supra, 227 Cal.App.2d at 393. In particular, the trial court has a duty to reject a settlement and stipulated judgment that would be "grossly unfair" to one party. *Roth v. Morton's Chefs Services, Inc.*, supra, 173 Cal.App.3d at 387; *California State Auto. Assn. Inter–Ins. Bureau v. Superior Court* (1990) 50 Cal.3d 658, 664; *Miller v. Republic Grocery, Inc.*, supra, 110 Cal.App.2d at 192-193 [same].

*Before* the court may accept the parties' stipulation, it must appear from the record the settlement was entered into "advisedly, and after due consideration of the facts." *Roth v. Morton's Chefs Services, Inc.*, supra, 173 Cal.App.3d at 387. Under California law, the court had a duty to ensure the settlement was the result of the parties' "mature reflection and deliberate assent." *Levy v. Superior Court*, supra, 10 Cal.4th at 583; *Roth v. Morton's Chefs Services, Inc.*, supra, 173 Cal.App.3d at 387.

- The same duty applies *after* a stipulated settlement and judgment have been entered. If, at any time during the proceedings, the trial court becomes "aware that [an] attorney is acting in direct opposition to his client's instructions or wishes, ... the court ought not to act upon the stipulation...." *Knowlton v. Mackenzie* (1895) 110 Cal. 183, 188; *Linsk v. Linsk* (1969) 70 Cal.2d 272, 280.

An attorney acting without authority is one of those times when the trial court might set aside a stipulated settlement and judgment because of "special circumstances exist rendering it unjust to enforce the stipulation." See *In re Marriage of Economou* (1990) 224 Cal.App.3d 1466, 1477. The trial court's duty with regard to such an injustice is a serious matter; the trial court must avoid becoming "a mere puppet" of the attorneys by "surrender[ing] its duty to expediency." *California State Auto. Assn. Inter–Ins. Bureau v. Superior Court*, supra, 50 Cal.3d at 664; *City of Los Angeles v. Harper* (1935 ) 8 Cal.App.2d 552, 555.

- The special nature of settlement also impacts the duty of counsel for the opposing party. In considering a motion to set aside a judgment, the courts look "with disfavor upon a party who, regardless of the merits of his case, attempts to take advantage of the mistake, surprise, inadvertence, or neglect of his adversary." *Bice v. Stevens*, supra, 160 Cal.App.2d at 233. Where "the adverse party ... is aware that the [opposing] attorney is acting in direct opposition to his client's instructions or wishes, ...the adverse party [cannot] claim the right to enforce a judgment rendered by reason

thereof." *Knowlton v. Mackenzie* (1895) 110 Cal. 183, 188; *Linsk v. Linsk* (1969) 70 Cal.2d 272, 280.

The obligation of counsel goes beyond actual knowledge of misconduct, however. Since opposing counsel has no *implied* authority to settle claims, **lawyers presented with a stipulation for settlement must determine at their own peril whether a stipulation has been made with the opposing party's express authority**. Haning, California Practice Guide: Personal Injury (TRG 2007) §4:91.1. If such authority is lacking, nothing the client's attorney does or says can create it. *Blanton v. Womancare, Inc.*, supra, 38 Cal.3d at 405-408; *Levy v. Superior Court*, supra, 10 Cal.4th at 583; *Marriage of Helsel*, supra, 198 Cal.App.3d at 338.

### C. At the Very Least, Relief From A Stipulated Judgment Should Be Granted Where It Appears That One Party's Assent to the Stipulation Was Unwittingly Given.

As noted above, it is important a settlement be the result of the parties' mature reflection and deliberate assent. *Levy v. Superior Court*, supra, 10 Cal.4th at 583. For this reason, relief from a stipulated judgment should be granted where (as here) it appears from the record that one party's assent to the stipulation "was unwittingly given." *Bare v. Parker* (1921) 51 Cal.App.106, 108.

In this case, the uncontradicted evidence[5] presented to the trial court indicates Arnold and Judy had no intent to settle the case. To the extent the trial court has construed their signatures on the agreement as consent to the settlement, the facts show such "consent" was unwittingly given.

***First***, the "ambush setting" in which the settlement was presented to Arnold indicates the settlement was **not** Arnold's idea; and, in fact, suggests prior knowledge on the part of Garcia and Kindred's counsel that Arnold would be adamantly opposed to any compromise. On the day before the settlement was presented to Arnold, Ann suffered a heart attack. (AA254) Garcia told Arnold to come to a San Diego "office" at 3:00 p.m. so Garcia could take Arnold to the hospital. (AA254-255) When confronted with the settlement agreement, Arnold protested that he had only come to Garcia's office so he could visit his dying mother. (Id.) He was told he could see his mother only *after* he had signed the agreement. (Id.) At first, Arnold refused, but eventually he signed the document to appease the lawyers and so he could go see his mother. (Id.)

***Second***, the "timing" of the proposal also indicates an intent to coerce a settlement. Obviously, the settlement was presented to Arnold and Judy during a period of great tumult in their lives. At the very least, the timing of the presentation indicates an intent to maximize confusion, which itself would justify granting the

---

[5] As noted above, Kindred assumed, because the faxed documents contained signatures, that Arnold and Judy *must have* agreed to the settlement and then "changed their minds." However, Hospital presented **no** evidence to support its assumption.

motion for relief under Section 473. See *In re Marriage of Kerry* (1984) 158 Cal.App.3d 456, 466 ["existence of some degree of mental confusion ... of the party moving to set aside an order supports granting the motion"]; *Parker v. Dingman* (1975) 48 Cal.App.3d 1011, 1018 [relief granted in light of party's confusion]; *Armstrong v. Armstrong* (1947) 81 Cal.App.2d 322, 323 [interlocutory divorce judgment set aside based upon showing of husband's "confused mental state" as the result of "worry over the domestic situation"]; *Stub v. Harrison* (1939) 35 Cal.App.2d 685, 690 [confusion caused by anxiety over injury suffered by son].

*Third*, the "manner" in which the settlement was presented indicates an intent on the part of the lawyers to force Arnold into a "hasty and improvident" decision. When Arnold protested about the manner of its presentation, he was falsely told his consent to the settlement was the *only* way to avoid personal liability for the debt, and if he did not agree right there and then to settle the case, he would lose in court and suffer financial ruin. (AA254) As noted above, Arnold was not given an opportunity to read, or even review, Kindred's 23-page proposed agreement. (AA255) Arnold was simply directed to sign "here, here and here." (Id.) The law does not favor such snap judgments. *Bice v. Stevens*, supra, 160 Cal.App.2d at 233.

Likewise, Judy signed the agreement merely to set her brother (who was greatly troubled by the whole ordeal) at ease. (AA255) She did so based on Garcia's false statement (repeated by Arnold) that the settlement was the *only* way to avoid personal liability and financial ruin. (AA255) The manner in which the settlement was

presented was meant to undermine, rather than promote, a decision "made advisedly, and after due consideration of the facts...." *California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1990) 50 Cal.3d 658, 664.

***Finally,*** the "content" of the proposed settlement suggests it was **not** the result of the "mature reflection and deliberate assent" of the parties. As discussed more fully below, the document is distinctly one-sided. It not only fails to provide the mutual releases required by California law, but is replete with unconscionable terms and conditions. For example, the settlement agreement purports to garnish Ann's social security benefits, which are exempt from execution by any creditor under *both* federal and California law. 42 U.S.C. §402; Code of Civil Procedure §704.080. The agreement also provides for the immediate transfer of Ann's home on Essex Avenue is also exempt for execution under California law. Code of Civil Procedure §704.720. Given even these few examples, it is clear why after reviewing the proposed agreement, Judy and Arnold determined the settlement should be rejected.

* * * * * *

As noted above, Hospital presented **no** evidence to the contrary. Instead, Kindred assumed, because of the signatures on the faxed document, Arnold and Judy *must have* agreed to the settlement and then "changed their minds." However, a settlement agreement is not rendered enforceable merely by a party's execution of the instrument unless the party (1) signs with the intent to settle; and (2) delivers the document to the opposing party. *Lawson v. Lowengart* (1967) 251 Cal.App.2d 98, 110.

Here, both Arnold and Judy have testified they had no intent to settle the case. *Both* testified they communicated their unequivocal rejection of the settlement to Garcia. Arnold further stated he instructed Garcia to proceed with the lawsuit. It is undisputed Arnold and Judy retained possession and control of the original signed agreement. The only evidence presented to the trial court was that a *copy* of the agreement was sent to Garcia based on his representation he wanted a copy for his files. There is no evidence Arnold and Judy authorized delivery of the agreement to Kindred.

Given these circumstances, Appellants' continued possession of the signed original agreement created a presumption that they did not intend to settle. *Lample v. McDougall* (1930) 103 Cal.App. 779, 781-782; *In re Marriage of Kerry*, supra, 158 Cal.App.3d at 466 [circumstances of the "settlement" indicate no intent, rather than "buyer's remorse"]. Even if delivery of a *copy* of the agreement was somehow sufficient to overcome the presumption, it still must be shown that the party to be bound expressly instructed and authorized his attorney to "deliver" the instrument to the opposing party. *McKelley v. Turner* (1929) 96 Cal.App. 292, 294. In this case, Garcia was not so authorized, and the mere receipt of a copy of the agreement by Garcia was not enough (without Appellants' specific authorization) for him to "deliver" the same to Kindred. *Lawson v. Lowengart* (1967) 251 Cal.App.2d at 111.

## IV.

## RELIEF FROM THE STIPULATED JUDGMENT IS APPROPRIATE BECAUSE APPELLANTS WERE, IN EFFECT, "ABANDONED" BY THEIR ATTORNEY.

### A. Relief From an Attorney's Unauthorized Stipulation Is Appropriate Where (As Here) the Attorney's Actions Amount to "Positive Misconduct."

In some cases, the negligence of an attorney may be imputed to the client. *Carroll v. Abbott Laboratories* (1982) 32 Cal.3d 892, 895, 898. However, California courts recognize an exception to this rule in those cases "where the attorney's neglect is of that extreme degree amounting to positive misconduct, and the person seeking relief is relatively free from negligence." *Id.* at 898 (internal quotes omitted).

This exception is premised on the concept the attorney's misconduct "obliterates the existence of the attorney-client relationship," and therefore the client has "no attorney" from whom negligence can be imputed. *Id.* at 898-900. In effect, the client's responsibility for the attorney's neglect ceases at the point where "abandonment of the client appears." *Id.* at 900.

### B. By His "Positive Misconduct" In This Case, Garcia Effectively *Abandoned* Appellants.

What constitutes "abandonment" of the client depends on the circumstances of each case. *Seacall Development, Ltd. v. Santa Monica Rent Control Bd.* (1999) 73 Cal.App.4th 201, 205.

✓ It seems safe to say, however, that an attorney who ***lies to his client*** has effectively "abandoned" the client and obliterated attorney-client relationship. See *Matter of Templin* (N.J. 1985) 502 A.2d 1, 2-3; *Attorney Grievance Com'n of Maryland v. Reinhardt* (Md. 2006) 892 A.2d 533, 542 ["It goes without saying that a lawyer should not lie to the client about the status of the client's case."]; *Iowa Supreme Court Attorney Disciplinary Bd. v. Sotak* (Iowa 2005) 706 N.W.2d 385, 389 [ "the practice of law simply cannot have people engaged in it who lie to their clients"]; *Oklahoma Bar Assn. v. Bolusky* (Okla.2001) 23 P.3d 268, 273 [a lawyer should not lie to a client about the status of his or her case]; *In the Matter of Grabler* (N.J. 1989) 552 A.2d 596, 600 ["Clients should not continue to suffer the consequences of being told their case is under control when it is not."]. In the instant case, "silence can be no less a misrepresentation than words." *Crispen v. Volkswagenwerk, A.G.* (N.J. 1984) 476 A.2d 250.

In *Orange Empire Nat. Bank v. Kirk* (1968) 259 Cal.App.2d 347, appellant was sued on a guarantee. He hired an attorney with whom he was in continual contact. The attorney repeatedly assured appellant that the matter was being properly handled. In fact, the attorney failed to file an appearance and/or appear for trial which resulted in a substantial judgment against appellant. The trial court refused to set the judgment aside, and appellant appealed. The appellate court reversed based, in part, on the attorney's continuing misrepresentations to the client that the matter would be properly handled. *Id.* at 354.

Similarly, in *Daley v. County of Butte*, supra, 227 Cal.App.2d 380, plaintiff's attorney failed to serve a necessary party, which resulted in repeated postponement of trial. He failed to appear at successive pretrial conferences and failed to communicate with court, client or other counsel. The case was eventually dismissed for lack of prosecution.

Plaintiff retained new counsel and moved to set aside the judgment. The trial court denied the motion. On appeal, the Court concluded counsel's neglect was so "inexcusable and extreme" that it amounted to "positive misconduct" which "effectually and unknowingly deprived [the plaintiff] of representation." 391 Given the fact that plaintiff "had legal representation only in a nominal and technical sense," the trial court abused its discretion in not granting relief. *Id.* at 392.

✓ It also seems safe to say an attorney who ***contradicts his clients' express instructions*** has effectively abandoned the clients and obliterated the attorney-client relationship. See *In re Dombrowski* (Ill. 1978) 376 N.E.2d 1007, 1010 [attorney's assertion that client was difficult to deal with and unreasonable in refusing settlement was no excuse for settling the case in direct contradiction to her wishes] *Cultum v. Heritage House Realtors, Inc.* (Wash. 1985) 694 P.2d 630, 636 ["an attorney, as the client's agent, has the duty to obey his client's reasonable instructions and directions"]; *Olfe v. Gordon* (Wis. 1980) 286 N.W.2d 573, 577, fn.1 ["an attorney's duty, where he is specially instructed, is to follow the instructions of his client"].

"[T]he attorney-client relationship is essentially that of agent and principal; and while an attorney's legal expertise gives him considerable latitude to act on behalf of his client, he may not act in direct contradiction to his client's instructions, and the client will not be bound by acts of his attorney from which he explicitly dissents." *Brucar v. Rubin* (7th Cir. 1980) 638 F.2d 987, 991.

The rule is the same in California. See *Cheleden v. State Bar* (1942) 20 Cal.2d 133, 138; *Shelly v. Hansen* (1969) 244 Cal.App.2d 210, 215; see also *Trulis v. Barton* (9th Cir. 1995) 107 F.3d 685, 693 [condemning an attorney who "intentionally disregarded his clients' explicit instructions regarding dismissal and filed documents ... which he was not authorized to file on their behalf"].

In *Linsk v. Linsk* (1969) 70 Cal.2d 272, appellant's attorney, after a mistrial, stipulated, *over his client's objections*, that another judge could render a decision based entirely on the record of the initial trial. The appellate court found "if counsel abdicates a substantial right of the client contrary to express instructions, he exceeds his authority." *Id.* at 278. A trial court "ought not to act upon the stipulation," if it becomes "aware that the attorney is acting in direct opposition to his client's instructions or wishes...." *Id.* at 280 [citing *Knowlton v. Mackenzie* (1895) 110 Cal. 183, 188].

In *Whittier Union High Sch. Dist. v. Superior Court* (1977) 66 Cal.App.3d 504, the respondents' attorney, contrary to his clients' instructions, settled the underlying

case and stipulated to a dismissal with prejudice. The clients' motion to vacate the stipulated judgment was granted and affirmed on appeal.

> Quite simply, the controlling question is whether [the attorney] had any authority to dismiss plaintiffs' action without their knowledge and consent. If he wholly lacked power to dismiss the cause and acted beyond the scope of his authority in dismissing his clients' complaint, his action remained voidable for an indeterminate period, and his clients could vacate the unauthorized dismissal within a reasonable time after learning of it, regardless of the time limitations in section 473. *Id.* at pp. 507-508.

In *Bowden v. Green* (1982) 128 Cal.App.3d 65, appellants' attorney agreed to dismiss a cross-complaint without his clients' authorization. Appellants' motion to vacate the ensuing judgment was denied. The Court of Appeal reversed. "Because counsel's dismissal stipulation was wholly unauthorized and was made without the knowledge or consent of his clients, it could not form the basis of a valid judgment." *Id.* at 73-74. An attorney's unauthorized disposition of clients' substantive rights is invalid and a judgment based thereon is therefore **void**. *Ibid.*[6]

✓ Finally, Garcia's abandonment of Appellants is supported by (1) his half-hearted and poorly drafted opposition to entry of the stipulated judgment which failed to even mention his lack of authority to proceed with settlement; and (2) his subsequent refusal

---

[6] In this case, the trial court erroneously assumed it could only find the stipulated judgment was "void" for lack of subject matter or personal jurisdiction, improper service, defect in the judgment, etc. (AA )

to cooperate with Appellants' new attorneys in their attempt to obtain an order vacating the judgment.

In *Buckert v. Briggs* (1971) 15 Cal.App.3d 296, plaintiffs' attorney promised to notify his clients regarding a new trial date. He failed to do so, and did not himself appear at the trial. The attorney promised to have the resulting judgment set aside, and keep plaintiffs informed of his progress. The attorney did neither and, in fact, never contacted plaintiffs again. Plaintiffs obtained the services of another attorney to set aside the judgment.

The Court of Appeal concluded the evidence demonstrated "the attorney-client relationship ... to be nonexistent" based, in part, on the attorney's "subsequent conduct when he refused to cooperate with plaintiffs in their attempt to obtain an order vacating the judgment through the services of a substituted attorney." *Id.* at 301. "[T]he attorney's [actions] ... constituted positive misconduct within the exception to the rule ... stated [in *Orange Empire Nat. Bank* and *Daley*]." *Id.* at 301-302.

### C. Legal Malpractice is an Insufficient Remedy in Cases Involving an Attorney's Intentional Misconduct.

In many cases, the clients' redress for inexcusable neglect by counsel is, and should be, an action for malpractice. *Carroll*, supra, 32 Cal.3d at 898; *Martin v. Cook* (1977) 68 Cal.App.3d 799, 809; *Orange Empire Nat. Bank v. Kirk* (1968) 259 Cal.App.2d 347, 353. However, where the attorney's misconduct is intentional and/or

grossly negligent, a subsequent legal malpractice action may not the appropriate remedy. *Fleming v. Gallegos* (1994) 23 Cal.App.4th 68, 75.

In *Community Dental Services v. Tani* (9th Cir. 2002) 282 F.3d 1164, for example, the Ninth Circuit noted:

> The district court suggested that [the client's] remedy for his counsel's gross negligence was not relief from the default judgment but rather a separate action for malpractice. Although such an action is indeed a possibility, it is an insufficient remedy to justify foreclosing the possibility of relief [from the judgment]. [Citation]. Relief from a malpractice action often comes after substantial delay, if at all, and it increases the amount of litigation in our courts. [Citation]. Additionally, there is no guarantee that money damages obtained in a malpractice action that results in a verdict years later will serve to alleviate the consequences of the default judgment. For example, here, the fact that [the client] may someday receive [a substantial award] in a malpractice action would be of little solace to him, given what he may be required to sacrifice now in order to satisfy so financially onerous a judgment. Being subjected to a [substantial] judgment ... would be enough to cause many individuals to lose their businesses and their homes, and to effect drastically the educational and other opportunities their spouses and children might otherwise have.... Thus, relief under Rule 60(b)(6) may often constitute the only mechanism for affording a client actual and full relief from his counsel's gross negligence – that is, the opportunity to present his case on the merits. *Id.* at 1171-1172.

In *Fleming v. Gallegos* (1994) 23 Cal.App.4th 68, the Court noted:

> We see the irony in our decision. The attorney whose neglect is so extreme that it amounts to positive misconduct ... receives an undeserved benefit. Such an attorney is far less likely to face an action for malpractice than one whose neglect is less extreme. **It is better, however, not to**

> **penalize the blameless client than it is to punish the errant attorney.** *Id.* at 75 [emphasis added; citations omitted].[7]

In this case, relief in the form of a money judgment obtained in a legal malpractice action many years from now will **not** serve to alleviate the consequences of the stipulated judgment. Certainly, the fact that Appellants may someday receive a monetary award in a legal malpractice action will be of little solace to them, given the loss of the family home. Given the delay involved, a legal malpractice award is also unlikely to meet the educational expenses of Judy's children, the medical needs of Judy and her husband, and any of the other lost opportunities which will be lost by Appellants.

Clearly, a separate action for malpractice will only increase the burden on our courts. Relief from the stipulated judgment is the only realistic mechanism for affording Appellants and the judicial system "actual and full relief" from Garcia's gross negligence – that is, a trial on the merits.

---

[7] In *Lords v. Newman* (Mont. 1984) 688 P.2d 290, the Montana court expressed similar reservations:

> The District Court judge in this case was motivated in part by his fear that granting the motion to vacate the [judgment] would compromise a future malpractice action against the real culprit in the controversy – the attorney.... While such concern is laudable, the adequacy of a malpractice remedy in this situation is questionable. Even assuming the clients would prevail in such an action, [the attorneys'] lack of malpractice insurance and personal assets would make the victory a decidedly hollow one. *Id.* at 295-296.

## IV.

## THE RELEVANT EQUITABLE FACTORS COMPEL RELIEF FROM THE UNJUST JUDGMENT IN THIS CASE.

Even where abandonment is shown, the court may also consider equitable factors in deciding whether the dismissal of an action should be set aside. The factors considered include: (1) the client's own conduct in pursuing and following up the case (*Aldrich v. San Fernando Valley Lumber Co.* (1985) 170 Cal.App.3d 725, 739); (2) the potential prejudice to the opposing party (*Fleming v. Gallegos* (1994) 23 Cal.App.4th 68, 74-75); and (3) public policy (*Mary R. v. B. & R. Corp.* (1983) 149 Cal.App.3d 308, 316-317). All of these factors compel relief in this case.

### A. Appellant Was Diligent in Pursuing Relief From the Judgment.

The most significant equitable factor to be considered by the Court is Appellants' diligence after receiving notice of the judgment. *Aldrich v. San Fernando Valley Lumber Co.* (1985) 170 Cal.App.3d 725, 740; *Orange Empire Nat. Bank v. Kirk* (1968) 259 Cal.App.2d 347, 355.

Here, Arnold faxed a copy of the proposed settlement agreement (including the recanted signatures) to Garcia on or about October 12, 2006. (AA256) For the next few weeks, Arnold and Judy were busy grieving over the loss of their mother. Garcia was supposed to be preparing an answer and cross-complaint; Appellants were not informed that Garcia instead forwarded the faxed copy of the settlement to Kindred's counsel. (AA256)

However, when Kindred began demanding performance under the terms of its proposed settlement agreement, Arnold instructed Garcia to immediately clear up the confusion. (AA256) When Kindred filed its motion to enforce the settlement agreement, Arnold learned of Kindred's motion, Arnold again demanded Garcia notify the court neither Arnold nor Judy had agreed to the settlement. (AA256)

However, when the trial court granted Kindred's motion, Arnold and Judy knew Garcia had abandoned their interests. They found and retained new counsel to set aside the trial court's order enforcing the "settlement" agreement and resulting judgment. (AA393) The motion to set aside was filed in February 2007. (AA236)

In *Daley v. County of Butte*, supra, 227 Cal.App.2d 380, the Court colorfully described the litigation process from the client's perspective.

> The lay litigant enters a temple of mysteries whose ceremonies are dark, complex and unfathomable. Pretrial procedures are the cabalistic rituals of the lawyers and judges who serve as priests and high priests. The layman knows nothing of their tactical significance. He knows only that his case remains in limbo while the priests and high priests chant their lengthy and arcane pretrial rites. *Id.* at 392.

Such was Appellants' experience in this case. Arnold and Judy clearly communicated to Garcia their rejection of the settlement, and Arnold had instructed Garcia file an answer to Hospital's lawsuit, but also to pursue the cross-action against Hospital and Blue Cross. (AA255-256) There was no reason to believe Garcia would ignore Arnold's explicit instructions. It was not until that motion was granted that

Appellants realized Garcia had abandoned their interests. Within two months of the granting of Kindred's motion, Appellants retained new counsel and filed a motion for relief from the judgment. (AA236)

In *Arnke v. Lazzari Fuel Co.* (1962) 202 Cal.App.2d 278, the court found a delay of slightly more than two months by defendant's counsel in moving to vacate and set aside defendant's default and default judgment was not unreasonable under circumstances. *Id.* at 282.

In *Orange Empire Nat. Bank*, supra, 259 Cal.App.2d at 355, the client was found to have acted diligently even though approximately six months elapsed between his receipt of notice of entry of judgment and his motion for relief.

B. **The Only True Prejudice to Kindred Is That It "Will Now Have to Go Back and Try the Case on the Merits."**

In the court below, Kindred asserted it would be prejudiced if the stipulated judgment was overturned. Hospital's counsel worked very hard to put the settlement together. Having already "settled" the case, Kindred does not want to now go back and try the case on the merits.

However, relief should not be denied where the opposing party's "sole disadvantage lay in the justifiably bruised patience of its counsel." *Daley v. County of Butte*, supra, 227 Cal.App.2d at 395; *Slusher v. Durrer* (1977) 69 Cal.App.3d 747, 754; *Palmer v. Moore* (1968) 266 Cal.App.2d 134, 141 [opposing party's disappointment insufficient].

This case is very similar to *Rogalski v. Nabers Cadillac* (1992) 11 Cal.App.4th 816, in which the defendant tendered the defense of plaintiff's wrongful termination action to its insurance carrier. The carrier repeatedly led defendant to believe it would respond to the complaint and then abruptly abandoned the defendant on the last day to file an answer without taking any steps to protect his rights. After learning of the entry of a default judgment, the defendant immediately hired his own attorney who moved to set aside the default. The trial court denied the motion.

On appeal, the reviewing court found the denial of the motion to set aside the judgment was an abuse of discretion. *Id.* at 822. Analogizing to the attorney-client relationship, the Court of Appeal held that the law affords relief to litigants whose insurer's neglect amounts to "positive misconduct" toward the client. *Id.* at 821. According to the Court, the conduct of the insurer had, in effect, left the defendant unrepresented – thereby depriving him of a fair adversary hearing. *Id.* In response to plaintiff's assertion that it had been prejudiced, the Court stated:

> The only true prejudice to [respondent] is that he will now have to go back and try the case on the merits. But since the law strongly favors trial and disposition on the merits, there is no prejudice. *Id.* at 822.

* * * * * *

Furthermore, it does not appear Kindred is completely without fault here. As noted above, Kindred mishandled Ann's insurance claims and records. But for Hospital's negligence, Blue Cross and/or Medi-Cal would have paid the entire cost of

Ann's in-patient care. If Kindred had adequately investigated the situation, the underlying lawsuit would never have been filed.

In addition, the method by which Kindred pursued the underlying action indicates a lack of good faith. A review of the settlement documents drafted by Kindred's counsel, for example, reveals they are clearly deficient in many respects. Of course, most of those deficiencies are weighted heavily in favor of Hospital and against Plaintiffs. The following are examples of the terms of the agreement which make it unfair, one-sided, unconscionable, and inequitable:

- The judgment imposes personal liability upon Ann and the Trust despite the fact that Ann's inpatient care was fully covered by Harold's insurance.

- The judgment imposes personal liability upon Ann and the Trust despite the fact that Arnold (at Kindred's urging) had also applied on Ann's behalf for Medi-Cal benefits. Kindred had, in fact, received Medi-Cal payments on behalf of Ann. Any a gap in payments from Blue Cross was therefore fully covered by Medi-Cal and was precluded by law from seeking reimbursement from Ann or her Trust. See *Parnell v. Adventist Health System/West* (12005) 35 Cal.4th 595, 608-609.

- The settlement agreement purports to garnish Ann's social security benefits which are exempt from collection by any creditor under *both* federal and California law. 42 U.S.C. §402; Code of Civil Procedure §704.080.

- The judgment purports to impose personal liability upon Arnold and Judy even though under California law, a patient's children are not personally liable for their parents' hospital debts.

- The settlement agreement provides for the transfer the Shimsky family home on Essex Avenue even though it is protected from execution under California law. Code of Civil Procedure §704.730.

- The agreement does not contain the acknowledgment, waiver and mutual release of claims recommended in California Civil Code §1542.[8] (AA040-064)

In considering a motion to set aside a judgment, the courts look "with disfavor upon a party who, regardless of the merits of his case, attempts to take advantage of the mistake, surprise, inadvertence, or neglect of his adversary." *Bice v. Stevens*, supra, 160 Cal.App.2d at 233.

> [T]he doctrine that he who seeks equity must do equity means that the party asking the aid of the court must stand in conscientious relation towards his adversary; that the transaction from which his claim arises must be fair and just and that the relief itself must not be harsh and oppressive upon the defendant. And that specific performance will always be refused when a contract itself is unfair, one-sided, unconscionable, or affected by any other such inequitable feature, and when specific enforcement would be oppressive upon the defendant, or would prevent the enjoyment of his own rights, or would in any other manner work injustice. *Jacklich v. Baer* (1943) 57 Cal.App.2d 684, 693.

## C. **Under the Circumstances of this Case, the Public Policy Favoring Trials on the Merits Takes Precedence Over the Policy In Favor of Settlements.**

Where the application of law to fact requires the court to make value judgments about the law and its policy underpinnings, the appellate court may review the trial court's determination independently. *U.S. v. McConney* (9th Cir. 1984) 728 F.2d 1195,

---

[8] As noted above, the trial court may reject a stipulation that is patently unfair, illegal or contrary to public policy. *Mary R. v. B. & R. Corp.* (1983) 149 Cal.App.3d 308, 316-317.

1205 [overruled on other grounds, *Estate of Merchant v. C.I.R.*, 947 F.2d 1390 (9th Cir.1991)].

Under Section 664.6, the court is called upon to balance a number of competing public policies, including: (1) the public policy favoring a trial on the merits discussed above; (2) the public policy favoring stipulated settlements which result in the end of expensive and time-consuming litigation; and (3) strong policy favoring deference to the trial court on discretionary rulings.

✓ As previously noted, public policy favors a trial on the merits. *Rappleyea v. Campbell*, supra, 8 Cal.4th at 980. If the Court has any doubts in granting relief from a tainted judgment, they must be resolved in favor of the party seeking relief because the law strongly favors trial and disposition on the merits. *Elston v. City of Turlock*, supra, 38 Cal.3d at 233.

✓ As to the policy favoring settlements, "a stipulated settlement is not so important ... that it ... must be supported at all costs." *Roth v. Morton's Chefs Services, Inc.* (1985) 173 Cal.App.3d 380, 385.

For example, the public policy favoring the settlement of litigation does not excuse a settlement provision that is illegal, contrary to public policy, or unjust. *Timney v. Lin* (2003) 106 Cal.App.4th 1121, 1129; *Nicholson v. Barab* (1991) 233 Cal.App.3d 1671, 1683. A settlement judge cannot shield an otherwise unjust stipulation from invalidation by simply "approving" the settlement agreement. *California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1990) 50 Cal.3d 658, 664; *Timney v. Lin*,

supra, 106 Cal.App.4th at 1129; *Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 12-13. Likewise, a court cannot bestow validly on an unjust judgment or order simply because "the parties agree to it." *Timney v. Lin*, supra, 106 Cal.App.4th at 1129; *Plaza Hollister Ltd. Partnership v. County of San Benito*, supra, 72 Cal.App.4th at 12-13.

To the extent review of the **fairness** of the agreement deters settlements, at least one court has labeled this result a *good thing* in that the only settlements it should deter are those that are unjust or ignore the public interest. *Consumer Advocacy Group, Inc. v. Kintetsu Enterprises of America* (2006) 141 Cal.App.4th 46, 63.

And finally, "[a]lthough the law favors settlements [citation], it only favors ***authorized*** settlements." *Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 260. Where (as here) it appears that the defendants did not in point of fact consent to the compromise, the resulting decree should, in the interest of justice, be set aside and the defendants given an opportunity to have the respective rights of themselves and the plaintiff tried and adjudicated. *Kelsey Co. v. Spears* (1918) 37 Cal.App. 27, 33; *Bice v. Stevens*, supra, 160 Cal.App.2d at 233 ["The gist of plaintiffs' motion was that without their knowledge or consent they were deprived of their day in court to litigate their claim on the merits."]

✓ As to the appellate court's deference to the trial court on discretionary matter, it must be remembered that "the trial court's discretion is not unlimited and must be exercised in conformity with the spirit of the law and in a manner to subserve and not to

impede or defeat the ends of substantial justice." *Elston v. City of Turlock*, supra, 38 Cal.3d at 233. Where, as here, the strong policy in favor of trial on the merits conflicts with the general rule of deference to the trial court's exercise of discretion, the policy favoring trial on the merits prevails. *Id.* at 235.

In sum, the policies favoring settlement, finality of judgments, appellate deference and expediency of process are all "*less powerful* than [the policy] which seeks to dispose of litigation on the merits rather than on procedural grounds. [citations] *Daley v. County of Butte*, supra, 227 Cal.App.2d at 389-390 (emphasis added).

## V.

## A SETTLEMENT AGREEMENT CANNOT BE ENFORCED AGAINST A NON-PARTY USING CODE OF CIVIL PROCEDURE § 644.6.

As noted above, Judy Loprieno was not named as a defendant in Hospital's collection action. At the time of the so-called settlement, Judy was not represented by Garcia, or any other attorney. According to the case law presented by Arnold in his motion to set aside, the judgment **was beyond the trial court's jurisdiction under Section 644.6** because it compels the transfer of an asset in which Judy (an unnamed party) has a substantial interest. See *Wackeen v. Malis* (2002) 97 Cal.App.4th 429, 438-439.

Despite this jurisdictional flaw, the trial court sustained the judgment on the grounds that "Loprieno is not a party to the settlement agreement," and "[the settlement agreement] expressly only applies to the parties to this action." (AA793) The court

then went on to say, "As the judgment is final and this action is concluded, Judy Loprieno's attempt to intervene is DENIED as moot." (AA793)

The trial court's ruling makes no sense. Obviously, if the judgment is carried into effect, it will impact Judy's interests (whether Judy is a party to the action or not). A trial court cannot avoid the jurisdictional limitations on its power by "simply ignoring" the effect of its order. See *Morite of California v. Superior Court* (1993) 19 Cal.App.4th 485, 492. And a nonsensical order cannot provide an adequate basis for an otherwise unauthorized judgment. See *Diesel Electric Sales & Service, Inc. v. Marco Marine San Diego, Inc.* (1993) 16 Cal.App.4th 202, 213, fn. 3 [trial court's "illogical" finding provides no support for the judgment].[9]

In *Tokio Marine & Fire Ins. Corp. v. Western Pacific Roofing Corp.* (1999) 75 Cal.App.4th 110, the underlying action involved a dispute between a general contractor and roofing contractor regarding responsibility for damages caused by a fire at a construction site. While litigation between the general contractor and the roofing contractor was pending, the parties and their insurers entered into a series of agreements/stipulations regarding the allocation of insurance payments according to the fault of their insureds. When a coverage dispute erupted between the general contractor and its insurer (the Underwriters), the trial court invoked Section 664.6 to enter judgment against the insurer based on the pervious agreements/stipulations.

[9] The Court reviews jurisdictional issues *de novo*. *Simons v. Steverson* (2001) 88 Cal.App.4th 693, 711.

On appeal, the Court reversed the judgment as follows:

> Although the insurer insured a party to this action, the insurer itself was not a party and no basis appears on which it could be summarily named as a judgment debtor. We therefore reverse. *Id.* at 113.

In response to the respondent's contention that the trial court properly entered judgment against the Underwriters pursuant to section 664.6, the Court stated:

> [Section 664.6] merely provides that '[i]f parties to pending litigation stipulate ... for settlement of the case ... the court, upon motion, may enter judgment pursuant to the terms of the settlement.' [Citation.] The Underwriters were not parties to the litigation; section 664.6 therefore does not apply. *Id.* at 119.

The Court also rejected respondent's argument that the Underwriters, by entering into the stipulation, had agreed to abide by the results of this litigation in certain respects:

> [B]y becoming parties to such a contract, the Underwriters did not thereby automatically become parties to this litigation. This litigation was an action to determine fault for the fire as between the general contractor and the roofing contractor. The Underwriters themselves did not assert any claim in this action, and no litigant sued the Underwriters in this litigation to determine any issue whatsoever. *Id.*

The Court explained:

> For over 50 years California has recognized that a judgment may not be entered either for or against one who is not a party to an action or proceeding.... Rendering a judgment for or against a nonparty to a lawsuit may constitute denial of due process under the United States and California Constitutions.... Due process is denied because the non-joined party has not been given notice of the proceedings or

> an opportunity to be heard.... Notice and a chance to be heard are essential components to the trial court's jurisdiction and for due process. Without jurisdiction over the parties, an in personam judgment is invalid. *Id.* at 121 (internal quotes and citations omitted).

Likewise, in *Kirby v. Southern California Edison Co.* (2000) 78 Cal.App.4th 840, the plaintiff's son was electrocuted as the result of Edison's negligence. Shortly after the incident, Edison secured a signed release from plaintiff in return for a small sum of money "to help bury her son." After consulting a lawyer, plaintiff filed suit against Edison. In response to plaintiff's action, Edison moved to enforce its previous "settlement" under Section 644.6. The trial court granted the motion and entered judgment.

The Court of Appeal reversed, noting that Section 644.6 "refers to settlements by 'parties to pending litigation' who 'stipulate ... for settlement of the case.'" *Id.* at 844. According to the Court, "That language is clear and unambiguous. As used in section 664.6, the term "parties" means "litigants." *Id.*

The Court explained, Section 644.6 is limited to "settlement agreements entered into *after* litigation has been filed," because "the parties to that litigation are generally represented by counsel" and therefore "less likely" to misunderstand their rights. *Id.* at 845-846.

> Here, the release agreement that Edison moved to enforce, and that the trial court specifically enforced by granting that motion, was not entered into between "parties to pending litigation ...." *Id.* at 844.

> [B]ecause Kirby and Edison were not, at the time the release was executed, parties to any pending litigation that the release was intended to resolve, Edison may not employ the summary procedures afforded by section 664.6 to determine the enforceability of that release. *Id.* at 846.

In the present case, Judy's connection to the underlying litigation is even more tenuous than that of the Underwriters in *Tokio Marine*. Not only is Judy a non-party in this litigation, there is no basis upon which Judy might be held liable for the underlying debt. In any event, *Tokio Marine* and *Kirby* confirm that the fact that Judy is not a named party in this case cannot be ignored simply because Judy allegedly signed the settlement agreement.

## CONCLUSION

Based on the forgoing, Appellants ask the Court to reverse the trial court's order denying Appellants' motion to set aside the judgment.

DATED: 12/17/07

NIDDRIE, FISH & BUCHANAN LLP

By: ____________________
David A. Niddrie

# CERTIFICATE OF COMPLIANCE

Pursuant to California Rules of Court, rule 8.204(c)(1), I certify that the accompanying Appellant's Opening Brief contains 13,962 words as counted by the Corel WordPerfect Version 11 Program.

DATED: December 17, 2007

NIDDRIE, FISH & BUCHANAN LLP

By:____________________________________

David A. Niddrie

THC - Orange County v. Shimsky, et al.

4th DCA No. D051424
San Diego County Superior Court Case No.GIC871356

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

I am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action; my business address is 750 B Street, Suite 2640, San Diego, California 92101.

On December 17, 2007, I served the foregoing documents described as:

**APPELLANT'S OPENING BRIEF**
**and**
**APPELLANT'S APPENDIX (Respondent Only)**

on all interested parties in this action.

___ by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list:

_X_ by placing ___ the original _X_ a true copy thereof enclosed in sealed envelopes addressed as follows:

**SEE ATTACHED MAILING LIST**

_X_ BY MAIL

___ I deposited such envelope in the mail at San Diego, California. The envelope was mailed with postage thereon fully prepaid.

_X_ As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at San Diego, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after day of deposit for mailing in affidavit.

Executed on December 17, 2007 at San Diego, California.

David A. Niddrie

THC - Orange County v. Shimsky, et al.

4th DCA No. D051424
San Diego County Superior Court Case No.GIC871356

**SERVICE LIST**

| | |
|---|---|
| Alexander F. Giovanniello<br>Karen Bocker<br>Giovannieloo & Michels, LLP<br>1470 South Valley Vista Drive., Suite 200<br>Diamond Bar, California 91765 | Respondent |
| Office of the Clerk<br>California Supreme Court<br>Ronald Reagan Bldg.<br>300 So. Spring Street, 2nd Floor<br>Los Angeles, CA 90013 | FOUR COPIES (brief only) |
| Clerk,<br>Superior Court of California<br>330 West Broadway<br>San Diego, CA 92101 | Trial Court (brief only) |

**COURTESY COPIES**

| | |
|---|---|
| Ms. Judy Loprieno<br>7509 Flower Meadow Drive<br>San Diego, California 92126 | (brief only) |
| Mr. Arnold Shimsky<br>1255 Essex Street<br>Imperial Beach, California 91932 | (brief only) |
| Eugene P. Yale, Esq.<br>David Baumgarten, Esq.<br>YALE & BAUMGARTEN<br>5030 Camino de la Siesta, Suite 308<br>San Diego, CA 92108 | Trial Counsel (brief only) |

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within entitled action; my business address is 1470 South Valley Vista Drive, Suite 200, Diamond Bar, California 91765.

On **May 9, 2008,** I served the foregoing document(s) described **DEFENDANT THC-ORANGE COUNTY, INC., dba KINDRED HOSPITAL – SAN DIEGO'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT AGAINST IT PURSUANT TO RULE 12(b)(6),** by placing the true copies thereof enclosed in sealed envelopes address as follows:

Eugene P. Yale
David W. Baumgarten
YALE & BAUMGARTEN, LLP
5030 Camino de la Siesta, Suite 308
San Diego, California 92108
Tel: (619) 220-8790
Fax: (619) 220-0369
Attorneys for Plaintiff

**(XX)** BY MAIL: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles California in the ordinary course of business.

( ) BY PERSONAL SERVICE: I delivered such envelope(s) by hand to the office(s) of the above addressee(s).

( ) BY FEDERAL EXPRESS: I caused said envelope(s) to be sent by Federal Express to the above address(es).

( ) BY TELECOPIER: I caused said document(s) to be transmitted by telecopier at approximately 3:00 P.M. to the above address(s).

Executed on **May 9, 2008,** at Diamond Bar, California.

**(XX)** STATE:I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Melissa Kuylen