KAREN P. HEWITT
United States Attorney
CINDY M. CIPRIANI
Assistant United States Attorney
California Bar No. 144402
U.S. Attorney's Office
Southern District of California
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7390
Facsimile: (619) 557-5004
Email: cindy.cipriani@usdoj.gov

Attorneys for Defendant
U.S. Office of Personnel Management

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNOLD SCHIMSKY, as Trustee of ANN P. SCHIMSKY TRUST and representative of ANN P. SCHIMSKY, deceased,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OFFICE OF PERSONNEL MANAGEMENT; THC-ORANGE COUNTY, INC., dba KINDRED HOSPITAL SAN DIEGO<br><br>Defendant. | Case No.: 07cv2432 H (LSP)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT UNITED STATES OFFICE OF PERSONNEL MANAGEMENT'S MOTION TO DISMISS<br><br>DATE: September 2, 2008<br>TIME: 10:30 a.m.<br>CTRM: 13<br>JUDGE: Hon. Marilyn Huff |

TOPICAL INDEX


| | | | | Page |
|---|---|---|---|---|
| TABLE OF AUTHORITIES | | | | ii |
| I | INTRODUCTION | | | 1 |
| II | FACTUAL BACKGROUND | | | 2 |
| | A. | OVERVIEW OF THE FEDERAL EMPLOYEES HEALTH BENEFITS PROGRAM | | 2 |
| | B. | PLAINTIFF'S FIRST AMENDED COMPLAINT | | 5 |
| III | ARGUMENT | | | 5 |
| | A. | RELEVANT LEGAL STANDARDS | | 5 |
| | | 1. | Rule 12(b)(1) Motion for Lack of Subject Matter Jurisdiction | 5 |
| | | 2. | Rule 12(b)(6) Motion for Failure to State a Claim | 7 |
| | B. | THE COURT LACKS JURISDICTION OVER THE FIRST CAUSE OF ACTION AND IT FAILS TO STATE A VIABLE CLAIM BECAUSE PLAINTIFF HAS NOT EXHAUSTED ADMINISTRATIVE REMEDIES | | 7 |
| | C. | THE SECOND CAUSE OF ACTION SUFFERS FROM THE SAME DEFECTS | | 9 |
| V | CONCLUSION | | | 11 |

# TABLE OF AUTHORITIES


| Cases | Page |
|---|---|
| American Federation of Government Employees v. Devine, 525 F. Supp. 250 (D.D.C. 1981) | 2, 10 |
| Balistreri v. Pacifica Police Department, 901 F.2d 696 (9th Cir.1988) | 7 |
| Bell Atlantic Corp. v. Twombly, ---, U.S. -- 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) | 7 |
| Botsford v. Blue Cross and Blue Shield of Montana, Inc., 314 F.3d 390 (9th Cir. 2002) | 8 |
| Bridges v. Blue Cross and Blue Shield Association, 935 F. Supp. 37 (D.D.C. 1996) | 10 |
| Bryan v. Office of Personnel Management, 165 F.3d 1315 (10th Cir. 1999) | 7 |
| Burgin v. Office of Personnel Management, 120 F.3d 494 (4th Cir. 1997) | 9 |
| Carney v. Resolution Trust Corp., 19 F.3d 950 (5th Cir. 1994) | 6 |
| Caudill v. Blue Cross & Blue Shield of North Carolina, 999 F.2d 74, 80 (4th Cir. 1993) | 2, 10 |
| Cedars-Sinai Medical Center v. National League of Postmasters of U.S., 497 F.3d 972 (9th Cir. 2007) | 8 |
| Claremont Aircraft, Inc. v. U.S., 420 F.2d 896 (9th Cir. 1969) | 6 |
| Conley v. Gibson, 355 U.S. 41 (1957) | 7 |
| Duplan v. U.S., 188 F.3d 1195 (10th Cir. 1999) | 9 |
| Dyer v. Blue Cross & Blue Shield Association, 848 F.2d 201 (D.C. Cir.1988) | 10 |
| General Atomic Co. v. United Nuclear Corp., 655 F.2d 968 (9th Cir. 1981) | 5 |
| Gilbert v. DaGrossa, 756 F.2d 1455, 1458 (9th Cir. 1985) | 6 |
| Hawaii v. Gordon, 373 U.S. 57 (1963) | 6 |

TABLE OF AUTHORITIES (Continued)


| Cases | Page |
|---|---|
| Hutchinson v. United States, 677 F.2d 1322 (9th Cir. 1982) | 6 |
| Jerves v. United States, 966 F.2d 517 (9th Cir. 1992) | 6 |
| Kokkonen v. Guardian Life Insurance Co. of America, 511 U.S. 375 (1994) | 5 |
| Lehman v. Nakshian, 453 U.S. 156 (1981) | 6 |
| McNeil v. U.S., 508 U.S. 106 (1993) | 9 |
| Meyers v. U.S., 767 F.2d 1072 (4th Cir.1985) | 10 |
| Morongo Band of Mission Indians v. California State Board of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988) | 6, 9 |
| Multimedia Patent Trust v. Microsoft Corp., 525 F. Supp. 2d 1200 (S.D. Cal. 2007) | 7 |
| National Federation of Federal Employees v. Devine, 679 F.2d 907 (D.C. Cir. 1981) | 3 |
| Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365 (1978) | 5 |
| Sommatino v. U.S., 255 F.3d 704 (9th Cir. 2001) | 6 |
| Stock West, Inc. v. Confederated Tribes of the Colville Reservation, 873 F.2d 1221, 1225 (9th Cir. 1989) | 5 |
| Thornhill Public Co., Inc. v. General Telephone & Electronics Corp., 594 F.2d 730 (9th Cir. 1979) | 6 |
| United States v. Mitchell, 463 U.S. 206 (1983) | 6 |
| Zamani v. Carnes, 491 F.3d 990 (9th Cir. 2007) | 7 |


///

///

///

TABLE OF AUTHORITIES (Continued)


| Statutes | Page |
|---|---|
| 5 U.S.C. § 8900 | 2 |
| 5 U.S.C. § 8901 | 2 |
| 5 U.S.C. §§ 8902, 8903 | 2 |
| 5 U.S.C. § 8902(d) | 3 |
| 5 U.S.C. §§ 8902(e), 8902a | 2 |
| 5 U.S.C. § 8902(j) | 4 |
| 5 U.S.C. § 8902(m)(1) | 4 |
| 5 U.S.C. § 8903(1) | 3 |
| 5 U.S.C. § 8907 | 3 |
| Rules and Regulations | |
| 52 Fed. Reg. 16032 (May 1, 1987) | 3 |
| 61 Fed. Reg. 15177, 15179 (April 5, 1996) | 4 |
| Fed. R. Civ. P. 12(b)(1) | 5 |
| Fed. R. Civ. P. 12(b)(6) | 7 |
| Fed. R. Civ. P. 12(h)(3) | 6 |
| 5 C.F.R. §§ 102-104 | 3 |
| 5 C.F.R. § 890.105 | 4, 7, 8 |
| 5 C.F.R. § 890.107 | 4 |
| 5 C.F.R. § 890.107(c) | 8 |
| 5 C.F.R. § 890.107(d)(1) | 7, 8 |
| 5 C.F.R. § 890.107(d)(2) | 10 |
| 5 C.F.R. § 890.107(d)(3) | 4 |
| 5 C.F.R. § 890.301(d) | 3 |
| 48 C.F.R. Chapter 1 | 3 |
| Other Sources | |
| H.R. Rep. No. 957, 86th Cong., 1st Sess. 4, reprinted in 1959 U.S.C.C.A.N. 2913, 2916 | 3 |

KAREN P. HEWITT
United States Attorney
CINDY M. CIPRIANI
Assistant United States Attorney
California Bar No. 144402
U.S. Attorney's Office
Southern District of California
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7390
Facsimile: (619) 557-5004
Email: cindy.cipriani@usdoj.gov

Attorneys for Defendant
U.S. Office of Personnel Management

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNOLD SCHIMSKY, as Trustee of ANN P. SCHIMSKY TRUST and representative of ANN P. SCHIMSKY, deceased,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OFFICE OF PERSONNEL MANAGEMENT; THC-ORANGE COUNTY, INC., dba KINDRED HOSPITAL SAN DIEGO<br><br>Defendant. | Case No.: 07cv2432 H (LSP)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT UNITED STATES OFFICE OF PERSONNEL MANAGEMENT'S MOTION TO DISMISS<br><br>DATE: September 2, 2008<br>TIME: 10:30 a.m.<br>CTRM: 13<br>JUDGE: Hon. Marilyn Huff |

I.

INTRODUCTION

Plaintiff, the Trustee of the Ann P. Schimsky Trust and representative of Ann P. Schimsky[1/] ("Schimsky"), deceased, brings this action against the United States Office of Personnel Management ("OPM") in its capacity as administrator of the Federal Employees Health Benefits Program ("FEHBP"). According to the complaint, Schimsky, an enrollee in the FEHBP until her death, received covered health care services for which payment is owed but has not been made by her health insurer carrier, Blue Cross and Blue Shield of California ("Blue Cross" or "the carrier"), a carrier in the FEHBP.

[1/] The enrollee's last name is spelled differently in the caption and the body of the complaint. For the sake of consistency, the instant brief adopts Schimsky as the proper spelling.

Plaintiff's First Amended Complaint alleges claims against OPM for recovery of health insurance benefits under 5 U.S.C. § 8900 et seq (first cause of action) and for tolling of the disputed claims process and a stay of the instant action against OPM (second cause of action). Compl., ¶¶6-12. Both claims should be dismissed because the Court lacks jurisdiction and Plaintiff has not stated a claim upon which relief can be granted.

## II.

## FACTUAL BACKGROUND

### A. OVERVIEW OF THE FEDERAL EMPLOYEES HEALTH BENEFITS PROGRAM

The FEHBP was created by the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. § 8901 et seq., to "provide Federal employees a measure of protection . . . against the high, unbudgetable, and . . . financially burdensome costs of medical service through a comprehensive Government-wide program of insurance and to assure that federal employee health benefits are equivalent to those available in the private sector so that the federal government can compete in the recruitment and retention of competent personnel." American Federation of Gov't Employees v. Devine, 525 F. Supp. 250, 252 (D.D.C. 1981). The FEHBA is a comprehensive statute regulating Federal employee health benefit plans. It establishes qualifications for carriers and requires certain benefit types, levels and rates. See 5 U.S.C. §§ 8902, 8903.

In the FEHBA, Congress expressly delegated authority to OPM to negotiate health benefit contracts with carriers, to promulgate regulations and, in general, to administer the program. Id. at 8902, 8913. The government pays the majority of plan premiums. Id. at 8906, 8909. Further, FEHBA contracts are government procurement contracts negotiated between qualified carriers and OPM. The Federal employee does not enter into a separate contract with the carrier, but rather is a third-party beneficiary of the OPM-carrier contract. See Caudill v. Blue Cross & Blue Shield of North Carolina, 999 F.2d 74, 76 (4th Cir. 1993).

Congress has also authorized OPM to prescribe minimum standards of conduct for FEHBA carriers and to withdraw plan approval should carriers fail to discharge their duties. See 5 U.S.C. §§ 8902(e), 8902a. Pursuant to FEHBA, Congress authorized OPM to decide the benefits and

exclusions in FEHBA plans and to negotiate and contract for benefits, including maximums, limitations and exclusions it considers necessary or desirable. 5 U.S.C. § 8902(d); National Federation of Federal Employees v. Devine, 679 F. 2d 907, 912 (D.C. Cir. 1981). OPM makes available to each individual eligible to enroll in a health benefits plan under [the FEHBA] such information,… as may be necessary to enable the individual to exercise an informed choice among the plans competing in the FEHBP's open season that year. See 5 U.S.C. § 8907 and 5 C.F.R. § 890.301(d). The FEHBA also requires that enrollees be provided with a Statement of Benefits, also known as the Plan Brochure, setting forth the plan's benefits, including maximums, limitations, and exclusions for the ensuing plan year, the procedure for obtaining benefits, and the principal provisions of the plan affecting the enrollee and any eligible family members. Id. at 8907(b). The Statement of Benefits is incorporated by reference into the contract between OPM and the plan's carrier and is the official and exclusive description of the plan benefits. This competitive system allows an employee "to exercise independent judgment and obtain the plan which best suits his or her individual needs or family circumstances." H.R. Rep. No. 957, 86th Cong., 1st Sess. 4, reprinted in 1959 U.S.C.C.A.N. 2913, 2916.

One of the plans offered as part of the FEHBP is called the Service Benefit Plan ("SBP"). 5 U.S.C. § 8903(1). The SBP is defined as "[o]ne Government-wide plan, which may be underwritten by participating affiliates licensed in any number of States, offering two levels of benefits, under which payment is made by the carrier under contracts with physicians, hospitals, or other providers of health services" for covered services. Id. OPM contracts for the SBP with the Blue Cross and Blue Shield Association, which acts on behalf of the local participating Blue Cross and Blue Shield plans that provide coverage in various geographic service areas across the nation. Because this contract is a Federal procurement contract of the United States, it is subject to extensive Federal procurement regulations. See 48 C.F.R. Chapters 1 and 16; 52 Fed. Reg. 16032 (May 1, 1987). Federal employees do not contract for health benefits with the Blue Cross and Blue Shield Association or with the individual participating Blue Cross and Blue Shield plans. Rather, they enroll in a plan approved by OPM, pursuant to OPM regulations. 5 C.F.R. §§ 102-104, and subparts C, D, and K.

///

In 1974, Congress mandated that every FEHBA contract contain an obligation that the FEHBA "carrier agree to pay for or provide a health service or supply in an individual case if [OPM] finds that the employee, annuitant, family member . . . is entitled thereto under the terms of the contract". 5 U.S.C. § 8902(j). To implement this statutory provision, OPM established an administrative procedure for resolution of benefit claims disputes between FEHBA carriers and covered individuals or their assignees (the "disputed claims process"). See 5 C.F.R. § 890.105.

5 C.F.R. § 890.105(a) provides as follows:

> Each health benefits carrier resolves claims filed under the plan. All health benefits claims must be submitted initially to the carrier of the covered individual's health benefits plan. If the carrier denies a claim (or a portion of a claim), the covered individual may ask the carrier to reconsider its denial. If the carrier affirms its denial or fails to respond as required by paragraph (c) of this section, the covered individual may ask OPM to review the claim. A covered individual must exhaust both the carrier and OPM review processes specified in this section before seeking judicial review of the denied claim.

Enrollees who seek judicial review of OPM's decision must bring their suit against OPM and not against the carrier. See 5 C.F.R. § 890.107, 61 Fed. Reg. 15177, 15179 (April 5, 1996). OPM decisions on disputed claims are subject to judicial review under the "arbitrary and capricious" standard of the APA, and are limited to the administrative record that was before the agency when it made its decision. See 5 C.F.R. § 890.107(d)(3).

The terms of a contract between a health benefits carrier and OPM, including a plan's Statement of Benefits, which is incorporated into the contract by reference, preempts inconsistent state law. To that effect, Congress has enacted a preemption provision in the FEHBA, which reads as follows:

> The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans to the extent that such law or regulation is inconsistent with such contractual provisions.

5 U.S.C. § 8902(m)(1). FEHBA's preemption provision works in tandem with OPM's mandatory disputed claims process to ensure that FEHBA plan determinations are consistent and uniform, regardless of where the covered individual lives or works or where the claim is filed.

B. PLAINTIFF'S FIRST AMENDED COMPLAINT[2/]

On July 19, 2002, Ann P. Schimsky, the enrollee, was admitted to Kindred Hospital, a licensed acute care hospital owned and operated by defendant THC-Orange County, Inc., a California corporation ("Kindred"), where she received acute care, including ventilator care, until her death. Compl. ¶2. According to Plaintiff, Kindred has sued Schimsky, the Ann Schimsky Trust, and Schimsky's son, individually and as trustee of the trust, to recover $2,380,409.04 for medical services provided to Schimsky which the carrier has not paid. Compl. ¶3.

Plaintiff does not know whether the carrier has processed the instant claims and, if so, whether it has approved or denied them. Compl. ¶4. Plaintiff claims he was advised by the carrier that coverage is available but the carrier awaits medical documentation from Kindred before it can process the claims. Id. The complaint does not identify the specific claims, including the dates of service, that are the subject of this dispute. Moreover, it does not allege exhaustion of OPM's administrative procedures for resolving disputes in the event a carrier denies coverage.

III

ARGUMENT

A. RELEVANT LEGAL STANDARDS

1. Rule 12(b)(1) Motion for Lack of Subject Matter Jurisdiction

It is a fundamental principle that federal courts are courts of limited jurisdiction. Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." General Atomic Co. v. United Nuclear Corp., 655 F.2d 968, 968-69 (9th Cir. 1981). The burden rests on the party asserting federal subject matter jurisdiction to prove its existence. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994); Stock West, Inc. v. Confederated Tribes of the Colville Reservation, 873 F.2d 1221, 1225 (9th Cir. 1989). Accordingly, although the Complaint is to be construed liberally, argumentative inferences favorable to the pleader will not be drawn. Stock West, 873 F.2d at 1225. Where the jurisdiction issue is inseparable from the merits of the case, the Court "may consider the

[2/] The facts set forth herein are drawn from the First Amended Complaint; they are assumed to be true solely for purposes of this motion.

evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." Thornhill Pub. Co., Inc. v. General Telephone & Electronics Corp., 594 F.2d 730, 733 (9th Cir. 1979). Subject matter jurisdiction is determined at the time the complaint is filed. Carney v. Resolution Trust Corp., 19 F.3d 950, 954 (5th Cir. 1994); see also Morongo Band of Mission Indians v. California State Board of Equalization, 858 F.2d 1376 (9th Cir. 1988) (federal subject matter jurisdiction is a threshold issue that goes to the power of the court to hear the case, so subject matter jurisdiction must exist at the time the action commences).

The United States is a sovereign nation, and as such, it may not be sued absent consent. See Lehman v. Nakshian, 453 U.S. 156, 160 (1981); Gilbert v. DaGrossa, 756 F.2d 1455, 1458 (9th Cir. 1985). If the United States has not consented to the suit, subject matter jurisdiction is lacking and the complaint must be dismissed. See Fed. R. Civ. P. 12(h)(3); United States v. Mitchell, 463 U.S. 206, 212 (1983); Gilbert, 756 F.2d at 1458. This immunity protects not only the United States but its agencies, agents and officers. See Hawaii v. Gordon, 373 U.S. 57, 58 (1963); Gilbert, 756 F.2d at 1458; Hutchinson v. United States, 677 F.2d 1322, 1327 (9th Cir. 1982).

Significantly, specific administrative prerequisites designed to facilitate agency resolution of an issue prior to suit are generally considered jurisdictional because the Government's consent to be sued is premised upon adherence to the prerequisites. For example, a tort claimant cannot sue under the Federal Tort Claims Act until administrative claim prerequisites have been fully satisfied. As the Ninth Circuit noted in Jerves v. United States, 966 F.2d 517, 520 (9th Cir. 1992), such requirements encourage administrative settlement of issues and thereby prevent unnecessary burdening of the courts. As such, allowing a party to foreclose administrative resolution by filing an early suit in district court "would run completely counter to this purpose." Id. Accordingly, the Ninth Circuit has found that where the statutory language governing administrative requirements is clear, the court cannot "enlarge that consent to be sued which the Government, through Congress, has undertaken so carefully to limit." Id. at 521, quoting Claremont Aircraft, Inc., v. U.S., 420 F.2d 896, 898 (9th Cir. 1969). Similarly, in the Title VII context, a claimant who does not exhaust regulatory administrative processing requirements is prevented from filing suit in district court. See Sommatino v. U.S., 255 F.3d 704, 708 (9th Cir. 2001) ("substantial

compliance with the presentment of discrimination complaints to an appropriate administrative agency *is* a jurisdictional prerequisite. . . . In cases where a plaintiff has never presented a discrimination complaint to the appropriate administrative authority, we have held that the district court does not have subject matter jurisdiction.”).

2. Rule 12(b)(6) Motion for Failure to State a Claim

A motion filed under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a claim. Multimedia Patent Trust v. Microsoft Corp., 525 F. Supp. 2d 1200, 1212 (S.D. Cal. 2007), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957), abrogated on other grounds; Bell Atlantic Corp. v. Twombly, --- U.S. ----, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Rule 12(b)(6) permits dismissal of a claim either where that claim lacks a cognizable legal theory, or where insufficient facts are alleged to support the claim's theory. See Balistreri v. Pacifica Police Dep’t, 901 F.2d 696, 699 (9th Cir.1988). While a plaintiff need not present detailed factual allegations to survive a motion to dismiss, a party’s obligation to provide the grounds of its entitlement to relief requires “more than labels and conclusions” or a “formulaic recitation of the elements of a cause of action”. Bell Atlantic, 127 S.Ct. at 1964-65. Dismissal is proper if a complaint is vague, conclusory, and fails to set forth any material facts in support of the allegation. Zamani v. Carnes, 491 F.3d 990, 996 (9th Cir. 2007).

B. THE COURT LACKS JURISDICTION OVER THE FIRST CAUSE OF ACTION AND IT FAILS TO STATE A VIABLE CLAIM BECAUSE PLAINTIFF HAS NOT EXHAUSTED ADMINISTRATIVE REMEDIES

FEHBP regulations specifically require the exhaustion of the disputed claims process as a prerequisite to proceeding with a civil suit on a disputed FEHBP claim. 5 C.F.R. §§ 890.105 and 890.107(d)(1). Significantly, in Bryan v. Office of Personnel Management, 165 F.3d 1315 (10th Cir. 1999), which also involved FEHBP insurance claims, the Tenth Circuit ruled that the district court lacks jurisdiction when the exhaustion requirements set forth in 5 C.F.R. § 890.107(d)(1) are not met because the regulation sets forth terms and conditions pursuant to which the Federal government has granted a limited waiver of sovereign immunity. By way of background, the plaintiff had successfully pursued coverage of a surgery that was initially considered excluded from the policy. Id. at 1317. After the surgery took place, the carrier, Blue Cross, made payments on three surgery-related claims, but did not

reimburse the full amount claimed by Mrs. Bryan, as it deducted sums for noncovered charges, coinsurance payments, and negotiated savings. Id. Mrs. Bryan sued to recover the full benefits claimed and OPM moved to dismiss, arguing that due to lack of exhaustion, sovereign immunity barred the claim. The district court agreed and dismissed the complaint for lack of jurisdiction. Id. at 1318. On appeal, the Tenth Circuit affirmed, holding that:

> While Mrs. Bryan clearly exhausted her administrative remedies in her first appeal regarding the issue of overall *coverage* of her surgery, she never formally appealed Blue Cross' decision to pay only a portion of the claimed expenses. See 5 C.F.R. § 890.105(a) (detailing administrative remedies if a covered individual disputes the carrier's denial of a claim or portion of a claim). Under the federal regulations, a covered individual must submit a request for reconsideration to the carrier in writing and give reasons why the carrier should have approved the denied claim. See 5 C.F.R. § 890.105(c). We do not believe Mrs. Bryan's various requests for information fit within this definition, especially considering that Mrs. Bryan made those requests *before* Blue Cross had made payment on all three claims. Even if those letters did amount to a request for reconsideration to Blue Cross, Mrs. Bryan still failed to request further review by Personnel Management, as required by the regulations. See 5 C.F.R. § 890.105(a)(1) ("A covered individual must exhaust both the carrier and OPM review processes specified in this section before seeking judicial review of the denied claim.") . . . [C]ourts may only review Personnel Management's "*final* action on the denial of a health benefits claim." 5 C.F.R. § 890.107(c) (emphasis added). Because Mrs. Bryan failed to exhaust her administrative remedies, Personnel Management never reviewed Blue Cross' calculation of benefits. As such, there is no "final action" by Personnel Management nor an administrative record for the district court to review.

Id., at 1319; see also Cedars-Sinai Medical Center v. Nat'l League of Postmasters of U.S., 497 F.3d 972, 980 (9th Cir. 2007) ("FEHBA's implementing regulations establish a mandatory administrative remedy that is available to a party who believes that a carrier has wrongfully denied benefits. OPM's finding may be challenged in federal court, but only after exhaustion of this process."); Botsford v. Blue Cross and Blue Shield of Montana, Inc., 314 F.3d 390, 396, 399 (9th Cir. 2002) ("The legislative history surrounding the amendment suggests that Congress wished to allow for the resolution of FEHBA disputes without resort to the courts . . . Requiring beneficiaries to exhaust administrative remedies before proceeding to court, and then to sue the agency that conducted the administrative actions, reinforces the importance and increases the efficiency of the administrative scheme.").

The instant Complaint reflects that the carrier has *not* denied benefits, OPM has *not* had an opportunity to take final action on a denial of benefits claim, and Plaintiff does *not* allege the required exhaustion. Rather, he vaguely states only that he has asked OPM to "intervene" in a dispute and argues

that "invocation of 'The Disputed Claims Process' in the Plan is premature." Compl., ¶¶5, 12. Given the matter's current procedural posture, the Court is forced to guess and speculate about the nature and amounts of the claim or claims in dispute. Moreover, because OPM has not developed the issues and made a final decision, it does not possess an administrative record, which is essential for the Court's consideration of Plaintiff's claims. See Burgin v. Office of Personnel Management, 120 F.3d 494, 497 (4th Cir. 1997). As such, the Court currently faces the exact scenario the exhaustion requirement is intended to avoid: the agency has had no opportunity to either take action to cure an improper denial or to develop a record of the claims and issues in dispute. Because the administrative process has not played itself out, and in light of the sovereign immunity concerns, the district court presently lacks jurisdiction and the complaint fails to state a viable claim as to which the Court can grant relief.

C. THE SECOND CAUSE OF ACTION SUFFERS FROM THE SAME DEFECTS

Plaintiff's second claim asks the Court to take the extraordinary step of issuing an order to "toll or otherwise extend any and all 'Disputed Claims Process' deadlines," and to stay this action for an indefinite term. Essentially, Plaintiff asks the Court to ignore the Complaint's jurisdictional defects and give Plaintiff an unlimited amount of time in which to address them. Jurisdiction, however, is determined at the time an action is filed. Morongo Band, 858 F.2d at 1380 ("Federal subject matter jurisdiction must exist at the time the action is commenced."). A lawsuit filed prior to the exhaustion of a claimant's administrative claim is premature and must be dismissed rather than cured at a later time. McNeil v. U.S., 508 U.S. 106, 113 (1993). In the Federal Tort Claims Act context, for example, a premature complaint cannot be cured through amendment; instead the claimant must file a new suit. Duplan v. U.S. 188 F.3d 1195, 1199 (10th Cir. 1999) (noting that "allowing claimants generally to bring a new suit under the FTCA before exhausting their administrative remedies and to cure the jurisdictional defect by filing an amended complaint would render the exhaustion requirement meaningless and impose an unnecessary burden on the judicial system"). Here, Plaintiff's vague, premature, unexhausted complaint should not be permitted to languish in the system indefinitely until Plaintiff unilaterally decides to follow the required regulatory procedures.

///

In addition to asking the Court to disregard compelling jurisdictional defects, Plaintiff's second cause of action requests that it exercise its own independent rather than deferential judgment on tolling, in the absence of any administrative record. A judicial action against the OPM is limited to the deferential standard of review prescribed in the Administrative Procedure Act. See Dyer v. Blue Cross & Blue Shield Ass'n, 848 F.2d 201, 203 (D.C. Cir.1988); Devine, 679 F.2d 907; Bridges v. Blue Cross and Blue Shield Ass'n, 935 F.Supp. 37, 42 (D.D.C. 1996). As the Fourth Circuit noted "[a] district court defers to OPM's interpretation of health benefit contracts unless 'plainly erroneous or inconsistent with the regulation.'" Caudill, 999 F.2d at 80, quoting Meyers v. U.S., 767 F.2d 1072, 1074 (4th Cir.1985) (citation omitted). Given the deferential standard of review, the agency should be afforded the opportunity to compile a complete record and to consider the tolling issue in the first instance.

With regard to the viability, timing-wise, of the claims at issue, the Complaint does not provide any details regarding the dates of service of the disputed claims, other than to say that they relate to services provided to Mrs. Schimsky as an inpatient at Kindred Hospital sometime after her admission on July 19, 2002. To the extent the Complaint is based on disputes related to services provided more than three years before the date this lawsuit was filed, those claims are stale and may not be considered. FEHB regulations provide that a lawsuit based on a disputed claim must be filed in court no later than December 31st of the 3rd year after the year in which the care or services were provided. 5 C.F.R. § 890.107(d)(2). Hence, as this suit was filed on December 31, 2007, claims for services provided before January 1, 2004 fail to state a claim and should not be considered by the Court.

///

///

///

///

///

///

///

///

IV.

CONCLUSION

For all the foregoing reasons, OPM respectfully requests that this court dismiss all causes of action lodged against OPM.

Dated: July 31, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

s/ Cindy M. Cipriani

CINDY M. CIPRIANI
Assistant U.S. Attorney

Attorneys for Defendant
United States Office of Personnel Management