Eugene P. Yale, Esq. SBN 83048
David W. Baumgarten, Esq. SBN 179574
YALE & BAUMGARTEN, LLP
5030 Camino de la Siesta, Ste. 308
San Diego, California 92108
Tel.: (619) 220-8790
Fax: (619) 220-0369

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARNOLD SCHIMSKY, as Trustee of THE ANN P. SHIMSKY TRUST and representative of ANN P. SHIMSKY, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OFFICE OF PERSONNEL MANAGEMENT; THC-ORANGE COUNTY, INC., dba KINDRED HOSPITAL SAN DIEGO,<br><br>Defendants. | CASE NO. 07 CV2432-H(LSP)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT THC-ORANGE COUNTY INC., dba KINDRED HOSPITAL SAN DIEGO'S MOTION FOR DISMISSAL PURSUANT TO RULE 12**<br><br>DATE: September 2, 2008<br>TIME 10:30 a.m.<br>COURTROOM: 13 |

The plaintiff, ARNOLD SCHIMSKY, as Trustee of THE ANN P. SHIMSKY TRUST and representative of ANN P. SHIMSKY, deceased, respectfully submits this memorandum of points and authorities in support of his opposition to defendant THC-Orange County, Inc., dba Kindred Hospital San Diego's motion for dismissal of first amended complaint pursuant to Rule 12.

## INTRODUCTION

Kindred's motion should be denied because it is nothing more than an improper attempt to prejudice the Court by arguing disputed "facts" not found within the four corners of the first amended complaint. Indeed, Kindred seems to think that by painting the plaintiff as a bad actor (which he is not) it can convince the Court that he is not entitled to relief before this case even gets out of the gate. That is not the purpose or function of a Rule 12(b)(6) motion. The purpose and function of a Rule 12(b)(6) motion is to determine whether the facts pleaded, if established, support a valid claim for relief. Purported problems of proof, no mater how unlikely the allegations, are irrelevant on a 12(b)(6) motion. Applying that standard, the first amended complaint states causes of action against Kindred for injunctive relief, breach of fiduciary duty, intentional interference with contract, and negligent interference with contract. Accordingly, the motion to dismiss should be denied.

Having said that, the plaintiff cannot sit idly by while Kindred continues to take cheap shots at him in the pleadings, and therefore offers the following in response to some the false charges leveled against him by Kindred:

Kindred contends that Mr. Schimsky is a professional litigator. He is not. He is a Professor of Mathematics at the University of San Diego. He has a life of his own. Unfortunately, however, his father and brother have passed, and his sister is disabled. He is the sole member of his family able to attend to the affairs of his mother, and he has done his best to abide by his late mother's wishes in every respect. Sadly, carrying out her wishes has resulted in protracted litigation, including the probate action compelling Kindred to honor Mrs. Shimsky's health care directives as set forth in her Durable Power of Attorney for Health Care, a malpractice action against the attorney who failed to protect Mrs. Shimsky's interests (and those of everyone else in the Shimsky family), and now this case.

Kindred suggests that this action barred by the purported settlement agreements in Superior Court case nos. P188885 ("the Probate Action") and GIC8711356 ("the Collection Action"). Not true. Neither settlement agreement contains a general release or any release or waiver of claims pertaining to this action. The purported settlement agreement in the Collection Action (which is disputed on legal and factual grounds and otherwise not final under California Code of Civil Procedure §1049) does not contain any release language in favor of Kindred of any sort. Similarly, Kindred's reference to the settlement agreement in the Probate Action is unavailing. The purported release in the Probate Action is limited to the claims at issue in that action, which were the enforceability of the Durable Power of Attorney for Health Care requiring Kindred to provide life sustaining care and Mr. Schimsky's authority thereunder. The Probate Action did not involve insurance issues and the release in no way precludes the plaintiff from pursuing insurance coverage or claims against Kindred relating to the pursuit of insurance coverage. To the contrary, the settlement agreement specifically provides that "Mr. Schimsky will use his best efforts in coordinating benefits from any third party source, including insurance companies."

Kindred asserts that Mr. Schimsky somehow failed to disclose the existence of a health care directive under the California Natural Death Act in an attempt to dupe it into providing life preserving care. Not true. Mrs. Shimsky's notarized Durable Power of Attorney for Health Care, dated August 10, 2000, was provided to Kindred upon Mrs. Shimksy's admission. That document, as the Probate court found, provides for life saving care, and supercedes the 1998 Declaration Under the California Natural Death Act relied upon by Kindred in its enduring efforts to allow Mrs. Shimsky to die.

Kindred asserts that Mrs. Shimsky's condition stabilized and she "was no longer considered an acute patient." That purported "fact" is absolutely disputed by the plaintiff. Mrs. Shimsky never really "stabilized," and all efforts to transfer her to a sub-acute facility were rejected because of her level of acuity; the sub-acute facilities simply did not have the resources to care for her. Indeed, Mrs. Shimsky's treating physician and case worker never signed-off on the alleged "determination that an acute stay was

no longer medically necessary" or any attempt by Blue Cross to "flex" Mrs. Shimsky's benefits.[1] The plaintiff intends to prove in this case that Mrs. Shimsky did require acute care.

Kindred asserts that Blue Cross considered Mrs. Shimksy a "self pay;" however, Blue Cross, as alleged in the first amended complaint, has never issued a written coverage denial to Mrs. Shimksy or Mr. Schimsky. To the contrary, the Explanation of Benefits ("EOB") forms received by Mr. Schimsky during the period of service in question are coded "535 --We [Blue Cross] have requested additional information about your claim from your provider [Kindred]. We will review your claim as soon as we receive this information." Thus, despite Kindred's assertion that Blue Cross has denied coverage, the plaintiff has not been advised of that alleged "fact".

Kindred asserts that Mr. Schimsky began to perform under the settlement agreement in the Collection Action, but then ceased performance. Again, not accurate. As set forth in the pleadings and on appeal in that case, Mr. Schimsky, after consulting with his sister, who was a necessary party to the settlement under the terms of the Trust, did not consummate the settlement agreement. Mr. Schimsky's former attorney, however, failed to follow Mr. Schimsky's instructions in that regard, resulting in the potential loss of the Shimksy home, which has been in the family since 1955.[2] As a result, Mr. Schimsky was forced to substitute in new counsel into the Collection Action, appeal the adverse ruling enforcing the purported settlement agreement, file a malpractice action against former counsel, and pursue this action.[3]

At bottom, there is nothing nefarious about the plaintiff, the plaintiff's motivations, or the plaintiff's allegations in the first amended complaint. The plaintiff is simply attempting to recover health insurance benefits due under the Plan. Unfortunately, however, the plaintiff has received conflicting information from Kindred and Blue Cross concerning the documentation and processing of the insured's claims. Kindred asserts that it offered to provide information to Blue Cross at some point, but Blue

---

[1] It is also disputed that Mrs. Shimsky "had no coverage" for sub-acute care.

[2] Mr. Schimsky never provided, and Kindred does not possess the original signed settlement agreement.

[3] It appears from preliminary discovery in the malpractice action that former counsel did not and does maintain E&O insurance.

Cross has asserted that it lacks information from Kindred to adjust the claims. The plaintiff has written to OPM as provided by the Plan in an attempt to get OPM to intervene (as it is required to do under the Plan), but OPM has failed to respond. As a result, the plaintiff was forced to file this action to preserve the potential statute of limitations. The plaintiff maintains that Blue Cross is required to pay benefits due under the Plan; however, to the extent OPM may assert Kindred's failure to produce the records as a defense to payment, the plaintiff is seeking alternative relief against Kindred. The plaintiff contends that to the extent the records are necessary to adjust the claims, the Court should issue a mandatory injunction directing Kindred to deliver the records to OPM so that OPM can process and pay the claims. If, however, the delivery of the records is somehow untimely or otherwise insufficient to solve the problem, the plaintiff is seeking damages from Kindred on the theory that, but for the failure to timely produce the records, the claims would have been paid. In either event, the first amended complaint states causes of action against Kindred., and the motion to dismiss should be denied.

## AUTHORITY

## I

## THE COURT SHOULD DENY THE MOTION TO DISMISS

It is well-established that federal pleading requirements are extremely liberal. Conley v. Gibson, 355 US 41, 47-48, 78 S.Ct. 99, 103 (1957). Pleadings are construed liberally in favor of the pleader. Jenkins v. McKeithen, 395 US 411, 421, 89 S.Ct. 1843, 1849 (1969); Imagineering, Inc. v. Kiewitt Pac. Co., 976 F.2d 1303, 1306 (9th Cir. 1992). Indeed, apart from Rule 9 "and a tiny handful of arguably appropriate judicial supplements to it, a plaintiff in a suit in federal court need not plead facts; he can plead conclusions." Jackson v. Marion County, 66 F.3d 151, 153 (7th Cir. 1995); Concha v. London, 62 F.3d 1493, 1503 (9th Cir. 1995) (a claim for breach of fiduciary duty need not be pled with specificity). Thus, while Federal Rule of Civil Procedure 12(b)(6) provides that the court may dismiss an action for failure to state a claim on which relief may be granted, such motions are "viewed with disfavor and is rarely granted." Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982); United States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

In ruling on a motion to dismiss, the court is confined to the allegations in the pleadings and may not consider material outside the face of the complaint, except matters which are properly subject to judicial notice. Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1483 (9th Cir. 1991). Further, the court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn therefrom. United States v. White, 893 F.Supp. 1423, 1428 (CD CA 1995). In other words, the sole issue on a 12(b)(6) motion is whether the facts pleaded, if established, support a valid claim for relief. Problems of proof are irrelevant, no mater how unlikely the allegations. Allison v. California Adult Authority, 419 F.2d 822, 823 (9th Cir. 1969).

Applying the foregoing standards, and accepting the material allegations in the first amended complaint as true, the complaint states causes of action against Kindred for injunctive relief, breach of fiduciary duty, intentional interference with contract, and negligent interference with contract.

**A. The Plaintiff Is Entitled to Plead "Inconsistent" Facts and Theories of Relief**

The defendant's motion is premised largely on the contention that the first complaint does not state any cause of action against it because the plaintiff has alleged that Kindred "offered" to make the records available to Blue Cross for review. In light of that "offer," Kindred asserts, it cannot be liable under any legal theory. That contention fails for two reasons. First, the "offer" allegation cannot be read in a vacuum; the complaint must be read as a whole. When the complaint is read as a whole, it is clear that there is a conflict between what Kindred is claiming --that it offered the records– and what Blue Cross is claiming --that it does not have the records and cannot process the claims. [FAC, ¶s 4, 5, 11 and 14.] That conflict does not preclude the plaintiff from obtaining relief; it simply means there is a factual issue which must resolved by the trier of fact in determining liability as between the parties. Second, and more importantly, even if the plaintiff has plead legally and factually inconsistent theories of relief, such "inconsistent" pleading is expressly permitted by law. Brookhaven Landscape & Gardening Co. v. J.F. Barton Contracting Co., 676 F.2d 516, 523 (5th Cir. 1982); Henry v. Daytop Village, Inc., 42 F.3d 89, 95 (2nd Cir. 1995); Molsbergen v. United States, 757 F.2d 1016, 1018, fn.3 (9th Cir. 1985). Accordingly, the defendant's argument that the first amended complaint necessarily fails on all counts because Kindred claims that if "offered" the documents to Blue Cross is unavailing.

**B. The First Amended Complaint States a Claim for Injunctive Relief**

The defendant contends that the plaintiff's cause of action for injunctive relief fails because plaintiff has an adequate legal remedy, plaintiff has not established irreparable harm, and plaintiff cannot demonstrate the probability of success on the merits. Respectfully, the defendant fails to distinguish between pleading a cause of action for injunctive relief and *arguing* the merits of a motion for injunctive relief. As set forth above, problems of proof are irrelevant at the pleading stage. Thus, the defendant's arguments as to the probability of success on the merits, etc., have no place in this motion. The only thing that matters is whether the plaintiff has plead the elements of an equitable claim for injunctive relief, and he has done that.

The essential elements of a claim for injunctive relief under California and federal law are: 1) inadequate legal remedy; and 2) irreparable harm. Southern Christian Leadership Conference v. Al Malaikah Auditorium Co., 230 Cal.App.3d 207, 223 (1991); Monogram Industries, Inc. v. Sar Industries, Inc., 64 Cal.App.3d 692, 700 (1976) Wilson v. Watt, 703 F.2d 395, 399 (9th Cir. 1983); Gilder v. PGA Tour, Inc., 936 F.2d 417, 422 (9th Cir. 1991); State of Alaska v. Native Village of Venetie, 856 F.2d 1384, 1389 (9th Cir. 1988); Dahl v. HEM Pharmaceuticals Corp., 7 F.3d 1399, 1401 (9th Cir. 1993) (mandatory injunction proper).

The plaintiff has alleged that Blue Cross has asserted that Kindred's failure to timely produce records is the hold-up in the claims process. [FAC ¶s 4, 4, 14.] The plaintiff has alleged that absent an order commanding the delivery of the records, the plaintiff has no other adequate means by which to obtain the records, and therefore, at least according to Blue Cross, cannot proceed with the claims process. As a result, he will suffer irreparable harm in that he will lose his rights under the Plan for alleged failure to comply with the claims process. [FAC Complaint, ¶s 4, 5, 14, and 15.] Nothing more is required to state a claim for injunctive relief.

Kindred contends that the plaintiff has not plead and cannot prove reasonable probability of success on the merits. Reasonable probability of success on the merits, however, is not an element of a claim for injunctive relief. Reasonable probability of success on the merits only comes into play on a motion for preliminary injunction when the court is deciding, as a matter of equity, whether

provisional relief should issue. Accordingly, the plaintiff need not plead, and certainly need not prove, reasonable probability of success on the merits at the 12(b)(6) stage.

**C. The First Amended Complaint States a Claim for Breach of Fiduciary Duty**

The defendant contends that the complaint does not state a claim for breach of fiduciary duty because no fiduciary relationship existed between the plaintiff and the defendant, and the defendant did not breach any such duty. Neither argument is availing.

First, the plaintiff has alleged that the defendant undertook fiduciaries duties with respect to Ann and her care. The plaintiff alleges that: "Kindred is in possession and control of Shimsky's medical records and has accepted or otherwise undertaken the duty to provide the requested information and documentation to Blue Cross." [FAC, ¶ 4.] The plaintiff further alleges that: "In undertaking the care and maintenance of Ann, an elderly person within the meaning of California law, the defendant owed Shimsky and her successor(s) a fiduciary duty of honesty, loyalty, good faith, and fair dealing, which included, but is not limited to, the duty to comply with medical record and other documentary requests made by Blue Cross." [FAC, ¶ 17.] Those allegations, which create a fiduciary relationship, must be presumed true.

Second, the fact that the plaintiff alleges that the defendant "offered" the records does not establish that no breach occurred. Again, there is conflicting information as to Blue Cross's contention that it has not received requested information and Kindred's contention that it offered to make the records available. If Blue Cross is correct, and the records have not been delivered, and no arrangement has been made for the delivery of the records, then Kindred is in breach.

**D. The First Amended Complaint States a Claim for Interference With Contract**

The defendant contends that the plaintiff has failed to plead the essential elements of claim for intentional interference with contract. The first amended complaint alleges each element of a claim for intentional interference with contract as outlined by the defendant. The first amended complaint alleges:

1. A contract for health insurance benefits exists between the plaintiff and OPM as administrator of the Plan; [FAC, ¶s 1 and 20]

2. The defendant knew about the contract and undertook an obligation to provide requested information and documentation to Blue Cross; [FAC, ¶s 4, 17, 20, and 21]

3. The defendant wrongfully, and in retaliation against the plaintiff, failed to provide the records, as claimed by Blue Cross, for the purpose of interfering with the Plan and disrupting the plaintiff's ability to collect benefits thereunder; [FAC, ¶s 22, 23, 20, 9, and 3.]

5. The plaintiff's inability to collect benefits under the Plan has caused damage. [FAC, ¶s 23, 20, 9, and 3.]

Thus, all elements of a claim for intentional interference with contract have been adequately plead.

Kindred contends that the claim for interference with contract fails because the first amended complaint is "devoid of any claim of any breach of contract by Blue Cross." That argument is unfounded and inaccurate. First, the first amended complaint does allege that Blue Cross failed to pay benefits due under the Plan. Second, and more importantly, Kindred's alleged failure to produce documents is allegedly causing plaintiff to be in breach of the Plan, thereby resulting in damage to the plaintiff.

**E. <u>The First Amended Complaint States a Claim for Negligent Interference With Prospective Economic Advantage</u>**

The defendant baldly contends that the plaintiff's claim for negligent interference with prospective economic advantage fails for the same reasons as the claim for interference with contract. Again, however, all of the elements of the claim are plead. The first amended complaint alleges:

1. An economic relationship between the plaintiff and OPM [FAC ¶s 1 and 24]

2. The defendant knew of the existence of that relationship; [FAC ¶s 4, 17, 20, 21, and 24]

3. The defendant's failure to provide Blue Cross with the records was negligent; [FAC, ¶ 25]

4. The defendant's negligence interrupted the economic relationship and caused the plaintiff damage. [Complaint, ¶s 26, 20, 9, and 3.]

As such, there is no basis for the defendant's motion to dismiss the negligent interference claim.

## II

## ALTERNATIVELY, THE COURT SHOULD ALLOW THE PLAINTIFF LEAVE TO AMEND

If the Court is somehow inclined to grant the defendant's motion to dismiss in any respect, the plaintiff requests leave to amend to cure any purported defects in the first amended complaint. F.R.C.P. 15; Bank v. Pitt, 928 F.2d 1108, 1112 (11th Cir. 1991); Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

## CONCLUSION

Based on the foregoing, the plaintiff respectfully requests that the Court deny the defendant's motion to dismiss with prejudice and order it to answer the complaint. Alternatively, if the Court is inclined to grant the motion to dismiss in any respect, the plaintiff should be allowed leave to amend.

DATED: August 27, 2008

YALE & BAUMGARTEN, LLP

David W. Baumgarten, Attorney for Plaintiff