**GIOVANNIELLO & MICHELS, LLP**
Alexander F. Giovanniello (CSB # 125562)
Karen A. Bocker (CSB # 213764)
1470 South Valley Vista Drive, Suite 200
Diamond Bar, California 91765
Email: afg@gm-lawfirm.com

Ph: (909) 396-1964
Fax (909) 396-0885

Attorneys for DEFENDANT:
THC ORANGE COUNTY dba KINDRED HOSPITAL – SAN DIEGO

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARNOLD SCHIMSKY, as Trustee of THE ANN P. SHIMSKY TRUST and representative of ANN P. SHIMSKY, deceased<br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OFFICE OF PERSONNEL MANAGEMENT; THC- ORANGE COUNTY, INC., dba KINDRED HOSPITAL SAN DIEGO<br><br>Defendants. | Case No.: 07 CV2432-H(LSP)<br><br>**DEFENDANT THC-ORANGE COUNTY, INC., dba KINDRED HOSPITAL SAN DIEGO'S NOTICE OF MOTION FOR SANCTIONS PURSUANT TO RULE 11 AGAINST YALE & BAUMGARTEN FOR VIOLATION OF RULE 11**<br><br>**[Filed concurrently with Defendant's Memorandum of Points and Authorities; Declaration of Karen A. Bocker and Declaration of Eunice Andaya]**<br><br>FRCP 11<br><br>DATE: October 6, 2008<br>TIME: 10:30 a.m.<br>COURTROOM: 13<br><br>NO ORAL ARGUMENT UNLESS REQUESTED BY COURT PER CHAMBERS |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE THAT on October 6, 2008 at 10:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 13, of the above-entitled court located at 940 Front Street, San Diego, CA 92101, Defendant THC-ORANGE COUNTY dba KINDRED HOSPITAL – SAN DIEGO, hereinafter "Defendant") will move this Court for an order for non monetary and monetary Sanctions in the amount of $4,200.00 against Plaintiffs' counsel of record, Yale & Baumgarten pursuant to Rule 11. This Motion will be based on the grounds that Plaintiffs' First Amended Complaint filed with this court, naming Kindred Hospital San Diego as a defendant, was filed in violation of Rule 11.

This motion is based upon this Notice, the Memorandum of Points and Authorities on file herein, all documents and evidence on file herein, and upon such other oral and documentary evidence as may be presented at the hearing of this matter.

Date: August 29, 2008 **GIOVANNIELLO & MICHELS, LLP**

By: s/Alexander Giovanniello
Alexander F. Giovanniello, Esq.
Karen A. Bocker, Esq.
Attorneys for DEFENDANT,
THC ORANGE COUNTY dba KINDRED HOSPITAL – SAN DIEGO

# TABLE OF CONTENTS

TABLE OF CONTENTS .......... iii
TABLE OF AUTHORITIES .......... iv
STATUTES .......... iv
MEMORANDUM OF POINTS AND AUTHORITIES .......... 1
1. STATEMENT OF FACTS .......... 1
2. RULE 11(b) WAS VIOLATED WHEN THE FIRST AMENDED COMPLAINT, ASSERTING CLAIMS AGAINST KINDRED HOSPITAL – SAN DEIGO AND EXECUTED BY COUNSEL, WAS FILED WITH THE COURT .......... 8
   A. The Only Logical Purpose for Naming Kindred Hospital as a Defendant in This Suit is to Harass Kindred Hospital or to Needlessly Increase the Cost of Litigation .......... 9
   B. Mr. Schimsky's Claims Against Kindred Hospital Are Not Supported by Existing Law .......... 10
      1. California Rule Applies to This Case .......... 11
         a. The Third Cause of Action .......... 11
         b. The Fourth Cause of Action .......... 12
         c. The Fifth Cause of Action .......... 13
         d. The Sixth Cause of Action .......... 13
   C. The Factual Contentions Do Not Have Evidentiary Support .......... 14
3. TWENTY-ONE DAYS HAVE ELAPSED SINCE SERVICE OF THIS MOTION ON PLAINTIFFS' COUNSEL PURSUANT TO RULE 5 .......... 15
   A. Sanctions Are Warranted .......... 16
4. CONCLUSION .......... 17

# TABLE OF AUTHORITIES

## CASES

LaMonte v. Sanwa Bank California
(1996) 45 Cal. App. 4th 509, 517 ....12
New v. New
(1957) 148 Cal. App. 2d 372, 382-383 ....12
North American Chemical Co. v. Superior Court
(1997) 59 Cal. App. 4th 764, 786 ....13
Pacific Gas & Electric Co. v. Bear Sterns & Co.
(1990) 50 Cal. 3d 1118, 1138, Fn.2 ....13
Pierce v. Lyman
(1991) 1 Cal. App. 4th 1093 ....12
Rickel v. Schwinn Bicycle Co.
(1983) 144 Cal. App. 3d 684, 654 ....12
Wolf v. Superior Court
(2003) 107 Cal. App. 4th 25, 30. ....12

## STATUTES

28 U.S.C. § 1652 ....11

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1. STATEMENT OF FACTS

In this action Plaintiff, ARNOLD SCHIMSKY seeks injunctive and monetary relief against THC-ORANGE COUNTY, INC. dba KINDRED HOSPITAL SAN DIEGO (hereinafter "KINDRED HOSPITAL"). He also seeks injunctive relief from the United States Office of Personnel Management.

Mr. Schimsky has a protracted legal history with Kindred Hospital. In fact, the issue of the outstanding bill for the services rendered by Kindred Hospital to Mrs. Shimsky has been addressed in two other cases before the two different Superior Courts of California. The first by the Superior Court of the State of California, for the County of San Diego-Central Division, Case Number P188885 and the second by the Superior Court for the State of California, for the County of San Diego – Hall of Justice, Case Number GIC871356. In both cases, Mr. Schimsky executed settlement agreements ensuring payment to Kindred Hospital for the care provided to his mother at his behest. This legal history is no secret to Mr. Schimsky's current counsel.

To have a full understanding of the issues the historical background is set forth below.

Before falling ill, Ann Shimsky created the Ann P. Shimsky Trust for her benefit. She designated one of her sons, Arnold Schimsky as the Durable Power of Attorney for her Estate and Health Care Decisions. She also executed a Declaration under the California Natural Death Act (hereinafter, the "Declaration"). Unbeknownst to any of her healthcare providers, Mr. Schimsky chose not to disclose the existence of the Declaration.

Mrs. Shimsky was admitted to Kindred Hospital – San Diego (Hereinafter "Kindred Hospital") on July 19, 2002. She died at Kindred Hospital on October 8, 2006. The amount due and owing for care and services rendered by Kindred Hospital to Ann Shimsky is $2,579,622.81 (**Declaration of Eunice Andaya**).

When she was first admitted, Mrs. Shimsky's care was considered acute and Medicare was her primary insurance. Ann Shimsky also had health insurance coverage through Blue Cross, which provided coverage for acute care. When her Medicare benefits were exhausted in

October 2002, Blue Cross paid for the acute care provided. As Mrs. Shimsky's condition stabilized, she was no longer considered an acute patient (**Exhibit A**) Like most of us, Mrs. Shimsky did not have long term care insurance (**Exhibit B; Exhibit C**).

On June 3, 2003, nearly a year after being at Kindred Hospital, Blue Cross determined that an acute stay was no longer medically necessary (**Exhibit A**) and Mrs. Shimsky was deemed stable enough to be transferred to another facility. Mr. Schimsky knew his mother did not have coverage for any level of care other than acute care. Asserting his authority as his mother's Durable Power of Attorney for health care decisions (hereinafter "DPOA-HC")(**Exhibit D**), Mr. Schimsky refused to allow his mother to be transferred out of Kindred Hospital (**Exhibit E**).

Aware of Mr. Schimsky's refusal to allow his mother to be transferred out of Kindred Hospital and to accommodate Mrs. Shimsky, Blue Cross offered to "flex" her benefits, allowing her to stay at Kindred Hospital but would pay Kindred Hospital a fraction of the acute hospitalization fee (**Exhibit F**). Kindred Hospital agreed to accept the lower fee. Again asserting his authority as his mother's DPOA-HC, Mr. Schimsky refused the offer from Blue Cross (**Exhibit G; Exhibit H**).

From that time on, Blue Cross considered Mrs. Shimsky a "self pay". The responsibility for paying the bills fell on the subscriber.

The last payment received by Kindred Hospital from Blue Cross for Mrs. Shimsky's care was on July 31, 2004. Payment was mistakenly sent by Blue Cross for October 1, 2004 to October 15, 2004 but on April 11, 2005, Blue Cross demanded a 100% refund from Kindred Hospital, saying Mrs. Shimsky was not eligible for coverage. Kindred refunded the full amount (**Declaration of Eunice Andaya; Exhibit I**).

Mr. Schimsky was advised of the mounting bills (**Exhibit J**), but did not make arrangements to pay the bills and continued to refuse to allow his mother to be transferred out of Kindred Hospital. Kindred Hospital could not abandon the patient and continued to provide care even though it was not being paid for the care provided to Mrs. Shimsky.

While his mother was a patient at Kindred Hospital, Mr. Schimsky engaged in harassing behavior toward the Kindred Hospital employees so much so that on May 20, 2005 a restraining order was issued against Mr. Schimsky to enjoin him from harassing the Kindred Hospital employees (**Exhibit K**).

Mr. Schimsky perseverated on his demands regarding his mother's medical care despite the danger to his mother. He demanded that his mother be kept alive at all costs, but he also demanded that his mother be "weaned" off the ventilator despite the fact that she could not tolerate weaning from the ventilator. When Kindred Hospital employees refused to risk Mrs. Shimsky's welfare, Mr. Schimsky responded by filing a petition with the Probate Court to compel Kindred Hospital to "honor" his authority under the DPOA-HC (**Exhibit L**). What ensued was a protracted course of litigation.

In December 2005, Mr. Schimsky was temporarily relieved as his mother's DPOA-HC because the focus of his harassment transferred to the doctors providing care for Mrs. Shimsky and finally reached a point where his mother was at risk of having no physician willing to care for her (**Exhibit M**). At the same time the Court named James Boyd as Mrs. Shimsky's Court-appointed counsel to represent her interests (**Exhibit N**). Within days of Mr. Boyd's appointment Mr. Schimsky's deceptions were revealed.

It was Mr. Boyd who discovered Ann Shimsky's executed Declaration Under the California Natural Death Act, which read in part:

> "[s]hould I have an incurable and irreversible condition that has been diagnosed by two physicians and that will result in my death within a relatively short time without the administration of life-sustaining treatment, . . . I direct my attending physician to withhold or withdraw treatment, including artificially administered nutrition and hydration that only prolongs the process of dying. . ." (**Exhibit O**).

Ignoring his fiduciary duty, Mr. Schimsky NEVER disclosed the existence of the Declaration. He <u>admitted</u> under oath to knowing of the existence of the Declaration but chose not to disclose it (**Exhibit P**). Despite his mother's written declaration of her wishes to the

contrary, Mr. Schimsky demanded aggressive and expensive medical care be provided to her **(Exhibit Q)**.

At his deposition he testified to the existence of the Ann P. Shimsky Trust (hereinafter "the Trust")**(Exhibit R)**.

Mr. Schimsky admitted under oath that despite being the fiduciary of his mother's estate and financial affairs, **he commingled his funds with those of his mother's**. He used money from a joint account funded by his mother's social security and annuity benefits to pay for his own personal expenses and lived in his mother's house rent-free **(Exhibit S)**. The revelation of these facts caught the attention of the Public Guardian and the Probate Court. The Court ordered that a court investigator investigate the matter further **(Exhibit T)**.

After the Confidential Court Investigator's report was filed, Charles E. Matthews, III, San Diego Public Guardian, moved on March 10, 2006 to be appointed the permanent Conservator over the Person and Estate of Ann Shimsky on the basis of Mr. Schimsky's failure as the successor trustee to the Ann P. Schimsky Trust to pay the Kindred Hospital bill despite repeated demands for payment **(Exhibit U)**. A report by Mrs. Shimsky's Court-Appointed Attorney supported the Public Guardian's petition **(Exhibit V)**.

The parties were ordered to mediate the issues. All parties appeared on April 27, 2006 for court ordered mediation. During mediation, Mr. Schimsky was represented by counsel, John Garcia, Esq., and a settlement was reached **(Exhibit W)**. As a result of the settlement, Mr. Schimsky was relieved of his authority as his mother's DPOA for Health Care Decisions. The terms of the agreement included the following:

> 3. **Mr. Schimsky covenants and agrees never to Petition, commence, voluntarily aid in any way, institute, maintain, prosecute, or authorize to be commenced against Kindred Hospital – San Diego any action or other proceeding either in law or in equity against any party to this agreement or person, group, or entity covered by this Stipulation and Settlement Agreement based in whole or in part upon any action, demand, cause of action, obligation, damage or liability which is the subject of this Stipulation and Settlement Agreement** . . .
>
> * * *

8. Mr. Schimksy will be permitted to retain his authority as the Durable Power of Attorney over the estate of Mrs. Ann Schimsky.

9. In retaining his authority as the Durable Power of Attorney over the estate of Mrs. Ann Shimsky, **Arnold D. Schimsky will ensure that the bill for services provided to his mother by Kindred Hospital is paid.** Said bill is currently $1,885,669.84. Mr. Schimsky will use his best efforts in coordinating payment of

benefits from any third party source including insurance companies, Medicare and Medical or any other source whatsoever to Kindred Hospital- San Diego for the care provided to Mrs. Ann Shimsky. This Stipulation and Settlement is neither a condition precedent to nor does it waive Kindred Hospital – San Diego's right to collect or bring an action for any outstanding fees for the medical care provided to Mrs. Shimsky, which both parties agree were reasonable and necessary, from the time of her admission to Kindred Hospital – San Diego until the time of her discharge from Kindred Hospital – San Diego (Emphasis Added) (**Exhibit W**).

With the promise that he would cooperate in ensuring payment to Kindred Hospital, Mr. Schimsky was permitted to retain his authority as the representative of the estate. After the mediation, the Public Guardian petitioned for permanent appointment as the Conservator over the Person of Ann P. Shimsky (**Exhibit X**). Thereafter, the Public Guardian gave written notice to Mr. Schimsky that they would comply with Mrs. Shimsky's wishes and terminate life support (**Exhibit Y**). Mr. Schimsky's behaviors escalated.

On August 21, 2006, in the interests of protecting the person of Mrs. Shimsky, Mr. Boyd petitioned the court for a restraining order prohibiting Mr. Schimsky from coming within 1000 yards of Kindred Hospital because Mr. Schimsky was observed having inappropriate contact with his mother constituting elder abuse. The restraining order was granted (**Exhibit Q**).

In response to the Public Guardian's notice to withdraw life support, Mr. Shimsky filed an ex parte petition for a protective order, causing Mrs. Shimsky to remain on the ventilator for several more months, something she did not want (**Exhibit Z**).

All the while, Mr. Schimsky failed to comply with the terms of the April 27, 2006 settlement agreement. Despite having access to his mother's bank account and monthly

deposits, Mr. Schimsky never made any payments to Kindred Hospital to cover his mother's medical costs.

In August 2006, aware of Kindred Hospital's intention to file suit regarding the bill, and faced with the reality that Mr. Schimsky breached his fiduciary duties as his mother's DPOA, placing personal liability on Mr. Schimsky, Mr. Garcia indicated that his clients wanted to settle the financial matter. In sum, an offer was made to transfer, via Grant Deed, real property located at 1255 Essex Street, Imperial Beach, CA, valued at approximately $430,000.00 in exchange for dismissal Kindred Hospital's action to collect the outstanding bill. Although this would only provide Kindred Hospital with a fraction of what it was owed, Kindred Hospital agreed. Negotiations began and counsel for Kindred Hospital and counsel for Mr. Schimsky proceeded to draft a document acceptable to both sides. To protect its interests in the interem, Kindred Hospital filed its complaint (**Exhibit AA**).

A Settlement was eventually reached (**Declaration of Karen A. Bocker**) with the execution of a settlement agreement (**Exhibit AB**) and Written Approval of Beneficiaries to Transfer the Residential Property within the Ann P. Shimsky Trust (**Exhibit AC**). Mr. Schimsky began to perform on the settlement agreement, but then ceased his performance.

On December 8, 2006 Kindred Hospital moved to enforce the Settlement Agreement. Without any evidence to support his claim, Mr. Schimsky opposed the motion arguing that Kindred Hospital failed to release records to Blue Cross and/or was paid by Blue Cross and/or Medi-Cal. In reply Kindred Hospital offered the declaration of the Billing Department manager for Kindred Hospital, who affirmed under the penalty of perjury that Kindred Hospital offered to send records to Blue Cross (**Exhibit AD**). Mr. Schimsky's claims that Kindred Hospital refused to release records were ridiculous, particularly since Kindred Hospital was releasing Mrs. Shimsky's medical records to Mr. Schimsky on a weekly basis (**Exhibit AE**).

Further, it was confirmed that Kindred Hospital had not received any payment, from any source for the services provided to Ann Shimsky since July 31, 2004 (**Exhibit AF**). The Trial Court granted Plaintiff's motion to enforce the settlement agreement and judgment was

entered.

Thereafter, Mr. Schimsky and his sister as proposed intervener, moved to vacate the Trial Court's judgment and order. Their motion was denied. Mr. Schimsky and his sister, through another law firm, appealed the denial of their motion to vacate, which is currently pending before the Court of Appeal of the State of California, Fourth Appellate District, Division One, Court of Appeal Number: D051424.

Approximately a month and a half after filing the opening brief on the appeal, Mr. Schimsky filed the instant suit, which includes claims against Kindred Hospital **based on the same set of facts and circumstances that were before the Superior Court of the State of California in two previous cases.**

Upon learning that Mr. Schimsky named Kindred Hospital in this suit, counsel for Kindred Hospital contacted the attorneys representing Mr. Schimsky (the same counsel who represented Mr. Schimsky on his motion to vacate the judgment enforcing the second settlement agreement signed by Mr. Schimsky), advised of Mr. Schimsky's covenant not to sue Kindred Hospital and provided a copy of the agreement to counsel.

Setting forth the above facts, Kindred Hospital requested that the claims asserted against it in the Federal suit be dismissed (**Exhibit AG**) Mr. Schimsky's counsel responded that Kindred Hospital was named to "preserve Mr. Schimsky's interests" and would look further into the situation.

After hearing nothing from Mr. Schimsky's counsel, correspondence following up on Mr. Schimsky's withdrawal of the claim against Kindred Hospital was sent on March 11, 2008 (**Exhibit AH**). Again, no word was received from Mr. Schimsky's counsel.

Despite being aware of the covenant not to sue, executed by their client on April 27, 2006; despite being given an opportunity to withdraw the claims brought in violation of the covenant not to sue; and despite the fact that the same issues based on the same facts circumstances have been and currently are being litigated in the Superior and Appellate Courts of the State of California, Counsel for Mr. Schimsky failed to voluntarily dismiss the claims against Kindred Hospital. In light of Plaintiff's failure to withdraw the claims, Kindred

Hospital filed a motion to dismiss the claims asserted against it. Kindred Hospital's motion was granted in its entirety. With the dismissal of the entire case, the Rule 11 motion filed by Kindred Hospital was moot.

Undaunted and again ignoring his covenant not to sue, Plaintiff filed a First Amended Complaint, still alleging the same causes of action previously dismissed by this Court. In the First Amended Complaint, Plaintiff admits that Kindred Hospital offered decedent's records to Blue Cross.

Kindred Hospital met and conferred, requesting Plaintiff to dismiss his claims (**Exhibit AI**), but Plaintiff failed to do so, leaving Defendant no alternative but to bring this motion.

2. **RULE 11(b) WAS VIOLATED WHEN THE FIRST AMENDED COMPLAINT, ASSERTING CLAIMS AGAINST KINDRED HOSPITAL – SAN DIEGO AND EXECUTED BY COUNSEL, WAS FILED WITH THE COURT.**

Rule 11(b) states in pertinent part:

> By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) **it is not being presented for any improper purpose, such as to harass** or to cause unnecessary delay **or needless increase in the cost of litigation**;
>
> (2) the claims, defenses, and other legal contentions therein **are warranted by existing law** or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) **the factual contentions have evidentiary support** or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . .

By filing the First Amended Complaint against Kindred Hospital – San Diego and refusing to dismiss the action against Kindred Hospital after being given notice of Mr. Schimsky's stipulation not to sue Kindred, Rule 11(b) was violated in three out of the four categories listed by the statute.

When Blue Cross offered Mr. Schimsky the opportunity to limit the exposure to his mother and her estate by flexing his mother's benefits, his stubborn refusal to cooperate with Blue Cross resulted in the financial exposure to his mother and her estate. To compound the problems, by commingling the his own funds with his mother's social security and annuity benefits, then using those funds to pay his personal bills, Mr. Schimsky exposed himself to personal liability.

Incredibly, in the instant claim Mr. Schimsky is suing Kindred Hospital for the very debt he incurred on behalf of his mother and her estate when he breached his fiduciary duty in his capacity as the Durable Power of Attorney of his mother's Estate and as the Durable Power of Attorney for his mother's healthcare decisions by refusing to accept Blue Cross' offer to flex his mother's benefits in response to his refusal to allow his mother to be transferred out of Kindred Hospital.

The following conduct by Plaintiffs' counsel are specific violations of Rule 11.

**A. The Only Logical Purpose for Naming Kindred Hospital as a Defendant in This Suit is to Harass Kindred Hospital or to Needlessly Increase the Cost of Litigation**

Given the totality of factual history between these parties, it is evident that the motive behind the First Amended Complaint is to continue the harassment of Kindred Hospital by Mr. Schimsky and/or to needlessly increase the cost of litigation.

Mr. Schimsky's harassing and abusive behavior toward the employees of Kindred Hospital – San Diego is evidenced by the two restraining orders issued against him. While his mother was a patient at Kindred Hospital, Mr. Schimsky filed multiple petitions against Kindred Hospital, all of which were denied. Now that he no longer has a legitimate reason to come in contact with the individuals of the facility and his mother has passed, leaving him no reason to petition the court for any other relief, he has turned his attention to the institution and has engaged in a course of frivolous litigation.

Mr. Schimsky is no stranger to litigation and is undoubtedly well aware of its costs, as are his counsel. Mr. Schimsky has settled two suits related to his failure to ensure that the

Kindred Hospital bill was paid. As to the second suit, after settling the case filed by Kindred Hospital for the unpaid hospital bill, Mr. Schimsky failed to perform on the settlement agreement. He unsuccessfully opposed Kindred Hospital's motion to compel enforcement of the settlement agreement. Thereafter he moved, unsuccessfully, to vacate the judgment enforcing the settlement agreement. Mr. Schimsky then filed an appeal of the ruling denying his motion to vacate the judgment. The appeal is still pending.

The stated reason for the filing the First Amended Complaint against the United States Office of Personnel Management was to preserve any possible statute of limitations under the Plan. No legitimate basis is stated for naming Kindred Hospital as a defendant in this suit. Notably, the claims against Kindred Hospital are based on the same set of facts and circumstances underlying the suit now pending in the Appellate Court and based on the same set of facts and circumstances underlying the stipulation and settlement agreement Mr. Schimsky signed in April 2006.

Quite simply, it is evident Mr. Schimsky does not want to pay the hospital bill, even though he represented that we would do so. To avoid fulfilling his obligation, he has engaged in protracted litigation to avoid paying for the very services he demanded for his mother.

The only logical conclusion for naming Kindred Hospital in this suit is to either harass Kindred Hospital or to needlessly increase the cost of litigation in hopes of causing Kindred Hospital to give up on its claims for the outstanding bill. By his counsel blindly acquiescing to Mr. Schimsky's wrongful pursuit against Kindred is a violation of Rule 11(b)(1).

**B. Mr. Schimsky's Claims Against Kindred Hospital Are Not Supported by Existing Law**

As noted above, Mr. Schimsky's refusal to cooperate with Blue Cross to the detriment of his mother's estate was one of the bases for the San Diego Public Guardian to intervene on Mrs. Shimsky's behalf. Because Mr. Schimsky promised to ensure that the bill for services provided to his mother by Kindred Hospital would be paid, Mr. Schimsky was permitted to retain his authority as the DPOA of his mother's estate. Part and parcel to this agreement was Mr. Schimsky's covenant not to sue Kindred Hospital for any issues relating to the hospital bill

**(Exhibit W)**. Mr. Schimksy's claims against Kindred Hospital are specifically barred by his covenant not to sue. Plaintiffs have not set forth any statutory or case law lifting this bar. Filing a lawsuit knowing that the suit is barred by a previous agreement by the client is a violation of Rule 11.

Plaintiffs' counsel <u>specifically acknowledges</u> with in the complaint that **Kindred Hospital has offered to make Mrs. Shimsky's records available to Blue Cross** for review. Indeed this fact is supported by a sworn statement by the Director of the Medical Records for Kindred. Plaintiffs failed to state what, if any, records were requested by Blue Cross and/or the United States Office of Personnel Management and not offered by Kindred Hospital. The act of filing a claim, knowing that it is not supported by the evidence, is a specific violation of Rule 11.

### 1. <u>California Rule Applies to This Case</u>

The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply. 28 <u>U.S.C</u>. § 1652. In choosing the rule of decision, the federal court must look to the body with the authority to make those rules. When it comes to common law matters not within the delegated powers, that body is the state, whether is speaks by statute or judicial decision.

Brief analysis of California law reveals the claims against Kindred Hospital are baseless.

#### a. <u>The Third Cause of Action</u>

In Plaintiffs' Third Cause of Action, asserted against Kindred Hospital for Injunctive Relief, Plaintiff asks the court to command Kindred to produce and provide all requested medical records and related documentation to Blue Cross and/or the United States Office of Personnel Management. The claim is without basis because <u>Plaintiff affirmatively acknowledges that Kindred Hospital offered the records to Blue Cross</u>. There is no allegation and no evidence that Kindred Hospital withheld records from Blue Cross. There is no allegation and no evidence that the United States Office of Personnel Management requested

the records from Kindred Hospital or that Kindred Hospital refused the request. Furthermore, the claim itself is defeated by Plaintiffs' affirmative factual allegations.

**b. The Fourth Cause of Action**

In order to plead a cause of action for breach of fiduciary duty, the plaintiff must show the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach; the absence of any one of these elements is fatal to the cause of action. LaMonte v. Sanwa Bank California (1996) 45 Cal.App.4th 509, 517 *citing* Pierce v. Lyman (1991) 1 Cal.App.4th 1093.

There was no fiduciary relationship. "A 'fiduciary relation' in law is ordinarily synonymous with a 'confidential relation.' It is . . . founded upon the trust or confidence reposed by one person in the integrity and fidelity of another, and likewise precludes the idea of profit or advantage resulting from the dealings of the parties and the person in whom the confidence is reposed." Wolf v. Superior Court (2003) 107 Ca.App.4th 25, 30 *citing* Rickel v. Schwinn Bicycle Co. (1983)144 Cal.App.3d 648, 654. Traditional examples of fiduciary relationships in the commercial context include trustee/beneficiary, directors and majority shareholders of a corporation, business partners, joint adventurers and agent/principal. Inherent in each of these relationships is the duty of undivided loyalty the fiduciary owes to its beneficiary, imposing on the fiduciary obligations far more stringent than that required of ordinary contractors.

The obligation to perform contractual obligations of "good faith" and "fair dealings" is not sufficient to establish a "fiduciary relation" between Kindred Hospital and Mrs. Shimsky or her successors as claimed by Mr. Schimsky. "Every contract contains an implied covenant of good faith and fair dealing, obligating the contracting parties to refrain from 'doing anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . . .' (Citations) Wolf v. Superior Court (2003) 107 Ca.App.4th 25, 30. "The implied covenant cannot create a fiduciary relationship; it affords basis for redress for breach of contract and that is all." Wolf v. Superior Court (2003) 107 Ca.App.4th 25, 30 *citing* New v. New (1957) 148 Cal.App.2d 372, 382-383.

There is no breach. Plaintiff alleges that "Kindred has offered to make Shimsky's medical records, which are extremely voluminous, . . . available to Blue Cross for review." This offer, without proof that it was accepted and then refuses does not establish a breach on the part of Kindred Hospital.

**c. The Fifth Cause of Action**

The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage (Citations)(Emphasis added) Pacific Gas & Electric Co. v. Bear Sterns & Co. (1990) 50 Cal.3d 1118, 1138, Fn.2.

By pleading that Kindred Hospital offered the records to Blue Cross, Plaintiff admits no breach occurred.

**d. The Sixth Cause of Action**

Negligent interference with prospective economic advantage is established where a plaintiff demonstrates that (1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship North American Chemical Co. v. Superior Court (1997) 59 Cal. App. 4th 764, 786.

Again, Plaintiff fails to plead the elements of the Cause of Action.

Plaintiff alleges the records were offered. Plaintiff does not plead that the records were accepted by Blue Cross and then not provided. Failing to plead facts to establish a breach, the cause of action must fail.

As set forth above, filing of a claim unsupported by the law and evidence is in violation of the requirements of Rule 11(b)(2). Plaintiff alleges that Kindred Hospital has not withheld any records from Blue Cross. Notwithstanding Plaintiffs' counsel, proceeding in filing the suit against Kindred Hospital asserting the frivolous claims against Kindred Hospital, knowing that the claims were unsupported by the very facts alleged by Plaintiff. Therefore, sanctions pursuant to Rule 11 are warranted.

**C. The Factual Contentions Do Not Have Evidentiary Support**

In the present case, Plaintiffs' counsel withholds material facts in the "Preliminary Allegations".

For example, while it is alleged that Mrs. Shimsky had coverage through a Federal Employee Health Benefits Plan, with the attachment of the benefits card as Exhibit 1, what is glaringly missing from the allegations or the evidence set forth by the Plaintiffs and their counsel is that Mrs. Shimsky did not have long term care insurance. Mr. Schimsky and his counsel are patently aware of this fact.

Represented by the same counsel, in his motion to vacate the judgment in Kindred's case against Mr. Schimsky to enforce the settlement agreement, Mr. Schimsky attached excerpts from Ann P. Shimsky's Blue Cross/Blue Shield Service Benefit Plan for 2003; 2004; 2005 and 2006 as exhibits to the motion. Mr. Schimsky pointed to the benefits covered under the plan to assert his claim that his mother had coverage for her hospitalization at Kindred. Mr. Schimsky and his counsel, however, selectively ignored the portions of the excerpts from Ann P. Shimsky's Blue Cross/Blue Shield Service Benefit Plan for 2003; 2004; 2005 and 2006 that specifically outlined what was not covered under Mrs. Shimsky's plan. Mrs. Shimsky was not covered for nursing home care or for care that was deemed not medically necessary, or that could be provided at a different level of care (**Exhibit B**).

In the "Preliminary Allegations" before this Court Mr. Schimsky alleges that his mother "received acute care, including but not limited to ventilator care, at Kindred until she passed." Again, Mr. Schimsky selectively omits the fact that after a period of time, Ann Shimsky's health insurance carrier deemed that she was no longer an "acute" patient and could be handled at a facility that provided a different level of care (**Exhibit C**). Mr. Schimsky was aware of this fact but refused to allow his mother to be transferred to another facility.

Omitted from the allegations in the First Amended Complaint is Mr. Schimsky's covenant not to sue Kindred Hospital (**Exhibit W**), executed in April 2007. The covenant not to sue was executed as a result of negotiations during the mediation of a matter before the Probate Court wherein the Public Guardian sought to relieve Mr. Schimsky of all authority over the person and estate of his mother.

Also omitted from the allegations is the fact that Blue Cross has not accepted Kindred Hospital's offer of all of decedent's records, which has resulted in the current stalemate.

Knowingly withholding these material facts from the pleadings and filing a claim against Kindred Hospital is a misrepresentation to the court and a violation of Rule 11b(3).

**3. <u>TWENTY–ONE DAYS HAVE ELAPSED SINCE SERVICE OF THIS MOTION ON PLAINTIFFS' COUNSEL PURSUANT TO RULE 5</u>**

Rule 11(c) reads in pertinent part:

> (c) If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.
>
> (1) (A) A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in <u>Rule 5</u>, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected . . .

Pursuant to Rule 11(c), Plaintiffs' counsel was served with this motion pursuant to Rule 5. Twenty one (21) days have elapsed without Plaintiffs' counsel withdrawing or correcting the challenges to the complaint as set forth in this motion. Therefore, this Court has jurisdiction to issue sanctions against Plaintiffs' counsel for the violations of Rule 11 as set forth above.

**A. Sanctions Are Warranted**

Pursuant to Rule 11(c)(2), a sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. . . [T]he sanction may consist of, or include, directives of a non monetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

To deter future filings of this nature, Defendant requests that this court issue not only non monetary sanctions, but monetary sanctions as well.

Defendant, Kindred Hospital requests that this court issue an Order dismissing the claims against Kindred Hospital. Kindred Hospital also requests monetary sanctions in the amount of $4200.00 on Plaintiffs' counsel

Defense counsel spent 15 hours conducting research and drafting the motions. It is expected that counsel will spend an additional 5 hours preparing and appearing for the hearing on this motion. Defense counsel bills at an hourly rate of $210.00 per hour. (**Declaration of Karen A. Bocker**).

//

//

//

//

//

//

//

**4. CONCLUSION**

Based on the above, Defendant, Kindred Hospital respectfully requests that this court grant its motion in the entirety.

Date: July 30, 2008

**GIOVANNIELLO & MICHELS, LLP**

By: s/Alexander F. Giovanniello
Alexander F. Giovanniello
Karen A. Bocker
Attorneys for DEFENDANT,
THC-ORANGE COUNTY, INC. dba KINDRED HOSPITAL – SAN DIEGO

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within entitled action; my business address is 1470 South Valley Vista Drive, Suite 200, Diamond Bar, California 91765.

On **July 30, 2008,** I served the foregoing document(s) described **DEFENDANT THC-ORANGE COUNTY, INC., dba KINDRED HOSPITAL – SAN DIEGO'S NOTICE OF MOTION FOR SANCTIONS PURSUANT TO RULE 11 AGAINST YALE & BAUMGARTEN FOR VIOLATION OF RULE 11,** by placing the true copies thereof enclosed in sealed envelopes address as follows:

**SEE ATTACHED SERVICE LIST:**

**(XX)** BY MAIL: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles California in the ordinary course of business.

( ) BY PERSONAL SERVICE: I delivered such envelope(s) by hand to the office(s) of the above addressee(s).

( ) BY FEDERAL EXPRESS: I caused said envelope(s) to be sent by Federal Express to the above address(es).

( ) BY TELECOPIER: I caused said document(s) to be transmitted by telecopier at approximately 3:00 P.M. to the above address(s).

Executed on **July 30, 2008,** at Diamond Bar, California.

**(XX)** STATE:I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[signature]

Carolina Cachu

SERVICE LIST:

| | |
|---|---|
| Eugene P. Yale<br>David W. Baumgarten<br>YALE & BAUMGARTEN, LLP<br>5030 Camino de la Siesta, Suite 308<br>San Diego, California 92108<br>Tel: (619) 220-8790<br>Fax: (619) 220-0369 | *Attorneys for Plaintiff* |
| U S Attorneys Office Southern<br>District of California<br>Civil Division<br>880 Front Street, Suite 6253<br>San Diego, California 92101<br>Tel: (619) 557-5662<br>Fax: (619) 557-7122 | *Attorneys for United States Office of Personnel Management* |

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within entitled action; my business address is 1470 South Valley Vista Drive, Suite 200, Diamond Bar, California 91765.

On , I served the foregoing document(s) described **DEFENDANT THC-ORANGE COUNTY, INC., dba KINDRED HOSPITAL – SAN DIEGO'S NOTICE OF MOTION FOR SANCTIONS PURSUANT TO RULE 11 AGAINST YALE & BAUMGARTEN FOR VIOLATION OF RULE 11,** by placing the true copies thereof enclosed in sealed envelopes address as follows:

**SEE ATTACHED SERVICE LIST:**

**(XX)** BY MAIL: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles California in the ordinary course of business.

( ) BY PERSONAL SERVICE: I delivered such envelope(s) by hand to the office(s) of the above addressee(s).

( ) BY FEDERAL EXPRESS: I caused said envelope(s) to be sent by Federal Express to the above address(es).

( ) BY TELECOPIER: I caused said document(s) to be transmitted by telecopier at approximately 3:00 P.M. to the above address(s).

Executed on **August 29 ,2008** at Diamond Bar, California.

**(XX)** STATE:I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

*[signature]*
Kimberly King

SERVICE LIST:

| | |
|---|---|
| Eugene P. Yale<br>David W. Baumgarten<br>YALE & BAUMGARTEN, LLP<br>5030 Camino de la Siesta, Suite 308<br>San Diego, California 92108<br>Tel: (619) 220-8790<br>Fax: (619) 220-0369 | *Attorneys for Plaintiff* |
| U S Attorneys Office Southern<br>District of California<br>Civil Division<br>880 Front Street, Suite 6253<br>San Diego, California 92101<br>Tel: (619) 557-5662<br>Fax: (619) 557-7122 | *Attorneys for United States Office of Personnel Management* |