**GIOVANNIELLO & MICHELS, LLP**
Alexander F. Giovanniello (CSB # 125562)
Karen A. Bocker (CSB # 213764)
1470 South Valley Vista Drive, Suite 200
Diamond Bar, California 91765
Email: afg@gm-lawfirm.com
Ph: (909) 396-1964
Fax (909) 396-0885

Attorneys for DEFENDANT:
THC ORANGE COUNTY dba KINDRED HOSPITAL –
SAN DIEGO

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARNOLD SCHIMSKY, as Trustee of THE ANN P. SHIMSKY TRUST and representative of ANN P. SHIMSKY, deceased<br>Plaintiffs,<br>vs.<br><br>UNITED STATES OFFICE OF PERSONNEL MANAGEMENT; THC- ORANGE COUNTY, INC., dba KINDRED HOSPITAL SAN DIEGO<br><br>Defendants. | Case No.: 07 CV2432-H(LSP)<br><br>**DECLARATION OF KAREN A. BOCKER IN SUPPORT OF DEFENDANT THC-ORANGE COUNTY, INC., dba KINDRED HOSPITAL SAN DIEGO'S MOTION FOR SANCTIONS PURSUANT TO RULE 11 AGAINST YALE & BAUMGARTEN FOR VIOLATION OF RULE 11**<br><br>**[filed concurrently with Defendant's Notice of Motion; Memorandum of Points and Authorities; and Declaration of Eunice Andaya]**<br><br>**FRCP 11**<br>DATE: October 6, 2008<br>TIME: 10:30 a.m.<br>COURTROOM: 13<br><br>NO ORAL ARGUMENT UNLESS REQUESTED BY COURT PER CHAMBERS |

I, Karen A. Bocker, declare:

1. I am an attorney, duly licensed to practice law in the state of California and I am

a partner in the Law Offices of Giovanniello & Michels, LLP, attorneys of record for Plaintiff, THC – ORANGE COUNTY, INC. dba KINDRED HOSPITAL SAN DIEGO (hereinafter referred to as "Kindred Hospital"). I am the attorney in our office in charge of this file. The following is based on my personal knowledge, such that if called upon as a witness, I could and would testify.

2. This declaration is in support of Kindred Hospital's Motion for Sanctions Pursuant to Rule 11 against Yale & Baumgarten for Violation of Rule 11.

3. Mr. Schimsky has a protracted legal history with Kindred Hospital. In fact, the issue of the outstanding bill for the services rendered by Kindred Hospital to Mrs. Shimsky has been addressed in two other cases before the two different Superior Courts of California. The first by the Superior Court of the State of California, for the County of San Diego-Central Division, Case Number P188885 and the second by the Superior Court for the State of California, for the County of San Diego – Hall of Justice, Case Number GIC871356. In both cases, Mr. Schimsky executed settlement agreements ensuring payment to Kindred Hospital for the care provided to his mother at his behest. This legal history is no secret to Mr. Schimsky's current counsel.

4. Before falling ill, Ann Shimsky created the Ann P. Shimsky Trust for her benefit. She designated one of her sons, Arnold Schimsky as the Durable Power of Attorney for her Estate and Health Care Decisions. She also executed a Declaration Under the California Natural Death Act (hereinafter, the "Declaration"). Unbeknownst to any of her healthcare providers, Mr. Schimsky chose not to disclose the existence of the Declaration.

5. Mrs. Shimsky was admitted to Kindred Hospital – San Diego (Hereinafter "Kindred Hospital") on July 19, 2002. She died at Kindred Hospital on October 8, 2006. The amount due and owing for care and services rendered by Kindred Hospital to Ann Shimsky is $2,993,301.64. **Declaration of Eunice Andaya**.

6. When she was first admitted, Mrs. Shimsky's care was considered acute and Medicare was her primary insurance. Ann Shimsky also had health insurance coverage through Blue Cross, which provided coverage for acute care. When her Medicare benefits were

exhausted in October 2002, Blue Cross paid for the acute care provided. As Mrs. Shimsky's condition stabilized, she was no longer considered an acute patient.

7. During the course of previous litigation between Mr. Schimsky and Kindred Hospital, counsel for Kindred Hospital obtained copies of letters from Blue Cross indicating the scope of Mrs. Shimsky's coverage. A true and accurate copies of relevant letters from Blue Cross are attached to the motion as **Exhibit A**.

8. Like most of us, Mrs. Shimsky did not have long term care insurance.

9. During the course of previous litigation between Mr. Schimsky and Kindred Hospital, Counsel for Kindred Hospital obtained copies of excerpts of the Blue Cross/ Blue Shield Service Benefit Plan for Mrs. Shimsky for 2003, 2004, 2005 and 2006. A true and accurate copy of relevant portions of the excerpts from the Blue Cross/ Blue Shield Service Benefit Plan for 2003, 2004, 2005 and 2006 are attached to the motion as **Exhibit B**.

10. During the course of previous litigation between Mr. Schimsky and Kindred Hospital, Counsel for Kindred Hospital obtained copies of correspondence from Blue Cross to Kindred Hospital, with carbon copies sent to Mr. Schimsky, stating that the benefit for skilled nursing facility is not covered under his mother's plan. True and accurate copies of relevant correspondence from Blue Cross advising that the benefit for skilled nursing facility was not covered under Mrs. Shimsky's plan are attached as **Exhibit C**.

11. On June 3, 2003, nearly a year after being at Kindred Hospital, Blue Cross determined that an acute stay was no longer medically necessary (**Exhibit A**) and Mrs. Shimsky was deemed stable enough to be transferred to another facility. As evidenced by the correspondence sent to Mr. Schimsky by Blue Cross, Mr. Schimsky knew his mother did not have coverage for any level of care other than acute care. Asserting his authority as his mother's Durable Power of Attorney for health care decisions (hereinafter "DPOA-HC"), Mr. Schimsky refused to allow his mother to be transferred out of Kindred Hospital.

12. During the course of previous litigation between Mr. Schimsky and Kindred Hospital, Counsel for Kindred Hospital obtained copies of the Statutory Form Durable Power of

Attorney for Health Care for Mrs. Schimsky. A true and accurate copy of the Statutory Form Durable Power of Attorney for Health Care is attached to the motion as **Exhibit D**.

13. During the course of previous litigation between Mr. Schimsky and Kindred Hospital, Counsel for Kindred Hospital obtained a copy of Mr. Schimsky's "Memorandum" refusing to allow his mother to be transferred from Kindred Hospital for any reason. A true and accurate copy of the "Memorandum" from Mr. Schimsky refusing to allow his mother to be transferred from Kindred Hospital is attached to the motion as **Exhibit E**.

14. Aware of Mr. Schimsky's refusal to allow his mother to be transferred out of Kindred Hospital and to accommodate Mrs. Shimsky, Blue Cross offered to "flex" her benefits, allowing her to stay at Kindred Hospital but would pay Kindred Hospital a fraction of the acute hospitalization fee.

15. During the course of previous litigation between Mr. Schimsky and Kindred Hospital, Counsel for Kindred Hospital obtained copies of letters from Blue Cross/Blue Shield offering alternative benefits for Mrs. Schimsky. True and accurate copies of relevant letters from Blue Cross/Blue Shield offering alternative benefits for Mrs. Schimsky are attached as **Exhibit F**.

16. Kindred Hospital agreed to accept the lower fee. Again asserting his authority as his mother's DPOA-HC, Mr. Schimsky <u>refused</u> the offer from Blue Cross.

17. During the course of previous litigation between Mr. Schimsky and Kindred Hospital, Counsel for Kindred Hospital obtained copies of letters from Mr. Schimsky to Blue Cross/Blue Shield. A true and accurate copy of the letter from Mr. Schimsky to Blue Cross/Blue Shield is attached as **Exhibit G**.

18. During the course of previous litigation between Mr. Schimsky and Kindred Hospital, Mr. Schimsky's deposition was taken under the penalty of perjury. A true and accurate copy of the relevant portion from Mr. Schimsky's deposition is attached as **Exhibit H**.

19. After Mr. Schimsky refused to accept the "flexed" benefits Blue Cross considered Mrs. Shimsky a "self pay". The responsibility for paying the bills fell on the subscriber.

20. The last payment received by Kindred Hospital from Blue Cross was on July 31, 2004. **Declaration of Eunice Andaya**

21. Payment was mistakenly sent by Blue Cross for October 1, 2004 to October 15, 2004 but on April 11, 2005, Blue Cross demanded a 100% refund from Kindred Hospital, saying Mrs. Shimsky was not eligible for coverage. Kindred refunded the full amount. **Declaration of Eunice Andaya**

22 During the course of previous litigation between Mr. Schimsky and Kindred Hospital, Counsel for Kindred Hospital obtained copies of correspondence between Blue Cross regarding Blue Cross' overpayment of Mrs. Shimsky's bill and a copy of the check from Kindred reimbursing Blue Cross. A true and accurate copy of the correspondence from Blue Cross regarding the overpayment and the check by Kindred reimbursing Blue Cross are attached to the motion as **Exhibit I**.

23. Mr. Schimsky was advised of the mounting bills.

24. During the course of previous litigation between Mr. Schimsky and Kindred Hospital, Counsel for Kindred Hospital obtained copies of correspondence from Kindred Hospital to Mr. Schimsky advising him of the increasing patient account balance. True and accurate copies of correspondence to Mr. Schimsky regarding the bills are attached as **Exhibit J**.

25. He did not make arrangements to pay the bills and continued to refuse to allow his mother to be transferred out of Kindred Hospital. Kindred Hospital could not abandon the patient and continued to provide care even though it was not being paid for the care provided to Mrs. Shimsky.

26. While his mother was a patient at Kindred Hospital, Mr. Schimsky engaged in harassing behavior toward the Kindred Hospital employees so much so that on May 20, 2005 a restraining order was issued against Mr. Schimsky to enjoin him from harassing the Kindred Hospital employees.

27. During the course of previous litigation between Mr. Schimsky and Kindred Hospital, Counsel for Kindred Hospital obtained a restraining order against Mr. Schimsky for

workplace harassment. A true and accurate copy of the restraining order is attached as **Exhibit K.**

28. Mr. Schimsky perseverated on his demands regarding his mother's medical care despite the danger to his mother. He demanded that his mother be kept alive at all costs, but he also demanded that his mother be "weaned" off the ventilator despite the fact that she could not tolerate weaning from the ventilator. When Kindred Hospital employees refused to risk Mrs. Shimsky's welfare, Mr. Schimsky responded by filing a petition with the Probate Court to compel Kindred Hospital to "honor" his authority under the DPOA-HC.

29. A true and accurate copy of Mr. Schimsky's petition, served on counsel for Kindred Hospital is attached as **Exhibit L.**

30. What ensued was a protracted course of litigation.

31. In December 2005, Mr. Schimsky was temporarily relieved as his mother's DPOA-HC because the focus of his harassment transferred to the doctors providing care for Mrs. Shimsky and finally reached a point where his mother was at risk of having no physician willing to care for her.

32. During the course of previous litigation between Mr. Schimsky and Kindred Hospital, Counsel for Kindred Hospital obtained a copy of the Temporary Letters of Conservatorship, granting the San Diego Public Guardian Conservatorship over the person of Mrs. Shimsky. A true and accurate copy of the Temporary Letters of Conservatorship over the person of Mrs. Ann Shimsky is attached to the motion as **Exhibit M.**

33. At the same time that the Public Guardian was granted temporary Conservatorship over the person of Mrs. Shimsky, the Court named James Boyd as Mrs. Shimsky's Court-appointed counsel to represent her interests.

34. During the course of previous litigation between Mr. Schimsky and Kindred Hospital, Counsel for Kindred Hospital obtained a copy of the Declaration of James. G. Boyd, declaring his appointment by the Court as Mrs. Shimsky's Court appointed counsel. A true and accurate copy of the declaration of James G. Boyd is attached as **Exhibit N.**

35. Within days of Mr. Boyd's appointment Mr. Schimsky's deceptions were

revealed. It was Mr. Boyd who discovered Ann Shimsky's executed Declaration Under the California Natural Death Act.

36. During the course of previous litigation between Mr. Schimsky and Kindred Hospital, Counsel for Kindred Hospital obtained a copy of Mrs. Shimsky's Declaration Under the California Natural Death Act. A true and accurate copy of Mrs. Shimsky's Declaration Under the Natural Death Act is attached to the motion as **Exhibit O**.

37. Ignoring his fiduciary duty, Mr. Schimsky NEVER disclosed the existence of the Declaration. He admitted under oath to knowing of the existence of the Declaration but chose not to disclose it.

38. During the course of previous litigation between Mr. Schimsky and Kindred Hospital, Mr. Schimsky's deposition was taken under the penalty of perjury. A true and accurate copy of the relevant portions of Mr. Schimsky's deposition is attached to the motion as **Exhibit P**.

39. Despite his mother's written declaration of her wishes to the contrary, Mr. Schimsky demanded aggressive and expensive medical care be provided to her.

40. During the course of previous litigation between Mr. Schimsky and Kindred Hospital, Counsel for Kindred Hospital obtained a copy of the Petition for Protective Orders for Elder or Dependent Adult Abuse filed against Mr. Schimsky by Mr. Boyd, wherein the actions of Mr. Schimsky were outlined for the Court. A true and accurate copy of the Petition by Mr. James Boyd for a Protective Order against Mr. Schimsky for Elder Abuse, describing Mr. Schimsky's actions is attached to the motion as **Exhibit Q**.

41. Mr. Schimsky testified to the existence of the Ann P. Shimsky Trust (hereinafter "the Trust"). Mr. Shimsky identified himself as the trustee of the Trust, having the authority to sell or transfer property to provide for his mother's care, subject to his sister's consent.

42. During the course of previous litigation between Mr. Schimsky and Kindred Hospital, Counsel for Kindred Hospital obtained a copy of the Ann P. Shimsky Trust and the

First Amendment thereto. A true and accurate copy of the Ann P. Shimsky Trust and the Amendment is attached to the motion as **Exhibit R**.

43. Mr. Schimsky admitted under oath that despite being the fiduciary of his mother's estate and financial affairs, **he commingled his funds with those of his mother's**. He used money from a joint account funded by his mother's social security and annuity benefits to pay for his own personal expenses and lived in his mother's house rent-free.

44. During the course of previous litigation between Mr. Schimsky and Kindred Hospital, Mr. Schimsky's deposition was taken under the penalty of perjury. A true and accurate copy of the relevant portions of the transcript of Mr. Schimsky's deposition is attached to this motion as **Exhibit S**.

45. The revelation of these facts caught the attention of the Public Guardian and the Probate Court. The Court ordered that a court investigator investigate the matter further.

46. During the course of previous litigation between Mr. Schimsky and Kindred Hospital, Counsel for Kindred Hospital obtained a copy of the Confidential Court Investigator's Report. A true and accurate copy of the redacted Court Investigator's report is attached as **Exhibit T**.

47. After the Confidential Court Investigator's report was filed, Charles E. Matthews, III, San Diego Public Guardian, moved on March 10, 2006 to be appointed the permanent Conservator over the Person and Estate of Ann Shimsky on the basis of Mr. Schimsky's failure as the successor trustee to the Ann P. Schimsky Trust to pay the Kindred Hospital bill despite repeated demands for payment.

48. During the course of previous litigation between Mr. Schimsky and Kindred Hospital, Counsel for Kindred Hospital obtained a copy of the Citation for Conservatorship filed by the Public Guardian of San Diego. A true and accurate copy of the Citation for Conservatorship is attached to the motion as **Exhibit U**.

49. A report by Mrs. Shimsky's Court-Appointed Attorney supported the Public Guardian's petition.

50. During the course of previous litigation between Mr. Schimsky and Kindred

Hospital, Counsel for Kindred Hospital obtained a copy of the Court Appointed Attorney's Report. A true and accurate copy of the Court Appointed Attorney's Report is attached as **Exhibit V**.

51. The parties were ordered to mediate the issues. All parties appeared on April 27, 2006 for court ordered mediation. During mediation, Mr. Schimsky was represented by new counsel, John Garcia, Esq., and a settlement was reached. As a result of the settlement, Mr. Schimsky was relieved of his authority as his mother's DPOA for Health Care Decisions.

52. With the promise that he would cooperate in ensuring payment to Kindred Hospital, Mr. Schimsky was permitted to retain his authority as the representative of the estate.

53. As part of the settlement agreement, Mr. Schimsky agreed not to sue Kindred Hospital or the Public Guardian for any damage which was the subject of the settlement agreement.

54. During the course of previous litigation between Mr. Schimsky and Kindred Hospital, Kindred Hospital obtained a copy of the settlement agreement between Mr. Schimsky, Kindred Hospital – San Diego, the Public Guardian of San Diego and Mrs. Shimsky. A true and accurate copy of the settlement agreement, executed by Mr. Schimsky is attached as **Exhibit W**.

55. After the mediation, the Public Guardian petitioned for permanent appointment as the Conservator over the Person of Ann P. Shimsky.

56. During the course of previous litigation between Mr. Schimsky and Kindred Hospital, Counsel for Kindred Hospital obtained a copy of the Letters of Conservatorship, granting the Public Guardian permanent conservatorship over the person of Mrs. Shimsky. A true and accurate copy of the Letters of Conservatorship is attached to the motion as **Exhibit X**.

57. Thereafter, the Public Guardian gave written notice to Mr. Schimsky that they would comply with Mrs. Shimsky's wishes and terminate life support.

58. During the course of previous litigation between Mr. Schimsky and Kindred Hospital, Counsel for Kindred Hospital obtained a copy of the letter from the Public Guardian

to Mr. Schimsky giving of the intent to remove Mrs. Shimsky from life support. A true and accurate copy of the letter from the Public Guardian to Mr. Schimsky is attached as **Exhibit Y**.

59. Mr. Schimsky's behaviors escalated. On August 21, 2006, in the interests of protecting the person of Mrs. Shimsky, Mr. Boyd petitioned the court for a restraining order prohibiting Mr. Schimsky from coming within 1000 yards of Kindred Hospital because Mr. Schimsky was observed having inappropriate contact with his mother constituting elder abuse. The restraining order was granted (**Exhibit Q**).

60. In response to the Public Guardian's notice to withdraw life support, Mr. Shimsky filed an *ex parte* petition for a protective order, causing Mrs. Shimsky to remain on the ventilator for several more months, something she did not want.

61. During the course of previous litigation between Mr. Schimsky and Kindred Hospital, Counsel for Kindred Hospital obtained a copy of Mr. Schimsky's *ex parte* petition to restrain the Public Guardian from removing Mrs. Shimsky from life support. A true and accurate copy of the motion is attached as **Exhibit Z**.

62. All the while, Mr. Schimsky failed to comply with the terms of the April 27, 2006 settlement agreement. Despite having access to his mother's bank account and monthly deposits, Mr. Schimsky never made any payments to Kindred Hospital to cover his mother's medical costs.

63. In August 2006, aware of Kindred Hospital's intention to file suit regarding the bill, and faced with the reality that Mr. Schimsky breached his fiduciary duties as his mother's DPOA, placing personal liability on Mr. Schimsky, Mr. Garcia indicated that his clients wanted to settle the financial matter. In sum, an offer was made to transfer, via Grant Deed, real property located at 1255 Essex Street, Imperial Beach, CA, valued at approximately $430,000.00 in exchange for dismissal Kindred Hospital's action to collect the outstanding bill. Although this would only provide Kindred Hospital with a fraction of what it was owed, Kindred Hospital agreed. Negotiations began and counsel for Kindred Hospital and counsel for Mr. Schimsky proceeded to draft a document acceptable to both sides.

64. To protect its interests Kindred Hospital filed a complaint seeking damages for

the unpaid bill for the care provided to Mrs. Shimsky. A true and accurate copy of the complaint is attached to the motion as **Exhibit AA**.

65. There were numerous conversations between counsel for the parties discussing the details of a settlement. Draft revisions of the settlement agreement were exchanged and a meeting of counsel was held on September 15, 2006 to further go over the terms of the settlement agreement. The parties then agreed to voluntarily meet to execute the finalized settlement agreement. The meeting was originally to be held on September 29, 2006, but Mr. Garcia fell ill and the meeting was continued to October 6, 2006 at 2:00 p.m.

66. Before the scheduled meeting, Mrs. Shimsky suffered a heart attack in the late hours of October 5, 2006. She was successfully resuscitated. With the consent of Mr. Boyd and approval by the Public Guardian and Kindred Hospital, Mr. Schimsky was permitted a supervised visit with his mother on October 6, 2006.

67. Although an offer was made to continue the settlement meeting to another day considering the circumstances, Kindred's counsel was advised by Mr. Garcia that the settlement meeting would proceed as scheduled.

68. At the settlement meeting, each party was represented by counsel. The settlement documents were explained to Mr. Schimsky by his counsel. The meeting lasted over an hour allowing Mr. Garcia time to address any questions raised by Mr. Schimsky. Negotiations during the meeting resulted in further revisions to the settlement agreement, which were initialed by the parties.

69. A true and accurate copy of the Stipulation and Settlement Agreement is attached to the motion as **Exhibit AB**.

70. Mr. Schimsky never expressed opposition to settlement and signed the agreement.

71. He also executed the Written Approval of Beneficiaries to Transfer the Residential Property within the Ann P. Shimsky Trust. A true and accurate copy of the Approval of Beneficiaries to Transfer the Residential Property is attached as **Exhibit AC**.

72. The matter was discussed with Mr. Schimsky's sister, Judy Lopriano, later that night who signed the written agreement allowing Mr. Schimsky to transfer the property (**Exhibit AC**).

73. With written permission from his sister, as his mother's Power of Attorney and Trustee of his mother's estate, Mr. Shimsky entered into a settlement agreement to transfer real property held in the Ann P. Schmsky trust for her benefit. Acting as Trustee Mr. Schimsky had the power to transfer Trust property. Mr. Schimsky started to perform his obligations under the Settlement agreement. Then, Mr. Schimsky stopped performance on the agreement.

74. On December 8, 2006 Kindred Hospital moved to enforce the Settlement Agreement. Without any evidence to support his claim, Mr. Schimsky opposed the motion arguing that Kindred Hospital failed to release records to Blue Cross and/or was paid by Blue Cross and/or Medi-Cal.

75. In reply Kindred Hospital offered the declaration of the Billing Department manager for Kindred Hospital, who affirmed under the penalty of perjury that Kindred Hospital offered to send records to Blue Cross. A true and accurate copy of the Declaration of Rae Couzins in support of Kindred Hospital's reply to Mr. Schimksy's opposition is attached as **Exhibit AD**.

76. Mr. Schimsky's claims that Kindred Hospital refused to release records were ridiculous, particularly since Kindred Hospital had been releasing his mother's records to him on a weekly basis without charge.

77. During the course of previous litigation between Mr. Schimsky and Kindred Hospital, Counsel for Kindred Hospital obtained a declaration from Juliet Brandel, the Custodian of the Medical Records for Kindred Hospital – San Diego. A true and accurate copy of the declaration of Juliet Brandel, Custodian of the Medical records at Kindred Hospital and a sample of her HIPPA Log are attached to the motions as **Exhibit AE**.

78. It was confirmed that Kindred Hospital had not received any payment, from any source for the services provided to Ann Shimsky since July 31, 2004.

79. During the course of previous litigation between Mr. Schimsky and Kindred

Hospital, Counsel for Kindred Hospital obtained the declaration of Rae Couzins declaring that Kindred Hospital had not received payment for the care and services rendered to Mrs. Shimsky since July 31, 2004. A true and accurate copy of the declaration of Rae Couzins in support of Kindred Hospital's Opposition to Mr. Schimsky's motion to Vacate the Judgment and Order enforcing the settlement agreement is attached as **Exhibit AF**.

80. The Trial Court granted Plaintiff's motion to enforce the settlement agreement and judgment was entered.

81. Thereafter, Mr. Schimsky and his sister as proposed intervener, moved to vacate the Trial Court's judgment and order. Their motion was denied. Mr. Schimsky and his sister, through another law firm, appealed the denial of their motion to vacate, which is currently pending before the Court of Appeal of the State of California, Fourth Appellate District, Division One, Court of Appeal Number: D051424.

82. Approximately a month and a half after filing the opening brief on the appeal, Mr. Schimsky filed his original suit, which included claims against Kindred Hospital **based on the same set of facts and circumstances that were before the Superior Court of the State of California in two previous cases**.

83. Upon learning that Mr. Schimsky named Kindred Hospital in the original suit, counsel for Kindred Hospital contacted the attorneys representing Mr. Schimsky (the same counsel who represented Mr. Schimsky on his motion to vacate the judgment enforcing the second settlement agreement signed by Mr. Schimsky), advised of Mr. Schimsky's covenant not to sue Kindred Hospital and provided a copy of the agreement to counsel. A true and accurate copy of the letter sent to Plaintiffs' counsel is attached to the motion as **Exhibit AG**.

84. Setting forth the above facts, Kindred Hospital requested that the claims asserted against it in the Federal suit be dismissed. Mr. Schimsky's counsel responded that Kindred Hospital was named to "preserve Mr. Schimsky's interests" and would look further into the situation.

85. After hearing nothing from Mr. Schimsky's counsel, correspondence following up on Mr. Schimsky's withdrawal of the claim against Kindred Hospital was sent on March 11,

2008. A true and accurate copy of the follow up letter sent by Kindred Hospital's counsel to Plaintiffs' counsel is attached to the motion as **Exhibit AH**.

86. Again, no word was received from Mr. Schimsky's counsel.

87. Despite being aware of the covenant not to sue, executed by their client on April 27, 2006; despite being given an opportunity to withdraw the claims brought in violation of the covenant not to sue; and despite the fact that the same issues based on the same facts circumstances have been and currently are being litigated in the Superior and Appellate Courts of the State of California, Counsel for Mr. Schimsky have failed to dismiss the claims against Kindred Hospital.

88. We had no alternative but to file a Rule 12b motion on behalf of Kindred Hospital.

89. Even after Kindred Hospital filed its 12b motion, Plaintiff failed to dismiss his claims against Kindred Hospital.

90. In light of Plaintiff refusal to dismiss the claims against Kindred Hospital, Kindred Hospital filed a Rule 11 motion.

91. Before the Rule 11 motion was heard, Defendant's Rule 12b motion was granted in its entirety and the matter against Kindred Hospital was dismissed.

92. Plaintiff thereafter filed a First Amended Complaint, alleging the same facts: that Kindred Hospital offered the records to Blue Cross. Absent from Plaintiff's First Amended Complaint was any allegation that Blue Cross accepted the offer of records.

93. Defense counsel contacted Plaintiff's counsel once again, requesting dismissal of the unsupported claims. A true and accurate copy of the correspondence to Plaintiff's counsel requesting dismissal of the claims against Kindred Hospital is attached hereto as Exhibit **AI**.

94. Plaintiffs' counsel failed to respond. More than 21 days has passed since Plaintiff's counsel was served with notice of Defendant's motion for sanctions.

95. Plaintiffs' actions left our client no alternative but to bring the instant motion.

96. Kindred Hospital requests monetary sanctions in the amount of $4200.00 against Plaintiffs' counsel for knowingly filing frivolous claims against Kindred Hospital and refusing to correct the objectionable filings after being given an opportunity to do so.

97. Defense counsel has spent over 15 hours conducting research and drafting the motions. It is expected that counsel will spend an additional 5 hours preparing and appearing for the hearing on this motion. Defense counsel bills at an hourly rate of $210.00 per hour.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration is executed this 30th day of July 2008, at Diamond Bar, California.

Karen A. Bocker, Declarant

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within entitled action; my business address is 1470 South Valley Vista Drive, Suite 200, Diamond Bar, California 91765.

On **July 30, 2008,** I served the foregoing document(s) described **DECLARATION OF KAREN A. BOCKER IN SUPPPORT OF DEFENDANT THC-ORANGE COUNTY, INC., dba KINDRED HOSPITAL – SAN DIEGO'S MOTION FOR SANCTIONS PURSUANT TO RULE 11 AGAINST YALE & BAUMGARTEN FOR VIOLATION OF RULE 11,** by placing the true copies thereof enclosed in sealed envelopes address as follows:

**SEE ATTACHED SERVICE LIST:**

**(XX)** BY MAIL: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles California in the ordinary course of business.

( ) BY PERSONAL SERVICE: I delivered such envelope(s) by hand to the office(s) of the above addressee(s).

( ) BY FEDERAL EXPRESS: I caused said envelope(s) to be sent by Federal Express to the above address(es).

( ) BY TELECOPIER: I caused said document(s) to be transmitted by telecopier at approximately 3:00 P.M. to the above address(s).

Executed on **July 30, 2008,** at Diamond Bar, California.

**(XX)** STATE:I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Carolina Cachu

SERVICE LIST:

| | |
|---|---|
| Eugene P. Yale<br>David W. Baumgarten<br>YALE & BAUMGARTEN, LLP<br>5030 Camino de la Siesta, Suite 308<br>San Diego, California 92108<br>Tel: (619) 220-8790<br>Fax: (619) 220-0369 | *Attorneys for Plaintiff* |
| U S Attorneys Office Southern<br>District of California<br>Civil Division<br>880 Front Street, Suite 6253<br>San Diego, California 92101<br>Tel: (619) 557-5662<br>Fax: (619) 557-7122 | *Attorneys for United States Office of Personnel Management* |

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within entitled action; my business address is 1470 South Valley Vista Drive, Suite 200, Diamond Bar, California 91765.

On , I served the foregoing document(s) described as **DECLARATION OF KAREN A. BOCKER IN SUPPORT OF DEFENDANT THC-ORANGE COUNTY, INC., dba KINDRED HOSPITAL – SAN DIEGO'S NOTICE OF MOTION FOR SANCTIONS PURSUANT TO RULE 11 AGAINST YALE & BAUMGARTEN FOR VIOLATION OF RULE 11,** by placing the true copies thereof enclosed in sealed envelopes address as follows:

**SEE ATTACHED SERVICE LIST:**

**(XX)** BY MAIL: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles California in the ordinary course of business.

( ) BY PERSONAL SERVICE: I delivered such envelope(s) by hand to the office(s) of the above addressee(s).

( ) BY FEDERAL EXPRESS: I caused said envelope(s) to be sent by Federal Express to the above address(es).

( ) BY TELECOPIER: I caused said document(s) to be transmitted by telecopier at approximately 3:00 P.M. to the above address(s).

Executed on **August 29 ,2008** at Diamond Bar, California.

**(XX)** STATE:I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Kimberly King

SERVICE LIST:

Eugene P. Yale
David W. Baumgarten
YALE & BAUMGARTEN, LLP
5030 Camino de la Siesta, Suite 308
San Diego, California 92108
Tel: (619) 220-8790
Fax: (619) 220-0369

*Attorneys for Plaintiff*

U S Attorneys Office Southern
District of California
Civil Division
880 Front Street, Suite 6253
San Diego, California 92101
Tel: (619) 557-5662
Fax: (619) 557-7122

*Attorneys for United States Office of Personnel Management*