# Exhibit O

DECLARATION
UNDER CALIFORNIA NATURAL DEATH ACT
(CALIFORNIA HEALTH & SAFETY CODE §7186.5)

I, Ann P. Shimsky, being over 18 years of age and of sound mind, willfully and voluntarily declare as follows:

If I should have an incurable and irreversible condition that has been diagnosed by two physicians and that will result in my death within a relatively short time without the administration of life-sustaining treatment or has produced an irreversible coma or persistent vegetative state, and I am no longer able to make decisions regarding my medical treatment, I direct my attending physician, pursuant to the Natural Death Act of California, to withhold or withdraw treatment, including artificially administered nutrition and hydration, that only prolongs the process of dying or the irreversible coma or persistent vegetative state and is not necessary for my comfort or to alleviate pain.

If I have been diagnosed as pregnant, and that diagnosis is known to my physician, this declaration shall have no force or effect during my pregnancy.

Signed this 30th day of June, 1998, at San Diego County, California.

Ann P Shimsky

Ann P. Shimsky

The declarant voluntarily signed this writing in my presence. I am not entitled to any portion of the estate of the declarant upon her death under any will or codicil thereto of the declarant now existing or by operation of law. I am not a health care provider, an employee of a health care provider, the operator of a community care facility, an employee of an operator of a community care facility, the operator of a residential care facility for the elderly, or an employee of an operator of a residential care facility for the elderly.

| | |
|---|---|
| [signature] | [signature] |
| Name: Christopher J. Zucconi | Name: MICHAEL FARRELL |
| Address: 7777 Alvarado Rd. #413 | Address: 7777 ALVARADO RD #413 |
| La Mesa, CA 91941 | LA MESA, CA. 91941 |

# Exhibit P

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO - PROBATE COURT

CERTIFIED COPY

| | |
|---|---|
| ARNOLD D. SCHIMSKY, attorney-in-fact for Ann Shimsky, Petitioner, | |
| vs. | Case No. P188885 |
| KINDRED HOSPITAL - SAN DIEGO, Respondent. | |
| ANN SHIMSKY, Patient. | |

VIDEOTAPED DEPOSITION OF ARNOLD D. SCHIMSKY

VOLUME II, PAGES 147 THROUGH 394

CARLSBAD, CALIFORNIA

JANUARY 19, 2006

Reported by Joleane Ashley, CSR No. 3590

HAHN BOWERSOCK CORPORATION

Certified Court and Deposition Reporters

151 Kalmus Drive - Suite L-1 - Costa Mesa, CA 92626

800-660-3187 · Fax 714-662-1398

www.hahnbowersock.com email: hbdeposet@hahnbowersock.net

COSTA MESA • SAN BERNARDINO • LONG BEACH • LOS ANGELES • SAN DIEGO • SAN FRANCISCO

One of those individuals came up to me and said, "We are having a problem."

And I said, "What's the problem?"

"Well, Blue Cross is not giving us payment because they said you haven't communicated with them about some information about possible other insurance that your mother has."

And I said, "I have no knowledge of them ever writing to me or communicating to me to want to know any information."

So somewheres along the line, things straightened out, the course correction jets were set, when I talked to them and said I had the Durable Power of Attorney for Healthcare.

Q Did you provide a copy of the Durable Power of Attorney to Kindred Hospital?

A Yeah, I did.

MS. BOCKER: Okay.

THE WITNESS: But that wasn't to a doctor. It was just to Kindred Hospital San Diego.

FURTHER EXAMINATION

BY MS. BOCKER:

Q When you gave the Durable Power of Attorney to Kindred Hospital, did you also provide a copy of your

mother's Declaration Under the California Natural Death Act?

A No, I didn't.

Q You never gave Dr. Hom a copy of your mom's declaration?

A No.

Q And you didn't give Dr. Anyaji a copy of your mom's declaration?

A No.

Q You did not give Dr. Lim a copy of your mother's declaration?

A No.

Q You did not give Dr. Nguyen a copy of your mother's declaration?

A No.

Q You did not give Dr. Sazon a copy of the declaration?

A No.

Q That's a no? You did not give Dr. Belafsky a copy of the declaration?

A No.

Q You didn't give Dr. Samuel Clark a copy of the declaration?

A I don't know who Samuel Clark is.

Q All right. Do you know who Dr. Davies Wong is?

Exhibit Q

EA-100

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| JAMES G. BOYD; SBN 179828<br>BOYD & BRIMMER, A.P.C.<br>2667 Camino del Rio South, Suite 203<br>San Diego, CA 92108<br>TELEPHONE NO. (Optional): (619) 563-2001 FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): ANN P. SCHIMSKY | FILED<br>Clerk of the Superior Court<br>AUG 21 2006<br>By:D. FERNANDEZ, Deputy |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO<br>STREET ADDRESS: 1409 Fourth Avenue<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: San Diego, CA 92101<br>BRANCH NAME: PROBATE | |
| PETITIONER: JAMES G. BOYD; Guardian Ad Litem for ANN P. SHIMSKY, An Incapacitated Person<br>RESPONDENT: ARNOLD SCHIMSKY | |
| **PETITION FOR PROTECTIVE ORDERS**<br>(Elder or Dependent Adult Abuse) | CASE NUMBER:<br>DV023127 |

NOTE: This form must be completed and filed with an *Order to Show Cause and Temporary Restraining Order* (form EA-120). A separate petition must be filed for each person to be protected.

1. Petitioner *(name)*: JAMES G. BOYD; Guardian Ad Litem is
   a. [ ] the person to be protected.
   b. [ ] the conservator of the person to be protected.
   c. [x] the guardian ad litem for the person to be protected.
   d. [x] other *(describe relationship and capacity)*: Court-Appointed Attorney in re CONSERVATORSHIP OF ANN SHIMSKY, San Diego Superior Court Case No. P188885

2. Person to be protected *(name)*: ANN P. SHIMSKY
   a. [X] is age 65 years or older.
   b. [ ] is between the ages of 18 and 64, and has physical or mental limitations that restrict his or her ability to carry out normal activities or to protect his or her rights *(describe physical or mental limitations)*:

3. a. Person to be restrained *(name)*: ARNOLD SHIMSKY
   b. Description: Resembles Woody Allen, only taller.

Sex: [X] M [ ] F Ht: 6'1" Wt: 175 Hair color: GRY Eye color: UNK Race: CAU Age: 63 Date of birth: 3/20/42

   c. Address *(if available)*: 1255 Essex Street, Imperial Beach, CA 91932
   d. Relationship to protected person *(describe)*: Son

RELATED CASES

4 a. The person to be protected [X] has [ ] has not been involved in other court actions with the person to be restrained in which restraining orders were issued. *(If other court actions are known, please specify the case numbers and the county or other state, and attach copies of orders if available)*: Protected person is subject of several matters in Probate Court (Conservatorship of SCHIMSKY, SDSC Case Number P188885). San Diego County Public Guardian is Conservator of her Person. KINDRED HOSPITAL previously obtained restraining order against ARNOLD SHIMSKY (GIC 847844).

b. Describe any other related cases *(specify case name, number, and county or other state)*: In the Probate case, ARNOLD SHIMSKY sought injunctive relief against his mother's treating physicians which the hospital countered by petitioning for a restraining order and for revocation of the power attorney being exercised by ARNOLD SHIMSKY. The hospital's requested restraining order was granted and ANN SHIMSKY's power of attorney was revoked when the PUBLIC GUARDIAN was appointed conservator.

(This is not a Court Order)

EA-100

| PETITIONER: JAMES G. BOYD; Guardian Ad Litem for ANN P. SHIMSKY, An Incapacitated Person<br>RESPONDENT: ARNOLD SCHIMSKY | CASE NUMBER: |
|---|---|

5. This petition should be granted because
   a. [X] the person to be restrained caused the person to be protected to suffer physical harm or pain or mental suffering through physical abuse, financial abuse, abandonment, isolation, abduction, or other treatment.
   b. [ ] the person to be restrained has the care or custody of the person to be protected, but has neglected that person or deprived the person of goods or services that are necessary to avoid physical harm or mental suffering.

PETITIONER REQUESTS THAT THE COURT MAKE THE ORDERS INDICATED BY THE CHECK MARKS IN THE BOXES BELOW.

6. [X] **PERSONAL CONDUCT ORDER** [X] **To be ordered now and to remain in effect until the hearing.**
   Petitioner seeks an order that the restrained person must not abuse, intimidate, molest, attack, strike, stalk, threaten, sexually assault, batter, harass, telephone, destroy the personal property of, or contact directly or indirectly, by mail or otherwise, the protected person.

7. [ ] **RESIDENCE EXCLUSION ORDER** [ ] **To be ordered now and to remain in effect until the hearing.**
   a. Petitioner seeks an order that the restrained person must immediately move from and must not return to *(address)*:

   and may take only personal clothing and effects needed until the hearing.
   b. The residence exclusion order should be granted because
      (1) Title to or lease of the residence at the address listed above is not in the sole name of the person to be restrained nor is it in the name of the person to be restrained and another person besides the person to be protected.
      (2) [ ] The person to be protected will suffer physical or emotional harm if the restrained person does not leave the residence.
      (3) [ ] The person to be protected has a legal right to live at the address listed above.
      (4) [ ] The restrained person assaulted or threatened to assault the person to be protected.

8. [X] **STAY-AWAY ORDER** [X] **To be ordered now and to remain in effect until the hearing.**
   Petitioner seeks an order that the restrained person must stay at least *(specify)*: 1,000 yards away from the protected person and the following places:
   a. [ ] The residence of the protected person located at *(specify)*:
   b. [ ] The place of work of the protected person *(specify)*:
   c. [ ] The vehicle of the protected person *(specify)*:
   d. [X] Other *(specify)*: KINDRED HOSPITAL, 1940 El Cajon Blvd., San Diego, CA 92104

9. If the restrained person is ordered to stay away from all the places specified in item 8, will the restrained person still be able to get to his or her residence, school, place of employment, or place of worship? [X] Yes [ ] No
   *(If no, explain)*:

10. [X] **FIREARMS PROHIBITION AND RELINQUISHMENT ORDER**
    Petitioner requests an order that the restrained person is prohibited from owning, possessing, purchasing or receiving, or attempting to purchase or receive a firearm, and must relinquish any firearm that he or she owns or possesses. The abuse in this case is not solely financial abuse unaccompanied by force, threat, harassment, intimidation, or any other form of abuse.

**(This is not a Court Order)**

EA-100

| PETITIONER: JAMES G. BOYD; Guardian Ad Litem for ANN P. SHIMSKY, An Incapacitated Person<br>RESPONDENT: ARNOLD SCHIMSKY | CASE NUMBER: |
|---|---|

11. **TIME FOR SERVICE**
Petitioner requests that time for service of the *Order to Show Cause* and accompanying papers be served no less than
[X] 2 days before the date set for hearing [ ] other *(specify time)*: . *(If you need the time to complete service shortened to less than 2 days before the hearing, provide additional facts to support your request.)*

12. [X] **OTHER ORDERS** *(Specify any other orders that you are requesting. You must provide reasons for your requests.)*
STAY-AWAY ORDER to be extended to Staff Members of KINDRED HOSPITAL, a health care provider, where ANN. SHIMSKY has been a patient for over three years. ARNOLD SHIMSKY has repeatedly threatened hospital staff and they feel unsafe around him, as a result. There is a current NON-CLETS restraining order to which ARNOLD SHIMSKY stipulated in January, 2005. A non-CLETS order is inadequate under the circumstances.

ARNOLD SHIMSKY has made repeated threatening comments to staff members pertaining to having, and being able and willing to use firearms, but denied having weapons after the restraining order would have required him to sell or turn those weapons in to law enforcement.

[ ] Continued on Attachment 12. *(If you need more space, check here and use an attachment. You may use* Attachment *(form MC-025) designated as "Attachment 12.")*

13. **DESCRIPTION OF ABUSE AND OTHER FACTS SUPPORTING PETITION**
*(Describe in detail the most recent incidents of abuse. List each incident separately. Describe the incident, including who did what to whom and any injuries. Describe any history of abuse.):*

ANN SHIMSKY is over 90 years old. She is in a persistent vegetative state, and is dependent on a ventilator to inhale and exhale for her. She has been ventilator-dependent since before 2002 and has been treated at KINDRED HOSPITAL for over three years. She cannot swallow and has no gag reflex. She is also dependent on a gastrointestinal tube for feeding. She appears to be in a "waking coma," her eyes open, but unresponsive to any stimulation except pain. SAN DIEGO PUBLIC GUARDIAN has been appointed as Conservator of her Person after the Superior Court determined that ARNOLD SHIMSKY, her son, had been abusing the Durable Power of Attorney for Health Care that she had given to him. ANN P. SCHIMSKY had executed a Natural Death Act Declaration in 1998, the existence of which her son had not revealed to her physicians, which would have precluded the life-sustaining she has been receiving. Her doctors have stated that continued care is futile and she will die in a short period of time if mechanical ventilation is withdrawn.

ARNOLD SHIMSKY, has recently been observed kissing his incapacitated mother on the mother and with his tongue in her mouth. (See Exhibit A, "Declaration of NAISON MOHAMMAD") Over the past several years, ARNOLD SHIMSKY has displayed an inappropriate interest in his mother's urethra and perineal area, despite the availability of trained nursing staff to provide care for her.

[X] Continued on Attachment 13. *(If you need more space, check here and add an attachment. You may use* Attachment *(form MC-025) designated as "Attachment 13.")*

**(This is not a Court Order)**

EA-100

| PETITIONER: JAMES G. BOYD; Guardian Ad Litem for ANN P. SHIMSKY, An Incapacitated Person<br>RESPONDENT: ARNOLD SCHIMSKY | CASE NUMBER: |
|---|---|

14. **NO FILING FEE**

There is no filing fee for this petition.

15. ☐ **NO FEE FOR SERVICE OF ORDERS**

Petitioner requests free service by law enforcement of the orders issued based on this petition pursuant to Welfare & Institutions Code section 15657.03(m). *(For the court to determine if you are eligible for free service, you must file a completed copy of the* Application for Waiver of Court Fees and Costs *(form 982(a)(17) with this petition.)*

16. ☒ **ATTORNEY FEES AND COSTS**

Petitioner requests that petitioner's attorney fees and costs be paid by the restrained person as follows:

| Item | Amount |
|---|---|
| Attorney Fees (6 hours @ $225/hour) | $1,350.00 |

17. ☒ **SERVICE OF ORDERS ON LAW ENFORCEMENT**

Petitioner requests that copies of the order be given to the law enforcement agencies listed below by:

a. ☒ the petitioner.
b. ☐ the petitioner's attorney.
c. ☐ the clerk of the court, by mail.

| Law Enforcement Agency | Address |
|---|---|
| SAN DIEGO SHERIFF | 220 West Broadway<br>San Diego, CA 92101 |

**Please note that this *Petition for Protective Orders* and the orders issued by the court must be personally served on the restrained person. No person to be protected, including yourself, may personally serve these papers.**

Date: August 21, 2006

JAMES G. BOYD
(TYPE OR PRINT NAME OF ATTORNEY)

▶ [signature]
(SIGNATURE OF ATTORNEY)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: August 21, 2006

JAMES G. BOYD
(TYPE OR PRINT NAME OF PETITIONER)

▶ [signature]
(SIGNATURE OF PETITIONER)

(This is not a Court Order)

| PETITIONER/PLAINTIFF: JAMES G. BOYD; GAL for ANN P. SCHIMSKY<br>RESPONDENT/DEFENDANT: ARNOLD SHIMSKY | CASE NUMBER: |
|---|---|

Attachment 13 (continued):

On at least one occasion, circumstantial evidence exists suggests that ARNOLD SHIMSKY penetrated his mother's rectum with his finger. (See Exhibit B, "Declaration of NORMA GORDON") These events were reported to ADULT PROTECTIVE SERVICES, but no action was taken. KINDRED HOSPITAL obtained a non-CLETS retraining order on January 6, 2005 (See Exhibit C, "Stipulation for Restraining Order and Order"), after submitting over 15 declarations to the court attesting to ARNOLD SHIMSKY's threatening behavior toward staff. Two of those declarations, attesting to his bizarre intimacy with ANN P. SCHIMSKY are attached hereto. (See Exhibits D and E, "Declaration of ROBERT STEWART" and "Declaration of DEBBIE TURNBOW," respectively.) At least one witness to the lingering tongue-kissing behavior of ARNOLD SHIMSKY against his mother refused to sign her declaration for fear of retaliation, but will testify under subpoena.

A Bio-Ethics committee convened by the PUBLIC GUARDIAN advised that life-support be withdrawn and the PUBLIC GUARDIAN has informed ARNOLD SHIMSKY that life support will be withdrawn in the near future. (See Exhibit F, Letter to ARNOLD SHIMSKY from CHARLES MATTHEWS, III, dated August 14, 2006.)

Because ARNOLD SHIMSKY has behaved in a threatening manner in the past, his behavior is increasingly bizarre, and based in his past statements he does have firearms which he has not turned in to police, a 1,000-yard stay away order is requested to prevent his contact with the hospital facility and staff. It is requested that an order be granted that ARNOLD SHIMSKY stay away from that area in the City Heights neighborhood of San Diego bounded by TEXAS STREET on the East, LINCOLN AVENUE on the South, CLEVELAND AVENUE on the West, and MADISON AVENUE on the North. (See Exhibit G.)

Legal Solutions Plus

JAMES G. BOYD; 179828
BOYD & BRIMMER
A Professional Corporation
2667 Camino del Rio North,
Suite 203
San Diego, California 92108

Tel: (619) 563-2001

GUARDIAN AD LITEM for ANN P. SHIMSKY,
An Incapacitated Person

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE COUNTY OF SAN DIEGO- CENTRAL DIVISION**

| | |
|---|---|
| ANN P. SHIMSKY, An Incapacitated Person, by and through JAMES G. BOYD, her Guardian Ad Litem,<br><br>Petitioner,<br><br>v.<br><br>ARNOLD SHIMSKY,<br><br>Respondent. | Case No.: P188885<br><br>**DECLARATION OF NAISAN MOHAMMAD IN SUPPORT OF ELDER ABUSE PROTECTIVE ORDER** |

I, NAISAN MOHAMMAD, declare as follows:

1. I am an employee of KINDRED HOSPITAL and have worked here for about six years. I am employed as a PBX operator and work at the entry to the hospital.

2. On July 29, 2006, I was working at the front desk when ARNOLD SHIMSKY signed in the Visitors Register to see his mother. It was approximately 9:30 a.m. when he signed in and he still had not signed out when I left the facility at about 4:00 p.m. I requested Security to escort ARNOLD SHIMSKY as I had been instructed by hospital administrators.



EXHIBIT A

3. At approximately 2:00 p.m., I left the front desk was walking past Room107 in which ANN SCHIMSKY is a patient when I observed ARNOLD SHIMSKY leaning over his mother and engaged in a lingering kiss. I called to the security officer that was posted outside the door and stated that ARNOLD SHIMSKY was in the act of kissing his mother. The guard rose and looked into the room. ARNOLD SHIMSKY continued to kiss his mother the entire time. I observed that he had a fixated look before he engaged in the kissed on his face. His eyes were open and he was looking at his mother while he kissed her as a lover would.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 8/18/06

NAISAN MOHAMMAD

JAMES G. BOYD; SBN 179828
BOYD & BRIMMER
A Professional Corporation
2667 Camino del Rio North, Suite 203
San Diego, California 92108
Telephone: (619) 563-2001

GUARDIAN AD LITEM for ANN P. SHIMSKY,
An Incapacitated Person

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| ANN P. SHIMSKY, An Incapacitated Person, by and through JAMES G. BOYD, her Guardian Ad Litem,<br><br>Petitioner,<br><br>v.<br><br>ARNOLD SHIMSKY,<br><br>Respondent. | Case No.<br><br>DECLARATION OF NORMAN GORDON IN SUPPORT OF ELDER ABUSE PROTECTIVE ORDER |

I, NORMA GORDON, declare as follows:

1. I am an employee of KINDRED HOSPITAL and have worked here for the past year as a Certified Nursing Assistant. I have worked in hospitals as a CNA for about thirteen years.

2. In the past year, I have observed ARNOLD SHIMSKY interact with his mother many times. I have seen him kiss his mother with his tongue in her mouth many times. I have reported this behavior, but have been told that there is nothing that can be done to stop him.

3. On one of the first occasions I met ARNOLD SHIMSKY, he told me that he wears his father's clothing when visiting his mother so that she will think he is his father.

4. Last month, ARNOLD SHIMSKY came into his mother's room immediately after I had cleaned her after she passed stool. She wears no undergarments and lies on a Chux pad, which was disposed of and replaced with a new pad after she is cleaned. I left ARNOLD SHIMSKY alone and, in less than five minutes, ARNOLD SHIMSKY called to me in the room,



EXHIBIT B

JAMES G. BOYD; SBN 179828
BOYD & BRIMMER
A Professional Corporation
2667 Camino del Rio North, Suite 203
San Diego, California 92108
Telephone: (619) 563-2001

GUARDIAN AD LITEM for ANN P. SHIMSKY,
An Incapacitated Person

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF SAN DIEGO

ANN P. SHIMSKY, An Incapacitated Person, by and through JAMES G. BOYD, her Guardian Ad Litem,

Petitioner,

v.

ARNOLD SHIMSKY,

Respondent.

Case No.

DECLARATION OF NORMAN GORDON IN SUPPORT OF ELDER ABUSE PROTECTIVE ORDER

I, NORMA GORDON, declare as follows:

1. I am an employee of KINDRED HOSPITAL and have worked here for the past year as a Certified Nursing Assistant. I have worked in hospitals as a CNA for about thirteen years.

2. In the past year, I have observed ARNOLD SHIMSKY interact with his mother many times. I have seen him kiss his mother with his tongue in her mouth many times. I have reported this behavior, but have been told that there is nothing that can be done to stop him.

3. On one of the first occasions I met ARNOLD SHIMSKY, he told me that he wears his father's clothing when visiting his mother so that she will think he is his father.

4. Last month, ARNOLD SHIMSKY came into his mother's room immediately after I had cleaned her after she passed stool. She wears no undergarments and lies on a Chux pad, which was disposed of and replaced with a new pad after she is cleaned. I left ARNOLD SHIMSKY alone and, in less than five minutes, ARNOLD SHIMSKY called to me in the room,



EXHIBIT B

complaining that his mother had just had a bowel movement. I did not believe this was possible, as I had just cleaned her, but went in the room to check her. When I lifted her garment to check the pad, I observed fecal streaks five to six inches long on the Chux that appeared to have been made by a finger being wiped on the pad. ANN SCHIMSKY had not had a bowel movement.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 8-21-06

NORMA GORDON

BOYD & BRIMMER
A Professional Corporation
1667 Camino del Rio S.,
Suite 203
San Diego, CA 92108
(619) 563-2001



Q
95

ORIGINAL

1/6

GIOVANNIELLO & MICHELS, LLP
Alexander F. Giovanniello (CSB # 125562)
Karen A. Bosker (CSB # 213764)
1470 S Valley Vista Drive, #200
Diamond Bar, California 91765

Ph: (909) 396-1964
Fax: (909) 396-0885

Attorneys for Petitioner:
Kindred Hospital-San Diego

F I L E D
Clerk of the Superior Court
JAN - 8 2005
By: M. MASES, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN DIEGO- CENTRAL- HALL OF JUSTICE

| | |
|---|---|
| KINDRED HOSPITAL-SAN DIEGO<br>Petitioner<br>vs.<br>ARNOLD SCHIMSKY<br>Defendant | Case No.: GIC847844<br><br>STIPULATION FOR RESTRAINING ORDER AND ORDER<br><br>Judge: Francis M. Devaney<br>Dept: 25 |

IT IS HEREBY STIPULATED AND AGREED by and between Petitioner, KINDRED HOSPITAL-SAN DIEGO and Defendant, ARNOLD SCHIMSKY, that:

1. All personnel of Kindred Hospital-San Diego are protected by this stipulation and order.

2. ARNOLD SCHIMSKY is prohibited from ~~further~~ any violence or threats of violence against the protected persons and SPECIFICALLY it is stipulated, and ordered that Defendant shall not assault, batter, or stalk the employees and other protected persons; shall not follow or stalk the employees and other protected persons to or from the place of work; and shall not follow the employees and other protected persons during hours of employment.

3. ARNOLD SCHIMSKY must surrender to local law enforcement or sell to



EXHIBIT C

a licensed gun dealer any firearm in or subject to his immediate possession or control within 48 hours after service of this stipulation and order.

4. If ARNOLD SCHIMSKY owns, possesses, or controls any firearms, he must file a receipt with the court showing compliance with this order within 72 hours of receiving this stipulation and order.

5. ARNOLD SCHIMSKY may visit his mother during regular visiting hours.

6. Upon arrival to the hospital he must check in at the front desk and be escorted to his mother's room. He may not wander the halls during his visit to his mother. He may not follow the employees during his visits to his mother. Should Mr. Schimsky leave his mother's room while visiting at the hospital, he must be escorted to any other area of the hospital such as the men's room or cafeteria. He shall be escorted back to his mother's room or to the exit. Nothing in this paragraph is intended to prevent or restrict defendant from seeking immediate staff attention to a legitimate emergency involving his mother.

7. Defendant may not touch any medical equipment while at the hospital.

8. He may collect data regarding his mother and ask legitimate questions from the following designated liaisons for that purpose: Charlotte Brehm; Sally Charleston; Nena Galan; Evan Ingle; Bernie Okorocha; Socorro Untalan; Erlinda Mariano; and Chita Bagon.

9. If ARNOLD SCHIMKSY wants to obtain copies of his mother's medical records maintained by Kindred Hospital, he must make his request through the Public Guardian. He must cooperate with the Public Guardian in obtaining the records and comply with Health and Safety Code § 123110(b). The records will be released to the Public Guardian after Kindred Hospital-San Diego has received payment of fees pursuant to its adopted fee schedule consistent with Health and Safety Code § 123110(b). Nothing in this paragraph is intended to allow the circumvention of the

denial of ARNOLD SCHIMSKY'S ex parte application on December 15, 2005 by Judge Domnitz.

10. Defendant is ordered not to carry any items in which a weapon can be concealed. Any bags and/or containers shall be subject to retention by hospital security and will only be returned to defendant when he leaves the hospital.

IT IS FURTHER STIPULATED AND AGREED by and between Petitioner, KINDRED HOSPITAL-SAN DIEGO and Defendant, ARNOLD SCHIMSKY, that the stipulation and order will remain in effect so long as Mrs. Ann Shimsky is a patient at Kindred Hospital- San Diego.

IT IS FURTHER AGREED that this stipulation for a restraining order and order, consisting of a total of three pages, may be executed in subparts.

ARNOLD SCHIMSKY

DATED: 1/5/06 By: Arnold Schimsky
Arnold Schimsky

KINDRED HOSPITAL – SAN DIEGO

DATED: ____________ By: ____________
Susan Bailey, CEO
Kindred Hospital – San Diego

**ORDER**

GOOD CAUSE APPEARING therefore, and pursuant to the stipulation of the parties, IT IS SO ORDERED.

DATED: ____________

____________
JUDGE OF THE SUPERIOR COURT

denial of ARNOLD SCHIMSKY'S ex parte application on December 15, 2005 by Judge Domnitz.

10. Defendant is ordered not to carry any items in which a weapon can be concealed. Any bags and/or containers shall be subject to retention by hospital security and will only be returned to defendant when he leaves the hospital.

IT IS FURTHER STIPULATED AND AGREED by and between Petitioner, KINDRED HOSPITAL-SAN DIEGO and Defendant, ARNOLD SCHIMSKY, that the stipulation and order will remain in effect so long as Mrs. Ann Shimsky is a patient at Kindred Hospital- San Diego.

IT IS FURTHER AGREED that this stipulation for a restraining order and order, consisting of a total of three pages, may be executed in subparts.

ARNOLD SCHIMSKY

DATED:____________________ By:____________________
Arnold Schimsky

KINDRED HOSPITAL – SAN DIEGO

DATED: 12/30/05 By: [signature]
Susan Bailey, CEO
Kindred Hospital – San Diego

## ORDER

GOOD CAUSE APPEARING therefore, and pursuant to the stipulation of the parties, IT IS SO ORDERED.

DATED: 1/6/06 [signature]
JUDGE OF THE SUPERIOR COURT
Francis M. Devaney

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within entitled action; my business address is 1470 South Valley Vista Drive, Suite 200, Diamond Bar, California 91765.

On January 5, 2006, I served the foregoing document(s) described as **STIPULATION FOR RESTRAINING ORDER AND ORDER** by placing the true copies thereof enclosed in sealed envelopes address as follows:

Kenneth N. Hamilton — Attorney for Plaintiff
4670 Nebo Drive, Suite 101
La Mesa, California 91941
Tel: (619) 337-8491
Fax: (619) 337-8495

(XX) BY MAIL: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles California in the ordinary course of business.

( ) BY PERSONAL SERVICE: I delivered such envelope(s) by hand to the office(s) of the above addressee(s).

( ) BY FEDERAL EXPRESS: I caused said envelope(s) to be sent by Federal Express to the above address(es).

(XX) BY TELECOPIER: I caused said document(s) to be transmitted by telecopier at approximately 5:00 P.M. to the above address(s).

Executed on January 5, 2006, at Diamond Bar, California.

(XX) STATE: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Vanessa J. Echavez (signature)
Vanessa J. Echavez

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within entitled action; my business address is 1470 South Valley Vista Drive, Suite 200, Diamond Bar, California 91765.

On January 6, 2006, I served the foregoing document(s) described as **STIPULATION FOR RESTRAINING ORDER AND ORDER** by placing the true copies thereof enclosed in sealed envelopes address as follows:

Kenneth N. Hamilton
4670 Nebo Drive, Suite 101
La Mesa, California 91941
Tel: (619) 337-8491
Fax: (619) 337-8495

Attorney for Plaintiff

(XX) BY MAIL: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles California in the ordinary course of business.

( ) BY PERSONAL SERVICE: I delivered such envelope(s) by hand to the office(s) of the above addressee(s).

( ) BY FEDERAL EXPRESS: I caused said envelope(s) to be sent by Federal Express to the above address(es).

( ) BY TELECOPIER: I caused said document(s) to be transmitted by telecopier at approximately 5:00 P.M. to the above address(s).

Executed on January 6, 2006, at Diamond Bar, California.

(XX) STATE: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Vanessa J. Echavez
Vanessa J. Echavez

**DECLARATION OF ROBERT STEWART**
**LICENSED VOCATIONAL NURSE**

I, Robert Stewart, declare as follows:

1. I am a Licensed Vocational Nurse (LVN), licensed to practice in the State of California. I have been employed as an LVN at Kindred Hospital – San Diego located at 1940 El Cajon Blvd., San Diego, CA 92104 for twelve (12) years. My date of birth is May 15, 1960.
2. I have personal knowledge of the facts contained herein and if called to testify about such facts could do so competently.
3. This declaration is made in support of Kindred Hospital – San Diego's request for a restraining order against Mr. Schimsky.
4. I make this declaration of my own free will and without any coercion by anyone.
5. Mrs. Ann Shimsky is a patient at Kindred Hospital – San Diego. Mrs. Ann Shimsky has a son that visits often; his name is Mr. Arnold Schimsky.
6. Hospital staff will not enter Mrs. Shimsky's room by themselves when Mr. Schimsky is in the room. Mr. Schimsky is always watching over the staff and searching for things to complain about. While he is there, staff members always go into the room with another staff member because they want someone else in the room to verify what is done and what is said.
7. Before the Temporary Restraining Order was in effect, Mr. Schimsky, under the guise of being his mother's Durable Power of Attorney, had no limits on his actions. He would ask about his mother's bowel movement 10-12 times a day, not comfortable with saying these things in a legal document. And he would ask 10 different people the same question as a means of finding inconsistencies and then arguing with staff about the inconsistencies. For example, he would ask one staff member if his mother was turned at 10:00 and if the staff member said yes he would ask another staff member what time his mother was turned. If the second

EXHIBIT D

staff member said 10:15 he would begin his interrogation into why another staff member said she was turned at 10:00.

8. Mr. Schimsky is also obsessed about his mother's output, her catheter, the size of her urethra, and the position of the urinary catheter. He wants the catheter repositioned or removed and is also very interested in the creams applied to his mother's perineal area. He perseverates on her bodily functions.

9. Mr. Schimsky makes trivial requests of the nurses to perform tasks that he could perform himself. For example, he will call a nurse to come wipe his mother's eyes, position her head, put her arm on a pillow, make sure his mother is not too far over on the bed, and to adjust the head of the bed to an exact degree ("not too high, not too low").

10. I have observed Mr. Schimsky touching things that he should not be touching. For example, I have seen Mr. Schimsky touching his mother's ventilator machine.

11. Since the Temporary Restraining Order (TRO) has been in effect, Mr. Schimsky's behavior has been less inappropriate. It appears that the TRO establishes the boundaries Mr. Schimsky needs. He does not ask staff questions about minute details of his mother's care or condition. He has stopped making repetitive requests. In addition, Mr. Schimsky now waits in the hallway while care is being given to his mother. After care is given, he goes back into his mother's room. He no longer wanders the hallways.

12. Notwithstanding his recent change in behavior, I remain concerned about what Mr. Schimsky will do when his mother dies. I believe he will react in a negative way.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration is executed on this 15 day of July 2005, at San Diego, California.

Robert Stewart, LVN, Declarant

**DECLARATION OF DEBBIE TURNBOW**
**LICENSED VOCATIONAL NURSE**

I, Debbie Turnbow, declare as follows:

1. I am a Licensed Vocational Nurse (LVN), licensed to practice in the State of California. I am currently employed as an LVN at Kindred Hospital – San Diego located at 1940 El Cajon Blvd., San Diego, CA 92104.
2. I have personal knowledge of the facts contained herein and if called to testify about such facts could do so competently.
3. This declaration is made in support of Kindred Hospital – San Diego's request for a restraining order against Mr. Schimsky.
4. I make this declaration of my own free will and without any coercion by anyone.
5. Mrs. Ann Shimsky is a patient at Kindred Hospital – San Diego. Mrs. Ann Shimsky has a son that visits often; his name is Mr. Arnold Schimsky.
6. In March or April of 2005, I was working the night shift at Kindred Hospital – San Diego and was assigned to administer medications to patients. When I entered Mrs. Shimsky's room, Mr. Schimsky was there and immediately began complaining. He complained the tubing between the tracheostomy and the ventilator was too short. According to Mr. Schimsky, the length of the tubing was not right and he wanted it longer.
7. In addition to his complaint about the tubing, Mr. Schimsky told me he had a lawyer and that he was going to sue. At that point, I informed Mr. Schimsky that I was an employee of the hospital and that he should not speak to me about legal matters, nor should he speak to me in that manner.
8. I have been made aware that other employees are threatened by Mr. Schimsky's conduct.
9. On several occasions Mr. Schimsky has requested me to provide him with information about his mother. On each of these occasions I directed him to my supervisor.

EXHIBIT E

10. Mr. Schimsky has an unusual relationship with his mother. A person needs to see it to truly understand how unusual it is. For example, I have been in the room and observed Mr. Schimsky kissing his mother all over her face while calling her "Momsy, Momsy."

11. Given Mr. Schimsky's conduct at the hospital and the unusual relationship he has with his mother I am very concerned for my safety when Mrs. Shimsky dies. I believe Mr. Schimsky will "snap" and will seek to hurt hospital staff that he believes caused his mother's death.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration is executed on this 16th day of July 2005, at San Diego, California.

Debbie Tamborw, LVN, Declarant

# County of San Diego

HEALTH AND HUMAN SERVICES AGENCY
JEAN M. SHEPARD, DIRECTOR

PUBLIC ADMINISTRATOR – PUBLIC GUARDIAN
5201-A RUFFIN ROAD, SAN DIEGO, CA 92123-1699
(858) 694-3500 FAX (858) 694-3987

CHARLES E. MATTHEWS III
PUBLIC ADMINISTRATOR
PUBLIC GUARDIAN


August 14, 2006

Arnold Schimsky
1255 Essex Street
Imperial Beach, CA 91932

Dear Mr. Schimsky,

As you know, in June of 1998 Ann Shimsky stated through a signed declaration that she did not want to be kept alive by the administration of life-sustaining treatment under the conditions outlined in her advanced directive. Presently, Mrs. Shimsky is receiving life-sustaining treatment that she has previously directed, not be given. It is this office's intention to abide by Mrs. Shimsky's wishes in relation to her medical treatment.

The Public Guardian's office has considered Mrs. Shimsky's wishes quite extensively. We have visited Mrs. Shimsky, discussed her condition with her physicians and medical staff, convened our own Bioethics meeting, and consulted with Mrs. Shimsky's attorney. We have also discussed this with Judy Loprieno, Joyce Shimsky as well as you.

It is our conclusion that we need to abide by Mrs. Shimsky's wishes and remove the life sustaining treatment that she did not want. Presently, we will be working with Mrs. Shimsky's doctor and hospital to carry out this wish, which will include the removal of the ventilator that is breathing for Mrs. Shimsky.

Per the settlement agreement signed on April 27, 2006, we are giving you ten days notice of this proposed action.

Sincerely,

Charles Matthews III, MS, MBA
Public Guardian/Public Administrator

CEM: pr

cc: Jim Boyd
John Garcia, Attorney

EXHIBIT F

(North) ↑

Google Maps

Address 1940 El Cajon Blvd
San Diego, CA 92104

MADISON AVE.

(WEST)
CLEVELAND
AVE.

(EAST)
TEXAS ST.




(SOUTH) LINCOLN AVE.

EXHIBIT G

FILED 982(a)(27)

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>JAMES G. BOYD; SBN 179828<br>BOYD & BRIMMER, A.P.C.<br>2667 Camino del Rio South, Suite 203<br>San Diego, CA 92108<br>TELEPHONE NO.: (619) 563-2001 FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): ANN P. SCHIMSKY, An Incapacitated Person | FOR COURT USE ONLY<br>2006 AUG 21 P 3:04<br>CLERK-SUPERIOR COURT<br>SAN DIEGO COUNTY, CA |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF<br>STREET ADDRESS: 1409 Fourth Avenue<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: San Diego, CA 92101<br>BRANCH NAME: Madge Bradley Building | |
| PLAINTIFF/PETITIONER: ANN P. SCHIMSKY, By and Through her Court-Appointed Attorney, JAMES G. BOYD<br>DEFENDANT/RESPONDENT: ARNOLD SHIMSKY | |
| APPLICATION AND ORDER FOR APPOINTMENT OF GUARDIAN AD LITEM—CIVIL<br>[✓] EX PARTE | CASE NUMBER:<br>DV023126 |

**Note:** This form is for use in civil proceedings in which a party is a minor, an incapacitated person, or a person for whom a conservator has been appointed. A party who seeks the appointment of a guardian ad litem in a family law proceeding should use form FL-935. A party who seeks the appointment of a guardian ad litem in a probate proceeding should use form DE-350/GC-100. An individual may not act as a guardian ad litem unless he or she is represented by an attorney or is an attorney.

1. Applicant (name): James G. Boyd is
   a. [ ] the parent of (name):
   b. [ ] the guardian of (name):
   c. [ ] the conservator of (name):
   d. [ ] a party to the suit.
   e. [ ] the minor to be represented (if the minor is 14 years of age or older).
   f. [✓] another interested person (specify capacity): COURT-APPOINTED ATTORNEY Conservatorship of ANN P. SCHIMSKY; San Diego Superior Court Case No. P188885
2. This application seeks the appointment of the following person as guardian ad litem (state name, address, and telephone number):
   JAMES G. BOYD; SBN 179828
   2667 Camino del Rio South, Suite 203
   San Diego, CA 92108 (619) 563-2001
3. The guardian ad litem is to represent the interests of the following person (state name, address, and telephone number):
   ANN P. SCHIMSKY
   Kindred Hospital
   1940 El Cajon Blvd., San Diego, CA 92104
4. The person to be represented is:
   a. [ ] a minor (date of birth):
   b. [✓] an incompetent person.
   c. [ ] a person for whom a conservator has been appointed.
5. The court should appoint a guardian ad litem because:
   a. [✓] the person named in item 3 has a cause or causes of action on which suit should be brought (describe):
   ANN P. SCHIMSKY has been the victim of elder abuse amounting to batteries against her by her son. She has been subjected to inappropriate touching of an intimate nature to which she is incapable of giving consent. ANN P. SCHIMSKY is over 90 years old and in a persistent vegetative state at KINDRED HOSPITAL, where she is ventilator dependent. The hospital previously obtained a restraining order against ARNOLD SHIMSKY because he was threatening staff members.
   [ ] Continued on Attachment 5a.





American LegalNet, Inc. www.USCourtForms.com

| PLAINTIFF/PETITIONER: ANN P. SCHIMSKY, By and Through her Court-Appointed Attorney, JAMES G. BOYD<br>DEFENDANT/RESPONDENT: ARNOLD SHIMSKY | CASE NUMBER: |
|---|---|

5. b. ☐ more than 10 days have elapsed since the summons in the above-entitled matter was served on the person named in item 3, and no application for the appointment of a guardian ad litem has been made by the person identified in item 3 or any other person.

c. ☐ the person named in item 3 has no guardian or conservator of his or her estate.

d. ☑ the appointment of a guardian ad litem is necessary for the following reasons (*specify*):

The Court-Appointed Attorney should be authorized to bring a Petition for Elder Abuse Protective Order on his client's behalf because she is in a persistent vegetative state and is incapable of acting to protect herself.

☐ Continued on Attachment 5d.

6. The proposed guardian ad litem's relationship to the person he or she will be representing is:
   a. ☐ related (*state relationship*):
   b. ☑ not related (*specify capacity*): Court-Appointed Attorney

7. The proposed guardian ad litem is fully competent and qualified to understand and protect the rights of the person he or she will represent and has no interests adverse to the interests of that person. (*If there are any issues of competency or qualification or any possible adverse interests, describe and explain why the proposed guardian should nevertheless be appointed*):

☐ Continued on Attachment 7.

JAMES G. BOYD ▶ [signature]
(TYPE OR PRINT NAME) (SIGNATURE OF ATTORNEY)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 8/21/06

JAMES G. BOYD ▶ [signature]
(TYPE OR PRINT NAME) (SIGNATURE OF APPLICANT)

**CONSENT TO ACT AS GUARDIAN AD LITEM**

I consent to the appointment as guardian ad litem under the above petition.

Date: 8/21/06

JAMES G. BOYD ▶ [signature]
(TYPE OR PRINT NAME) (SIGNATURE OF PROPOSED GUARDIAN AD LITEM)

**ORDER** ☑ **EX PARTE**

THE COURT FINDS that it is reasonable and necessary to appoint a guardian ad litem for the person named in item 3 of the application, as requested.

THE COURT ORDERS that (*name*): JAMES G. BOYD
is hereby appointed as the guardian ad litem for (*name*):
for the reasons set forth in item 5 of the application.

Date: AUG 21 2006

[signature]
JUDICIAL OFFICER PETER L. GALLAGHER

☐ SIGNATURE FOLLOWS LAST ATTACHMENT

EA-120

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
JAMES G. BOYD; SBN 179828
BOYD & BRIMMER, A.P.C.
2667 Camino del Rio South, Suite 203
San Diego, CA 92108

TELEPHONE NO. (Optional): (619) 563-2001 FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): Ann P. Shimsky

FOR COURT USE ONLY

FILED
DIVISION
2006 AUG 21 P 3:04
CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 1409 Fourth Avenue
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: PROBATE

PETITIONER: JAMES G. BOYD; Guardian Ad Litem for ANN P. SCHIMSKY, An Incapacitated Person
RESPONDENT: ARNOLD SHIMSKY

ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER (Elder or Dependent Adult Abuse) (CLETS)

CASE NUMBER: DV 023128

## ORDER TO SHOW CAUSE

1. TO (*name of person to be restrained*): ARNOLD SHIMSKY

2. YOU ARE ORDERED to appear in this court at the date, time, and place shown in the box below to give any legal reason why the orders sought and the other relief requested in the petition should not be granted.

## NOTICE OF HEARING

a. Date: 9-11-06 Time: 1:30 PM Dept.: F9 Room:

b. The address of the court where the hearing will be held [X] is shown above [ ] is (*specify*):

A court hearing has been set at the time and place indicated above. You may attend this hearing, with or without an attorney, to give any legal reason why the orders requested in the attached petition should not be granted. Before preparing your response, you should read the NOTICES TO THE RESPONDENT on page 3 of this document and the NOTICE REGARDING NONAPPEARANCE AT HEARING AND SERVICE OF ORDER and the INSTRUCTIONS FOR THE RESPONDENT on page 4. If you do not appear at the court hearing at the date, time, and place indicated in this notice, the court may grant the requested orders for up to three years without further notice to you.

Date: AUG 21 2006

JUDICIAL OFFICER
PETER L. GALLAGHER
[ ] SIGNATURE ON PAGE 3 OR FOLLOWS LAST ATTACHMENT

## IMPORTANT INFORMATION FOR RESPONDENT

Carefully read these and all other papers served on you. The *Order to Show Cause and Temporary Restraining Order (Elder or Dependent Adult Abuse)* tells you when to appear in court and may contain a temporary restraining order forbidding you from doing certain things. Read pages 2 and 3 to determine if there is a restraining order against you. If you disobey the court's orders, criminal charges may be filed against you.

If you want to respond to or oppose the *Petition for Protective Orders (Elder or Dependent Adult Abuse)*, you should file a *Response to Petition for Protective Orders* (form EA-110). Read the Instructions for the Respondent on page 4 for information on how to complete your *Response*.

| PETITIONER: JAMES G. BOYD; Guardian Ad Litem for ANN P. SCHIMSKY, An Incapacitated Person<br>RESPONDENT: ARNOLD SHIMSKY | CASE NUMBER: |
|---|---|

TEMPORARY RESTRAINING ORDERS

THIS ORDER SHALL EXPIRE AT THE DATE AND TIME OF THE HEARING SHOWN IN THE BOX ABOVE UNLESS EXTENDED BY THE COURT.

THE COURT FINDS

3. a. The restrained person is *(name)*: ARNOLD SHIMSKY
   b. The restrained person is described as follows:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Sex: [X] M [ ] F | Ht.: 6'1" | Wt.: 175 | Hair color: GRY | Eye color: UNK | Race: CAU | Age: 63 | Date of birth: 3/20/42 |

4. The protected person is *(name)*:

UNTIL THE TIME OF HEARING, THE COURT ORDERS

5. a. PERSONAL CONDUCT ORDER
   The restrained person must not:
   (1) [X] abuse, intimidate, molest, attack, strike, stalk, threaten, sexually assault, batter, harass, destroy the personal property of, or disturb the peace of, the protected person.
   (2) [X] telephone or contact directly or indirectly, by mail or otherwise, the protected person.

   b. RESIDENCE EXCLUSION ORDER
   [ ] The restrained person must immediately move from and must not return to the protected person's residence located at *(address)*:

   and may take only personal clothing and effects needed until the hearing.

   c. STAY-AWAY ORDER
   [X] The restrained person must stay at least *(specify)*: 1,000 yards away from the protected person and the following places:
   (1) [ ] The protected person's residence located at *(address)*:

   (2) [ ] The protected person's place of work located at *(address)*:

   (3) [ ] The protected person's vehicle *(specify)*:
   KINDRED HOSPITAL, 1940 El Cajon Blvd., San Diego, CA 92104
   (4) [X] Other *(specify)*: (Perimeter bounded by Madison Ave.on North, Texas St. on East, Lincoln Ave. on South, and Cleveland Ave. on West.)

6. [X] FIREARMS PROHIBITION AND RELINQUISHMENT ORDER
   *(If the abuse alleged in this case is solely financial abuse unaccompanied by force, threat, harassment, intimidation, or any other form of abuse, no firearms prohibition or relinquishment order shall be issued.)*
   The abuse alleged in this case is not solely financial abuse unaccompanied by force, threat, harassment, intimidation, or any other form of abuse. The restrained person is prohibited from owning, possessing, purchasing, or receiving, or attempting to purchase or receive any firearms, and must surrender to local law enforcement or sell to a licensed gun dealer any firearm in or subject to his or her immediate possession or control within:
   (1) [ ] 24 hours after issuance of this order *(if restrained person is present at hearing)*.
   (2) [ ] 48 hours after service of this order *(if restrained person is not present at hearing)*.
   (3) [ ] other *(specify)*:

   If the restrained person owns, possesses, or controls any firearms, he or she must within 72 hours of receiving this order file a receipt with the court showing compliance with this order. *(Form EA-145 may be used for this purpose.)*

7. NO FEE FOR FILING
   There are no fees for filing the petition and response to these restraining orders.

8. [ ] NO FEE FOR SERVICE OF ORDERS
   Fees for service of this order by law enforcement are waived.

| PETITIONER: JAMES G. E Guardian Ad Litem for ANN P. SCHIM I, An Incapacitated Person<br>RESPONDENT: ARNOLD SHIMSKY | CASE NUMBER: |
|---|---|

9. **OTHER ORDERS** *(specify)*: The restrained person will have no contact and will stay from KINDRED HOSPITAL staff members and employees.

10. **SERVICE ON DEFENDANT**
    a. [ ] The request for an order shortening time is granted.
    b. [X] The documents listed in 10c must be personally served on the restrained person no fewer than *(specify number)*: 2 days before the time set for the hearing. The response must be filed no fewer than *(specify number)*: ____ days before the time set for hearing.
    c. The documents checked below must be personally served on the restrained person:
       1. [X] *Petition for Protective Orders (Elder or Dependent Adult Abuse)* (form EA-100)
       2. [X] *Order to Show Cause and Temporary Restraining Order (Elder or Dependent Adult Abuse) (CLETS)* (form EA-120)
       3. [X] Blank *Response to Petition for Protective Orders (Elder or Dependent Adult Abuse)* (form EA-110)
       4. [ ] Blank *Proof of Sale or Turning In of Firearms* (form EA-145)
       5. [ ] Other *(specify)*:
    d. Proof of service of the documents must be filed with the court before the hearing.

11. **DELIVERY TO LAW ENFORCEMENT**
    A copy of this order and any proof of service must be delivered to the law enforcement agencies listed below by the following means:
    a. [ ] the protected person must deliver.
    b. [X] the protected person's attorney must deliver.
    c. [ ] the clerk of the court must mail.

| Law enforcement agency | Address |
|---|---|
| SAN DIEGO SHERIFF | 220 West Broadway, San Diego, CA 92101 |

Date: AUG 2 1 2006

P. L. Gallagher

JUDICIAL OFFICER
PETER L. GALLAGHER

**NOTICES TO THE RESPONDENT**

**NOTICE REGARDING ENFORCEMENT OF THIS ORDER**

**This order is effective when made. It is enforceable anywhere in California by any law enforcement agency that has received the order, is shown a copy of the order, or has verified its existence on the California Law Enforcement Telecommunications System (CLETS). If proof of service on the restrained person has not been received, and the restrained person was not present at the court hearing, the law enforcement agency shall advise the restrained person of the terms of the order and must enforce it.**

**Violation of this restraining order may be punished as a contempt of court, or a misdemeanor punishable by one year in jail or a $1,000 fine, or both.**

**NOTICE REGARDING FIREARMS**

**Unless the abuse in this case involves solely financial abuse unaccompanied by force, threat, harassment, intimidation, or any other form of abuse, the restrained person is prohibited from owning, possessing, purchasing, or receiving, or attempting to purchase or receive, a firearm. Any such conduct is subject to a $1,000 fine and imprisonment. You must sell any guns or firearms that you control to a licensed gun dealer or turn them in to law enforcement in accordance with item 6 above.**

| | |
|---|---|
| PETITIONER: JAMES G. BOI Guardian Ad Litem for ANN P. SCHIMSKY, An Incapacitated Person<br>RESPONDENT: ARNOLD SHIMSKY | CASE NUMBER:<br>DV023128 |

**NOTICE REGARDING NONAPPEARANCE AT HEARING AND SERVICE OF ORDER**

IF YOU HAVE BEEN PERSONALLY SERVED WITH A TEMPORARY RESTRAINING ORDER AND NOTICE OF HEARING, BUT YOU DO NOT APPEAR AT THE HEARING EITHER IN PERSON OR BY COUNSEL, AND A RESTRAINING ORDER THAT DOES NOT DIFFER FROM THE PRIOR TEMPORARY RESTRAINING ORDER, IS ISSUED AT THE HEARING A COPY OF THE ORDER WILL BE SERVED ON YOU BY MAIL AT THE FOLLOWING ADDRESS:

IF THAT ADDRESS IS NOT CORRECT OR YOU WISH TO VERIFY THAT THE TEMPORARY ORDER WAS MADE PERMANENT WITHOUT SUBSTANTIVE CHANGE, CONTACT THE CLERK OF THE COURT.

IF BOTH YOU AND THE PETITIONER ARE PERSONALLY PRESENT AT THE HEARING WHERE THE ORDER IS ISSUED, NO ADDITIONAL PROOF OF SERVICE WILL BE REQUIRED.

**INSTRUCTIONS FOR THE RESPONDENT**

1. If you are served with an *Order to Show Cause and Temporary Restraining Order (Elder or Dependent Adult Abuse)* **[OSC]** (Form EA-120) and a *Petition for Protective Orders (Elder or Dependent Adult Abuse)* **[petition]** (Form EA-100), you should promptly seek legal advice. If you have no attorney, the attorney referral service of your local bar association may be of assistance.

2. If you wish to respond to or oppose the petition, you should file a *Response to Petition for Protective Orders* **[response]** (Form EA-110). An original response must be filed with the court and a copy served on the petitioner or the petitioner's attorney. You do not have to pay any fee to file your response.

   In addition to the response, you may file and serve declarations signed by you and other persons who have personal knowledge of the facts. A declaration form (form MC-031) is available from the clerk's office of the court shown on page 1 of this form. If you do not know how to prepare a declaration, you should see an attorney. After you have filed the response with the clerk of the court, a copy must be delivered personally or by mail to the petitioner or the petitioner's attorney.

   You cannot serve the petitioner yourself. The person who serves the petitioner should complete and sign a *Proof of Service* (form EA-141). You should take the completed form back to the court clerk before the hearing date or bring it with you to the hearing.

3. If you wish to oppose the petition, in addition to filing a response you should be present at the hearing. If you have any witnesses, they must also be present at the hearing.

Assistive listening systems, computer-assisted real-time-captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided. Contact the clerk's office for *Request for Accommodations by Persons With Disabilities and Order* (form MC-410). (Civ. Code, § 54.8.)

[SEAL]

SUPERIOR COURT SAN BERNARDINO COUNTY, CA.

**CLERK'S CERTIFICATE**

I certify that the foregoing *Order to Show Cause and Temporary Restraining Order (Elder or Dependent Adult Abuse) (CLETS)* is a true and correct copy of the original on file in the court.

Date: AUG 2 1 2006 Clerk, by [signature] S. VALENTINE, Deputy

EA-140

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| JAMES G. BOYD; SBN 179828<br>BOYD & BRIMMER, A.P.C.<br>2667 Camino del Rio South, Suite 203<br>San Diego, CA 92108<br>TELEPHONE NO. (Optional): (619) 563-2001 FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): Ann P. ShimskY | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO<br>STREET ADDRESS: 1409 Fourth Avenue<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: San Diego, CA 92101<br>BRANCH NAME: PROBATE | |
| PETITIONER: JAMES G. BOYD, Guardian Ad Litem for ANN P. SCHIMSKY, An Incapacitated Person<br>RESPONDENT: ARNOLD SHIMSKY | |
| **PROOF OF PERSONAL SERVICE (Elder or Dependent Adult Abuse)** | CASE NUMBER: DV023128 |

**Instructions to Petitioner: After having the respondent personally served with a copy of the documents identified in item 1, have the person who served the documents complete this *Proof of Personal Service*. Give the original to the clerk for filing. Neither the petitioner nor any person protected by these orders can serve the papers.**

1. I served a copy of the following documents *(check the box before the title of each document you served)*:
   a. [X] *Petition for Protective Orders (Elder or Dependent Adult Abuse)* (form EA-100)
   b. [X] *Order to Show Cause and Temporary Restraining Order (Elder or Dependent Adult Abuse) (CLETS)* (form EA-120)
   c. [X] Blank *Response to Petition for Protective Orders (Elder or Dependent Adult Abuse)* (form EA-110)
   d. [ ] *Restraining Order After Hearing (Elder or Dependent Adult Abuse) (CLETS)* (form EA-130)
   e. [ ] Blank *Proof of Sale or Turning In of Firearms* (form EA-145)
   f. [ ] *Application and Order for Reissuance of Order to Show Cause (Elder or Dependent Adult Abuse) (CLETS)* (form EA-125)
   g. [ ] Other *(specify)*:

2. Person served *(name)*: ARNOLD SHIMSKY

3. I personally delivered copies to the person served, as follows:
   a. Date: 8-21-2006
   b. Time: 5:00 PM
   c. Address: KINDRED HOSPITAL, 1940 El Cajon Blvd., San Diego, CA 92104

4. At the time of service I was over 18 years of age, not a party to this action, and not a protected person in any of the orders.

5. My name, address, and telephone number are *(specify)*: BOBBY MARTINEZ 8001 Victor St, San Diego, CA 92123 (858) 244-1851

6. If applicable, the county where I am registered as a process server and my registration number are *(specify)*:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 8-21-2006

BOBBY MARTINEZ
(TYPE OR PRINT NAME OF PERSON WHO SERVED THE PAPERS)

[signature]
(SIGNATURE OF PERSON WHO SERVED THE PAPERS)

# Exhibit R

# FIRST AMENDMENT
## TO THE
# ANN P. SHIMSKY 1998 TRUST

WHEREAS ANN P. SHIMSKY is the sole Settlor and Trustee of the Ann P. Shimsky 1998 Trust, established June 30, 1998;

WHEREAS, pursuant to Article II, Section 2.1 of the Ann P. Shimsky 1998 Trust, Settlor and Trustee Ann P. Shimsky reserves the right to amend said Trust, it is the intent of Settlor and Trustee Ann P. Shimsky to hereby declare and make this First Amendment to her Trust as follows:

ARTICLE V, Section 5.1 is changed and amended to read, in its entirety, as follows:

5.1 Remaining Trust Estate

After making any distributions provided for above, the Trustee shall divide the remaining balance of the trust estate into three (3) equal shares, one each for Judy Schimsky Loprieno and Arnold D. Schimsky and Barry A. Schimsky. Each such share shall be held, administered and distributed as hereinafter provided. With respect to Settlor's residence, any sale or other transfer of the residence must have the prior written approval of all living beneficiaries of this Trust. No such sale or transfer by the Trustee shall take place without written approval of each beneficiary herein. Settlor's daughter Joyce Shimsky is expressly omitted from receiving any beneficial interest under this Trust.

I. Allocation to Judy Schimsky Loprieno. The share allocated to Settlor's daughter, Judy Schimsky Loprieno, shall be distributed to her, outright and free of trust if she is then living. If she is not then living, such share shall terminate and shall instead be distributed in equal shares to the remaining named beneficiaries herein.

II. Allocation to Arnold D. Schimsky. The share allocated to Settlor's son, Arnold D. Schimsky, shall be distributed to him, outright and free of trust if he is then living. If he is not then living, such share shall terminate and shall instead be distributed in equal shares to the remaining named beneficiaries herein.

III. Allocation to Barry A. Schimsky. The share allocated to Settlor's son, Barry A. Schimsky, shall be distributed to him, outright and free of trust if he is then living. If he is not then living, such share shall terminate and shall instead be distributed in equal shares to the remaining named beneficiaries herein.

**ARTICLE VII, Section 7.1 is changed and amended to read, in its entirety, as follows:**

**7.1 Designation of Successor Trustees**

Any Trustee in office may resign at any time. If **Ann P. Shimsky** for any reason fails to qualify or ceases to act as Trustee, Settlor's son, **Arnold D. Schimsky**, shall act as Trustee. In the further event that Arnold D. Schimsky shall for any reason fail to qualify or cease to act as Trustee, then Settlor's son, **Barry A. Schimsky**, shall act as Trustee. In the further event that Barry A. Schimsky shall for any reason fail to qualify or cease to act as Trustee, then Settlor's daughter, **Judy Schimsky Loprieno**, shall act as Trustee.

Notwithstanding the preceding paragraph, each person or entity acting from time to time as a Trustee of any trust established by this instrument shall have the power to designate Successor Trustees to act when he, she or it becomes unable or unwilling to act as Trustee of the Trust. Each person or entity may designate the same or different persons or entities, including corporate fiduciaries, to act as Successor Trustee of the Trust. Any person or entity acting as Trustee of any trust may from time to time revoke any designation of any successor to himself, herself or itself (whether that designation shall have been made by that Trustee or by that Trustee's antecedent in interest), and that person or entity may designate other persons or entities, or one or more of the same persons or entities, or all the same persons or entities previously designated in different order, as Successor Trustee to himself, herself or itself. All designations or revocations shall be exercised in writing and are effective on delivery to the beneficiaries of the Trust for which they are designated.

If **Ann P. Shimsky** cannot administer the Trust because of physical or mental incapacity or otherwise cannot act, during any period of incapacity, the Successor Trustee named herein shall act as Trustee, having all rights and powers which are granted to the Trustee by this instrument.

///
///
///
///
///
///
///
///

The Settlor certifies that she has read the foregoing amendment to trust referred to as **The First Amendment to The Ann P. Shimsky 1998 Trust**, that it correctly states the terms and conditions under which the Trust Estate is to be held, managed, and disposed of by the Trustees, and she approves **The First Amendment to The Ann P. Shimsky 1998 Trust** in all particulars.

Executed on August 10, 2000 at La Mesa, California.

Ann P Shimsky

Ann P. Shimsky

STATE OF CALIFORNIA )
) ss.
COUNTY OF SAN DIEGO )

On 8/10, 2000, before me, Christopher J Zucconi, a Notary Public in and for said County and State, personally appeared Ann P. Shimsky, proved to me on the basis of satisfactory evidence, to be the person whose name is subscribed to the within instrument, and acknowledged to me that she executed the same in her authorized capacity and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

Christopher J. Zucconi
COMM. # 1171560
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
COMM. EXP. JAN. 30, 2002

WITNESS my hand and official seal.

Christopher J. Zucconi
Notary Public in and for said County and State

# THE

# ANN P. SHIMSKY

# 1998 TRUST

## INDEX

## THE ANN P. SHIMSKY 1998 TRUST


| | | |
|---|---|---|
| ARTICLE I | DECLARATION OF TRUST | 1 |
| | 1.1 Establishment of Trust | 1 |
| | 1.2 Trust Particulars | 1 |
| | 1.3 Property of Settlor | 1 |
| | 1.4 Additional Property | 2 |
| | 1.5 Allocation of Trust Estate | 2 |
| ARTICLE II | RIGHTS RESERVED BY SETTLOR | 2 |
| | 2.1 Alteration, Revocation or Amendment | 2 |
| | 2.2 Power Over Trust Assets | 2 |
| | 2.3 Suspension of Settlor's Rights | 2 |
| | 2.4 Personal Nature of Reserved Rights | 3 |
| ARTICLE III | ADMINISTRATION DURING SETTLOR'S LIFETIME | 3 |
| | 3.1 Introduction | 3 |
| | 3.2 Payment to Settlor | 3 |
| | 3.3 Separate Income - Broad Standard | 3 |
| | 3.4 Separate Principal - Broad Standard | 4 |
| | 3.5 Settlor's Incapacity or Incompetency | 4 |
| | 3.6 Accumulation | 4 |
| ARTICLE IV | ADMINISTRATION AFTER SETTLOR'S DEATH | 5 |
| | 4.1 Action at Settlor's Death | 5 |
| | 4.2 Settlor's Final Expenses | 5 |
| | 4.3 Payment of Expenses and Taxes | 5 |
| ARTICLE V | ADMINISTRATION AND DISTRIBUTION OF TRUST ESTATE | 6 |
| | 5.1 Remaining Trust Estate | 6 |
| | 5.2 Distribution on Beneficiary's Death Before Complete Distribution | 6 |
| | 5.3 Premature Termination of Trust | 7 |
| | 5.4 Preventing Outright Distribution To Young Beneficiary | 7 |
| | 5.5 Distribution of Remainder | 7 |
| | 5.6 Monthly Income Distribution | 8 |
| ARTICLE VI | TRUSTEE POWERS AND DIRECTIONS | 8 |
| | 6.1 Trustee Powers | 8 |
| | 6.2 Investment Under Prudent Man Rule | 8 |
| | 6.3 Power to Retain Property | 9 |
| | 6.4 Power to Manage Securities | 9 |
| | 6.5 Power to Sell, Exchange, or Repair | 9 |
| | 6.6 Power to Lease | 9 |
| | 6.7 Power to Lend to Settlor's Probate Estate | 9 |
| | 6.8 Power to Purchase Property from Settlor's Probate Estate | 9 |

| | | | |
|---|---|---|---|
| | 6.9 | Trustee's Power to Loan to, Buy From, and Sell to Trust Individually . . . . | 9 |
| | 6.10 | Power to Adjust for Tax Consequences . | 10 |
| | 6.11 | Power to Borrow . . . . . . . . . . . | 10 |
| | 6.12 | Power to Operate Business . . . . . . | 10 |
| | 6.13 | Power to Budget . . . . . . . . . . . | 10 |
| | 6.14 | Power to Commence or Defend Litigation and to Compromise . . . . . . . . . | 10 |
| | 6.15 | Power to Insure . . . . . . . . . . . | 10 |
| | 6.16 | Power to Withhold Payment if Conflicting Claims Arise . . . . . . . . | 11 |
| | 6.17 | Broad Powers of Distribution . . . . . | 11 |
| | 6.18 | Nominee . . . . . . . . . . . . . . . | 11 |
| | 6.19 | Power to Invest in Life Insurance . . | 11 |
| | 6.20 | Purchase of Treasury Bonds . . . . . . | 11 |
| | 6.21 | Control Corporations . . . . . . . . . | 12 |
| | 6.22 | Cross-Dealing . . . . . . . . . . . . | 12 |
| | 6.23 | Powers Regarding Margin Agreements, Etc. . . . . . . . . . . . . | 12 |
| | 6.24 | Power to Employ Agents . . . . . . . . | 13 |
| | 6.25 | Depreciation Reserve . . . . . . . . . | 13 |
| | 6.26 | Depletion Reserve . . . . . . . . . . | 13 |
| | 6.27 | Amortization Reserve . . . . . . . . . | 13 |
| | 6.28 | Power to Appoint Special Trustee . . . | 13 |
| | 6.29 | Disclaimer of Powers . . . . . . . . . | 14 |
| | 6.30 | Power to Make Transfers with Attorney In Fact . . . . . . . . . . . | 14 |
| | 6.31 | Credit . . . . . . . . . . . . . . . . | 14 |
| ARTICLE VII | | DESIGNATION AND COMPENSATION OF TRUSTEE . . | 14 |
| | 7.1 | Designation of Successor Trustee . . . | 14 |
| | 7.2 | Definition of Inability . . . . . . . | 15 |
| | 7.3 | Trustee's Bond . . . . . . . . . . . . | 15 |
| | 7.4 | Trustee's Compensation . . . . . . . . | 15 |
| | 7.5 | Successor Trustee Not Liable for Acts of Predecessor . . . . . . . . . | 15 |
| | 7.6 | Resignation of Trustee . . . . . . . . | 16 |
| | 7.7 | Accounting by Trustee . . . . . . . . | 16 |
| ARTICLE VIII | | ADMINISTRATIVE PROVISIONS . . . . . . . . . | 17 |
| | 8.1 | Revised Uniform Principal and Income Act to Govern . . . . . . . . . | 17 |
| | 8.2 | Undistributed Income Payable to Succeeding Beneficiaries . . . . . . . . | 17 |
| | 8.3 | Allocation of Expenses Among Successive Beneficiaries . . . . . . . . | 17 |
| | 8.4 | Authority To Pay Death Taxes . . . . . | 18 |
| | 8.5 | Equitable Proration of Taxes . . . . . | 18 |
| ARTICLE IX | | GENERAL PROVISIONS . . . . . . . . . . . . . | 18 |
| | 9.1 | Additions to Trust . . . . . . . . . . | 18 |
| | 9.2 | Notice to Trustee of Births, Deaths, and Other Events Affecting Interests . | 19 |
| | 9.3 | Rule Against Perpetuities . . . . . . | 19 |

| | | | |
|---|---|---|---|
| | 9.4 | Choice of Law . . . . . . . . . . . . . . | 19 |
| | 9.5 | Conferring Jurisdiction . . . . . . . . . | 19 |
| | 9.6 | Definition of Education . . . . . . . . | 20 |
| | 9.7 | Definition of Issue and Children . . . | 20 |
| | 9.8 | Gender and Number . . . . . . . . . . . | 20 |
| | 9.9 | Severability . . . . . . . . . . . . . . | 20 |
| | 9.10 | No Contest . . . . . . . . . . . . . . . | 20 |
| | 9.11 | Payment of Estate Taxes With Funds Other Than Insurance and Retirement Benefits . . . . . . . . . . . . . . . | 20 |
| | 9.12 | Significance of Headings . . . . . . . | 21 |
| ARTICLE X | | PROVISIONS RELATING TO INSURANCE POLICIES . | 21 |
| | 10.1 | Settlor's Retention of Rights in Policies . . . . . . . . . . . . . | 21 |
| | 10.2 | Trustee's Responsibility for Payment of Premiums . . . . . . . . . | 21 |
| | 10.3 | Trustee's Authority to Deal With Insurers . . . . . . . . . . . . | 21 |
| ARTICLE XI | | CERTIFICATION AND EXECUTION . . . . . . . . | 23 |

# THE
# ANN P. SHIMSKY
# 1998 TRUST

This is a trust agreement between Ann P. Shimsky (referred to as "Settlor") and Ann P. Shimsky and her successors, as trustee (collectively referred to as "Trustee").

## ARTICLE I

## DECLARATION OF TRUST

### 1.1 Establishment of Trust

Settlor transfers and assigns to trustee all her right, title, and interest in the assets listed on Schedule A attached to this agreement (these assets, together with any additional assets, being referred to as the "trust estate"). Trustee acknowledges receipt of the trust estate and agrees to hold and administer all assets and proceeds received in accordance with the terms and conditions of this trust agreement.

### 1.2 Trust Particulars

For convenient reference, the following information applies:

| | |
|---|---|
| Settlor: | Ann P. Shimsky |
| Name of Trust: | The Ann P. Shimsky 1998 Trust |
| Date Established: | June 30, 1998 |
| First Trustee: | Ann P. Shimsky |
| Minor Children Living: | None |
| Adult Children Living: | Judy Schimsky Loprieno<br>Arnold D. Schimsky<br>Barry A. Schimsky<br>Joyce T. Schimsky |

### 1.3 Property of Settlor - Separate Trust Estate

The property transferred is the Settlor's separate property and shall be known as the "separate trust estate."

1.4 Additional Property

Subject to acceptance by Trustee, Settlor or any other person from time to time may add cash, securities, insurance policies, or other assets to the trust estate by deed, gift, or will. The additional assets will be held, invested, administered, and distributed according to the terms of this agreement, except to the extent expressly provided to the contrary in the instrument of transfer.

1.5 Allocation of Trust Estate

The trustee shall initially allocate the trust estate as follows:

Beneficiary: Trust During Settlor's Life

ARTICLE II

RIGHTS RESERVED BY SETTLOR

2.1 Alteration, Revocation or Amendment

Settlor reserves the right to alter, amend, or revoke this agreement, at any time and from time to time, without the consent of Trustee or any person, by giving written notice to Trustee to that effect. Notwithstanding the above, the duties, responsibilities, and rate of compensation of Trustee may not be modified without its written consent.

2.2 Power over Trust Assets

Except as otherwise provided in paragraph 2.3 below, Settlor also reserves the right to require changes in investments and to withdraw any or all assets of the Trust estate.

2.3 Suspension of Settlor's Rights

If, at any time, as certified in writing by two licensed physicians, Settlor has become physically or mentally incapacitated, whether or not a court of appropriate jurisdiction has declared the Settlor incompetent, mentally ill, or has appointed a conservator, the Settlor's personal powers of alteration, amendment, revocation, and right to withdraw income or other assets will be suspended during that incompetency.

If, at any time, a successor Trustee has a reasonable basis to believe that Settlor is suffering from any mental or physical incapacity or incompetency that would affect his or her judgment concerning the assets of the trust estate, it shall give Settlor written notice to that effect, and Settlor's right to amend or revoke this trust or to demand payments from the trust

estate will be suspended until the issue of Settlor's competence is determined by two licensed physicians or a court of appropriate jurisdiction. In reasonably determining any incapacity or incompetency, a successor Trustee may rely conclusively upon the opinion of a medical doctor retained by it to make such a determination. If Settlor's powers of amendment, revocation, and withdrawal are suspended as provided above, Settlor's duties and powers as Trustee will also be suspended until those powers are restored.

2.4 **Personal Nature of Reserved Rights**

No person (including a guardian or conservator of Settlor) other than Settlor personally may exercise any of the rights reserved to Settlor by the provisions of this Article II.

## ARTICLE III

## ADMINISTRATION DURING SETTLOR'S LIFETIME

3.1 **Introduction**

The policies of insurance received by Trustee, together with any other property transferred to Trustee as provided above, will be held, in trust, for the purposes and upon the conditions specified below. During Settlor's lifetime, Trustee shall hold, manage, invest, and reinvest all assets of the trust estate (except insurance policies, which are to be governed as provided in Article IV below) and shall collect and receive the interest, income, and profits therefrom, upon the following terms and for the following purposes:

3.2 **Payment to Settlor**

Trustee shall pay any of the net income from the trust estate to Settlor, or to other persons designated by Settlor, that Settlor may from time to time request. In addition, Trustee shall pay to Settlor any part or all of the principal of the trust estate that Settlor requests in a writing delivered to Trustee prior to Settlor's death.

3.3 **Separate Income - Broad Standard**

The Trustee shall pay to or for the benefit of an income beneficiary as much of the net income from the beneficiary's separate trust estate as is necessary for the income beneficiary's health, education, support, comfort, welfare, or happiness to maintain at a minimum the income beneficiary's accustomed manner of living. The trustee shall add to principal any net income not so distributed.

3.4 Separate Principal - Broad Standard

If the Trustee considers the separate income insufficient, the Trustee shall pay to or for the benefit of the principal beneficiary as much of the principal of the separate trust estate as is necessary for the principal beneficiary's health, education, support, comfort, welfare, or happiness to maintain at a minimum the principal beneficiary's accustomed manner of living.

3.5 Settlor's Incapacity or Incompetency

If Settlor becomes incapacitated or incompetent at any time so that the Settlor's personal powers of amendment, revocation, and withdrawal are suspended under the conditions set forth in Article II, then, for as long as that incapacity or incompetency continues, Trustee shall pay to or apply for the benefit of Settlor any sums from the income or principal of the trust estate that Trustee, in its absolute discretion, deems appropriate for the Settlor's care, support, and maintenance and for any other purposes that Trustee considers necessary to provide for and to manage the everyday needs and requirements of Settlor, taking into consideration the standard of living to which the Settlor is accustomed at that time. Such standard of living shall also mean to include the provision of in-home nursing care, if at all economically feasible in the Trustee's discretion.

These payments may include direct payments to any landlord, hotelkeeper or hospital or other health care facility for services rendered in furnishing food, clothing, transportation, legal or accounting services, or any other required services, provided that Trustee receives proper substantiation by those performing the services; and for the preparation of returns and payment of any and all taxes which Settlor may be obligated to pay under any applicable state or federal laws. Payment or use of any portion of the income or principal of the trust estate for any of the purposes expressed above is not to be questioned by any person or court.

3.6 Accumulation

Any unexpended net income is to be incorporated into the principal of this trust, to be held, administered, and distributed according to all of its terms, conditions and limitations.

///
///
///
///
///
///

## ARTICLE IV

## ADMINISTRATION AFTER SETTLOR'S DEATH

4.1 Action at Settlor's Death

Upon the Settlor's death, but before the trust assets are allocated as set forth below, the Trustee shall continue to hold the remaining trust estate and shall make distributions from the principal and accumulated income of the trust estate as follows:

4.2 Settlor's Final Expenses

Trustee, in its absolute discretion and whether or not it also serves as personal representative of Settlor's estate, may purchase on behalf of the trust any property belonging to that estate or may make loans to the personal representative of that estate to provide liquidity for payment of any claims, taxes, administrative expenses, or other indebtedness of Settlor's estate. Any purchase or loan will be made on the terms and conditions that Trustee, in its absolute discretion, deems appropriate, provided that any purchase of assets must be for adequate consideration in money or money's worth, and any loan must be made only with adequate interest and security. Trustee will not be liable for any loss to the trust estate caused by its acting in accordance with this article, except for losses occasioned by its own gross neglect or willful misconduct.

4.3 Payment of Expenses and Taxes

To the extent that, in Trustee's absolute discretion, it is inadvisable to use some or all of the residuary assets to pay all administration expenses of Settlor's estate, the expenses of his last illness and burial, and all state and federal estate, inheritance, or transfer taxes payable by reason of Settlor's death, including any related interest and penalties, but excluding any taxes assessed or imposed under Chapter 13, Subtitle B of the Internal Revenue Code of 1986, as amended (referred to in this agreement as "the Code") or to the extent that Settlor's residuary estate is insufficient to pay those amounts, Trustee shall pay, either directly or to Settlor's personal representative, those excess expenses, costs, and taxes. Trustee may rely on a written statement signed by Settlor's personal representative as to the adequacy of the assets of Settlor's residuary estate to pay those expenses, costs, and taxes. Non-liquid assets are not to bear any portion of those expenses, costs and taxes and need not be disposed of in order to pay any of those amounts. Notwithstanding any provision of this trust agreement to the contrary, Trustee is specifically directed to use in payment of all applicable federal estate taxes any United States Treasury Bonds that are redeemable at par in payment of federal estate tax.

## ARTICLE V

## ADMINISTRATION AND DISTRIBUTION OF TRUST ESTATE

5.1 Remaining Trust Estate

After making any distributions provided for above, the Trustee shall divide the remaining balance of the trust estate into four (4) equal shares, one for each child of the Settlor, namely Judy Schimsky Loprieno and Arnold D. Schimsky and Barry A. Schimsky and Joyce T. Schimsky. Each such share shall be held, administered and distributed as hereinafter provided. With respect to Settlor's residence, any sale or other transfer of the residence must have the prior written approval of all living beneficiaries of this Trust. No such sale or transfer by the Trustee shall take place without written approval of each beneficiary herein.

I. Allocation to Judy Schimsky Loprieno. The share allocated to Settlor's daughter, Judy Schimsky Loprieno, shall be distributed to her, outright and free of trust if she is then living. If she is not then living, such share shall terminate and shall instead be distributed in equal shares to the remaining named beneficiaries herein.

II. Allocation to Arnold D. Schimsky. The share allocated to Settlor's son, Arnold D. Schimsky, shall be distributed to him, outright and free of trust if he is then living. If he is not then living, such share shall terminate and shall instead be distributed in equal shares to the remaining named beneficiaries herein.

III. Allocation to Barry A. Schimsky. The share allocated to Settlor's son, Barry A. Schimsky, shall be distributed to him, outright and free of trust if he is then living. If he is not then living, such share shall terminate and shall instead be distributed in equal shares to the remaining named beneficiaries herein.

IV. Allocation to Joyce T. Schimsky. The share allocated to Settlor's daughter, Joyce T. Schimsky, shall be distributed to her, outright and free of trust if she is then living. If she is not then living, such share shall terminate and shall instead be distributed in equal shares to the remaining named beneficiaries herein.

5.2 Distribution on Beneficiary's Death Before Complete Distribution

Unless specified otherwise in section 5.1, above, if a beneficiary dies before becoming entitled to receive distribution of his or her entire trust, the property retained for him or her

shall be distributed, subject to the provisions of Paragraph 5.4, to the beneficiaries then-living issue, or if there are none, to the Settlor's living issue by right of representation, provided, however, that any part of the balance that would otherwise be distributed to a person for whose benefit a trust is then being administered under this instrument shall be added instead to that trust and administered according to its terms. Any additions to a partially distributed trust shall augment proportionately the distributed and undistributed portions of the trust, provided, however, that if the beneficiary is a grandchild of the Settlor, his or her share shall instead be distributed to his or her estate.

5.3 Premature Termination of Trust

After the death of the Settlor, the Trustee may conclude, in the Trustee's discretion that the trust estate is uneconomical to administer. The Trustee may then, (1) distribute the trust estate to the beneficiaries in proportion to their interests in income; (2) purchase and deliver to the income beneficiaries a restrictive savings account, certificate of deposit, annuity, or endowment; (3) distribute the trust estate to a custodian for the beneficiaries under the California Uniform Transfers to Minors Act; or (4) distribute the trust estate as provided by law. On such distribution and delivery, the Trust shall terminate. The Trustee shall not be liable or responsible to any person for its action nor for its failure or refusal at any time to terminate the Trust as authorized by this paragraph.

5.4 Preventing Outright Distribution to Young Beneficiary

If any beneficiary entitled to outright distribution of a trust or of a portion of a trust is under age twenty-one (21) years, the Trustee shall hold and administer the beneficiary's portion of the Trust estate for his or her benefit. Income of the property retained in trust shall be added to principal, and the Trustee shall pay to or apply for the benefit of the beneficiary as much of the beneficiary's trust as the Trustee in the Trustee's discretion considers necessary for the beneficiary's proper health, education, support and maintenance. When the beneficiary attains the age of twenty-one (21) years, the Trustee shall distribute to the beneficiary all property retained in trust for his or her benefit. If the beneficiary dies before reaching twenty-one (21) years, the property shall pass to that beneficiary's estate.

5.5 Distribution of Remainder

If at any time before full distribution of the trust estate the Settlor's issue are deceased and no other disposition of the property is directed by this instrument, the trust estate or the portion of it then remaining shall thereupon go and be

distributed as follows:

All trust assets shall be distributed to the heirs of Ann P. Shimsky.

The identity and respective shares of said heirs shall be determined in all respects as though the death of the Settlor had occurred immediately following the happening of the event requiring such distribution, and according to the laws of California then in force relating to the succession of separate property not acquired from a parent, grandparent or predeceased spouse.

5.6 Monthly Income Distribution

With respect to all trusts created hereunder, during Settlor's lifetime and after Settlor's death, to the extent that income is distributable, net income shall be distributed in monthly or other convenient installments but at least annually to or for the benefit of the person or persons entitled to receive such net income.

ARTICLE VI

TRUSTEE POWERS AND DIRECTIONS

6.1 Trustee Powers

In order to carry out the provisions of the trusts created by this instrument, the Trustee shall have these powers in addition to those now or hereafter conferred by law:

6.2 Investment Under Prudent Man Rule

To invest and reinvest funds in every kind of property, real, personal, or mixed, and every kind of investment, specifically included, but not limited to, corporate obligations of every kind; preferred or common stocks; shares of investment trusts, investment companies, and mutual funds; mortgage participation; any common trust fund administered by the Trustee; and life insurance policies on the life of any beneficiary except the beneficiary of a marital deduction trust, that, under the circumstances then prevailing (specifically including, but not limited to, the general economic conditions and the anticipated needs of the trust and its beneficiaries), persons of skill, prudence, and diligence acting in a similar capacity and familiar with those matters would use in the conduct of an enterprise of a similar character and with similar aims, to attain the goals of the Settlor under this instrument; and to consider individual investments as part of an overall plan.

6.3 Power to Retain Property

To continue to hold any property and to operate at the risk of the trust estate any business that the Trustee receives or acquires under the Trust as long as the Trustee deems advisable.

6.4 Power to Manage Securities

To have all the rights, powers, and privileges of an owner with respect to the securities held in trust, including, but not limited to, the powers to vote, give proxies, and pay assessments; to participate in voting trusts, pooling agreements, foreclosures, reorganizations, consolidations, mergers, and liquidations, and incident to such participation to deposit securities with and transfer title to any protective or other committee on such term as the Trustee may deem advisable; and to exercise or sell stock subscription or conversion rights.

6.5 Power to Sell, Exchange or Repair

To manage, control, grant options on, sell (for cash or on deferred payments), convey, exchange, partition, divide, improve, and repair Trust property.

6.6 Power to Lease

To lease Trust property for terms within or beyond the term of the Trust for any purpose, including exploration for and removal of gas, oil, and other minerals; and to enter into community oil leases, pooling, and unitization agreements.

6.7 Power to Lend to Settlor's Probate Estate

To lend money to any person, including the probate estate of Settlor, provided that any such loan shall be adequately secured and shall bear a reasonable rate of interest.

6.8 Power to Purchase Property from Settlor's Probate Estate

To purchase property at its fair market value as determined by the Trustee in the Trustee's discretion, from the probate estate of Settlor.

6.9 Trustee's Power to Loan to, Buy from, and Sell to Trust Individually

To loan or advance the Trustee's own funds to the Trust for any trust purpose, with interest at current rates; to receive security for such loans in the form of a mortgage, pledge, deed of Trust, or other encumbrances of any assets of the Trust; to purchase assets of the Trust at their fair market value as

determined by an independent appraisal of those assets; and to sell property to the Trust at a price not in excess of its fair market value as determined by an independent appraisal.

6.10 Power to Adjust for Tax Consequences

To take any action, in the Trustee's discretion, to minimize the tax liabilities of this Trust and its beneficiaries, and it shall have the power to allocate the benefits among the various beneficiaries, and the Trustee shall have the power to make adjustments in the rights of any beneficiaries, or between the income and principal accounts, to compensate for the consequences of any tax election or any investment of administrative decision that the Trustee believes had the effect of directly or indirectly preferring one beneficiary or group of beneficiaries over others.

6.11 Power to Borrow

To borrow money, and to encumber trust property by mortgage, deed of trust, pledge, or otherwise.

6.12 Power to Operate Business

To continue or participate in any business or other enterprise at the risk of the Trust estate and to affect incorporation, dissolution or other change in the form of organization of the business or enterprise.

6.13 Power to Budget

To budget the estimated annual income and expenses of the trusts in such manner as to equalize, as far as practicable, income payments to beneficiaries.

6.14 Power to Commence or Defend Litigation and to Compromise

To commence or defend, at the expense of the Trust, such litigation with respect to the Trust or any property of the Trust estate as the Trustee may deem advisable, and to compromise or otherwise adjust any claims or litigation against or in favor of the Trust.

6.15 Power to Insure

To carry insurance of such kinds and in such amounts as the Trustee deems advisable at the expense of the Trust, to protect the Trust estate and the Trustee personally against any hazard.

///
///
///

6.16 Power to Withhold Payment if Conflicting Claims Arise

To withhold from distribution, in the Trustee's discretion, at the time of distribution of any property in this Trust, without the payment of interest, all or any part of the property, as long as the Trustee shall determine in the Trustee's discretion that such property may be subject to conflicting claims, to tax deficiencies, or to liabilities, contingent or otherwise, property incurred in the administration of the estate.

6.17 Broad Powers of Distribution

To partition, allot, and distribute the Trust estate, on any division or partial or final distribution of the Trust estate, in undivided interests or in kind, or partly in money and partly in kind, at valuations determined by the Trustee, and to sell such property as the Trustee may deem necessary to make division or distribution. In making any division or partial or final distribution of the Trust estate, the Trustee shall be under no obligation to make a pro rata division, or to distribute the same assets to beneficiaries similarly situated; but rather, the Trustee may, in the Trustee's discretion, make a non pro rata division between trusts or shares and non pro rata distributions to such beneficiaries, as long as the respective assets allocated to separate trusts or shares, or distributed to such beneficiaries, have equivalent or proportionate fair market value.

6.18 Nominee

To hold securities or other property in the Trustee's name as Trustee under this Trust, in the Trustee's own name or in a nominee's name, or to hold securities unregistered in such condition that ownership will pass by delivery.

6.19 Power to Invest in Life Insurance

The Trustee shall have the power to apply for, own, receive as a part of the Trust assets, hold and/or pay premiums upon life insurance in any form and upon the life of any person or persons, as the Trustee may deem advisable. The Trustee is authorized to exercise all rights under such policies and no company issuing the same shall be required to determine the extent of the authority of the Trustee.

6.20 Purchase of Treasury Bonds

To purchase at less than par United States Treasury Bonds that are redeemable at par, in payment of any federal estate tax liability of Settlor, in such amounts as the Trustee deems advisable, and for that purpose the Trustee may use Settlor's separate property or may partition a portion of the community

property of the trust estate and make such purchases from either or both portions. The Trustee may exercise the Trustee's discretion and purchase such bonds if the Trustee has reason to believe that Settlor is in substantial danger of death, and may borrow funds and give security for that purpose. The Trustee may resolve any doubt concerning the desirability of making the purchase and its amount in favor of making the purchase and in purchasing a larger amount of such bonds than might otherwise be necessary. The Trustee shall not be liable to Settlor, any heir of Settlor, or any beneficiary of this Trust for losses resulting from purchases made in good faith. The Trustee shall redeem any such bonds that are part of the Trust corpus to the fullest extent possible in payment of the federal estate tax liability of Settlor with reference to assets included in this Trust.

6.21 Control Corporations

To continue to hold all of the stock of any corporation; if the shares of stock in any corporation shall be a majority of the total outstanding voting stock, to use that stock control to continue the corporation's business in such manner and for such time as the Trustee may deem advisable; to change the kind of business in which the corporation is engaged; to enlarge or diminish the scope and nature of the corporation's activities; or to dissolve the corporation and liquidate its assets. The Trustee shall have respecting the corporations' business and its stock owned by the Trust all the powers which the Settlor would have if personally present and acting. The Trustee is authorized but not required to vote the stock of the corporation to elect one or more employees of the Trustee or its attorneys as member of the board of directors of any such corporation. The management of the corporation and the actual conduct of its operations may be delegated to such persons as the board of directors shall determine. The Trustee shall incur no liability for misconduct, mismanagement, or negligence on the part of the corporation.

6.22 Cross-Dealing

To make loans to or borrow from, to purchase property or assets of any kind from, or sell to, or in any other manner deal with the Survivor's Trust, the Marital Trust and the Residual Trust hereof, upon such terms and conditions or in such manner as the Trustee shall deem reasonable in its sole discretion and in the interests of all the trusts and the beneficiaries thereof. Anything herein to the contrary notwithstanding, the Trustee may make any sales or exchanges between the trusts hereof as the Trustee shall deem desirable to avoid the holding of fractional interests.

6.23 Powers Regarding Margin Agreements, Etc.

The Trustee shall have full power to enter into any

margin agreements, including the purchase of securities, commodities, or any other assets by the use of margins and the Trustee shall have full power to pledge assets of the Trust estate to secure loans of the Trustee or for loans made by the Settlor, individually. The Trustee shall have the power to buy or write options and enter into short sales.

6.24 Power to Employ Agents

To employ and/or appoint such agent or agents as the Trustee deems necessary in the administration of this Trust; to execute such forms of power of attorney, whether general or special, as the Trustee deems advisable; and to grant to any such attorney-in-fact such powers and authority to act on behalf of the Trustee as the Trustee deems appropriate, including but not limited to the exercise of all powers referred to in this Article. Any acts or transactions effected by such agent and/or attorney-in-fact shall be binding on the Trust estate and may be relied on by third parties dealing with the Trustee.

6.25 Depreciation Reserve

To provide a reasonable reserve for depreciation of all income-producing depreciable real and personal property and for capital improvements and extraordinary repairs of income-producing property.

6.26 Depletion Reserve

To provide a reasonable reserve for depletion of all depletable natural resources, including, but not limited to, oil, gas, mineral and timber property.

6.27 Amortization Reserve

To provide a reasonable reserve for amortization of all intangible property having a limited economic life including, but not limited to, patents and copyrights.

6.28 Power to Appoint Special Trustee

The Trustee shall have the power to appoint and remove a Special Trustee (individual or corporate) for such purposes as dealing with assets outside California. A Special Trustee shall have only those powers which are necessary as enumerated herein or otherwise permitted by law. The Trustee shall exercise his discretion in compensating a Special Trustee and determining if bond should be required. Expenses of a Special Trustee shall be a charge against the Trust in addition to the Trustee's compensation.

///
///

6.29 Disclaimer of Powers

The Trustee may disclaim, release, or restrict the scope of any power held in connection with any trust, including any administrative power, whether such power is expressly granted or implied by law, by a written instrument specifying the power to be disclaimed, released, or restricted and the nature of any such restriction. The Successor Trustee shall exercise all powers disclaimed or released.

6.30 Power to Make Transfers With Attorney In Fact

To transfer from time to time and at any time to the Attorney in Fact of the General Durable Power of Attorney created by the Settlor before or after the execution of this Trust, as to which the Settlor are the Principals, any or all cash, property or interest in property. To receive from time to time and at any time from the Attorney In Fact of the General Durable Power of Attorney created by the Settlor, in which they are the Principals, any or all of the cash, property or interest in property including rights to receive income from any source.

6.31 Credit

To borrow money for any Trust purpose and upon such terms and conditions as Trustee may deem proper and to obligate the Trust estate for repayment; to encumber the Trust estate or any of its property by mortgage, deed of trust, pledge or otherwise for the debt of the Trust or of another party owning an undivided interest in common with the Trust, or the Settlor's debts, using such procedure to consummate the transaction, as Trustee deems advisable, and for terms within or extending beyond the duration of this Trust; to guaranty the Settlor's debts.

ARTICLE VII

DESIGNATION AND COMPENSATION OF TRUSTEE

7.1 Designation of Successor Trustees

Any Trustee in office may resign at any time. If Ann P. Shimsky for any reason fails to qualify or ceases to act as Trustee, Settlor's son, Arnold D. Schimsky, shall act as Trustee. In the further event that Arnold D. Schimsky shall for any reason fail to qualify or cease to act as Trustee, then Settlor's daughter, Judy Schimsky Loprieno, shall act as Trustee.

Notwithstanding the preceding paragraph, each person or entity acting from time to time as a Trustee of any trust established by this instrument shall have the power to designate Successor Trustees to act when he, she or it becomes unable or

unwilling to act as Trustee of the Trust. Each person or entity may designate the same or different persons or entities, including corporate fiduciaries, to act as Successor Trustee of the Trust. Any person or entity acting as Trustee of any trust may from time to time revoke any designation of any successor to himself, herself or itself (whether that designation shall have been made by that Trustee or by that Trustee's antecedent in interest), and that person or entity may designate other persons or entities, or one or more of the same persons or entities, or all the same persons or entities previously designated in different order, as Successor Trustee to himself, herself or itself. All designations or revocations shall be exercised in writing and are effective on delivery to the beneficiaries of the Trust for which they are designated.

If **Ann P. Shimsky** cannot administer the Trust because of physical or mental incapacity or otherwise cannot act, during any period of incapacity, the Successor Trustee named herein shall act as Trustee, having all rights and powers which are granted to the Trustee by this instrument.

7.2 Definition of Inability

The determination of inability of an individual to continue to serve as Trustee shall be made upon a certificate or statement to that effect from two licensed physicians who have examined the individual, and the Successor Trustee or Trustees shall assume the trusteeship hereunder at that time.

7.3 Trustee's Bond

No bond shall be required of any person named in this instrument as Trustee, or of any person appointed as the Trustee in the manner specified herein, either acting individually or jointly, for the faithful performance of his or her or their duties as Trustee or Trustees.

7.4 Trustee's Compensation

No compensation shall be paid for services of Settlor or any member of Settlor's family as Trustee, but any other Successor Trustee shall be entitled to fair and reasonable compensation from the Trust Estate for services rendered as Trustee. Any Trustee, however, may be reimbursed from the trust estate for actual costs incurred, including travel expenses, necessary to administer, hold and distribute trust assets in accordance with the terms of this trust.

7.5 Successor Trustee Not Liable for Acts of Predecessor

No Successor Trustee shall be liable for any act, omission, or default of a predecessor Trustee. Unless requested

in writing within thirty (30) days of appointment by an adult beneficiary of the Trust, no Successor Trustee shall have any duty to investigate or review any action of a predecessor Trustee and may accept the accounting records of the predecessor Trustee showing assets on hand without further investigation and without incurring any liability to any person claiming or having an interest in the Trust.

7.6 Resignation of Trustee

Any Trustee from time to time acting may resign its Trusteeship by depositing in the United States Mail, postage prepaid, a notice of such resignation addressed to any Successor Trustee named herein, or in any amendment hereto, and to the persons then entitled to receive payments hereunder at the addresses of such persons last known to the Trustee. Such resignation shall take effect on the last day of the calendar month which date is at least sixty (60) days from the date of mailing such notice, unless otherwise agreed in writing. If a Trustee resigns in the manner provided hereunder and if no Successor Trustee has been named herein or by any amendment hereto, a majority of the then living adult beneficiaries of the Trust may appoint a Successor Trustee. If said majority is unable to agree upon such Successor or if there is no adult income beneficiary then living, a Trustee shall be appointed in accordance with the provision of the laws of the State of California then existing.

7.7 Accounting by Trustee

During the lifetime of Settlor, the Trustee shall account only to the Settlor, and his written approval shall be final and conclusive in respect to transactions disclosed in the account as to all beneficiaries of the Trust, including unborn and contingent beneficiaries. After the death of Settlor, the Trustee shall, in addition to any accounting required under Section 16062 of the California Probate Code, render an annual accounting regarding the transactions of any trust created in this instrument. Accountings shall also be rendered by any Trustee within sixty (60) days after his resignation or removal by a court of competent jurisdiction.

Accountings shall be made by delivering a written accounting to each beneficiary entitled to current income distribution or, if there are no current income beneficiaries, to each beneficiary entitled to current distribution out of income or principal in the Trustee's discretion, and to each remainderman in being. If any person entitled to receive an accounting is a minor or is under a disability, the accounting shall be delivered to his or her parents or the guardian of his or her person if a minor, or to the guardian or conservator of his or her person if disabled.

Unless any beneficiary, including parents, guardians, or conservators of beneficiaries, shall deliver a written objection to the Trustee within ninety (90) days after receipt of the Trustee's account, the account shall be final and conclusive in respect to transactions disclosed in the account as to all beneficiaries of the Trust, including unborn and unascertained beneficiaries.

After settlement of the account by agreement of the parties objecting to it, or by expiration of the 90-day period, the Trustee shall no longer by liable to any beneficiary of the Trust, including unborn, unascertained and contingent beneficiaries, in respect to transactions disclosed in the account, except for the Trustee's wrongdoing or fraud.

The Trustee shall account to the adult beneficiaries of the Trust created by this instrument and, to the extent permitted by law, the written approval of the adult beneficiaries shall bind minor and contingent remainder interests. Except as provided in this paragraph, any reports and/or accounts otherwise required by the California Probate Code are hereby waived to the fullest extent of the law.

## ARTICLE VIII

## ADMINISTRATIVE PROVISIONS

### 8.1 Revised Uniform Principal and Income Act to Govern

Except as otherwise specifically provided in this instrument, the determination of all matters with respect to what is principal and income of the Trust Estate and the apportionment and allocations of receipts and expenses between these accounts shall be governed by the provision of the California Revised Uniform Principal and Income Act from time to time existing. Any such matter not provided for either in this instrument or in the California Revised Uniform Principal and Income Act shall be determined by the Trustee in the Trustee's discretion.

### 8.2 Undistributed Income Payable to Succeeding Beneficiaries

Income accrued or unpaid on Trust property when received into the Trust shall be treated as any other income. Income accrued or held undistributed by the Trustee at the termination of any trust created here shall go to the next beneficiaries of the Trust in proportion to their interest in it. This provision shall not apply to income accrued on treasury bonds redeemed in payment of the Settlor's federal estate tax.

### 8.3 Allocation of Expenses Among Successive Beneficiaries

Among successive beneficiaries of this Trust, all taxes

and other current expenses shall be deemed to have been paid and charged to the period in which they were paid.

8.4 Authority To Pay Death Taxes

Except as otherwise specifically provided in this instrument, or in the Settlor's Will, federal estate taxes imposed on or by reason of the inclusion of any portion of the Trust Estate in the gross taxable estate of Settlor under the provisions of any federal tax law shall be paid by the Trustee and charged to, prorated among, or recovered from the Trust Estate or the persons entitled to the benefits under these trusts as and to the extent provided by any applicable tax law or any proration statute. Except when otherwise specifically provided, state death taxes shall be paid and charged to the Trust estate or deducted and collected as provided by law.

8.5 Equitable Proration of Taxes

Subject to the provisions of Article VI, paragraph 6.20, pertaining to purchase of Treasury Bonds, unless the Settlor's Will directs otherwise, all estate and inheritance taxes payable at the Settlor's death that are attributable to any trust created under this instrument, shall be paid from the Trust Estate and charged to, or recovered from, the persons entitled to benefit under this instrument as provided by California Probate Code Section 20100 and related sections or any successor statutes or amendments thereto, without giving effect to Internal Revenue Code Section 2207A. All generation skipping taxes attributable to a direct skip occasioned by Settlor's death and with respect to which such Settlor is the transferror shall be paid by the Trustee out of and charged against the property constituting the transfer as provided in Internal Revenue Code Sections 1431-1433.

ARTICLE IX

GENERAL PROVISIONS

9.1 Additions to Trust

Other property acceptable to the Trustee may be added to these trusts by any person, by the Will or Codicil of Settlor, by the proceeds of any life insurance, or otherwise.

Notwithstanding anything to the contrary contained in this instrument, no payment or distribution received by the trust estate from any qualified employee benefit plan or any individual retirement plan, account, annuity, or bond that is exempt from estate tax in whole or in part under Internal Revenue Code section 2039(e), or the proceeds thereof, shall be paid or applied for any of the following: specific monetary gifts

provided for in this instrument or in the Settlor's Will; expenses of burial and last illness; income, inheritance, estate, and other taxes attributable to or chargeable against the Settlor's probate estate; or any trust, creditors' claims, debts, obligations, or any other expenses of administration or other charges against the Settlor's estate.

9.2 <u>Notice to Trustee of Births, Deaths, and Other Events Affecting Interests</u>

Unless the Trustee shall have received actual written notice of the occurrence of an event affecting the beneficial interests of this Trust, the Trustee shall not be liable to any beneficiary of this Trust for distribution made as though the event had not occurred.

9.3 <u>Rule Against Perpetuities</u>

Unless sooner terminated in accordance with other provisions of this instrument, all trusts created under this instrument shall terminate twenty-one (21) years after the death of the Settlor or of the Settlor's issue living on the date of the death of the Settlor. The principal and undistributed income of a terminated trust shall be distributed to the then income beneficiaries of that trust in the same proportion that the beneficiaries are entitled to receive income when the trust terminates. If at the time of such termination the rights to income are not fixed by the terms of the trust distribution under this clause shall be made, by right of representation, to the persons who are entitled or authorized in the Trustee's discretion, to receive trust payments.

9.4 <u>Choice of Law</u>

The validity of this Trust and the construction of its beneficial provisions shall be governed by the laws of the State of California in force on the date of execution of this instrument. This section shall apply regardless of any change of residence of the Trustee or any beneficiary, or the appointment or substitution of a Trustee residing or doing business in another state.

9.5 <u>Conferring Jurisdiction</u>

The appropriate Superior Court of the State of California shall have jurisdiction for all purposes set forth in the California Probate Code sections 17200-17210 or any successor or substitute provisions of that code authorizing optional probate court jurisdiction over Living Trusts hereby are made expressly applicable to all trusts.

///

///

9.6 Definition of Education

Whenever provision is made to pay for the education of a beneficiary, the term "education" shall include, but not be limited to, vocational school, college and post-graduate study as long as in the Trustee's discretion it is pursued to advantage by the beneficiary at an institution of the beneficiary's choice. In determining payments to be made to the beneficiary for such education, the Trustee shall consider the beneficiary's reasonably related living and traveling expenses.

9.7 Definition of Issue and Children

In this instrument, the term "issue" shall refer to lawful lineal descendants of all degrees and the terms "child," "children" shall include adopted children who were minors at the date of adoption. Settlor now has four adult living children whose names are Judy Schimsky Loprieno, Arnold D. Schimsky, Barry A. Schimsky and Joyce T. Schimsky.

9.8 Gender and Number

As used in this instrument, the masculine, feminine, or neuter gender, and the singular or plural number, shall each include the other whenever the context so indicates.

9.9 Severability

If any provision of this Trust instrument is unenforceable, the remaining provision shall nevertheless be carried into effect.

9.10 No Contest

In the event any beneficiary under this Trust shall, singly or in conjunction with any other person or person, contest in any court the validity of this Trust or of the deceased Settlor's last Will or shall seek to obtain an adjudication in any proceeding in any court that this Trust or any of its provisions or that such Will or any of its provisions is void, or seek otherwise to void, nullify or to set aside this Trust or any of its provisions, then the right of that person to take any interest given to him or her by this Trust shall be determined as it would have been determined had the person predeceased the execution of this Declaration of Trust.

9.11 Payment of Estate Taxes With Funds Other Than Insurance and Retirement Benefits

Notwithstanding anything in this instrument to the contrary, the Trustee shall not pay any death taxes, including interest or penalties, last illness and funeral expenses,

attorney's fees, administration expenses, debts, or other obligations of a deceased Settlor or his estate from funds received from qualified retirement plans that are excludable from the deceased Settlor's gross estate for Federal estate tax purposes under Section 2039 of the Internal Revenue Code or any successor statute or from proceeds of insurance policies on the deceased Settlor's life. However, to the extent there are no other assets available for such purposes, the Trustee, in his discretion, may use insurance proceeds that are otherwise taxable in the deceased Settlor's estate for federal estate tax purposes for such payments.

9.12 Significance of Headings

Titles and headings contained herein are used for ease of reference only and shall not be deemed to govern, limit, modify, or in any manner affect the scope, meaning, or intent of the provisions herein.

## ARTICLE X

## PROVISIONS RELATING TO INSURANCE POLICIES

10.1 Settlor's Retention of Rights in Policies

The owner of each policy made payable to any trust created in this instrument reserves all rights, options, and privileges conferred on the owner by the terms of the policies, including but not limited to the right to change its beneficiary designation, to hypothecate the policy, and to borrow funds from the insurer. Sickness, disability, or other benefits and all dividends accruing during the insured's lifetime may be paid by the insurer to the owner. The Trustee shall not be responsible for acts or omissions of the Settlor relating to any insurance policy.

10.2 Trustee's Responsibility for Payment of Premiums

The Trustee shall not be required to pay premiums, assessments, or other charges on any life insurance policy of which the Trust is owner or beneficiary that are required to keep it a binding insurance contract, nor shall the Trustee be responsible for determining whether such payments have been made.

10.3 Trustee's Authority to Deal with Insurers

A. Collection of Insurance Proceeds. On receipt of proof of death of the insured and on obtaining possession of an insurance policy, the Trustee shall use reasonable efforts to collect all sums payable under policy terms provided that it shall be reasonably indemnified. All sums received shall become

principal of the trust estate, except for interest paid by the insurer, which shall be income.

B. Power to Compromise, etc.. The Trustee shall have full power to compromise, arbitrate, or otherwise adjust any claim, dispute, or controversy arising under any policy, and shall have authority to initiate, defend, settle, and compromise any legal proceeding necessary in the Trustee's opinion to collect the proceeds of any policy.

C. Discharge of Insurer. The Trustee's receipt to any insurer shall be considered in full discharge, and the insurer shall not be under any duty to inquire concerning the Trustee's application of policy proceeds.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

ARTICLE XI

CERTIFICATION AND EXECUTION

The Settlor certifies that she has read the foregoing Trust referred to as The Ann P. Shimsky 1998 Trust, that it correctly states the terms and conditions under which the Trust Estate is to be held, managed, and disposed of by the Trustees, and she approves The Ann P. Shimsky 1998 Trust in all particulars.

Executed on June 30, 1998, at La Mesa, California.

Settlor and Trustee

Ann P. Shimsky

APPROVED AS TO FORM:

CHRISTOPHER J. ZUCCONI
Attorney for Settlor

STATE OF CALIFORNIA)
) ss.
COUNTY OF SAN DIEGO)

On June 30, 1998, before me, Christopher J Zucconi, a Notary Public in and for said County and State, personally appeared Ann P. Shimsky, proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument, and acknowledged to me that she executed the same in her authorized capacity and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Christopher J. Zucconi
COMM. #1171550
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
COMM. EXP. JAN. 30, 2002

Notary Public in and for said County and State

SCHEDULE A

(The Ann P. Shimsky Trust)

1. All rights, title, and interest in that certain real property located at 1255 Essex Street, Imperial Beach, California and also known as Assessor's Parcel No. 632-183-07-00.

# Exhibit S

IN THE SUPF ?R COURT OF THE STATE OF ( ,IFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO - PRO₋ATE COURT

CERTIFIED COPY

| | |
|---|---|
| ARNOLD D. SCHIMSKY, attorney-in-fact for Ann Shimsky,<br>Petitioner,<br>vs.<br>KINDRED HOSPITAL - SAN DIEGO,<br>Respondent. | Case No. P188885 |
| ANN SHIMSKY, Patient. | |

VIDEOTAPED DEPOSITION OF ARNOLD D. SCHIMSKY

VOLUME II, PAGES 147 THROUGH 394

CARLSBAD, CALIFORNIA

JANUARY 19, 2006

Reported by Joleane Ashley, CSR No. 3590

HAHN BOWERSOCK CORPORATION
Certified Court and Deposition Reporters
151 Kalmus Drive - Suite L-1 · Costa Mesa, CA 92626
800-660-3187 · Fax 714-662-1398
www.hahnbowersock.com email: hbdeposet@hahnbowersock.net

Q $200?

A I think, yeah.

Q Okay. Now, Mr. Schimsky, in 2005, did your mom live in the house at all?

A No.

Q Who lived in the house in 2005?

A I did.

MR. NELSON: Could we stop it for just a minute. Ken is lost.

THE VIDEOGRAPHER: Going off the record. The time reads 12:25 p.m.

(Recess)

(Mr. Hamilton entered the deposition suite)

THE VIDEOGRAPHER: Back on the record. The time reads 12:33 p.m.

BY MS. BOCKER:

Q Mr. Schimsky, just before we broke off, we were talking about the expenses that you were paying for your mom's home in 2005. Just a couple of quick more questions.

Does your mom have cable at the home, cable service?

A No.

Q How about internet service?

A No.

Q Do you pay rent to your mom for living in her home?

A No.

Q Do you receive any rent -- strike that.

Do you rent your home out by the grove?

MR. HAMILTON: Objection. Calls for material that's protected by privacy, and it's irrelevant and harassing.

I'll instruct my client not to answer.

BY MS. BOCKER:

Q Mr. Schimsky --

MS. BOCKER: Well, first of all, Counsel, I am questioning him in regard to finances in regard to his mother's estate here, and this is very, very relevant to the situation involving this particular case, so --

MR. HAMILTON: How is my client's rental income, if he has any, relevant to Ann Shimsky's estate?

MR. BOYD: Can we go off the record, please.

MS. BOCKER: Yes. Let's go off the record.

THE VIDEOGRAPHER: Going off the record, the time reads 12:35 p.m.

(Recess)

THE VIDEOGRAPHER: We are back on the record. The time reads 12:39 p.m.

MS. BOCKER: Okay. Mr. Hamilton, as we were

Q All right. What I'd like to do, then -- oh.

MR. BOYD: I'm sorry. To make my record, if this deposition is not properly completed as a result of Mr. Hamilton's instructions to his client to not answer questions that are relevant, are pertinent, and are not in any way protected as Mr. Hamilton seems to be claiming, I will ask for personal sanctions against Mr. Hamilton before the Court and will take any other remedies that are appropriate under state law.

MR. HAMILTON: For the record, there is no question pending from Mr. Boyd. He has no standing to bring any motion.

MS. BOCKER: Well, Mr. Hamilton. I'll just let you know that I make the same advisement to you that if I have to come back to ask your client questions, that question again or any questions that flow from that question, I, too, will ask for sanctions to having to come back.

MR. HAMILTON: You've made your record.

MS. BOCKER: Yes. Could we kindly just mark that question for a ruling, and we will go ahead and move on.

BY MS. BOCKER:

Q Mr. Schimsky, in addition to being the Durable Power of Attorney for your mother's healthcare

decisions, are you also the Durable Power of Attorney for her financial affairs?

A Yes, I am.

Q You had mentioned that questions that were asked of you by whomever in filling out the Medi-Cal application also asked whether or not your mother owned her own home?

A Yes.

Q What was your response to that inquiry?

MR. HAMILTON: I'm going to interpose an objection on behalf of third party, Ann Shimsky.

MR. BOYD: You can't object on behalf of my client.

MR. HAMILTON: That question is asking for information that relates to the financial private information --

MR. BOYD: On behalf of my client, I waive the --

THE COURT REPORTER: I didn't hear your full objection. Could you please repeat it.

MR. HAMILTON: Yes. The question relates to financial -- private financial information of a third party, and I don't think my client even has standing to waive the objection.

MR. BOYD: For the record, I waive my client's

privacy information as regards to this deposition. The question is not protected. It's now a matter of public record, and I instruct him to answer the question.

MR. HAMILTON: He waived it. You can answer. You can answer.

THE WITNESS: What was the question?

MS. BOCKER: Sure. Can you please read the question back for us, please:

(Record read as follows:

Q What was your response to that inquiry?)

MS. BOCKER: I'll go ahead and clarify the question, Mr. Schimsky.

BY MS. BOCKER:

Q You had indicated that you had a conversation with an individual in preparing the application for your mother's Medi-Cal, and part of the questions that were asked of you regarded whether or not your mother owned her own home?

A Yes.

Q What was your response to that inquiry?

A I put "Yes," and I enclosed the tax bill as proof of ownership, because it's written on there. But what was puzzling on that application was part of it was filled out before I got it, and what was so puzzling was

A I think it was. I believe it was.
Q I understand that your mother's house was placed in trust -- into a trust?
A Yeah. It's the Ann P. Schimsky living trust.
Q When was that created?
A In -- I believe April 1998. I think it was April.
Q Your mother's income, when it comes in, does it go into a separate bank account?
A It goes into a joint account.
Q A joint account?
A Yes.
Q Is that a joint account with you and your mom?
A Yes.
Q When was that joint account set up?
A A long time ago. Actually, dad and I and mom were all on the same account.
Q Were any of your siblings on that account?
A The other --
Q Your brother and your two sisters?
A No. They were not on there.
Q Does your mother have any stocks in her name?
A Stocks?
Q Stocks.
A No.

Who signed the paperwork when your mother was admitted to Kindred Hospital?

A I did.

Q Did you sign that paperwork as her agent?

A Yeah.

Q The joint account, it has both your names on it?

A Yes.

Q You've been writing checks from that account for --

A Even when dad was alive.

Q You were writing checks from that account for things to maintain your mother's house?

A Well, all kinds of bills that came in.

Q Do you use that same checking account to pay for bills for your house at the orange grove?

A No.

Q You have a separate account for that, then?

A Yeah, I do.

Q Do you use that account to pay for any of your own expenses?

A Well, I do put --

MR. HAMILTON: I'm going to object on grounds that that question is ambiguous in terms of "that account" or --

MS. BOCKER: We are talking about the joint account, so I'll go ahead and clarify. Thank you, Counsel.

BY MS. BOCKER:

Q I'm referring to the joint account that you had with your mother where your mother's income is placed into the account.

Do you use that account to pay for any of your own expenses, anything that's personal to you?

A Well, there is money that I make, okay, and my Social Security that goes into that account, too.

Q So you do use that account?

A So I use it to pay some of my own bills. So I have to kind of withdraw -- I wasn't clear on what you were trying to say there.

But, like, for my grove, okay, there are certain expenses that I do pay out of that joint account, but that's my own money, my USD money and my Social Security money.

Q What kind of things do you use -- what are the things that you have to pay for that relate to your grove from that particular joint account?

A Every kind of expense you can imagine for a grove.

Q Just give me a small example, because I don't

know how to run a grove. I have zero experience in that regard. So what kind of things --

A Well, you have to constantly be buying tools, and especially mowers. I'm into what you call side-discharge push mowers because I need the exercise. I don't go for these big rigs where you just sit and do nothing. I'm pushing all the time, man.

So those things, with that kind of grass, which is almost like rope, you have to repair those. Well, it's actually not worth repairing. Best thing to do is just buy another one; so I constantly have to buy a new mower; shears, to shear around the risers. You need shears, also, to shear the branches.

I got a water bill. Of course, I have the in-house expenses, too, but they are pretty small.

Q What do you mean "in-house expenses"?

A Like I've got utilities on the house, too.

Q Okay.

A And fertilizers and water, fertilizer, tools. I constantly have to replace them because they are just deteriorating, and then there is supplies, like, risers, microspinners, what you call these plastic tubings because the underground irrigation is on and off breaking, so they need repair on and off.

Q Just if you can give me a ballpark figure as to

# Exhibit T

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO<br>☒ MADGE BRADLEY BLDG., 1409 4TH AVE., SAN DIEGO, CA 92101-3105<br>☐ NORTH COUNTY DIVISION, 325 S. MELROSE, VISTA, CA 92081-6645 | FOR COURT USE ONLY<br>MAR 09 2006<br>CLERK SUPERIOR COURT<br>SAN DIEGO COUNTY CA |
|---|---|
| CONSERVATORSHIP OF:<br>Ann P. Shimsky<br>ADDRESS: Kindred Health Care<br>1940 El Cajon Blvd<br>San Diego, CA 92104 TEL. NO.: 619 543-4500 | HEARING DATE: March 13, 2006 |
| CONFIDENTIAL COURT INVESTIGATOR'S REPORT | CASE NUMBER<br>P188885 |

I Christine Daly visited the conservatee on 3/9/06 as directed by the court for the purpose of further investigation

I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| Assessment $400.00 assessed per Probate Code § 1851.5 now due and payable unless deferred or waived by court order. |
|---|

Date: March 9, 2006

Christine Daly, Investigator

| CONSERVATORSHIP<br>Ann P. Shimsky | CASE NUMBER<br>P188885 |
|---|---|

# Exhibit U

GC-320

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address): TELEPHONE NO.: 619/531-4860 619/531-6005

JOHN J. SANSONE, COUNTY COUNSEL
BY GEORGE SEIKALY, DEPUTY
SBN 208841
1600 PACIFIC HIGHWAY, ROOM 355
SAN DIEGO, CA 92101

ATTORNEY FOR (Name): CHARLES E. MATTHEWS III, PUB. GDN.

FOR COURT USE ONLY

RECEIVED

MAR 27 2006 VJE LVB

AFG / KAB / REI

KHC 047

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: S.D.SUPERIOR COURT MADGE BRADLEY BL
MAILING ADDRESS: 1409 4TH AVENUE, 5TH FLOOR
CITY AND ZIP CODE: SAN DIEGO CA 92101
BRANCH NAME: PROBATE

CONSERVATORSHIP OF THE [X] PERSON [X] ESTATE OF (Name): ANN SHIMSKY, AKA'S: ANN P. SHIMSKY, ANN LEAH SHIMSKY, ANN SCHIMSKY,
PROPOSED CONSERVATEE

## CITATION FOR CONSERVATORSHIP

[ ] Limited Conservatorship

CASE NUMBER: P 188885 4a

THE PEOPLE OF THE STATE OF CALIFORNIA,
To (name): ANN SHIMSKY,

1. You are hereby cited and required to appear at a hearing in this court

a. Date: APR 1 1 2006 ✓ Time: 10:00 A M [X] Dept.: F10 [ ] Room:

b. Address of court [X] same as noted above [ ] is:

and to give any legal reason why, according to the verified petition filed with this court, you should not be found to be [X] unable to provide for your personal needs [X] unable to manage your financial resources and by reason thereof, why the following person should not be appointed [X] conservator [ ] limited conservator of your [X] person [X] estate (name): CHARLES E. MATTHEWS III, PUBLIC GUARDIAN

2. A conservatorship of the person may be created for a person who is unable properly to provide for his or her personal needs for physical health, food, clothing or shelter. A conservatorship of the property (estate) may be created for a person who is unable to resist fraud or undue influence, or who is substantially unable to manage his or her own financial resources. "Substantial inability" may not be proved solely by isolated incidents of negligence or improvidence.

3. At the hearing a conservator may be appointed for your [X] person [X] estate. The appointment may affect or transfer to the conservator your right to contract, to manage and control your property, to give informed consent for medical treatment, to fix your place of residence, and to marry. You may also be disqualified from voting if you are found to be incapable of completing an affidavit of voter registration. The judge or the court investigator will explain to you the nature, purpose, and effect of the proceedings and answer questions concerning the explanation.

4. You have the right to appear at the hearing and oppose the petition. You have the right to hire an attorney of your choice to represent you. The court will appoint an attorney to represent you if you are unable to retain one. You must pay the cost of that attorney if you are able. You have the right to a jury trial if you wish.

5. *(For limited conservatorship only)* You have the right to oppose the petition in part by objecting to any or all of the requested duties or powers of the limited conservator.

Date: MAR 1 0 2006

Clerk, by G. GONZALEZ, Deputy

(SEAL)

(Proof of service on reverse)

Form Approved by the Judicial Council of California
GC-320 [Rev. January 1, 1998]
Mandatory Use [1/1/2000]

CITATION FOR CONSERVATORSHIP AND PROOF OF SERVICE

Legal Solutions Plus

Probate Code, § 1823

| CONSERVATORSHIP OF *(Name)*: ANN SHIMSKY, AKA'S: ANN P. SHIMSKY, ANN LEAH SHIMSKY, ANN SCHIMSKY, PROPOSED CONSERVATEE | CASE NUMBER: P 188885 |
|---|---|

## PROOF OF SERVICE
**(Citation for Conservatorship)**

1. At the time of service I was at least 18 years of age and not a party to this proceeding, and I served copies of the citation and petition as follows:
2. a. Person cited *(name)*: ANN SHIMSKY
   b. Person served: [X] person in item 2a [ ] other *(specify name and title or relationship to the person named in item 2a)*:

   c. Address *(specify)*: KINDRED HOSPITAL
   1940 EL CAJON BLVD.
   SAN DIEGO CA 92104
3. I served the person named in item 2
   a. [X] by personally delivering the copies (1) on *(date)*: (2) at *(time)*:
   b. [ ] by leaving the copies with or in the presence of *(name and title or relationship to person indicated in item 2b)*:
      (1) [ ] (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person served. I informed him or her of the general nature of the papers.
      (2) [ ] (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the person served. I informed him or her of the general nature of the papers.
      (3) on *(date)*: (4) at *(time)*:
      (5) [ ] A declaration of diligence is attached. *(Substituted service on natural person, minor, conservatee, or candidate.)*
   c. [ ] by mailing the copies to the person served, addressed as shown in item 2c, by first-class mail, postage prepaid,
      (1) on *(date)*: (2) from *(city)*:
      (3) [ ] with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed form.)*
      (4) [ ] to an address outside California with return receipt requested. *(Attach completed form.)*
   d. [ ] by causing copies to be mailed. A declaration of mailing is attached.
   e. [ ] other *(specify other manner of service and authorizing code section)*:

4. a. Person serving *(name, address, and telephone number)*:
   OFFICE OF THE PUBLIC GUARDIAN
   5201-A RUFFIN ROAD
   SAN DIEGO CA 92123
   858/694-3500

   b. Fee for service: $ NONE
   c. [X] Not a registered California process server.
   d. [ ] Exempt from registration under Business & Professions Code section 22350(b).
   e. [ ] Registered California process server.
      (1) [ ] Employee or independent contractor
      (2) Registration No. *(specify)*:
      (3) County *(specify)*:
      (4) Expiration *(date)*:

5. [X] I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
6. [ ] I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date:

▶ ______________________________
(SIGNATURE)

GC-310

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address): | FOR COURT USE ONLY |
|---|---|
| JOHN J. SANSONE, COUNTY COUNSEL<br>BY GEORGE SEIKALY, DEPUTY<br>SBN 208841<br>1600 PACIFIC HIGHWAY, ROOM 355<br>SAN DIEGO, CA 92101<br>TELEPHONE NO.: 619/531-4860 FAX NO. (Optional): 619/531-6005<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): CHARLES E. MATTHEWS III, PUB. GDN. | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO<br>STREET ADDRESS: S.D.SUPERIOR COURT MADGE BRADLEY BL<br>MAILING ADDRESS: 1409 4TH AVENUE, 5TH FLOOR<br>CITY AND ZIP CODE: SAN DIEGO CA 92101<br>BRANCH NAME: PROBATE | |
| CONSERVATORSHIP OF (Name): ANN SHIMSKY, AKA'S: ANN P.<br>PROPOSED CONSERVATEE | |
| PETITION FOR APPOINTMENT OF PROBATE CONSERVATOR OF THE<br>[X] PERSON [X] ESTATE [ ] Limited Conservatorship | CASE NUMBER:<br>P 188885 |

1. Petitioner *(name)*: CHARLES E. MATTHEWS III, PUBLIC GDN. requests that

   a. *(Name and address)*: PUBLIC GUARDIAN *(Telephone)*: 858/694-3500
   5201-A RUFFIN ROAD
   SAN DIEGO CA 92123

   be appointed [X] conservator [ ] limited conservator of the PERSON of the proposed conservatee and Letters issue upon qualification.

   b. *(Name and address)*: PUBLIC GUARDIAN *(Telephone)*: 858/694-3500
   5201-A RUFFIN ROAD
   SAN DIEGO CA 92123

   be appointed [X] conservator [ ] limited conservator of the ESTATE of the proposed conservatee and Letters issue upon qualification.

   c. (1) [ ] bond not be required [ ] because proposed conservator is a corporate fiduciary or an exempt government agency
   [ ] for the reasons stated in Attachment 1c.
   (2) [X] bond be fixed at: $OFFICIAL BOND to be furnished by an authorized surety company or as otherwise provided by law. *(Specify reasons if the amount is different from the minimum required by Probate Code section 2320.)*
   (3) [ ] $ in deposits in a blocked account be allowed. Receipts will be filed. *(Specify institution and location):*

   d. [ ] orders authorizing independent exercise of powers under Probate Code section 2590 be granted. *(Specify powers and reasons in Attachment 1d.)*

   e. [ ] orders relating to the capacity of the proposed conservatee under Probate Code section 1873 or 1901 be granted. *(Specify orders, facts, and reasons in Attachment 1e.)*

   f. [ ] orders relating to the powers and duties of the proposed conservator of the person under Probate Code sections 2351-2358 be granted. *(Specify orders, facts, and reasons in Attachment 1f.)*

   g. [X] the proposed conservatee be adjudged to lack the capacity to give informed consent for medical treatment or healing by prayer and that the proposed conservator of the person be granted the powers specified in Probate Code section 2355.

   h. [ ] *(for limited conservatorship only)* orders relating to the powers and duties of the proposed limited conservator of the person under Probate Code section 2351.5 be granted. *(Specify powers and duties in Attachment 1h.)*

   i. [ ] *(for limited conservatorship only)* orders relating to the powers and duties of the proposed limited conservator of the estate under Probate Code section 1830(b) be granted. *(Specify powers and duties in Attachment 1i.)*

   j. [ ] *(for limited conservatorship only)* orders limiting the civil and legal rights of the proposed limited conservatee be granted. *(Specify limitations in Attachment 1j.)*

   k. [ ] orders related to dementia treatment or placement as specified in the *Attachment Requesting Special Orders Regarding Dementia* (form GC-313) under Probate Code section 2356.5 be granted.

   l. [ ] other orders be granted. *(Specify in Attachment 1l.)*



Do NOT use this form for a temporary conservatorship.

CONSERVATORSHIP OF (Name): ANN SHIMSKY, AKA'S: ANN P.
PROPOSED CONSERVATEE

CASE NUMBER: P 188885

2. Proposed conservatee is (name): ANN SHIMSKY, (Telephone): 619/543-4500
(Present address): KINDRED HOSPITAL
1940 EL CAJON BLVD.
SAN DIEGO CA 92104

3. a. JURISDICTIONAL FACTS The proposed conservatee has no conservator within California and is a
(1) [X] resident of California and
(a) [X] a resident of this county.
(b) [ ] not a resident of this county, but commencement of the conservatorship in this county is in the best interests of the proposed conservatee. *(Specify reasons in Attachment 3a.)*
(2) [ ] nonresident of California but
(a) [ ] is temporarily living in this county, or
(b) [ ] has property in this county, or
(c) [ ] commencement of the conservatorship in this county is in the best interests of the proposed conservatee. *(Specify reasons in Attachment 3a.)*

b. Petitioner
(1) [ ] is [X] is not a creditor or an agent of a creditor of the proposed conservatee.
(2) [ ] is [X] is not a debtor or an agent of a debtor of the proposed conservatee.

c. Proposed conservator is
(1) [ ] a nominee. *(Affix nomination as Attachment 3c.)*
(2) [ ] the spouse of the proposed conservatee.
(3) [ ] the domestic partner or former domestic partner of the proposed conservatee.
(4) [ ] a relative of the proposed conservatee as *(specify relationship)*:
(5) [ ] a private professional conservator, as defined in Probate Code section 2341, who has filed with the county clerk the information statement required by Probate Code section 2342.
(6) [X] other *(specify)*: PUBLIC ENTITY

d. Petitioner is
(1) [ ] the proposed conservatee.
(2) [ ] the spouse of the proposed conservatee.
(3) [ ] the domestic partner or former domestic partner of the proposed conservatee.
(4) [ ] a relative of the proposed conservatee as *(specify relationship)*:
(5) [X] a state or local public entity, officer, or employee.
(6) [ ] a bank [ ] other entity authorized to conduct the business of a trust company.
(7) [ ] an interested person or friend of the proposed conservatee.
(8) [ ] a private professional conservator who has filed the information statement (Probate Code, § 2342).
(9) [ ] the guardian of the proposed conservatee.

e. Character and estimated value of the property of the estate
(1) Personal property: $ UNKNOWN **
(2) Annual gross income from
(a) real property: $ UNKNOWN
(b) personal property: $ UNKNOWN
(c) pensions: $
(d) wages: $
(e) public assistance benefits: $
(f) other: $
Total of (1) and (2): $ UNKNOWN

(3) Real property: $ NONE *
* R/P OWNED BY LIVING TRUST

**BENEFICIARY OF LIVING TRUST.
NO KNOWN INCOME AS OF THIS WRITING.

4. Proposed conservatee
a. Proposed Conservatee [ ] is [X] is not a patient in or on leave of absence from a state institution under the jurisdiction of the State Department of Mental Health or the State Department of Developmental Services *(specify state institution)*:
b. Proposed conservatee [ ] is receiving or entitled to receive [X] is neither receiving nor entitled to receive benefits from the Department of Veterans Affairs *(estimate amount of monthly benefit payable)*: $
c. Proposed conservatee [ ] is [X] is not able to complete an affidavit of voter registration.



U
161

| CONSERVATORSHIP OF *(Name)*: ANN SHIMSKY, AKA'S: ANN P. PROPOSED CONSERVATEE | CASE NUMBER: P 188885 |
|---|---|

5. a. Proposed conservatee
   (1) [X] is an adult.
   (2) [ ] will be an adult on the effective date of the order *(date)*:
   (3) [ ] is a married minor.
   (4) [ ] is a minor whose marriage has been dissolved.

b. Proposed conservatee requires a conservator and is
   (1) [X] unable to properly provide for his or her personal needs for physical health, food, clothing, or shelter.
   Supporting facts are [ ] specified in Attachment 5b(1) [X] as follows:

PROPOSED CONSERVATEE IS CURRENTLY IN A NEAR-COMATOSE STATE. SHE DOES NOT SPEAK AND IS UNABLE TO ATTEND TO ANY OF HER NEEDS. SHE IS CURRENTLY BEDRIDDEN. SHE IS NOT ABLE TO FEED HERSELF, UNABLE TO DRESS HERSELF, AND IS HOSPITALIZED.

PROPOSED CONSERVATEE HAS REPORTEDLY EXECUTED A LIVING TRUST THAT ALLEGEDLY PROVIDES FOR HER SON TO BE SUCCESSOR TRUSTEE. THE SON, ARNOLD SCHIMSKY, IS PURPORTEDLY ACTING AS SUCCESSOR TRUSTEE, BUT PROPOSED CONSERVATEE'S HOSPITAL BILL HAS NOT BEEN PAID. CHARGES HAVE ACCRUED FROM AUGUST OF 2004 UNTIL CURRENT. DESPITE REPEATED DEMANDS, PAYMENT HAS NOT BEEN FORTHCOMING. ARNOLD SCHIMSKY IS RESIDING IN THE RESIDENCE FORMERLY BELONGING TO MS. SHIMSKY, NOW AN ASSET OF THE TRUST, RENT-FREE. MS. SHIMSKY IS NOT ABLE TO UNDERSTAND ANY OF THIS, IS UNABLE TO PAY HER BILLS, IS NOT ABLE TO COMMUNICATE WITH ANYONE, AND DOES NOT APPRECIATE HER SITUATION.

PROPOSED CONSERVATEE IS PRESENTLY NOT UNDER AN LPS CONSERVATORSHIP OF THE PERSON.

PROPOSED CONSERVATEE IS A WIDOW. HER SPOUSE'S DATE OF DEATH IS NOT KNOWN AS OF THIS WRITING. SHE HAS CHILDREN AND GRANDCHILDREN

ASSESSMENT FEES, IF ANY, WILL BE PAID WHEN FUNDS BECOME AVAILABLE OR AT THE TIME PETITIONER SUBMITS A FIRST ACCOUNTING.

   (2) [X] substantially unable to manage his or her financial resources or to resist fraud or undue influence.
   Supporting facts are [ ] specified in Attachment 5b(2) [X] as follows:

PLEASE SEE 5B(1) ABOVE.

[ ] Continued on page 4.

| CONSERVATORSHIP OF *(Name)*: ANN SHIMSKY, AKA'S: ANN P. PROPOSED CONSERVATEE | CASE NUMBER: P 188885 |
|---|---|

5. b. (2) *(continued)*

c. [ ] Proposed conservatee voluntarily requests the appointment of a conservator. *(Specify facts showing good cause in Attachment 5(c).)*

d. [X] *Confidential Supplemental Information* (form GC-312) is filed with this petition. *(All petitioners must file this form except banks and other entities authorized to do business as a trust company.)*

e. Proposed conservatee [ ] is [X] is not developmentally disabled as defined in Probate Code section 1420 *(specify the nature and degree of the alleged disability in Attachment 5e)*. Petitioner is aware of the requirements of Probate Code section 1827.5.

6. *(If either the petitioner or the proposed conservator is the spouse of the proposed conservatee, petitioner must answer a or b.)*

a. [ ] The spouse is not a party to any action or proceeding against the proposed conservatee for legal separation, dissolution of marriage, annulment, or adjudication of nullity of their marriage.

b. [ ] Although the spouse is a party to an action or proceeding against the proposed conservatee for legal separation, dissolution, annulment, or adjudication of nullity of their marriage, or has obtained a judgment in one of these proceedings, it is in the best interests of the proposed conservatee that:

(1) [ ] a conservator be appointed.

(2) [ ] the spouse be appointed as the conservator. *(If you checked item 6b(1) or (2) or both, specify the facts and reasons in Attachment 6b.)*

7. *(If either the petitioner or the proposed conservator is the domestic partner or former domestic partner of the proposed conservatee, petitioner must answer a or b.)*

a. [ ] The domestic partner of the proposed conservatee has not terminated and does not intend to terminate the domestic partnership.

b. [ ] Although the domestic partner or former domestic partner of the proposed conservatee has terminated or intends to terminate the domestic partnership, it is in the best interest of the proposed conservatee that:

(1) [ ] a conservator be appointed.

(2) [ ] the domestic partner or former domestic partner be appointed as the conservator. *(If you checked item 7b(1) or (2) or both, specify the facts and reasons in Attachment 7b.)*

| CONSERVATORSHIP OF (Name): ANN SHIMSKY, AKA'S: ANN P. PROPOSED CONSERVATEE | CASE NUMBER: P 188885 |
|---|---|

8. ATTENDANCE AT HEARING Proposed conservatee
   a. [ ] will attend the hearing AND [ ] is the petitioner [ ] is not the petitioner AND [ ] has [ ] has not nominated the proposed conservator.
   b. [ ] is able but unwilling to attend the hearing AND [ ] does [ ] does not wish to contest the establishment of a conservatorship, [ ] does [ ] does not object to the proposed conservator, AND [ ] does [ ] does not prefer that another person act as conservator.
   c. [X] is unable to attend the hearing because of medical inability. An affidavit or certificate of a licensed medical practitioner or an accredited religious practitioner is affixed as Attachment 8c. ATTACHMENT 8c WILL BE FILED BEFORE THE HEARING.
   d. [ ] is not the petitioner, is out of state, and will not attend the hearing.

9. [ ] Granting the proposed conservator of the estate powers to be exercised independently under Probate Code section 2590 would be to the advantage and benefit and in the best interest of the conservatorship estate. Powers and reasons are specified in Attachment 9.

10. [X] a. There is no form of medical treatment for which the proposed conservatee has the capacity to give an informed consent.
    b. A declaration executed by a licensed physician, stating that the proposed conservatee lacks the capacity to give informed consent for any form of medical treatment and giving reasons and the factual basis for this conclusion, [ ] is attached as Attachment 10 [X] will be filed before the hearing.
    c. Proposed conservatee [ ] is [X] is not an adherent of a religion that relies on prayer alone for healing, as defined in Probate Code section 2355(b).

11. [ ] Filed with this petition is a *Petition for Appointment of Temporary Conservator* (form GC-110).

12. [X] The names, residence addresses, and relationships of the spouse and all relatives within the second degree of the proposed conservatee, so far as known to petitioner, are
    a. [ ] listed below [X] listed in Attachment 12a.
    b. [ ] none.
    c. [ ] not known, so relatives under Probate Code section 1821(b)(1)-(4) are [ ] listed below [ ] listed in Attachment 12c.

| | Relationship and name | Residence address |
|---|---|---|
| (1) | | |
| (2) | | |

13. [ ] Filed with this petition is a proposed *Order Appointing Court Investigator* (form GC-330).

14. Number of pages attached: 1

Date: MARCH 7, 2006
*(All petitioners must also sign (Prob. Code, § 1020).)*

JOHN J. SANSONE, COUNTY COUNSEL
▶ [signature]
(SIGNATURE OF ATTORNEY)
BY GEORGE SHIERLY, DEPUTY

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: MARCH 7, 2006

CHARLES E. MATTHEWS III, PUB. GUARDIAN
(TYPE OR PRINT NAME)

▶ Charles E Matthews III
(SIGNATURE OF PETITIONER)

(TYPE OR PRINT NAME)

▶
(SIGNATURE OF PETITIONER)

03/07/2006

SHIMSKY, ANN
Probate Number: P 188885



| Name/Address | Relationship | Age | Heirship |
|---|---|---|---|
| JUDY LAPRIENO<br>7509 FLOWER MEADOW DR.<br>SAN DIEGO, CA 92126 | DAUGHTER | | |
| JOYCE SCHIMSKY<br>4201 Massachusetts Ave. Northwest #181 West<br>Washington, DC 20016 | DAUGHTER | | |
| Rose Marie Laprieno<br>7509 Flower Meadow Drive<br>San Diego, Ca 92126 | grand daughter | | |
| Francesca Theresa Laprieno<br>7509 Flower Meadow Drive<br>San Diego, CA 92126 | Grand Daughter | | |
| ARNOLD SCHIMSKY<br>1255 ESSEX STREET<br>IMPERIAL BEACH, CA 91932 | SON | | |
| BARRY SCHIMSKY<br>744 W. MOYER STREET<br>RIDGECREST, CA 93555 | SON | | |

ATTACHMENT 12a

# Exhibit V

JAMES G. BOYD; SBN 179828
BOYD & BRIMMER
A Professional Corporation
2667 Camino del Rio North, Suite 203
San Diego, California 92108
Telephone: (619) 563-2001

Court-Appointed Attorney for ANN P. SHIMSKY,
An Incapacitated Person

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| In re Conservatorship of the Person and Estate of<br><br>ANN SHIMSKY aka ANN P. SHIMSKY, ANN LEAH SHIMSKY, ANN SCHIMSKY,<br><br>Proposed Conservatee. | Case No. P188885 4A<br><br>REPORT OF COURT-APPOINTED ATTORNEY RE PETITION BY PUBLIC GUARDIAN FOR APPOINTMENT AS PROBATE CONSERVATOR OF PERSON AND ESTATE, AND RESERVATION OF REQUEST FOR FESS<br><br>Hon. WILLIAM KRONBERGER, Jr.<br>Date: April 11, 2006<br>Time: 10:00 a.m.<br>Dept. PC |

I, JAMES G. BOYD, was appointed by the court to represent ANN SHIMSKY, the Proposed Conservatee, in proceedings previously brought in this matter by and between ARNOLD SCHIMSKY, her son, and KINDRED HOSPITAL SAN DIEGO, her primary health care provider. I present this Report of Court Appointed Attorney pursuant to Probate Code §§1470 et seq. and San Diego Rule of Court 4.129(B) with the understanding that my duty to Ms. SHIMSKY reasonably includes her representation in this proceeding.

FACTUAL BACKGROUND

1. The facts surrounding my client's care are already well-known to the court. ANN SHIMSKY is over 90 years old and is dependent on a ventilator to inhale and exhale for her. She has been ventilator dependent since before 2002. She cannot swallow and has no gag reflex. She is dependent on a gastrointestinal tube for feeding. Her doctors have stated that continued

care is futile and she will die in a short period of time if mechanical ventilation is withdrawn, probably in one to ten days. I met once with the proposed conservatee shortly after my appointment. She appeared to be in a "waking coma," her eyes open, but unresponsive.

2. Without having informed health care providers of the existence of a "Declaration Under California Natural Death Act," executed on June 30, 1998, stating that under her present circumstances ANN SHIMSKY wants life sustaining treatment withheld or withdrawn, her son, ARNOLD SCHIMSKY, has been maintaining her on mechanical life support against her instruction. Because he was aggressively interfering with her care to the extent that physicians became unwilling to treat her threatening her ability to receive care, Mr. SCHIMSKY was removed by this court as her agent on December 27, 2005, and the SAN DIEGO COUNTY PUBLIC GUARDIAN was appointed as Temporary Conservator pending the filing of a Probate Code §4766 action by KINDRED HOSPITAL, now set for trial on June 21, 2006. Mediation of all matters pertaining to my management of my client's estate and provision of her care is set to be mediated by Hon. THOMAS R. MITCHELL (Ret.) on April 27, 2006.

3. I was previously granted authority to petition under Probate Code section 3200 to request withdrawal of life support. The need for this petition is obviated and the statutory authority would be unavailable if the PUBLIC GUARDIAN'S petition for appointment as conservator of my client's person is granted.

## INVESTIGATION

4. In the course of my investigation, I reviewed voluminous medical records pertaining to my client's health care. I interviewed medical and administrative personnel at KINDRED HOSPITAL SAN DIEGO. I attended several hours of ARNOLD SCHIMSKY's deposition conducted by KINDRED HOSPITAL SAN DIEGO and had the opportunity to question him about matters pertinent to the PUBLIC GUARDIAN's present petition. I spoke with two attorneys who have represented ARNOLD SCHIMSKY. I reviewed some, but I do not believe all, of my client's estate planning documents. I spoke with my client's two other surviving children, her daughters, JUDY LAPRIENO and JOYCE SHIMSKY. Both have indicated that they are not willing or available to replace their brother.

OYD & BRIMMER
rofessional Corporation
7 Camino del Rio S.,
Suite 203
n Diego, CA 92108
(619) 563-2001

5. I received and reviewed the petition filed by the PUBLIC GUARDIAN. On April 10, 2006, I received and reviewed the "opposition" filed by counsel for ARNOLD SCHIMSKY.

## CONCLUSIONS AND RECOMMENDATIONS

6. The Conclusions and Recommendations stated herein are based on my investigation to date, as described above.

7. The "opposition" filed by ARNOLD SCHIMSKY in response to the PUBLIC GUARDIAN's verified petition is not, itself, verified. The attacks on petitioner's Item 5 allegations and the absence of a Capacity Declaration do not take into account facts already well-known in this case. The PUBLIC GUARDIAN's petition is easily amendable and there is no justification for its dismissal.

8. The Petition for Appointment of Probate Conservator of the Person is appropriate for at least three reasons: ARNOLD SCHIMSKY'S authority to act as the proposed conservatee's health care agent has been suspended and may be revoked. Substantial evidence has already been provided to indicate that he has not acted in his mother's best interests and it appears that he has actually acted contrary to her written instructions. No other family member is willing to or able to step up in this case. Appointment of a Probate Conservator of the Person obviates the need for a petition under Probate Code section 3200 and would provide continuum of care during the process of addressing the proposed conservatee's continued maintenance on unwanted life-support.

9. The Petition for Appointment of Probate Conservator of the Estate is appropriate for at least two reasons: ARNOLD SCHIMSKY has been acting as Trustee of the proposed conservatee's trust and, based on his deposition testimony, appears to have significantly commingled the proposed conservatee's property and may have converted her funds and property for his own purposes. He must account for his administration of the proposed conservatee's trust, and someone must be positioned with standing to receive and evaluate that account. It appears that ARNOLD SCHIMSKY has also exposed the proposed conservatee's estate to a million-dollar plus claim that might have been avoided had he properly managed her care needs and the financial resources available to have met those care needs.

OYD & BRIMMER
Professional Corporation
7 Camino del Rio S.,
Suite 203
n Diego, CA 92108
(619) 563-2001

10. In my opinion, the PUBLIC GUARDIAN's petition is appropriate and should be granted.

**RESERVATION OF FEES**

11. This matter is set for an evidentiary hearing on June 21, 2006. Significant additional hours of my time may be necessarily incurred prior to resolution of this dispute. I respectfully request, therefore, that I be permitted to reserve making a request for my fees until such time as the issue of appointment is decided by the court.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: 4-10-2006

JAMES G. BOYD

DYD & BRIMMER
Professional Corporation
Camino del Rio S.,
Suite 203
Diego, CA 92108
(619) 563-2001

## PROOF OF SERVICE

I am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action; my business address is 2667 Camino del Rio South, Suite 203, San Diego, California.

On April 10, 2006, I served, in the manner indicated below, the foregoing document(s) described as **REPORT OF COURT APPOINTED ATTORNEY RE PETITION BY PUBLIC GUARDIAN FOR APPOINTMENT AS PROBATE CONSERVATOR OF PERSON AND ESTATE AND RESERVATION OF REQUEST FOR FEES**, by placing true copies thereof, enclosed in sealed envelopes, at San Diego addressed as follows:

Law Offices of John P. Garcia
3255 Wilshire Blvd., Suite 1801
Los Angeles, CA 90010
Phone: (213) 927-1700
Fax: (213) 927-1705/(619) 234-4048

Attorney for Petitioner

Karen A. Bocker, Esq.
Giovanniello & Michels, LLP
1470 S. Valley Vista Drive, Suite 200
Diamond Bar, CA 91765
Phone: (909) 396-1964
Fax: (909) 396-0885

Attorney for Kindred Hospital – San Diego

George Seikaly
County Counsel for Public Guardian
1600 Pacific Highway, Room 355
San Diego, CA 92101
Phone: (619) 531-4848
Fax: (619) 685-2234

_X_ BY REGULAR MAIL: I caused such envelopes to be deposited in the United States mail at San Diego, California, with postage thereon fully prepaid. I am familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the United States Postal Service each day and that practice was followed in the ordinary course of business for the service herein attested to. (C.C.P. section 1013(a)(3))

____ BY FEDERAL EXPRESS: I caused such envelopes to be delivered by air courier, with next day service.

_X_ BY FACSIMILE: ______________________________

____ BY PERSONAL SERVICE: I caused such envelopes to be delivered to the offices of the addressees.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

EXECUTED on April 10, 2006, at San Diego, California.

[signature]
HERLINDA CHAVARIN

# Exhibit W

**STIPULATION AND SETTLEMENT AGREEMENT BY AND BETWEEN MR. ARNOLD SCHIMSKY, KINDRED HOSPITAL – SAN DIEGO, PUBLIC GUARDIAN OF SAN DIEGO AND MRS. ANN SHIMSKY**

This Stipulation and Settlement Agreement is executed by ARNOLD D. SCHIMSKY, individually and by his counsel, JOHN GARCIA; KINDRED HOSPITAL – SAN DIEGO and all affiliated entities, by and through its counsel, GIOVANNIELLO & MICHELS, LLP; THE PUBLIC GUARDIAN OF SAN DIEGO, by and through its counsel, COUNTY COUNSEL FOR SAN DIEGO; and ANN SHIMSKY aka ANN P. SHIMSKY, ANN LEA SHIMSKY and ANN SCHIMSKY, by and through her Court-appointed counsel, JAMES G. BOYD.

WHEREAS a controversy has arisen between the parties and as a result of said controversy there is now pending before the Probate Court, for the State of California, County of San Diego, three related Petitions. The first is Case Number: P 188885, a Petition commenced by Arnold Schimsky entitled ARNOLD D. SCHIMSKY, attorney-in-fact for Ann Shimsky, Petitioner vs. KINDRED HOSPITAL – SAN DIEGO, Respondent; the Second Petition is Case Number: P188885-1B, filed by Kindred Hospital pursuant to Probate Code § 4766 entitled KINDRED HOSPITAL – SAN DIEGO, Petitioner vs. ARNOLD D. SCHIMSKY, attorney-in-fact for Ann Shimsky, Respondent; the Third Petition is Case Number: P188885 4A, filed by the Public Guardian for San Diego, seeking conservatorship over the person and estate of Ann Shimsky (hereinafter referred to as the "Petitions"); and;

WHEREAS, the parties desire to finally compromise and settle the above controversy as more particularly set forth in this Stipulation and Settlement Agreement (the "Settlement").

IT IS HEREBY STIPULATED AND AGREED by and between Arnold Schimsky individually and through his counsel, John Garcia; Kindred Hospital San Diego, through its counsel, Giovanniello & Michels, LLP; The Public Guardian of San

108

Diego by and through its counsel, County Counsel for San Diego; and Ann Shimsky by and through her Court appointed counsel, James G. Boyd, that:

1. Mr. Schimsky will renounce his authority under the Durable Power of Attorney for Ann Shimsky's health care decisions, allowing the Public Guardian to assume permanent conservatorship over the person with medical powers, pursuant to Court order, to make decisions for Mrs. Shimsky's best interest.

2. Mr. Schimsky will take his Petition currently pending before the Probate Court, Case Number: P188885 1A off calendar.

3. Mr. Schimsky covenants and agrees never to Petition, commence, voluntarily aid in any way, institute, maintain, prosecute, or authorize to be commenced against Kindred Hospital – San Diego any action or other proceeding either in law or in equity against any party to this agreement or person, group, or entity covered by this Stipulation and Settlement Agreement based in whole or in part upon any action, demand, cause of action, obligation, damage or liability which is the subject of this Stipulation and Settlement Agreement and further agrees never to Petition or bring suit against the Public Guardian or County of San Diego any action or other proceeding either in law or in equity against any party to this agreement or person, group, or entity covered by this Stipulation and Settlement Agreement based in whole or in part upon any action, demand, cause of action, obligation, damage or liability which is the subject of this Stipulation and Settlement Agreement, except as provided below herein:

298

4. Upon appointment by the Court of the Public Guardian as the permanent conservator over the person of Mrs. Ann Shimsky with medical powers, the Public Guardian will exercise such powers under the appointment or as the Court orders, including but not limited to referral of life sustaining treatment issues to an appropriate bioethics committee. In the event a bioethics committee determines life sustaining treatment should be withdrawn or discontinued, Arnold Schimsky shall have standing for the limited purpose of filing a Petition to contest the decision of the bioethics committee, within 10 days of being given notice of such decision.

5. In consideration of Mr. Schimsky renouncing his authority under the Durable Power of Attorney for the health care decisions of Ann Shimsky, allowing the Public Guardian to assume permanent conservatorship over the person of Ann Shimsky with medical powers, pursuant to Court order, and in consideration of Mr. ~~Schimksy~~ Schimsky requesting dismissal of his Petition currently pending before the Probate Court, Kindred Hospital – San Diego will take its Petition currently pending before the Probate Court, Case Number: P 188885 1E off calendar.

6. In further consideration of Mr. ~~Schimksy~~ Schimsky renouncing his authority under the Durable Power of Attorney for the health care decisions of Ann Shimsky, allowing the Public Guardian to assume permanent conservatorship over the person of Ann Shimsky with medical powers, pursuant to Court order, and in consideration of Mr. Schimsky taking his Petition currently pending before the Probate Court off calendar, the Public Guardian of San Diego will take its Petition currently pending before the Probate Court, Case Number: P188885 4A as it pertains to the estate of Mrs. Shimsky off calendar.

388

7. Mr. Schimsky understands that allowing the Public Guardian to assume permanent conservatorship over the person of Ann Shimsky with medical powers, pursuant to Court order, has the effect of preventing Ann Shimsky's attorney from filing a Petition, pursuant to Probate Code § 3201 for removal of life support from Ann P. Shimsky.

8. Mr. Schimksy will be permitted to retain his authority as the Durable Power of Attorney over the estate of Mrs. Ann Schimsky.

9. In retaining his authority as the Durable Power of Attorney over the estate of Mrs. Ann Shimsky, Arnold D. Schimsky will ensure that the bill for services provided to his mother by Kindred Hospital is paid. Said bill is currently $1,885,669.84. Mr. Schimsky will use his best efforts in coordinating payment of benefits from any third party source including insurance companies, Medicare and Medical or any other source whatsoever to Kindred Hospital- San Diego for the care provided to Mrs. Ann Shimsky. This Stipulation and Settlement is neither a condition precedent ~~to~~ nor does it waive Kindred Hospital – San Diego's right to collect or bring an action for any outstanding fees for the medical care provided to Mrs. Shimsky, which both parties agree were reasonable and necessary, from the time of her admission to Kindred Hospital – San Diego until the time of her discharge from Kindred Hospital – San Diego.

10. Mr. Schimsky will remit payment in the amount of $10,000.00 payable to the BOYD & BRIMMER CLIENT TRUST Account, for legal services provided to Mrs. Schimsky by her Court-appointed attorney, James G. Boyd. The sum shall be paid from Arnold Schimsky's funds before all Petitions are taken off calendar.

498

11. Mr. Boyd will remain as the Court-appointed attorney for Mrs. Shimsky. Mr. Schimksy agrees to pay for legal services provided to Mrs. Shimsky by Mr. James G. Boyd for the duration of Mr. James G. Boyd's appointment as counsel for Mrs. Shimsky from the Ann Shimsky Trust.

12. Mr. Schimsky will remit payment in the amount of $2,500.00, payable to the County of San Diego, Public Administrator, Public Guardian for costs of Petitioning, investigative fees and conservatorship fees. Mr. Schimsky will also remit payment in the amount of $2,500.00, payable to the County of San Diego, for attorney's fees. The sum shall be paid before all Petitions are taken off calendar.

13. Mr. Schimsky will remit payment in the amount of $2,231.67 ($2,044.90, plus $15.00 filing fee, plus 10% interest per year running from November 23, 2005, to the present on $4,044.90) payable to Giovanniello & Michels, LLP for discovery sanctions awarded against Mr. Schimsky by the Probate Court on November 23, 2005. The sum shall be paid from Arnold Schimsky's funds before all Petitions are taken off calendar.

14. It is possible that other injuries or damages not now known to Mr. Schimsky will develop or be discovered, or consequences or results of known injuries will develop or will be discovered, and this Stipulation and Settlement is expressly intended to cover and include and does cover and include all such future injuries or damages, including all rights of action therefore, that the provisions of California Civil Code Section 1542 are expressly waived, and Plaintiff understands that said section provides as follows:

√ g 8

> "A general release does not extend to actions which the creditor does not know or suspect to exist in his favor at the time of executing the Release, which if known by him must have materially affected his settlement with the debtor."

15. Mr. Schimsky acknowledges that he has been fully advised by his counsel of record as to the full contents, meaning and significance of this Stipulation and Settlement Agreement and fully understands its terms and their effect and that this is a full and final compromise and settlement of the Action. Mr. Schimsky understands that if the facts with respect to which this Stipulation and Settlement are executed are hereafter found to be different from the facts now believed by Mr. Schimsky to be true, Mr. Schimsky expressly accepts and assumes the risk of such possible difference in facts and agrees that this Stipulation and Settlement shall be, and will remain, effective notwithstanding such difference in facts.

16. Mr. Schimsky acknowledges having had an opportunity to review this Stipulation and Settlement with legal counsel and enters into this Stipulation and Settlement voluntarily with full understanding of its contents.

17. Mr. Schimsky and Kindred Hospital – San Diego will bear their own costs and expenses, including attorneys' fees, incurred in connection with the controversy specifically identified and released herein, specifically the Petitions filed in the San Diego Probate Court, Case Number: P 188885 and Case Number: P 188885 1E, respectively.

18. All Petitions taken off calendar cannot be re-filed except for the Petition for conservatorship over the estate of Mrs. Ann Shimsky, which can be re-filed upon good cause shown.

698

IT IS FURTHER STIPULATED AND AGREED that this stipulation may be executed in subparts.

DATED: April 27, 2006

GIOVANNIELLO & MICHELS, LLP

By: [signature]
Alexander F. Giovanniello
Karen A. Bocker
Attorneys for Kindred Hospital San Diego

DATED: April 27, 2006

JAMES G. BOYD, MA, JD.

By: [signature]
James G. Boyd, MA, JD
Court Appointed Attorney for Ann Shimsky

DATED: April 30 2006

COUNTY COUNSEL FOR SAN DIEGO

By: [signature]
George Seikaly, Deputy County Counsel for San Diego
Attorney for the Public Guardian for San Diego

[signature] III PAPG

798

I, THE UNDERSIGNED, HEREBY CERTIFY that I have read this entire Stipulation and Settlement, consisting of 8 pages, including signature pages, and have had the terms used herein and the consequences hereof explained by my attorney. I fully understand the terms and consequences of this release, and therefore I have executed this Stipulation and Settlement as of the dates set forth by my signature.

DATED: April 27, 2006

ARNOLD D. SCHIMSKY

By: Arnold D. Schimsky
Arnold D. Schimsky

I, JOHN GARCIA, am the attorney for Mr. Schimksy in this action. I hereby represent and declare that I have fully explained the foregoing Stipulation and Settlement and Mr. Schimsky acknowledged to me that he understands this document and the legal effects thereof, and I have advised Mr. Schimsky to sign it.

DATED: April 27, 2006

JOHN GARCIA, ESQ.

By: John Garcia
Attorney for Arnold Schimsky

898

# Exhibit X

GC-350

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):
[ ] After recording return to:
JOHN J. SANSONE, COUNTY COUNSEL
BY GEORGE SEIKALY, DEPUTY (SBN 208841)
1600 PACIFIC HIGHWAY, ROOM 355
SAN DIEGO, CA 92101
TELEPHONE NO.: 619/531-4860
FAX NO. (Optional): 619/531-6005
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): CHARLES B. MATTHEWS III, P.G.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: S.D. SUPERIOR COURT MADGE BRADL
MAILING ADDRESS: 1409 4TH AVENUE, 5TH FLOOR
CITY AND ZIP CODE: SAN DIEGO CA 92101
BRANCH NAME: PROBATE

CONSERVATORSHIP OF (Name): ANN SHIMSKY, AKA'S: ANN P. SHIMSKY, ANN LEAH SHIMSKY, ANN SCHIMSKY,

CONSERVATEE

FOR RECORDER'S USE ONLY

CASE NUMBER: P 188885 - 4A

FOR COURT USE ONLY

FILED
Clerk of the Superior Court
JUN 22 2006
By: J. Porch, Deputy

## LETTERS OF CONSERVATORSHIP

[X] Person [ ] Estate [ ] Limited Conservatorship

1. [X] (Name): PUBLIC GUARDIAN OF SAN DIEGO COUNTY is the appointed [X] conservator [ ] limited conservator of the [X] person [ ] estate of (name): ANN SHIMSKY, AKA'S: ANN P. SHIMSKY, ANN LEAH SHIMSKY, ANN SCHIMSKY
2. [ ] (For conservatorship that was on December 31, 1980, a guardianship of an adult or of the person of a married minor) (Name):
was appointed the guardian of the [ ] person [ ] estate by order dated (specify): and is now the conservator of the [ ] person [ ] estate of (name):
3. [X] Other powers have been granted or conditions imposed as follows:
   a. [X] Exclusive authority to give consent for and to require the conservatee to receive medical treatment that the conservator in good faith based on medical advice determines to be necessary even if the conservatee objects, subject to the limitations stated in Probate Code section 2356.
      (1) [ ] This treatment shall be performed by an accredited practitioner of the religion whose tenets and practices call for reliance on prayer alone for healing of which the conservatee was an adherent prior to the establishment of the conservatorship.
      (2) [ ] (If court order limits duration) This medical authority terminates on (date):
   b. [ ] Authority to place conservatee in a care or nursing facility described in Probate Code section 2356.5(b).
   c. [ ] Authority to authorize the administration of medications appropriate for the care and treatment of dementia described in Probate Code section 2356.5(c).
   d. [ ] Powers to be exercised independently under Probate Code section 2590 as specified in Attachment 3d (specify powers, restriction, conditions, and limitations).
   e. [ ] Conditions relating to the care and custody of the property under Probate Code section 2402 as specified in Attachment 3e.
   f. [ ] Conditions relating to the care, treatment, education, and welfare of the conservatee under Probate Code section 2358 as specified in Attachment 3f.
   g. [ ] (For limited conservatorship only) Powers of the limited conservator of the person under Probate Code section 2351.5 as specified in Attachment 3g.
   h. [ ] (For limited conservatorship only) Powers of the limited conservator of the estate under Probate Code section 1830(b) as specified in Attachment 3h.
   i. [ ] other (specify):

(SEAL)

4. [ ] The conservator is not authorized to take possession of money or any other property without a specific court order.
5. Number of pages attached: -0-

WITNESS, clerk of the court, with seal of the court affixed.

Date: 062206

Clerk, by [signature], Deputy

This form may be recorded as notice of the establishment of a conservatorship of the estate as provided in Probate Code section 1875.



Form Adopted for Mandatory Use
Judicial Council of California
GC-350 [Rev. January 1, 2003]

LETTERS OF CONSERVATORSHIP

Legal Solutions Plus

Probate Code, § 1834

GC-350

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):
[ ] After recording return to:
JOHN J. SANSONE, COUNTY COUNSEL
BY GEORGE SEIKALY, DEPUTY (SBN 208841)
1600 PACIFIC HIGHWAY, ROOM 355
SAN DIEGO, CA 92101
TELEPHONE NO.: 619/531-4860
FAX NO. (Optional): 619/531-6005
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): CHARLES E. MATTHEWS III, P.G.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: S.D. SUPERIOR COURT MADGE BRADL
MAILING ADDRESS: 1409 4TH AVENUE, 5TH FLOOR
CITY AND ZIP CODE: SAN DIEGO CA 92101
BRANCH NAME: PROBATE

CONSERVATORSHIP OF (Name): ANN SHIMSKY, AKA'S: ANN P. SHIMSKY, ANN LEAH SHIMSKY, ANN SCHIMSKY, CONSERVATEE

FOR RECORDER'S USE ONLY

CASE NUMBER: P 188885 - 4A

LETTERS OF CONSERVATORSHIP
[X] Person [ ] Estate [ ] Limited Conservatorship

FOR COURT USE ONLY

FILED
Clerk of the Superior Court
JUN 22 2006
By: J. Porch, Deputy

1. [X] (Name): PUBLIC GUARDIAN OF SAN DIEGO COUNTY is the appointed [X] conservator [ ] limited conservator of the [X] person [ ] estate of (name): ANN SHIMSKY, AKA'S: ANN P. SHIMSKY, ANN LEAH SHIMSKY, ANN SCHIMSKY

2. [ ] (For conservatorship that was on December 31, 1980, a guardianship of an adult or of the person of a married minor) (Name): was appointed the guardian of the [ ] person [ ] estate by order dated (specify): and is now the conservator of the [ ] person [ ] estate of (name):

3. [X] Other powers have been granted or conditions imposed as follows:
   a. [X] Exclusive authority to give consent for and to require the conservatee to receive medical treatment that the conservator in good faith based on medical advice determines to be necessary even if the conservatee objects, subject to the limitations stated in Probate Code section 2356.
      (1) [ ] This treatment shall be performed by an accredited practitioner of the religion whose tenets and practices call for reliance on prayer alone for healing of which the conservatee was an adherent prior to the establishment of the conservatorship.
      (2) [ ] (If court order limits duration) This medical authority terminates on (date):
   b. [ ] Authority to place conservatee in a care or nursing facility described in Probate Code section 2356.5(b).
   c. [ ] Authority to authorize the administration of medications appropriate for the care and treatment of dementia described in Probate Code section 2356.5(c).
   d. [ ] Powers to be exercised independently under Probate Code section 2590 as specified in Attachment 3d (specify powers, restriction, conditions, and limitations).
   e. [ ] Conditions relating to the care and custody of the property under Probate Code section 2402 as specified in Attachment 3e.
   f. [ ] Conditions relating to the care, treatment, education, and welfare of the conservatee under Probate Code section 2358 as specified in Attachment 3f.
   g. [ ] (For limited conservatorship only) Powers of the limited conservator of the person under Probate Code section 2351.5 as specified in Attachment 3g.
   h. [ ] (For limited conservatorship only) Powers of the limited conservator of the estate under Probate Code section 1830(b) as specified in Attachment 3h.
   i. [ ] other (specify):

(SEAL)

4. [ ] The conservator is not authorized to take possession of money or any other property without a specific court order.

5. Number of pages attached: -0-

WITNESS, clerk of the court, with seal of the court affixed.

Date: 062206

Clerk, by [signature], Deputy

This form may be recorded as notice of the establishment of a conservatorship of the estate as provided in Probate Code section 1875.



Form Adopted for Mandatory Use
Judicial Council of California
GC-350 [Rev. January 1, 2006]

LETTERS OF CONSERVATORSHIP

Legal Solutions Plus

Probate Code, § 1834

| CONSERVATORSHIP OF (Name): ANN SHIMSKY, AKA'S: ANN P. SHIMSKY, ANN LEAH SHIMSKY, ANN SCHIMSKY, CONSERVATEE | CASE NUMBER: P 188885 - 4A |
|---|---|

## LETTERS OF CONSERVATORSHIP

### AFFIRMATION

I solemnly affirm that I will perform according to law the duties of [X] conservator [ ] limited conservator.

Executed on (date): 06/12/2006 , at (place): SAN DIEGO, CALIFORNIA

▶ Charles E Mortheimer [signature]
(SIGNATURE OF APPOINTEE)
PUBLIC GUARDIAN OF SAN DIEGO COUNTY

### CERTIFICATION

I certify that this document and any attachments is a correct copy of the original on file in my office, and that the letters issued to the person appointed above have not been revoked, annulled, or set aside, and are still in full force and effect.

Date: 062206

Clerk, by [signature], Deputy

(SEAL)

# Exhibit Y

# County of San Diego

HEALTH AND HUMAN SERVICES AGENCY
JEAN M. SHEPARD, DIRECTOR

PUBLIC ADMINISTRATOR – PUBLIC GUARDIAN
5201-A RUFFIN ROAD, SAN DIEGO, CA 92123-1699
(858) 694-3500 FAX (858) 694-3987

CHARLES E. MATTHEWS III
PUBLIC ADMINISTRATOR
PUBLIC GUARDIAN

August 14, 2006

Arnold Schimsky
1255 Essex Street
Imperial Beach, CA 91932

Dear Mr. Schimsky,

As you know, in June of 1998 Ann Shimsky stated through a signed declaration that she did not want to be kept alive by the administration of life-sustaining treatment under the conditions outlined in her advanced directive. Presently, Mrs. Shimsky is receiving life-sustaining treatment that she has previously directed, not be given. It is this office's intention to abide by Mrs. Shimsky's wishes in relation to her medical treatment.

The Public Guardian's office has considered Mrs. Shimsky's wishes quite extensively. We have visited Mrs. Shimsky, discussed her condition with her physicians and medical staff, convened our own Bioethics meeting, and consulted with Mrs. Shimsky's attorney. We have also discussed this with Judy Loprieno, Joyce Shimsky as well as you.

It is our conclusion that we need to abide by Mrs. Shimsky's wishes and remove the life sustaining treatment that she did not want. Presently, we will be working with Mrs. Shimsky's doctor and hospital to carry out this wish, which will include the removal of the ventilator that is breathing for Mrs. Shimsky.

Per the settlement agreement signed on April 27, 2006, we are giving you ten days notice of this proposed action.

Sincerely,

Charles Matthews III, MS, MBA
Public Guardian/Public Administrator

CEM: pr

cc: Jim Boyd
John Garcia, Attorney